levies, except (a) where contested in good faith, by proper proceedings and adequate reserves therefor have been established on the books of the Borrower or the appropriate Subsidiary in conformity with GAAP or (b) to the extent the aggregate liability of the Borrower or such Subsidiary does not exceed $1,000,000 at any time or (c) to the extent stayed pursuant to the Cases.

### Section 7.5    *Maintenance of Insurance*

Each Loan Party shall (a) maintain for itself, and each of its Subsidiaries, insurance with responsible and reputable insurance companies or associations in such amounts and covering such risks as is usually carried by companies engaged in similar businesses and owning similar properties in the same general areas in which the Borrower or such Subsidiary operates (including self insurance), and such other insurance as may be reasonably requested by the Requisite Lenders, and, in any event, all insurance required by any Collateral Documents and (b) cause all such insurance relating to any Loan Party to name the Administrative Agent on behalf of the Secured Parties as additional insured or loss payee, as appropriate, and to provide that no cancellation, material addition in amount or material change in coverage shall be effective until after 30 days' written notice thereof to the Administrative Agent.

### Section 7.6    *Access*

Each Loan Party shall, and shall cause each of its Subsidiaries to, from time to time permit the Administrative Agent and the Lenders, or any agents or representatives thereof, within 2 Business Days after written notification of the same (except that during the continuance of an Event of Default, no such notice shall be required) to (a) examine and make copies of and abstracts from the records and books of account of the Borrower and each Subsidiary of the Borrower, (b) visit the properties of the Borrower and each Subsidiary of the Borrower, (c) discuss the affairs, finances and accounts of the Borrower and each Subsidiary of the Borrower with any of their respective officers or directors, (d) communicate directly with any of its certified public accountants (including the Borrower's Accountants), *provided* that in the case of *clause (d)*, so long as no Default or Event of Default has occurred and is continuing, a Responsible Officer of the Borrower or such Subsidiary shall be invited to participate in such communication (but the participation or attendance of such Responsible Officer shall not be required) and (e) provide to the Administrative Agent and the Lenders (or, in each case, any of their respective representatives, advisors or independent contractors) access to information (including historical information) and personnel, including, without limitation, regularly scheduled meetings with senior management and other advisors to the Borrower and its Subsidiaries, in each case during normal business hours, and provide to access to all information any that the Administrative Agent or its financial advisor shall reasonably request in good faith from time to time, *provided* that so long as no Default or Event of Default has occurred and is continuing, the Borrower shall reimburse the expenses of the Administrative Agent related to such visit no more than two times in any twelve month period.  The Borrower and its Subsidiaries shall authorize its certified public accountants (including the Borrower's Accountants) to disclose to the Administrative Agent or any Lender any and all financial statements and other information of any kind, as the Administrative Agent or any Lender reasonably requests and that such accountants may have with respect to the business, financial condition, results of operations or other affairs of the Borrower or any Subsidiary of the Borrower.

### Section 7.7    *Update Calls.*

Promptly following the reasonable request by the Administrative Agent at such times as the Borrower and the Administrative Agent shall agree (and at least once per calendar month), the Borrower shall host a conference call (with a question and answer period) with members of senior management of the Borrower as the Borrower and Administrative Agent deem appropriate and the Administrative Agent and the Lenders and their respective representatives and advisors to discuss the

performance of the business, strategic alternatives and other issues as the Administrative Agent may reasonably request.

### Section 7.8    *Keeping of Books*

Each Loan Party shall, and shall cause each of its Subsidiaries to, keep, proper books of record and account, in which full and correct entries shall be made in conformity with GAAP of all financial transactions and the assets and business of the Borrower and each such Subsidiary.

### Section 7.9    *Maintenance of Properties, Etc.*

Each Loan Party shall, and shall cause each of its Subsidiaries to, maintain and preserve (a) in good working order and condition all of its properties necessary in the conduct of its business (subject to ordinary wear and tear, casualty and condemnation), (b) all rights, permits, licenses, approvals and privileges (including all Permits) used or useful or necessary in the conduct of its business and (c) all registered patents, trademarks, trade names, copyrights and service marks with respect to its business, except, in each case (i) dispositions permitted pursuant to Section 8.4 or (ii) where failure to so maintain and preserve the items set forth in *clauses (a), (b)* and *(c)* above could not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

### Section 7.10    *Application of Proceeds*

Each Loan Party shall (and, to the extent distributed to them by the Borrower, each Loan Party) shall use the entire amount of the proceeds of the Loans as provided in Section 4.12.

### Section 7.11    *Environmental*

Each Loan Party shall, and shall cause each of its Subsidiaries to, comply in all material respects with Environmental Laws and, without limiting the foregoing, the Borrower shall, at its sole cost and expense, upon receipt of any notification or otherwise obtaining knowledge of any Release or other event that has any reasonable likelihood of any of the Borrower or any Subsidiary of the Borrower incurring Environmental Liabilities and Costs in excess of $1,000,000 in the aggregate, (a) conduct, or pay for consultants to conduct, tests or assessments of environmental conditions at such operations or properties, including the investigation and testing of subsurface conditions and (b) take such Remedial Action and undertake such investigation or other action as required by Environmental Laws or as any Governmental Authority requires or as is appropriate and consistent with good business practice to address the Release or event and otherwise ensure compliance with Environmental Laws.

### Section 7.12    *Additional Collateral and Guaranties*

Except as otherwise expressly set forth in the Loan Documents, to the extent not delivered to the Administrative Agent on or before the Closing Date (including in respect of after-acquired property and Persons that become Subsidiaries of any Loan Party after the Closing Date (other than any Excluded Joint Venture)), each Loan Party agrees promptly to do, or cause each of its Subsidiaries to do, each of the following, unless otherwise agreed by the Administrative Agent:

(a)    cause each Domestic Subsidiary formed or acquired after the Closing Date in accordance with the terms of this Agreement to become a Guarantor by executing a joinder agreement in a form mutually agreed to by the Administrative Agent and the Borrower on or before the 15th Business Day following the date of such acquisition or formation, it being understood and agreed that upon execution and delivery thereof, each such Person (i) shall automatically become a Guarantor hereunder and thereupon shall have all of the rights, benefits, duties, and obligations in such capacity under the Loan

Documents and (ii) will grant Liens to the Administrative Agent, for the benefit of the Administrative Agent and the Lenders, in any property of such Loan Party which constitutes Collateral;

(b)      deliver to the Administrative Agent such duly-executed joinder and amendments to the Pledge and Security Agreement and, if applicable, other Collateral Documents, in each case in form and substance reasonably satisfactory to the Administrative Agent and as the Administrative Agent deems necessary or advisable in order to carry out the terms and conditions of this Agreement and the other Loan Documents and to ensure creation, perfection and priority of the Liens created or intended to be created by the Collateral Documents or the Orders, all at the reasonable expense of the Loan Parties;

(c)      with respect to any property (other than Real Property or property not otherwise constituting Collateral) acquired after the Closing Date by any Loan Party, promptly (i) execute and deliver to the Administrative Agent such amendments to the Collateral Documents or other documents as the Administrative Agent deems necessary or advisable to grant to the Administrative Agent, for the benefit of the relevant Lenders, a security interest in such property and (ii) take all actions necessary or advisable to grant to the Administrative Agent, for the benefit of the relevant Lenders, a perfected first priority security interest in such property (subject only to Liens permitted pursuant to Section 8.2), including the filing of Uniform Commercial Code financing statements in such jurisdictions as may be required by any Collateral Document or by law or as may be requested by the Administrative Agent;

(d)      with respect to any fee interest in any Real Property acquired after the Closing Date by any Loan Party with a net book value in excess of $100,000, promptly (1) execute and deliver a first priority Mortgage, in favor of the Administrative Agent, for the benefit of the relevant Lenders, covering such real property (subject only to Liens permitted pursuant to Section 8.2) and (2) if requested by the Administrative Agent, provide the relevant Lenders with (w) title and extended coverage insurance covering such real property in an amount at least equal to the purchase price of such real property (or such other amount as shall be reasonably specified by the Administrative Agent), *provided* that this *clause (w)* shall only be applicable to any fee interest in any Real Property with a net book value in excess of $700,000, (x) if in possession of the Loan Party, a current ALTA survey thereof, together with a surveyor's certificate (or comparable documents, if any, in any applicable jurisdiction), (y) any consents or estoppels reasonably deemed necessary or advisable by the Administrative Agent in connection with such Mortgage, each of the foregoing in form and substance reasonably satisfactory to the Administrative Agent, *provided* that such obligations under this *clause (y)* shall be limited to the Borrower's use of commercially reasonable efforts and (z) an opinion of local counsel in the state where such Real Property is located in form and substance reasonably satisfactory to the Administrative Agent;

(e)      deliver to the Administrative Agent all certificates, instruments and other documents representing all Pledged Stock, Pledged Debt Instruments and all other Stock, Stock Equivalents and other debt Securities being pledged pursuant to the joinders and amendments executed pursuant to Section 7.12(b), together with (i) in the case of certificated Pledged Stock and other certificated Stock and Stock Equivalents, undated stock powers endorsed in blank and (ii) in the case of Pledged Debt Instruments and other certificated debt Securities, endorsed in blank, in each case executed and delivered by a Responsible Officer of such Loan Party or such Subsidiary thereof, as the case may be;

(f)      to take such other actions necessary or advisable to carry out the terms and conditions of this Agreement and the other Loan Documents and to ensure creation, perfection and priority of the Liens created or intended to be created by the Collateral Documents or the Orders, all at the reasonable expense of the Loan Parties, including the filing of UCC financing statements in such jurisdictions as may be required by the Collateral Documents or by law or as may be reasonably requested by the Administrative Agent; and

(g)     if reasonably requested by the Administrative Agent, deliver to the Administrative Agent legal opinions relating to the matters described above, which opinions shall be in form and substance, and from counsel, reasonably satisfactory to the Administrative Agent.

### Section 7.13     Control Accounts; Approved Deposit Accounts

(a)     Each Loan Party shall (i) subject to *clause (f)* below, deposit in an Approved Deposit Account all cash they receive, (ii) subject to *clause (f)* below, not establish or maintain any Securities Account that is not a Control Account and (iii) not establish or maintain any Deposit Account other than with a Deposit Account Bank; *provided, however,* that the Borrower and each of its Subsidiaries may establish or maintain (x) Permitted Utility Deposit Accounts, (y) payroll, withholding tax and other fiduciary accounts, including accounts for which the funds on deposit therein pertain to Liens permitted under *clause (c)* of the definition of *"Customary Permitted Liens"* (*provided* that neither the Borrower nor any such Subsidiary may maintain funds in any such account in excess of amounts which are actually accrued (or, in the case of fiduciary accounts, otherwise required to be maintained therein) to its employees or the relevant Governmental Authority or other beneficiary of such fiduciary account) and (z) Excluded Deposit Accounts, *provided further* that (1) all deposits into and balances maintained in the Excluded Deposit Accounts shall be in the ordinary course of business and consistent with past practices; *provided*, that no proceeds of Loans may be deposited into an Excluded Deposit Account (other than to the extent necessary to repay any amounts then overdrawn) and (2) to the extent the aggregate balances in all Excluded Deposit Accounts at any time exceed \$300,000 for a period of longer than 3 Business Days the Borrower shall, or shall cause the relevant Subsidiary to, either (A) cause such amounts in excess of \$300,000 to, within 1 Business Day, be transferred to an Approved Deposit Account or (B) cause one or more Excluded Deposit Accounts to become an Approved Deposit Account so that, after giving effect to the actions in *clauses (A)* and/or *(B)* the aggregate balance on deposit in all Excluded Deposit Accounts shall not at any time exceed \$300,000 for a period longer than 3 Business Days.

(b)     Each Loan Party shall, and shall cause each of its Subsidiaries to, (i) subject to *clause (a)* above, instruct each Account Debtor or other Person obligated to make a payment to any of them under any Account or General Intangible to make payment, or to continue to make payment, to an Approved Deposit Account and (ii) subject to *clause (a)* above, deposit in an Approved Deposit Account immediately upon receipt all Proceeds of such Accounts and General Intangibles received by the Borrower or any of its Subsidiaries from any other Person.

(c)     In the event (i) the Borrower, any Subsidiary of the Borrower or any Deposit Account Bank shall, after the Closing Date, terminate an agreement with respect to the maintenance of an Approved Deposit Account for any reason, (ii) the Administrative Agent shall demand such termination as a result of the failure of a Deposit Account Bank to comply with the terms of the applicable Deposit Account Control Agreement or (iii) the Administrative Agent determines in its sole discretion, exercised reasonably and in good faith, that the financial condition of a Deposit Account Bank has materially deteriorated, the Borrower shall, and shall cause each Subsidiary of the Borrower to, notify all of their respective obligors that were making payments to such terminated Approved Deposit Account to make all future payments to another Approved Deposit Account (such notification to occur with the next billing cycle after the Administrative Agent has made such determination).

(d)     In the event (i) the Borrower, any Subsidiary of the Borrower or any Approved Securities Intermediary shall, after the Closing Date, terminate an agreement with respect to the maintenance of a Control Account for any reason, (ii) the Administrative Agent shall demand

such termination as a result of the failure of an Approved Securities Intermediary to comply with the terms of the applicable Securities Account Control Agreement or (iii) the Administrative Agent determines in its sole discretion, exercised reasonably in good faith, that the financial condition of an Approved Securities Intermediary has materially deteriorated, the Borrower shall, and shall cause each Subsidiary of the Borrower to, notify all of its obligors that were making payments to such terminated Control Account to make all future payments to another Control Account (such notification to occur with the next billing cycle after the Administrative Agent has made such determination).

(e)     The Administrative Agent may establish one or more Cash Collateral Accounts with such depositaries and Securities Intermediaries as it in its sole discretion shall determine; *provided, however,* that no Cash Collateral Account shall be established with respect to the assets of any Excluded Foreign Subsidiary. The Borrower agrees that each such Cash Collateral Account shall be under the sole dominion and control of the Administrative Agent and that the Administrative Agent shall be the Entitlement Holder with respect to each such Cash Collateral Account that is a Securities Account and the only Person authorized to give Entitlement Orders with respect to each such Securities Account. Without limiting the foregoing, funds on deposit in any Cash Collateral Account may be invested (but the Administrative Agent shall be under no obligation to make any such investment) in Cash Equivalents at the direction of the Administrative Agent and, except during the continuance of an Event of Default, the Administrative Agent agrees with the Borrower to issue Entitlement Orders for such investments in Cash Equivalents as requested by the Borrower; *provided, however,* that the Administrative Agent shall not have any responsibility for, or bear any risk of loss of, any such investment or income thereon. Interest or profits, if any, on such investments shall accumulate in such account for the benefit of the Borrower and shall such interest profits shall be applied in accordance with the terms of this Agreement. None of the Borrower, any Subsidiary of the Borrower or any other Loan Party or Person claiming on behalf of or through the Borrower, any Subsidiary of the Borrower or any other Loan Party shall have any right to demand payment of any funds held in any Cash Collateral Account at any time prior to the termination of all outstanding Letters of Credit and the payment in full of all then outstanding and payable monetary Obligations. The Administrative Agent shall apply all funds on deposit in a Cash Collateral Account as provided in Section 2.8(d).

(f)     The provisions of this Section 7.13 shall not apply to any Excluded Foreign Subsidiary or Excluded Joint Venture to the extent the same is not otherwise required to become a Guarantor hereunder. The Borrower may maintain a Securities Account with Merrill Lynch which is not a Control Account for the sole purpose of depositing therein deferred compensation payments on behalf of its employees and officers in accordance with the Borrower's existing incentive plan for which accounts are maintained at Merrill Lynch (or any of its Affiliates) (the "*Merrill Lynch Account*"); *provided* that the aggregate amount from time to time on deposit therein shall not exceed an amount equal to (a) $500,000 minus all distributions or withdrawals made from the Merrill Lynch Account on or after the Closing Date plus (b) the amount, if any, earned on the amounts on deposit in the Merrill Lynch Account.

(g)     Each Loan Party agrees that, notwithstanding anything to the contrary herein or in any other Loan Document, the Administrative Agent may exercise any rights it has under any Deposit Account Control Agreement or Securities Account Control Agreement at any time and shall apply all such amounts in accordance with the terms of this Agreement.

### Section 7.14    *Real Property*

Subject to the effect of the Cases, the Borrower shall, and shall cause each of its Subsidiaries to, (i) comply with all of their respective obligations under all Leases now or hereafter held respectively by them except to the extent the failure to so comply could not reasonably be expect to have a Material Adverse Effect, (ii) not terminate, modify, amend, cancel, extend or otherwise change in any manner which could reasonably be expected to have a Material Adverse Effect any term, covenant or condition of any Lease, (iii) not assign or sublet any Lease if such assignment or sublet would have a Material Adverse Effect, (iv) provide the Administrative Agent with a copy of each notice of default under any Lease received by the Borrower or any Subsidiary of the Borrower promptly after receipt thereof in respect of any Lease which is material to the condition (financial or otherwise), business, performance, prospects, operations or properties of the Borrower or any of its Subsidiaries, (v) deliver to the Administrative Agent a copy of each notice of default sent by the Borrower or any Subsidiary of the Borrower under any such Lease simultaneously with its delivery of such notice under such Lease and (vi) notify the Administrative Agent promptly after the Borrower or any Subsidiary takes possession of, or becomes liable under, any new leased premises or Lease (whichever is earlier), which is material to the condition (financial or otherwise), business, performance, prospects, operations or properties of the Borrower or any of its Subsidiaries.

### Section 7.15    *Payment of Obligations.*

(a)        In the case of any Debtor, except in accordance with the Bankruptcy Code or by an applicable order of the Bankruptcy Court, pay, discharge or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, (i) all its post-petition material taxes and other material obligations of whatever nature that constitute administrative expenses under Section 503(b) of the Bankruptcy Code in the Cases, except, so long as no material property (other than money for such obligation and the interest or penalty accruing thereon (or property with a value not in excess of such amounts)) of any Loan Party is in danger of being lost or forfeited as a result thereof, no such obligation need be paid (x) if the amount or validity thereof is currently being contested in good faith by appropriate proceedings and any required reserves in conformity with GAAP with respect thereto have been provided on the books of the relevant Debtor or (y) to the extent the aggregate liability of the Debtors does not exceed $1,000,000 at any time and (ii) all material obligations arising from Contractual Obligations entered into after the Petition Date or from Contractual Obligations entered into prior to the Petition Date and assumed and which are permitted to be paid post-petition by order of the Bankruptcy Court that has been entered with the consent of the Administrative Agent.

(b)        In the case of any Non-Filer, pay, discharge or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all its material obligations of whatever nature, except (i) where the amount or validity thereof is currently being contested in good faith by appropriate proceedings and any required reserves in conformity with GAAP with respect thereto have been provided on the books of the relevant Non-Filer or (ii) obligations under the Related Documents.

### Section 7.16    *Post-Closing Items*

(a)        On or prior to the date that is 45 days following the Closing Date (or such later date as the Administrative Agent may approve in its reasonable discretion), transfer to and maintain with the Administrative Agent (or any of its Affiliates) each Concentration and Disbursement Account.

(b)     On or prior to the date that is 30 days following the Closing Date (or such later date as the Administrative Agent may approve in its reasonable discretion) deliver to the Administrative Agent:

(i)     for each Designated Real Property (x) a Mortgagee's Title Insurance Policy, which shall (A) be issued at ordinary rates, (B) insure that the Lien granted pursuant to the Mortgage insured thereby creates a valid first Lien on such Designated Real Property free and clear of all defects and encumbrances, except for Customary Permitted Liens, (C) name the Administrative Agent for the benefit of the Secured Parties as the insured thereunder, (D) be in the form of the ALTA Loan Policy – 2006 (or equivalent policies), (E) contain such endorsements and affirmative coverages as the Administrative Agent, and be in an amount, shall reasonably request, and (F) be issued by one or more national title insurance companies  and (y) a copy of all documents referred to, or listed as exceptions to title, in such title policy (or policies); and

(ii)     for each Designated Real Property, evidence that all premiums in respect of each Mortgagee's Title Insurance Policy, all recording fees and stamp, documentary, intangible or mortgage taxes, if any, in connection with the Mortgage have been paid or delivered to the title company to pay.

(c)     On or prior to the date that is 30 days following the Closing Date (or such later date as the Administrative Agent may approve in its reasonable discretion) use commercially reasonable efforts to deliver to the Administrative Agent evidence reasonably satisfactory to the Administrative Agent that each of the mortgages set forth on Schedule 7.16 (i) (it being understood and agreed, that each such mortgage currently does not secure, and in the future shall not secure, any obligations or Indebtedness thereby) has been terminated and released of record.

## ARTICLE VIII
## Negative Covenants

Each Loan Party agrees with the Lenders, the Issuers and the Administrative Agent to each of the following, as long as any Obligation or any Revolving Commitment remains outstanding:

### Section 8.1     *Indebtedness*

No Loan Party shall, nor shall it permit any of its Subsidiaries to, directly or indirectly create, incur, assume or otherwise become or remain directly or indirectly liable with respect to any Indebtedness except for the following:

(a)     the Obligations (other than in respect of Hedging Contracts not permitted to be incurred pursuant to *Section 8.16*) and Guaranty Obligations in respect thereof;

(b)     Indebtedness existing on the Petition Date and disclosed on *Schedule 8.1*;

(c)     Indebtedness arising from intercompany loans (i) from the Borrower to any Debtor, (ii) from any Debtor to the Borrower or any other Debtor or (iii) from any Non-Filer to any Debtor;

(d)     Indebtedness incurred in the ordinary course of business in connection with the financing of insurance premiums;

(e)     Indebtedness arising from the honoring by a bank or other financial institution of a check, draft or similar instrument inadvertently drawn against insufficient funds in the ordinary course of business;

(f)     Guaranty Obligations in respect of Indebtedness that is otherwise permitted to be incurred pursuant to this Section 8.1;

(g)     Renewals, extensions, refinancings and refundings of Indebtedness permitted by clause (b) above or this clause (g); *provided*, however, that any such renewal, extension, refinancing or refunding is in an aggregate principal amount not greater than the principal amount (plus (i) accrued interest in respect of such Indebtedness and (ii) the reasonable costs incurred by such Person in connection with such refinancing or refunding, including applicable premiums, transaction expenses, etc.) of, than the Indebtedness being renewed, extended, refinanced or refunded;

(h)     Indebtedness consisting of any obligation to make take or pay or similar payments regardless of nonperformance by any other party to an agreement incurred in the ordinary course of business;

(i)     Indebtedness in respect of workers' compensation claims, self insurance obligations, bid or performance bonds, surety appeal or similar bonds and completion guarantees provided by the Borrower and the Subsidiaries in the ordinary course of their business;

(j)     Capital Lease Obligations and purchase money Indebtedness incurred by the Borrower or a Subsidiary of the Borrower to finance the acquisition of fixed assets; provided, however, that the Capital Expenditure related thereto is otherwise permitted by Section 5.2 and that the aggregate outstanding principal amount of all such Capital Lease Obligations and purchase money Indebtedness shall not exceed $4,500,000 at any time; and

(k)     additional Indebtedness in an aggregate principal amount not to exceed $1,000,000.

### Section 8.2     Liens, Etc.

No Loan Party shall, nor shall it permit any of its Subsidiaries to, create or suffer to exist, any Lien upon or with respect to any of their respective properties or assets, whether now owned or hereafter acquired except for the following:

(a)     Liens created pursuant to the Loan Documents (including the Orders);

(b)     Liens existing on the Petition Date and disclosed on *Schedule 8.2, provided* that (x) no such Lien is spread to cover any additional property after the Petition Date other than pursuant to the Orders for purposes of providing "adequate protection" under the Bankruptcy Code and (y) the amount of Indebtedness secured thereby is not increased;

(c)     Customary Permitted Liens on the assets of the Borrower and the Borrower's Subsidiaries;

(d)     encumbrances arising by reason of zoning restrictions, easements, licenses, reservations, covenants, rights-of-way, utility easements, building restrictions and other similar encumbrances on the use of Real Property not materially detracting from the value of such Real Property or not materially interfering with the ordinary conduct of the business conducted and

proposed to be conducted at such real property and the other operations of the Borrower and its Subsidiaries taken as a whole;

(e)     purchase money Liens granted by the Borrower or any of its Subsidiaries (including the interest of a lesser under a Capital Lease and purchase money Liens to which any property is subject at the time, on or after the Closing Date, of the Borrower's or such Subsidiary's acquisition thereof) securing Indebtedness permitted under Section 8.1(j) and limited in each case to the property purchased with the proceeds of such purchase money Indebtedness or subject to such Capital Lease and any improvements, accessions or proceeds thereto or thereof;

(f)     any Lien securing the renewal, extension, refinancing or refunding of any Indebtedness secured by any Lien permitted by clause (b) or (e) above or this clause (f) without any change in the assets subject to such Lien and to the extent such renewal, extension, refinancing or refunding is permitted by Section 8.1(g);

(g)     Liens securing Inventory under construction arising from progress or partial payments by a customer of the Borrower or any Subsidiary relating to such Inventory;

(h)     Liens securing Indebtedness permitted under Section 8.1(d), *provided* that (i) such Liens are limited to securing only the unpaid premiums under the applicable insurance policy and (ii) such Liens only encumber the proceeds of the applicable insurance policy;

(i)     Liens in favor of Merrill Lynch (or any affiliate thereof which maintains the Merrill Lynch Account) solely in respect of the Merrill Lynch Account in an aggregate amount not to exceed the amount of funds on deposit in the Merrill Lynch Account;

(j)     Liens securing deductibles, self-insurance, co-payment, co-insurance, retentions or similar obligations to providers of property, casualty or liability insurance in the ordinary course of business;

(k)     any interest or title of a lessor or sublessor under any lease of Real Property permitted hereunder;

(l)     purported Liens evidenced by the filing of precautionary UCC financing statements relating solely to the operating leases of personal property entered into in the ordinary course of business;

(m)     licenses of patents, trademarks and other intellectual property rights granted by the Borrower or any of its Subsidiaries in the ordinary course of business and not interfering in any respect with the ordinary conduct of the business of Borrower or such Subsidiary;

(n)     Liens in respect of the Permitted Utility Deposit Accounts; and

(o)     Liens on assets securing other obligations if the aggregate amount of the obligations or liabilities secured thereby does not exceed $1,000,000 at any time outstanding.

### Section 8.3     *Investments*

No Loan Party shall, nor shall it permit any of its Subsidiaries to, directly or indirectly, make or maintain any Investment except for the following:

(a)     Investments existing on the Petition Date and disclosed on Schedule 8.3 and any extensions or renewals thereof, *provided however* that any such renewal or extension is in an aggregate principal amount not greater than the principal amount (and the reasonable costs and expenses incurred by such Person in connection with such extension or renewal) of the Investment being extended or renewed;

(b)     Investments (i) in cash and Cash Equivalents held in compliance with Section 7.13(a) and (ii) of amounts on deposit in the Merrill Lynch Account; *provided* that neither the Merrill Lynch Account or any Investment maintained therein may be a margin account or held or made on margin;

(c)     Investments in payment intangibles, chattel paper (each as defined in the UCC) and Accounts, notes receivable and similar items arising or acquired in the ordinary course of business of the Borrower and its Subsidiaries;

(d)     Investments received in settlement of amounts due to the Borrower or any Subsidiary of the Borrower effected in the ordinary course of business or in connection with the bankruptcy or reorganization of suppliers and customers or in settlement of delinquent obligations of, and other disputes with, customers and suppliers arising in the ordinary course of business;

(e)     Investments by (i) the Borrower in any Debtor or any Debtor in the Borrower or any other Debtor, (ii) any Non-Filer in any other Non-Filer or any Debtor and (iii) any Debtor in any Non-Filer or the Excluded Joint Venture in the ordinary course of business in an amount not to exceed $2.500.000;

(f)     loans or advances to employees, officers and directors of the Borrower or any Subsidiaries of the Borrower in the ordinary course of business other than any loans or advances that would be in violation of Section 402 of the Sarbanes-Oxley Act; *provided, however,* that the aggregate principal amount of all loans and advances permitted pursuant to this *clause (f)* shall not exceed $250,000 at any time;

(g)     deposits, prepayments and other credits to suppliers made in the ordinary course of business consistent with the past practices of Borrower and its Subsidiaries;

(h)     Investments in respect of Capital Expenditures permitted under Section 5.2; and

(i)     other Investments not exceeding in the aggregate $500,000 at any time outstanding.

### Section 8.4     Sale of Assets

No Loan Party shall, nor shall it permit any of its Subsidiaries to, sell, convey, transfer, lease or otherwise dispose of, any of their respective assets or any interest therein (including the sale or factoring at maturity or collection of any accounts) to any Person, or permit or suffer any other Person to acquire any interest in any of their respective assets or, except in the case of the Borrower, issue or sell any shares of their Stock or any Stock Equivalents (any such disposition being an "*Asset Sale*"), except for the following:

(a)     the sale or disposition of Cash Equivalents or Inventory, in each case in the ordinary course of business;

(b)     the sale or disposition of Equipment or Real Estate that has become obsolete or is replaced in the ordinary course of business or is no longer necessary in or useful to the business of the Borrower and its Subsidiaries in the ordinary course of business;

(c)     assignments and licenses of intellectual property of the Borrower and its Subsidiaries in the ordinary course of business;

(d)     any Asset Sale to the Borrower or any Debtor;

(e)     any Asset Sale of all or any part of the Excluded Joint Venture or the Excluded JV Equity;

(f)     sales or dispositions permitted under Section 8.7;

(g)     as long as no Default or Event of Default is continuing or would result therefrom, any other Asset Sale for Fair Market Value, payable in cash upon such sale; *provided, however,* that with respect to any such Asset Sale pursuant to this *clause (g)*, (i) the aggregate consideration received during any Fiscal Year for all such Asset Sales shall not exceed $500,000 and (ii) an amount equal to all Net Cash Proceeds of such Asset Sale are applied to the payment of the Obligations as set forth in, and to the extent required by, Section 2.8;

(h)     a true lease or sublease of Real Property that (i) does not constitute Indebtedness, (ii) does not constitute a Sale and Leaseback Transaction and (iii) is expressly permitted pursuant to the terms of this Agreement;

(i)     the sale or disposition of personal property (other than Inventory) of the Borrower and its Subsidiaries to the Excluded Joint Venture consummated in connection with managing the Excluded Joint Venture in the ordinary course of business and consistent with past practices, in an aggregate amount not to exceed $1,000,000;

(j)     transfers of condemned property as a result of the exercise of "eminent" domain or other similar policies to the respective Governmental Authority or agency that has condemned the same (whether by deed in lieu of condemnation or otherwise), and transfers of properties or assets that have been subject to a casualty to the respective insurer of such property as part of an insurance settlement; and

(k)     sales or dispositions disclosed on Schedule 8.4.

**Section 8.5     *Restricted Payments***

No Loan Party shall, and shall not permit any of its Subsidiaries to, directly or indirectly, declare, order, pay, make or set apart any sum for any Restricted Payment except for the following:

(a)     Restricted Payments by (i) any Subsidiary of the Borrower to the Borrower or any Debtor or (ii) any Non-Filer to any other Non-Filer; and

(b)     dividends and distributions declared and paid (i) on the common Stock of the Borrower and payable only in common Stock of the Borrower or (ii) on the common Stock of any Subsidiary and payable only in common Stock of such Subsidiary.

### Section 8.6    Prepayment and Cancellation of Indebtedness

(a)    No Loan Party shall, nor shall it permit any of its Subsidiaries to, cancel any claim or Indebtedness owed to any of them except (i) in the ordinary course of business consistent with past practice or in its reasonable credit judgment, (ii) in respect of intercompany Indebtedness among the Borrower and the Debtors and (iii) as required by the Bankruptcy Court.

(b)    No Loan Party shall, nor shall it permit any of its Subsidiaries to, prepay, redeem, purchase, defease or otherwise satisfy prior to the scheduled maturity thereof in any manner, or make any payment in violation of any subordination terms of, any Subordinated Indebtedness, except as required by the Bankruptcy Court.

### Section 8.7    Restriction on Fundamental Changes

No Loan Party shall, nor shall it permit any of its Subsidiaries to (a) merge with any Person, (b) consolidate with any Person, (c) acquire all or substantially all of the Stock or Stock Equivalents of any Person, (d) acquire all or substantially all of the assets of any Person or all or substantially all of the assets constituting the business of a division, branch or other unit operation of any Person, (e) enter into any joint venture or partnership with any Person or (f) acquire or create any Subsidiary unless, after giving effect to such creation or acquisition, such Subsidiary is a Wholly-Owned Subsidiary of the Borrower, the Borrower is in compliance with Section 7.12 and Section 7.14 and the Investment in such Subsidiary is permitted under Section 8.3(e). In addition, (x) any Guarantor may merge or consolidate with, or be liquidated into, the Borrower (so long as the Borrower is the surviving Person) or any Debtor, (y) the Borrower or any Debtor may acquire all or substantially all of the assets of any Guarantor or Subsidiary and (z) any Subsidiary of the Borrower may merge or consolidate with, or be liquidated into, the Borrower (so long as the Borrower is the surviving Person) or any Debtor (so long as such Debtor is the surviving Person and continues to be a Wholly-Owned Subsidiary of the Borrower). Notwithstanding the foregoing, the Borrower shall not, nor shall it permit any of its Subsidiaries to, form, acquire, create or enter into (1) any joint venture or partnership with any other Person (other than any partnership among the Borrower and any Debtor) or (2) any Subsidiary that is not a Domestic Subsidiary.

### Section 8.8    Change in Nature of Business

No Loan Party shall, and shall not permit any of its Subsidiaries to, make any material change in the nature or conduct of the business as carried on by such Loan Party and its Subsidiaries at the Petition Date, except as otherwise permitted by Section 8.4 or Section 8.7.

### Section 8.9    Transactions with Affiliates

No Loan Party shall, nor shall it permit any of its Subsidiaries to, except as otherwise expressly permitted herein, do any of the following: (a) make any Investment in an Affiliate of the Borrower that is not the Borrower or a Guarantor (other than permitted under Section 8.3), (b) transfer, sell, lease, assign or otherwise dispose of any asset to any Affiliate of the Borrower that is not a Guarantor (other than Asset Sales permitted under Section 8.4 or Restricted Payments permitted under Section 8.5), (c) merge into or consolidate with or purchase or acquire assets from any Affiliate of the Borrower that is not the Borrower or a Guarantor (other than permitted under Section 8.7) or (d) enter into any other transaction directly or indirectly with or for the benefit of any Affiliate of the Borrower that is not a Guarantor (including guaranties and assumptions of obligations of any such Affiliate), except for, (i) transactions in the ordinary course of business on a basis no less favorable to the Borrower or, as the case may be, such Subsidiary thereof as would be obtained in a comparable arm's length transaction with a Person not an Affiliate thereof, (ii) salaries and other director or employee compensation to officers or directors of the Borrower or any of its Subsidiaries commensurate with current compensation levels (or

reimbursement of reasonable expenses and advances made in the ordinary course of business), (iii) transactions among the Borrower and the Debtors and amongst the Debtors, (iv) transactions among any Non-Filer and any other Non-Filer, (v) transactions contemplated pursuant to the agreements listed on *Schedule 8.9* and (vi) transactions among the Borrower or a Subsidiary of the Borrower and an Affiliate of the Borrower that is not the Borrower or a Guarantor on a basis no less favorable to the Borrower or, as the case may be, such Subsidiary thereof, as would be obtained in a comparable arm's length transaction with a Person not an Affiliate thereof, if otherwise permitted under this Agreement or the other Loan Documents.

**Section 8.10    Limitations on Restrictions on Subsidiary Distributions; No New Negative Pledge**

No Loan Party shall, and shall not permit any of its Subsidiaries to, (a) agree to enter into or suffer to exist or become effective any consensual encumbrance or restriction of any kind on the ability of such Subsidiary to (i) pay dividends or make any other distribution, (ii) transfer funds or assets to the Borrower or any Subsidiary of the Borrower or (iii) make loans or advances to or other Investments in, or pay any Indebtedness owed to, the Borrower or any other Subsidiary of the Borrower or (b) enter into or suffer to exist or become effective any agreement prohibiting or limiting the ability of the Borrower or any Subsidiary of the Borrower to create, incur, assume or suffer to exist any Lien upon any of its property, assets or revenues, whether now owned or hereafter acquired, to secure the Obligations, including any agreement requiring any other Indebtedness or Contractual Obligation to be equally and ratably secured with the Obligations except:

(1)    pursuant to the Loan Documents (including the Orders);

(2)    pursuant to the Related Documents, to the extent Indebtedness is outstanding under any such Related Document;

(3)    existing on the Petition Date and disclosed on Schedule 8.10;

(4)    in the case of *clause (a)* above, (a) customary restrictions in sale agreements limiting the transfer of such Property pending the closing of such sale, (b) customary restrictions pertaining to subletting or assignment of leases, licenses or other contracts, (c) restrictions contained in agreements evidencing Indebtedness permitted by Section 8.1(b), Section 8.1(g), Section 8.1(j) and Section 8.1(k) (in which case, any prohibition or limitation shall only be effective against the assets and proceeds of such borrower and its subsidiaries secured or financed against or thereby); and

(5)    in the case of *clause (b)* above, restrictions contained in agreements evidencing Indebtedness permitted by Section 8.1(b), Section 8.1(g), Section 8.1(j) and Section 8.1(k) (in which case, any prohibition or limitation shall only be effective against the assets and proceeds of such borrower and its subsidiaries secured or financed against or thereby).

**Section 8.11    Modification of Constituent Documents**

Except in connection with the Cases or as otherwise permitted by Section 8.7, no Loan Party shall, nor shall it permit any of its Subsidiaries to, change its capital structure (including in the terms of its outstanding Stock) or otherwise amend its Constituent Documents, except for changes and amendments that do not materially and adversely affect the rights and privileges of the Borrower or any Subsidiary of the Borrower and do not materially and adversely affect the interests of the Administrative Agent, the Lenders and the Issuers under the Loan Documents or in the Collateral.

### Section 8.12 Modification of Debt Agreements

No Loan Party shall, nor shall it permit any of its Subsidiaries to, change or amend the terms of any Subordinated Debt (or any indenture or agreement or other material document entered into in connection therewith) if the effect of such amendment is to (a) increase the interest rate on such Subordinated Debt, (b) change the dates upon which payments of principal or interest are due on such Subordinated Debt other than to extend such dates, (c) change any default or event of default other than to delete or make less restrictive any default provision therein, or add any covenant with respect to such Subordinated Debt, (d) change the subordination provisions of such Subordinated Debt in a manner materially adverse to the Lenders in their sole discretion, (e) change the redemption or prepayment provisions of such Subordinated Debt other than to extend the dates therefor or to reduce the premiums payable in connection therewith or (f) change or amend any other term if such change or amendment would materially increase the obligations of the obligor or confer additional material rights to the holder of such Subordinated Debt in a manner adverse to the Borrower, any Subsidiary of the Borrower, the Administrative Agent or any Lender.

### Section 8.13 Accounting Changes; Fiscal Year

No Loan Party shall, nor shall it permit any of its Subsidiaries to, change its (a) accounting treatment and reporting practices or tax reporting treatment, except as required by GAAP or any Requirement of Law and disclosed to the Lenders and the Administrative Agent or (b) Fiscal Year.

### Section 8.14 Margin Regulations

No Loan Party shall, nor shall it permit any of its Subsidiaries to, use all or any portion of the proceeds of any credit extended hereunder to purchase or carry margin stock (within the meaning of Regulation U of the Federal Reserve Board) in contravention of Regulation U of the Federal Reserve Board.

### Section 8.15 Operating Leases; Sale/Leasebacks

(a)     No Loan Party shall, nor shall it permit any of its Subsidiaries to, become liable after the Closing Date as lessee or guarantor or other surety with respect to any operating lease entered into outside the ordinary course of business of such Person, unless the aggregate amount of all rents paid or accrued under all such operating leases shall not exceed $100,000 in the aggregate.

(b)     The Borrower shall not, nor shall it permit any of its Subsidiaries to, enter into any Sale and Leaseback Transaction.

### Section 8.16 No Speculative Transactions

No Loan Party shall, nor shall it permit any of its Subsidiaries to, engage in any speculative transaction or in any transaction involving Hedging Contracts except for the sole purpose of hedging in the normal course of business and consistent with industry practices.

### Section 8.17 Compliance with ERISA

No Loan Party shall, nor shall it permit any of its Subsidiaries or any ERISA Affiliate to, cause or permit to occur (a) an event that could result in the imposition of a Lien under Section 412 of the Code or Section 302 or 4068 of ERISA, (b) an Unfunded Pension Liability or (c) one or more ERISA

Events that, in each case in *clauses (a)* through *(c)* above, such event or condition, together with all such other events or conditions that could reasonably be expected to result in have a Material Adverse Effect.

### Section 8.18 Chapter 11 Claims.

No Loan Party shall, nor shall it permit any of its Subsidiaries to incur, create, assume, suffer to exist or permit any other Superpriority Claim or Lien on any Collateral which is pari passu with or senior to the claims of the Administrative Agent and the Lenders granted pursuant to this Agreement, the Security Documents and/or the Interim Order (or the Final Order, as applicable), except for the Carve Out and Liens permitted pursuant to Section 8.3 which, with respect to the Debtors, are in accordance with the Interim Order (or Final Order, as applicable), are senior to such Liens.

### Section 8.19 Available Credit

No Loan Party shall permit the Available Credit to be less than $3,000,000 at any time.

## ARTICLE IX
## Events of Default

### Section 9.1 Events of Default

Each of the following events shall be an Event of Default:

(a) (i) the Borrower shall fail to pay any principal of any Loan or any Reimbursement Obligation when the same becomes due and payable or (ii) the Borrower shall fail to pay any interest on any Loan, any fee under any of the Loan Documents or any other Obligation (other than (x) one referred to in clause (a)(i) and (y) Obligations arising under Cash Management Documents and Hedging Contracts) and such non-payment continues for a period of 3 Business Days after the due date therefor; or

(b) any representation or warranty made or deemed made by any Loan Party in any Loan Document or by any Loan Party (or any of its officers) in connection with any Loan Document shall prove to have been incorrect in any material respect when made or deemed made; or

(c) any Loan Party shall fail to perform or observe (i) any term, covenant or agreement contained in Article V, Section 6.1, Section 6.2, Section 7.1, Section 7.6, Section 7.9, Section 7.12, Section 7.15 or Article VIII, (ii) any term, covenant or agreement contained in Section 6.11(a) through Section 6.11(e) within 2 days after the earlier of (A) the date on which a Responsible Officer of the Borrower becomes aware of such failure and (B) the date on which written notice thereof shall have been given to the Borrower by the Administrative Agent or any Lender, (iii) any term, covenant or agreement contained in Section 6.11(f) through Section 6.11(h) within 5 Business Days after the earlier of (A) the date on which a Responsible Officer of the Borrower becomes aware of such failure and (B) the date on which written notice thereof shall have been given to the Borrower by the Administrative Agent or any Lender or (iv) any other term, covenant or agreement contained in this Agreement or in any other Loan Document if such failure under this *clause (iv)* shall remain unremedied for 25 days after the earlier of (A) the date on which a Responsible Officer of the Borrower becomes aware of such failure and (B) the date on which written notice thereof shall have been given to the Borrower by the Administrative Agent or any Lender; or

(d)    (i) the Borrower or any of its Subsidiaries shall fail to make any payment on any Indebtedness of the Borrower or any such Subsidiary (other than the Obligations) or any Guaranty Obligation in respect of Indebtedness of any other Person, and, in each case, such Indebtedness is incurred after the Petition Date and such failure relates to Indebtedness having a principal amount of $1,000,000 or more, when the same becomes due and payable (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise), (ii) any other event shall occur or condition shall exist under any agreement or instrument relating to any such Indebtedness, if the effect of such event or condition is to accelerate, or to permit the acceleration of, the maturity of such Indebtedness (after giving effect to any applicable grace period or amendment) or (iii) any such Indebtedness shall become or be declared to be due and payable, or be required to be prepaid or repurchased (other than by a regularly scheduled required prepayment), prior to the stated maturity thereof; or

(e)    any creditor of a Non-Filer shall exercise any remedy against any Non-Filer, including, without limitation, the acceleration of debt (other than any automatic acceleration of the Non-Filers' debt as a result of the Cases), the exercise of any guaranty or the foreclosure on collateral unless each such Non-Filer seeks protection under any Requirement of Law relating to bankruptcy, insolvency or reorganization or relief of debtors, within 14 days thereof on terms reasonably satisfactory to the Administrative Agent; or

(f)    except as specifically contemplated by clause (e) above, (i) any Non-Filer shall generally not pay its debts as such debts become due, shall admit in writing its inability to pay its debts generally or shall make a general assignment for the benefit of creditors, (ii) any proceeding shall be instituted by or against any Non-Filer seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief or composition of it or its debts, under any Requirement of Law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a custodian, receiver, trustee or other similar official for it or for any substantial part of its property; *provided, however,* that, in the case of any such proceedings instituted against any Non-Filer (but not instituted by such Non-Filer), either such proceedings shall remain undismissed or unstayed for a period of 30 days or more or any action sought in such proceedings shall occur or (iii) any Non-Filer shall take any corporate action to authorize any action set forth in *clauses (i)* and *(ii)* above; or

(g)    any of the Cases shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code or a trustee under Chapter 11 of the Bankruptcy Code shall be appointed in any of the Cases with expanded powers to operate or manage the financial affairs, business or reorganization of the Debtors; or

(h)    (i) an order of the Bankruptcy Court shall be entered granting another Superpriority Claim or Lien (other than the Carve Out) pari passu with or senior to that granted to the Lenders and the Administrative Agent pursuant to this Agreement and the Interim Order (or the Final Order, as applicable) without the consent of the Administrative Agent and the Requisite Lenders, (ii) an order of the Bankruptcy Court shall be entered reversing, staying for a period in excess of five days, vacating or otherwise amending, supplementing or modifying the Interim Order (or the Final Order, as applicable) in a manner adverse to the Lenders without the written consent of the Administrative Agent and the Requisite Lenders; (iii) an order of the Bankruptcy Court shall be entered under Section 1106(b) of the Bankruptcy Code in any of the Cases appointing an examiner having enlarged powers relating to the operation of the business of the Loan Parties (i.e., powers beyond those set forth under Sections 1106(a)(3) and (4) of the Bankruptcy Code) and such order shall not be reversed or vacated within 30 days after the entry thereof; (iv) the Final Order Entry

Date shall not have occurred by the date that is 45 days following the date of entry of the Interim Order (or such later date as the Administrative Agent may agree in its sole discretion); or (v) a plan shall be confirmed in any of the Cases of the Debtors that does not provide for termination of the Commitments and payment in full in cash of the Obligations on the Effective Date or any order shall be entered which dismisses any of the Cases of the Debtors and which order does not provide for termination of the Commitments and payment in full in cash of the Obligations or any of the Debtors shall seek support, or fail to contest in good faith the filing or confirmation of such a plan or the entry of such an order; or

(i)     any Loan Party shall make any payments relating to Indebtedness incurred and outstanding prior to the Petition Date other than (i) in the case of a Debtor, as permitted under the Interim Order (or the Final Order, as applicable), (ii) in the case of a Debtor, in respect of and in accordance with, and to the extent authorized by, a "first day" or other order reasonably satisfactory to the Administrative Agent, (iii) in the case of a Non-Filer, any Indebtedness (other than Indebtedness under the Related Documents) and (iv) as otherwise permitted under this Agreement, including pursuant to the Orders or any other order of the Bankruptcy Court that is reasonably acceptable to the Administrative Agent and the Requisite Lenders; or

(j)     the entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any property of any Loan Party which either (i) has a value in excess of $1,000,000 in the aggregate or (ii) could reasonably expected to result in a Material Adverse Effect; or

(k)     the filing of any pleading by any Loan Party seeking, or otherwise consenting to, any of the matters set forth in paragraphs (g), (h), (i) or (j) above in this Section; or

(l)     the Borrower or any Subsidiary thereof shall fail to comply with the Interim Order or the Final Order; or

(m)     subject to any extensions agreed to by the Administrative Agent and the Requisite Lenders in their reasonable discretion, the Debtors shall have failed to comply with any of the following: (i) file with the Bankruptcy Court a plan of reorganization and related disclosure statement for each of the Cases in form and substance reasonably satisfactory to the Administrative Agent, within 90 days after the Petition Date; (ii) obtain an order of the Bankruptcy Court, in form and substance reasonably satisfactory to the Administrative Agent, approving such disclosure statement within 120 days after the Petition Date; (iii) obtain an order of the Bankruptcy Court, in form and substance reasonably satisfactory to the Administrative Agent, confirming such plan of reorganization within 165 days after the Petition Date; and (iv) consummate such plan of reorganization on or before the date that is 180 days after the Petition Date; or

(n)     one or more final judgments or decrees required to be satisfied as an administrative expense claim shall be entered after the Petition Date against any Loan Party involving in the aggregate a liability (not paid or fully covered by insurance as to which the relevant insurance company has not denied coverage) of $1,000,000 or more, and all such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within 30 days from the entry thereof; or

(o)     (i) an ERISA Event shall occur, (ii) an Unfunded Pension Liability shall exist or (iii) the Borrower, any Subsidiary or any ERISA Affiliate shall be assessed Withdrawal Liabilities; and in each case in *clauses (i)* through *(iii)* above, the amount of all liabilities and deficiencies resulting therefrom, together with all such other liabilities and/or deficiencies, whether or not assessed, exceeds $5,000,000 individually or in the aggregate; or

(p)     there shall be rendered against the Loan Parties or any other Subsidiaries a nonmonetary judgment with respect to a post-Petition Date event which causes or could reasonably be expected to have a Material Adverse Effect; or

(q)     any proceeding shall be commenced by any Loan Party seeking, or otherwise consenting to, (i) the invalidation, subordination or other challenging of the Superpriority Claims and Liens granted to secure the Obligations or (ii) any relief under Section 506(c) of the Bankruptcy Code with respect to any Collateral; or

(r)     any provision of any Loan Document (including the Orders) after delivery thereof shall for any reason fail or cease to be valid and binding on, or enforceable against (other than in accordance with its terms), any Loan Party party thereto, or any Loan Party shall so state in writing; or

(s)     any Collateral Document (including the Orders) shall for any reason fail or cease to create a valid and enforceable Lien on any Collateral purported to be covered thereby or, except as permitted by the Loan Documents, such Lien shall fail or cease to be a perfected and first priority Lien, subject to Liens permitted by Section 8.2, or any Loan Party shall so state in writing; or

(t)     the guarantees contained in the Orders or in this Agreement shall cease, for any reason, to be in full force and effect or any Loan Party shall so assert in writing; or

(u)     there shall occur any Change of Control; or

(v)     one or more of the Borrower and the Subsidiaries of the Borrower shall have entered into one or more consent or settlement decrees or agreements or similar arrangements with a Governmental Authority or one or more judgments, orders, decrees or similar actions shall have been entered against one or more of the Borrower and the Subsidiaries of the Borrower based on or arising from the violation of or pursuant to any Environmental Law, or the generation, storage, transportation, treatment, disposal or Release of any Contaminant and, in connection with all the foregoing, the Borrower or any Subsidiary of the Borrower is likely to incur Environmental Liabilities and Costs exceeding $1,000,000 individually or in the aggregate to the extent not fully covered by insurance (so long as the applicable insurer has not denied or disputed coverage thereof) that were not reflected in the Budgets or the Financial Statements delivered pursuant to Section 4.4 prior to the Closing Date; or

(w)     Section 3 of the Notes Forbearance Agreement shall for any reason fail or cease to be valid and binding on, or enforceable against, any party thereto, or any party thereto shall so state in writing.

### Section 9.2     Remedies

During the continuance of any Event of Default, the Administrative Agent (a) may and, at the request of the Majority Facility Lenders for the Revolving Facility, shall, by notice to the Borrower declare that all or any portion of the Revolving Commitments be terminated, whereupon the obligation of each Revolving Lender to make any Revolving Loan and each Issuer to Issue any Letter of Credit shall immediately terminate, (b) may and, at the request of the Majority Facility Lenders for the Term Facility, shall, by notice to the Borrower declare that all or any portion of the Term Commitments be terminated, whereupon the obligation of each Term Lender to make any Term Loan shall immediately terminate, (c) may, and, at the request of the Majority Facility Lenders for the Revolving Facility, shall, by notice to the Borrower, declare the Revolving Loans, all accrued but unpaid interest thereon to be forthwith due and

payable, whereupon the Revolving Loans, all such interest and all such amounts shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower to the extent permitted by applicable law, (d) may, and, at the request of the Majority Facility Lenders for the Term Facility, shall, by notice to the Borrower, declare the Term Loans, all accrued but unpaid interest thereon to be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower to the extent permitted by applicable law and (e) may, and, at the request of the Requisite Lenders, shall, by notice to the Borrower, declare all other Obligations payable under this Agreement to be forthwith due and payable, whereupon such Obligations shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower to the extent permitted by applicable law, *provided, however,* that upon the occurrence of the Events of Default specified in Section 9.1(f), (x) the Commitments of each Lender to make Loans and the commitments of each Revolving Lender and Issuer to Issue or participate in Letters of Credit shall each automatically be terminated and (y) the Loans, all such interest and all such amounts and Obligations shall automatically become and be due and payable, without presentment, demand, protest or any notice of any kind, all of which are hereby expressly waived by the Borrower. In addition to the remedies set forth above, subject to the terms of the Orders, the Administrative Agent may and, at the request of the Majority Facility Lenders for either the Revolving Facility or the Term Facility, shall exercise any remedies provided for by the Collateral Documents in accordance with the terms thereof or any other remedies provided by applicable law, *provided* that with respect to the enforcement of Liens or other remedies with respect to the Collateral, the Administrative Agent shall provide the Borrower (with a copy to counsel for the Official Creditors' Committee in the Cases, and to the United States Trustee) with five (5) Business Days' written notice prior to taking the action contemplated thereby and *provided further*, that upon receipt of notice referred to in the immediately preceding clause with respect to any Deposit Accounts constituting Collateral, the Borrower may continue to make ordinary course disbursements from such Deposit Accounts but may not withdraw or disburse any other amounts from such Deposit Accounts.

### Section 9.3      *Actions in Respect of Letters of Credit*

At any time (i) upon the Revolving Termination Date or (ii) after the Revolving Termination Date when the aggregate funds on deposit in Cash Collateral Accounts shall be less than 105% of the Letter of Credit Obligations, the Borrower shall pay to the Administrative Agent in immediately available funds at the Administrative Agent's office referred to in Section 13.7, for deposit in a Cash Collateral Account, the amount required to that, after such payment, the aggregate funds on deposit in the Cash Collateral Accounts equals or exceeds 105% of the sum of all outstanding Letter of Credit Obligations. The Administrative Agent may, from time to time after funds are deposited in any Cash Collateral Account, apply funds then held in such Cash Collateral Account to the payment of any amounts, in accordance with Section 2.8(d) and Section 2.12(g), as shall have become or shall become due and payable by the Borrower. The Administrative Agent shall promptly give written notice of any such application; *provided, however,* that the failure to give such written notice shall not invalidate any such application.

## ARTICLE X
## The Administrative Agent

(a)      Each of the Lenders and the Issuer hereby irrevocably appoints the Administrative Agent as its agent and authorizes the Administrative Agent to take such actions on its behalf, including execution of the other Loan Documents, and to exercise such powers as are delegated to the Administrative Agent by the terms of the Loan Documents, together with such actions and powers as are reasonably incidental thereto.

(b)     The bank serving as the Administrative Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not the Administrative Agent, and such bank and its Related Parties may accept deposits from, lend money to and generally engage in any kind of business with the Loan Parties or any Subsidiary of a Loan Party or other Affiliate thereof as if it were not the Administrative Agent hereunder.

(c)     The Administrative Agent shall not have any duties or obligations except those expressly set forth in the Loan Documents. Without limiting the generality of the foregoing, (a) the Administrative Agent shall not be subject to any fiduciary or other implied duties, regardless of whether a Default has occurred and is continuing, (b) the Administrative Agent shall not have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated by the Loan Documents that the Administrative Agent is required to exercise in writing as directed by the Requisite Lenders (or such other number or percentage of the Lenders as shall be necessary under the terms of this Agreement), and (c) except as expressly set forth in the Loan Documents, the Administrative Agent shall not have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to any Loan Party or any of its Subsidiaries that is communicated to or obtained by the bank serving as Administrative Agent or any of its Related Parties in any capacity. The Administrative Agent shall not be liable for any action taken or not taken by it with the consent or at the request of the Requisite Lenders (or such other number or percentage of the Lenders as shall be necessary under the terms of this Agreement) or in the absence of its own (or its Affiliates', agents', officers', directors' or advisors') gross negligence or wilful misconduct. The Administrative Agent shall be deemed not to have knowledge of any Default unless and until written notice thereof is given to the Administrative Agent by the Borrower or a Lender, and the Administrative Agent shall not be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with any Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or in connection with any Loan Document, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth in any Loan Document, (iv) the validity, enforceability, effectiveness or genuineness of any Loan Document or any other agreement, instrument or document, (v) the creation, perfection or priority of Liens on the Collateral or the existence of the Collateral or (vi) the satisfaction of any condition set forth in Article III or elsewhere in any Loan Document, other than to confirm receipt of items expressly required to be delivered to the Administrative Agent.

(d)     The Administrative Agent shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing reasonably believed by it in good faith to be genuine and to have been signed or sent by the proper Person. The Administrative Agent also may rely upon any statement made to it orally or by telephone and reasonably believed by it in good faith to be made by the proper Person, and shall not incur any liability for relying thereon. The Administrative Agent may consult with legal counsel (who may be counsel for the Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

(e)     The Administrative Agent may perform any and all its duties and exercise its rights and powers by or through any one or more sub-agents appointed by the Administrative Agent. The Administrative Agent and any such sub-agent may perform any and all its duties and exercise its rights and powers through their respective Related Parties. The exculpatory provisions of the preceding paragraphs shall apply to any such sub-agent and to the Related Parties of the Administrative Agent and any such sub-agent, and shall apply to their respective activities in

connection with the syndication of the credit facilities provided for herein as well as activities as Administrative Agent.

(f)     Subject to the appointment and acceptance of a successor Administrative Agent as provided in this paragraph, the Administrative Agent may resign at any time by notifying the Lenders, the Issuer and the Borrower. Upon any such resignation, the Requisite Lenders shall have the right, with the consent (not to be unreasonably withheld or delayed) of the Borrower (*provided* that such consent shall not be required if a Default or Event of Default has occurred and is continuing) to appoint a successor. If no successor shall have been so appointed by the Requisite Lenders and shall have accepted such appointment within 30 days after the retiring Administrative Agent gives notice of its resignation, then the retiring Administrative Agent may, on behalf of the Lenders and the Issuer, appoint a successor Administrative Agent which shall be a commercial bank or an Affiliate of any such commercial bank. Upon the acceptance of its appointment as Administrative Agent hereunder by a successor, such successor shall succeed to and become vested with all the rights, powers, privileges and duties of the retiring Administrative Agent, and the retiring Administrative Agent shall be discharged from its duties and obligations hereunder. The fees payable by the Borrower to a successor Administrative Agent shall be the same as those payable to its predecessor unless otherwise agreed between the Borrower and such successor. After the Administrative Agent's resignation hereunder, the provisions of this Article X, Section 2.16(c) and Section 13.2 shall continue in effect for the benefit of such retiring Administrative Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while it was acting as Administrative Agent.

(g)     Each Lender acknowledges that it has, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement. Each Lender also acknowledges that it will, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement, any other Loan Document or related agreement or any document furnished hereunder or thereunder.

(h)     Each Lender hereby agrees that (i) it has requested a copy of each Report prepared by or on behalf of the Administrative Agent, (ii) the Administrative Agent (A) makes no representation or warranty, express or implied, as to the completeness or accuracy of any Report or any of the information contained therein or any inaccuracy or omission contained in or relating to a Report and (B) shall not be liable for any information contained in any Report, (iii) the Reports are not comprehensive audits or examinations, and that any Person performing any field examination will inspect only specific information regarding the Loan Parties and will rely significantly upon the Loan Parties' books and records, as well as on representations of the Loan Parties' personnel and that the Administrative Agent undertakes no obligation to update, correct or supplement the Reports, (iv) it will keep all Reports confidential and strictly for its internal use, not share the Report with any other Person except as otherwise permitted pursuant to this Agreement and (v) without limiting the generality of any other indemnification provision contained in this Agreement, it will pay and protect, and indemnify, defend, and hold the Administrative Agent and any such other Person preparing a Report harmless from and against, the claims, actions, proceedings, damages, costs, expenses, and other amounts (including reasonable attorney fees) incurred by as the direct or indirect result of any third parties who might obtain all or part of any Report through the indemnifying Lender.

**ARTICLE XI**

**Guarantee**

### Section 11.1    Guarantee

(a)    Each of the Guarantors hereby, jointly and severally, unconditionally and irrevocably, guarantees to the Administrative Agent, for the ratable benefit of the Lenders and their respective successors, indorsees, transferees and assigns permitted hereunder, the prompt and complete payment and performance by the Borrower when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations.

(b)    Anything herein or in any other Loan Document to the contrary notwithstanding, the maximum liability of each Guarantor under this Section 11.1 and under the other Loan Documents shall in no event exceed the amount which is permitted under applicable federal and state laws relating to the insolvency of debtors.

(c)    Each Guarantor agrees to the extent permitted by applicable law that the Obligations may at any time and from time to time exceed the amount of the liability of such Guarantor hereunder without impairing the guarantee contained in this Article XI or affecting the rights and remedies of the Administrative Agent or any Lender hereunder.

(d)    The guarantee contained in this Article XI shall remain in full force and effect until all the Obligations and the obligations of each Guarantor under the guarantee contained in this Article XI shall have been satisfied by payment in full (other than contingent obligations not then due and owing) and the Commitments shall be terminated.

(e)    No payment made by the Borrower, any of the Guarantors, any other guarantor or any other Person or received or collected by the Administrative Agent or any Lender from the Borrower, any of the Guarantors, any other guarantor or any other Person by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of or in payment of the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of any Guarantor hereunder which shall, notwithstanding any such payment (other than any payment made by such Guarantor in respect of the Obligations or any payment received or collected from such Guarantor in respect of the Obligations), remain liable for the Obligations up to the maximum liability of such Guarantor hereunder until the Obligations (other than contingent obligations not then due and owing) are paid in full and the Commitments are terminated.

### Section 11.2    Right of Contribution

Each Guarantor hereby agrees that to the extent that a Guarantor shall have paid more than its proportionate share of any payment made hereunder, such Guarantor shall be entitled to seek and receive contribution from and against any other Guarantor hereunder which has not paid its proportionate share of such payment. Each Guarantor's right of contribution shall be subject to the terms and conditions of Section 11.3. The provisions of this Section 11.2 shall in no respect limit the obligations and liabilities of any Guarantor to the Administrative Agent and the Lenders, and each Guarantor shall remain liable to the Administrative Agent and the Lenders for the full amount guaranteed by such Guarantor hereunder.

### Section 11.3    No Subrogation.

Notwithstanding any payment made by any Guarantor hereunder or any set-off or application of funds of any Guarantor by the Administrative Agent or any Lender, no Guarantor shall be

entitled to be subrogated to any of the rights of the Administrative Agent or any Lender against the Borrower or any other Guarantor or any collateral security or guarantee or right of offset held by the Administrative Agent or any Lender for the payment of the Obligations, nor shall any Guarantor seek or be entitled to seek any contribution or reimbursement from the Borrower or any other Guarantor in respect of payments made by such Guarantor hereunder, until all amounts owing to the Administrative Agent and the Lenders by the Borrower on account of the Obligations (other than contingent obligations not then due and owing) are paid in full and the Commitments are terminated. If any amount shall be paid to any Guarantor on account of such subrogation rights at any time when all of the Obligations (other than contingent obligations not then due and owing) shall not have been paid in full, such amount shall be held by such Guarantor for the benefit of the Administrative Agent and the Lenders, segregated from other funds of such Guarantor, and shall, promptly upon receipt by such Guarantor, be turned over to the Administrative Agent in the exact form received by such Guarantor (duly indorsed by such Guarantor to the Administrative Agent, if required), to be applied against the Obligations, whether matured or unmatured, in accordance with the terms of this Agreement.

### Section 11.4     Amendments, etc. with Respect to the Obligations.

To the extent permitted by applicable law, each Guarantor shall remain obligated hereunder notwithstanding that, without any reservation of rights against any Guarantor and without notice to or further assent by any Guarantor, any demand for payment of any of the Obligations made by the Administrative Agent or any Lender may be rescinded by the Administrative Agent or such Lender and any of the Obligations continued, and the Obligations, or the liability of any other Person upon or for any part thereof, or any collateral security or guarantee therefor or right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by the Administrative Agent or any Lender, and this Agreement and the other Loan Documents and any other documents executed and delivered in connection herewith or therewith may be amended, modified, supplemented or terminated, in whole or in part, as the Administrative Agent (or the Requisite Lenders or all Lenders, as the case may be) may deem advisable from time to time, and any collateral security, guarantee or right of offset at any time held by the Administrative Agent or any Lender for the payment of the Obligations may be sold, exchanged, waived, surrendered or released. To the extent permitted by applicable law, neither the Administrative Agent nor any Lender shall have any obligation to protect, secure, perfect or insure any Lien at any time held by it as security for the Obligations or for the guarantee contained in this Article XI or any property subject thereto.

### Section 11.5     Guarantee Absolute and Unconditional.

To the extent permitted by applicable law, each Guarantor waives any and all notice of the creation, renewal, extension or accrual of any of the Obligations and notice of or proof of reliance by the Administrative Agent or any Lender upon the guarantee contained in this Article XI or acceptance of the guarantee contained in this Article XI; the Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred, or renewed, extended, amended or waived, in reliance upon the guarantee contained in this Article XI; and all dealings between the Borrower and any of the Guarantors, on the one hand, and the Administrative Agent and the Lenders, on the other hand, likewise shall be conclusively presumed to have been had or consummated in reliance upon the guarantee contained in this Article XI. To the extent permitted by applicable law, each Guarantor waives diligence, presentment, protest, demand for payment and notice of default or nonpayment to or upon the Borrower or any of the Guarantors with respect to the Obligations. Each Guarantor understands and agrees that the guarantee contained in this Article XI shall be construed as a continuing, absolute and unconditional guarantee of payment without regard to (a) the validity or enforceability of this Agreement or any other Loan Document, any of the Obligations or any other collateral security therefor or guarantee or right of

offset with respect thereto at any time or from time to time held by the Administrative Agent or any Lender, (b) any defense, set-off or counterclaim (other than a defense of payment or performance) which may at any time be available to or be asserted by the Borrower or any other Person against the Administrative Agent or any Lender, or (c) any other circumstance (other than payment or performance) whatsoever (with or without notice to or knowledge of such Borrower or such Guarantor) which constitutes, or might be construed to constitute, an equitable or legal discharge of such Borrower for the Obligations, or of such Guarantor under the guarantee contained in this Article XI, in bankruptcy or in any other instance. When making any demand hereunder or otherwise pursuing its rights and remedies hereunder against any Guarantor, the Administrative Agent or any Lender may, but shall be under no obligation to, make a similar demand on or otherwise pursue such rights and remedies as it may have against the Borrower, any other Guarantor, or any other Person or against any collateral security or guarantee for the Obligations or any right of offset with respect thereto, and any failure by the Administrative Agent or any Lender to make any such demand, to pursue such other rights or remedies or to collect any payments from the Borrower, any other Guarantor, or any other Person or to realize upon any such collateral security or guarantee or to exercise any such right of offset, or any release of the Borrower, any other Guarantor, or any other Person or any such collateral security, guarantee or right of offset, shall not relieve any Guarantor of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the Administrative Agent or any Lender against any Guarantor. For the purposes hereof "demand" shall include the commencement and continuance of legal proceedings relating to this guarantee or the Obligations.

### Section 11.6    *Reinstatement*

The guarantee contained in this Article XI shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the Obligations is rescinded or must otherwise be restored or returned by the Administrative Agent or any Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of any Loan Party, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, any Loan Party or any substantial part of its property, or otherwise, all as though such payments had not been made.

### Section 11.7    *Payments.*

Each Guarantor hereby guarantees that payments hereunder will be paid to the Administrative Agent without set-off or counterclaim.

## ARTICLE XII
## Remedies; Application of Proceeds

### Section 12.1    *Remedies; Obtaining the Collateral Upon Default.*

Upon the occurrence and during the continuance of an Event of Default (and after notice of such Event of Default, if required under the Orders), to the extent any such action is permitted by the Interim Order (or the Final Order, as applicable) or Article XI, the Administrative Agent, in addition to any rights now or hereafter existing under applicable law, and without application to or order of the Bankruptcy Court, shall have all rights as a secured creditor under the Uniform Commercial Code in all relevant jurisdictions and may, and, at the request of the Majority Facility Lenders for either the Revolving Facility or the Term Facility, shall:

(a)    personally, or by agents or attorneys, immediately retake possession of the Collateral or any part thereof, from the Borrower, any Guarantor, or any other Person who then has

possession of any part thereof with or without notice or process of law (but subject to any Requirements of Law), and for that purpose may enter upon the Borrower's, or any Guarantor's premises where any of the Collateral is located and remove the same and use in connection with such removal any and all services, supplies, aids and other facilities of the Borrower, or such Guarantor;

(b)     instruct the obligor or obligors on any agreements, instrument or other obligation constituting the Collateral to make any payment required by the terms of such instrument or agreement directly to any Cash Collateral Account;

(c)     sell, assign or otherwise liquidate, or direct any Loan Party to sell, assign or otherwise liquidate, any or all of the Collateral or any part thereof in accordance with Section 12.2, and take possession of the proceeds of any such sale, assignment or liquidation; and

(d)     take possession of the Collateral or any part thereof, by directing the Borrower and any Guarantor in writing to deliver the same to the Administrative Agent at any place or places designated by the Administrative Agent, in which event the Borrower and such Guarantor shall at its own expense:

(i)     forthwith cause the same to be moved to the place or places so designated by the Administrative Agent and there delivered to the Administrative Agent,

(ii)     store and keep any Collateral so delivered to the Administrative Agent at such place or places pending further action by the Administrative Agent as provided in Section 12.2, and

(iii)     while the Collateral shall be so stored and kept, provide such guards and maintenance services as shall be necessary to protect the same and to preserve and maintain them in satisfactory condition;

it being understood that the Borrower's and each Guarantor's obligation so to deliver the Collateral is of the essence of this Agreement and that, accordingly, upon application to the Bankruptcy Court, the Administrative Agent shall be entitled to a decree requiring specific performance by the Borrower or such Guarantor of such obligation.

### Section 12.2     Remedies; Disposition of the Collateral.

Upon the occurrence and during the continuance of an Event of Default (and after notice of such Event of Default, if required under the Orders), and to the extent permitted by the Interim Order (or the Final Order, as applicable) or Article XI, without application to or order of the Bankruptcy Court, any Collateral repossessed by the Administrative Agent under or pursuant to Section 12.1 or the Interim Order (or the Final Order, as applicable) or any other Loan Document, and any other Collateral whether or not so repossessed by the Administrative Agent, may be sold, assigned, leased or otherwise disposed of under one or more contracts or as an entirety, and without the necessity of gathering at the place of sale the property to be sold, and in general in such manner, at such time or times, at such place or places and on commercially reasonable terms, in compliance with any Requirements of Law. Any of the Collateral may be sold, leased or otherwise disposed of, in the condition in which the same existed when taken by the Administrative Agent or after any overhaul or repair which the Administrative Agent shall determine to be commercially reasonable. Any such disposition which shall be a private sale or other private proceeding permitted by applicable Requirements of Law shall be made upon not less than 10 days' written notice to the Borrower specifying the time at which such disposition is to be made and the intended sale price or other consideration therefor, and shall be subject, for the 10 days after the giving of

such notice, to the right of the Borrower or any nominee of the Borrower to acquire the Collateral involved at a price or for such other consideration at least equal to the intended sale price or other consideration so specified. Any such disposition which shall be a public sale permitted by applicable Requirements of Law shall be made upon not less than 10 days' written notice to the Borrower specifying the time and place of such sale and, in the absence of applicable Requirement of Law, shall be by public auction (which may, at the Administrative Agent's option, be subject to reserve), after publication of notice of such auction not less than 10 days prior thereto in USA Today and The Wall Street Journal, National Edition. Subject to Section 12.4, to the extent permitted by any such Requirement of Law, the Administrative Agent on behalf of the Lenders or any Lender may bid for and become the purchaser of the Collateral or any item thereof, offered for sale in accordance with this Section 12.2 without accountability to the Borrower or any Guarantor. If, under mandatory Requirements of Law, the Administrative Agent shall be required to make disposition of the Collateral within a period of time which does not permit the giving of notice to the Borrower as hereinabove specified, the Administrative Agent need give the Borrower only such notice of disposition as shall be reasonably practicable.

### Section 12.3     *Application of DIP Proceeds.*

(a)     Notwithstanding anything to the contrary contained in this Agreement or any other Loan Document, (i) if the Administrative Agent takes action under Article XI upon the occurrence and during the continuance of an Event of Default, or at any time on or after the Termination Date, any payment by any Loan Party on account of principal of, interest on and fees with respect to the Loans, or any Guaranty Obligation with respect thereto, and any proceeds arising out of any realization (including after foreclosure) upon the Collateral shall be applied in the order set forth in Section 2.12(g) and (ii) any payments or distributions of any kind or character, whether in cash, property or securities, made by any Loan Party or otherwise in a manner inconsistent with *clause (i)* of this Section 12.3(a) shall be held in trust and paid over or delivered to the Administrative Agent so that the priorities and requirements set forth in such *clause (i)* are satisfied.

(b)     It is understood that the Loan Parties shall remain liable to the extent of any deficiency between the amount of the proceeds of the Collateral and the amount of the Obligations.

### Section 12.4     *WAIVER OF CLAIMS.*

EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT OR THE ORDERS, THE LOAN PARTIES HEREBY WAIVE, TO THE EXTENT PERMITTED BY APPLICABLE LAW:

(a)     NOTICE AND JUDICIAL HEARING IN CONNECTION WITH THE ADMINISTRATIVE AGENT'S TAKING POSSESSION OR THE ADMINISTRATIVE AGENT'S DISPOSITION OF ANY OF THE COLLATERAL, INCLUDING WITHOUT LIMITATION, ANY AND ALL PRIOR NOTICE AND HEARING FOR ANY PREJUDGMENT REMEDY OR REMEDIES AND ANY SUCH RIGHT WHICH THE BORROWER, OR ANY GUARANTOR WOULD OTHERWISE HAVE UNDER ANY REQUIREMENT OF LAW;

(b)     ALL DAMAGES OCCASIONED BY SUCH TAKING OF POSSESSION EXCEPT ANY DAMAGES WHICH ARE THE DIRECT RESULT OF THE ADMINISTRATIVE AGENT'S OR ANY LENDER'S BAD FAITH, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT;

(c)     ALL OTHER REQUIREMENTS TO THE TIME, PLACE AND TERMS OF SALE OR OTHER REQUIREMENTS WITH RESPECT TO THE ENFORCEMENT OF THE ADMINISTRATIVE AGENT'S RIGHTS HEREUNDER; AND

(d)     ALL RIGHTS OF REDEMPTION, APPRAISEMENT, STAY, EXTENSION OR MORATORIUM NOW OR HEREAFTER IN FORCE UNDER ANY APPLICABLE LAW IN ORDER TO PREVENT OR DELAY THE ENFORCEMENT OF THIS AGREEMENT OR THE ABSOLUTE SALE OF THE COLLATERAL OR ANY PORTION THEREOF, AND EACH LOAN PARTY, FOR ITSELF AND ALL WHO MAY CLAIM UNDER IT, INSOFAR AS IT OR THEY NOW OR HEREAFTER LAWFULLY MAY, HEREBY WAIVES THE BENEFIT OF ALL SUCH LAWS.

### Section 12.5     *Remedies Cumulative.*

Each and every right, power and remedy hereby specifically given to the Administrative Agent and the Lenders shall be in addition to every other right, power and remedy specifically given under this Agreement, the Orders or the other Loan Documents or now or hereafter existing at law or in equity, or by statute and each and every right, power and remedy whether specifically herein given or otherwise existing may be exercised from time to time or simultaneously and as often and in such order as may be deemed expedient by the Administrative Agent or any Lender. All such rights, powers and remedies shall be cumulative and the exercise or the beginning of exercise of one shall not be deemed a waiver of the right to exercise of any other or others. No delay or omission of the Administrative Agent or any Lender in the exercise of any such right, power or remedy and no renewal or extension of any of the Obligations shall impair any such right, power or remedy or shall be construed to be a waiver of any Default or Event of Default or an acquiescence therein. In the event that the Administrative Agent shall bring any suit to enforce any of its rights hereunder and shall be entitled to judgment, then in such suit the Administrative Agent may recover reasonable expenses, including reasonable attorneys' fees, and the amounts thereof shall be included in such judgment.

### Section 12.6     *Discontinuance of Proceeding.*

In case the Administrative Agent shall have instituted any proceeding to enforce any right, power or remedy under this Agreement by foreclosure, sale, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Administrative Agent, then and in every such case the Borrower, the Administrative Agent and each holder of any of the Obligations shall be restored to their former positions and rights hereunder with respect to the Collateral subject to the Liens granted under this Agreement and the Final Order, and all rights, remedies and powers of the Administrative Agent and the Lenders shall continue as if no such proceeding had been instituted.

## ARTICLE XIII
## Miscellaneous

### Section 13.1     *Amendments, Waivers, Etc.*

(a)     No amendment or waiver of any provision of this Agreement or any other Loan Document nor consent to any departure by any Loan Party therefrom shall in any event be effective unless the same shall be in writing and signed by the Requisite Lenders (or by the Administrative Agent with the consent of the Requisite Lenders); *provided, however,* that any amendment, waiver or consent that would constitute a Credit Impairment Event shall become effective only if approved in writing by the Supermajority Lenders (or by the Administrative Agent

with the consent of the Supermajority Lenders); *provided further, however,* that no amendment, waiver or consent shall, unless in writing and signed by each Lender directly affected thereby (other than any Non-Funding Lender), in addition to the consent of the Requisite Lenders or Supermajority Lenders, as applicable (or the Administrative Agent with the consent thereof), do any of the following:

      (i)      increase the Commitment of such Lender;

      (ii)      extend the scheduled final maturity, or otherwise extend the maturity, of any Loan (except pursuant to the Fifteen Month Facility Extension Option) owing to such Lender, extend the expiration date of any Commitment hereunder, or waive, reduce or postpone any scheduled date fixed for the payment or reduction of principal or interest of any such Loan or fees owing to such Lender (it being understood that Section 2.8 does not provide for scheduled dates fixed for payment and no waiver of default rate interest constitutes a waiver, reduction or postponement for purposes of this clause (ii));

      (iii)      reduce, or release the Borrower from its obligations to repay, the principal amount of any Loan or Reimbursement Obligation owing to such Lender (other than by the payment or prepayment thereof);

      (iv)      reduce the rate of interest on any Loan or Reimbursement Obligation outstanding and owing to such Lender or any fee payable hereunder to such Lender (it being understood that the rescission of any election to impose (or waiver of any imposition of) default rate interest shall not be deemed to be a reduction to the rate of interest on any Loan or Reimbursement Obligation);

      (v)      except as otherwise permitted by Section 2.19, expressly subordinate any of the Obligations or any Liens securing the Obligations;

      (vi)      postpone any scheduled date fixed for payment of interest or fees owing to such Lender or waive any such payment;

      (vii)      release all or substantially all of the Collateral or release all or substantially all of the Guarantors from their obligations under Article XI;

      (viii)      amend this Section 13.1 or either definition of the terms *"Credit Impairment Event"*, *"Requisite Lenders"* or *"Supermajority Lenders"*, *"Revolving Percentage"*, *"Term Percentage"*, *"Aggregate Exposure Percentage"* or *"Majority Facility Lenders"*;

and *provided, further,* that (x) no amendment or consent which shall increase the aggregate Commitments of all Lenders hereunder above the Commitments in effect on the Closing Date shall be effective unless in writing and signed by each Lender, (y) no amendment or consent which shall increase the aggregate principal amount of the Term Loans or the Term Commitments of all Term Lenders hereunder above the Term Commitments in effect on the Closing Date shall be effective unless in writing and signed by the Majority Facility Lenders for the Term Facility or (z) any amendment, waiver or consent which changes the definition of *"Borrowing Base"* or any defined terms used in such definition shall be effective if in writing and signed by (and only by) the Majority Facility Lenders for the Revolving Facility; *provided, further,* that the Administrative Agent may, with the consent of the Borrower, amend, modify or supplement this Agreement or any other Loan Document to cure any typographical error, defect or inconsistency, so long as such amendment, modification or supplement does not adversely affect the rights of any Lender or any Issuer.

(b)     The Administrative Agent may, but shall have no obligation to, with the written concurrence of any Lender, execute amendments, modifications, waivers or consents on behalf of such Lender. Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given. No notice to or demand on the Borrower in any case shall entitle the Borrower to any other or further notice or demand in similar or other circumstances.

(c)     If, in connection with any proposed amendment, modification, waiver or termination the consent of any Lender whose consent is required is not obtained (any such Lender whose consent is not obtained as described in this Section 13.1 being referred to as a "*Non-Consenting Lender*"), then, at the Borrower's request, any Eligible Assignee shall purchase from such Non-Consenting Lender, and such Non-Consenting Lender agrees that it shall, upon request made within 90 days of such non-consent, sell and assign to the Lender acting as the Administrative Agent or such Eligible Assignee, all of the Commitments, Revolving Outstandings and Term Loans of such Non-Consenting Lender for an amount equal to the principal balance of all Loans held by the Non-Consenting Lender and all accrued and unpaid interest and fees with respect thereto through the date of sale; *provided, however,* that such purchase and sale shall be recorded in the Register maintained by the Administrative Agent and shall not be effective until (x) the Administrative Agent shall have received from such Eligible Assignee an agreement in form and substance reasonably satisfactory to the Administrative Agent and the Borrower whereby such Eligible Assignee shall agree to be bound by the terms hereof and (y) such Non-Consenting Lender shall have received payments of all Loans held by it and all accrued and unpaid interest and fees with respect thereto through the date of the sale. Each Lender agrees that, if it becomes a Non-Consenting Lender, it shall execute and deliver to the Administrative Agent an Assignment an Acceptance to evidence such sale and purchase and shall deliver to the Administrative Agent any Promissory Note (if the assigning Lender's Loans are evidenced by a Promissory Note) subject to such Assignment and Acceptance; *provided, however,* that the failure of any Non-Consenting Lender to execute an Assignment and Acceptance shall not render such sale and purchase (and the corresponding assignment) invalid and such assignment shall be recorded in the Register.

### Section 13.2     Expenses; Indemnity; Damage Waiver

(a)     The Borrower shall pay (i) all reasonable out-of-pocket expenses incurred by the Administrative Agent and its Related Parties, including the reasonable fees, charges and disbursements of counsel for the Administrative Agent, in connection with the syndication and distribution (including, without limitation, via the internet or through a service such as Intralinks) of the Facilities provided for herein, the preparation and administration of the Loan Documents or any amendments, modifications or waivers of the provisions of the Loan Documents (whether or not the transactions contemplated hereby or thereby shall be consummated), (ii) all reasonable out-of-pocket expenses incurred by the Issuer in connection with the Issuance, amendment, renewal or extension of any Letter of Credit or any demand for payment thereunder and (iii) all out-of-pocket expenses incurred by the Administrative Agent, the Issuer or any Lender, including the fees, charges and disbursements of any counsel for the Administrative Agent, the Issuer or any Lender, in connection with the enforcement, collection or protection of its rights in connection with the Loan Documents, including its rights under this Section 13.2, or in connection with the Loans made or Letters of Credit Issued hereunder, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans or Letters of Credit. Expenses being reimbursed by the Borrower under this Section include, without limiting the generality of the foregoing, but subject to the limitations otherwise set forth in this Agreement, reasonable out-of-pocket costs and expenses incurred in connection with:

(i)     appraisals and insurance reviews;

(ii)    field examinations and the preparation of Reports based on the fees charged by a third party retained by the Administrative Agent or the internally allocated fees for each Person employed by the Administrative Agent with respect to each field examination;

(iii)   background checks regarding senior management and/or key investors, as deemed necessary or appropriate in the sole discretion of the Administrative Agent;

(iv)    taxes, fees and other charges for (A) lien and title searches and title insurance and (B) recording the Mortgages, filing financing statements and continuations, and other actions to perfect, protect, and continue the Administrative Agent's Liens;

(v)     sums paid or incurred to take any action required of any Loan Party under the Loan Documents that such Loan Party fails to pay or take after five Business Days prior notice from the Administrative Agent; and

(vi)    forwarding loan proceeds, collecting checks and other items of payment, and establishing and maintaining the accounts and lock boxes, and costs and expenses of preserving and protecting the Collateral.

(b)     The Borrower shall indemnify the Administrative Agent, the Issuer and each Lender, and each Related Party of any of the foregoing Persons (each such Person being called an "*Indemnitee*") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, penalties, liabilities and related expenses, including the fees, charges and disbursements of any counsel for any Indemnitee, incurred by or asserted against any Indemnitee arising out of, in connection with, or as a result of (i) the execution or delivery of the Loan Documents or any agreement or instrument contemplated thereby, the performance by the parties hereto of their respective obligations thereunder or any other transactions contemplated hereby, (ii) any Loan or Letter of Credit or the use of the proceeds therefrom (including any refusal by the Issuer to honor a demand for payment under a Letter of Credit if the documents presented in connection with such demand do not strictly comply with the terms of such Letter of Credit), (iii) any Environmental Liabilities and Costs related in any way to the Borrower or any of its Subsidiaries or (iv) any actual claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory and regardless of whether any Indemnitee is a party thereto, *provided* that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, penalties, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or wilful misconduct of such Indemnitee (or such Indemnitee's Related Parties). For the avoidance of doubt, any indemnification for Taxes or Other Taxes shall be subject to the terms and conditions of Section 2.16(c) and Section 2.16(e).

(c)     To the extent that the Borrower fails to pay any amount required to be paid by it to the Administrative Agent or this Issuer under paragraph (a) or (b) above, each Lender severally agrees to pay to the Administrative Agent or the Issuer, as the case may be, such Lender's Aggregate Exposure Percentage (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought) of such unpaid amount; provided that the unreimbursed expense or indemnified loss, claim, damage, penalty, liability or related expense, as the case may be, was incurred by or asserted against the Administrative Agent or the Issuer in its capacity as such.

(d)     To the extent permitted by applicable law, no Loan Party shall assert, and each hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement or any agreement or instrument contemplated hereby, any Loan or Letter of Credit or the use of the proceeds thereof.

(e)     All amounts due under this Section shall be payable promptly after written demand therefor (including documentation reasonably supporting such request).

### Section 13.3     Successors and Assigns

(a)     The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby (including any Affiliate of the Issuer that issues any Letter of Credit), except that (i) the Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of each Lender (and any attempted assignment or transfer by the Borrower without such consent shall be null and void) and (ii) no Lender may assign or otherwise transfer its rights or obligations hereunder except in accordance with this Section 13.3.  Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, their respective successors and assigns permitted hereby (including any Affiliate of the Issuer that issues any Letter of Credit), Participants (to the extent provided in Section 13.3(f)) and, to the extent expressly contemplated hereby, the Related Parties of each of the Administrative Agent, the Issuer and the Lenders) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b)     (i) Subject to the conditions set forth in *clause (ii)* below, any Lender may assign to one or more assignees all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment and the Loans at the time owing to it) with the prior written consent (such consent not to be unreasonably withheld) of the Administrative Agent, *provided* that no consent of the Administrative Agent shall be required for an assignment (x) of all or any portion of a Loan to a Lender, an Affiliate of a Lender or an Approved Fund or (y) upon the occurrence and during the continuance of any Event of Default and (ii) Assignments shall be subject to the following additional conditions: (A) except in the case of an assignment to a Lender or an Affiliate of a Lender or an assignment of the entire remaining amount of the assigning Lender's Commitment or Loans, the amount of the Commitment or Loans of the assigning Lender subject to each such assignment (determined as of the date the Assignment and Acceptance with respect to such assignment is delivered to the Administrative Agent) shall not be less than $5,000,000, unless the Administrative Agent otherwise consents, (B) each partial assignment shall be made as an assignment of a proportionate part of all the assigning Lender's rights and obligations under this Agreement, *provided* that this clause shall not be construed to prohibit the assignment of a proportionate part of all the assigning Lender's rights and obligations in respect of either (x) Revolving Loans or (y) Term Loans, (C) the parties to each assignment shall execute and deliver to the Administrative Agent an Assignment and Acceptance, together with a processing and recordation fee of $3,500 and (D) the assignee, if it shall not be a Lender, shall deliver to the Administrative Agent the information required by Section 2.16(e) and an Administrative Questionnaire in which the assignee designates one or more contacts to whom all syndicate-level information (which may contain material non-public information about the Borrower, the Loan Parties and their Related Parties or their respective securities) will be made available and who may receive such information in accordance with the assignee's compliance procedures and applicable laws, including Federal and state securities laws.

(c)     Subject to acceptance and recording thereof pursuant to Section 13.3(d), from and after the effective date specified in each Assignment and Acceptance the assignee thereunder shall be a party hereto and, to the extent of the interest assigned by such Assignment and Acceptance, have the rights and obligations of a Lender under this Agreement, and the assigning Lender thereunder shall, to the extent of the interest assigned by such Assignment and Acceptance, be released from its obligations under this Agreement (and, in the case of an Assignment and Acceptance covering all of the assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto but shall continue to be entitled to the benefits of Section 2.14(b), Section 2.15 and Section 2.16, subject to the limitations set forth in Section 2.16(e)). Any assignment or transfer by a Lender of rights or obligations under this Agreement that does not comply with this Section 13.3 shall be treated for purposes of this Agreement as a sale by such Lender of a participation in such rights and obligations in accordance with Section 13.3(f).

(d)     The Administrative Agent, acting for this purpose as an agent of the Borrower, shall maintain at one of its offices a copy of each Assignment and Acceptance delivered to it and a register for the recordation of the names and addresses of the Lenders, and the Commitment of, and principal amount of the Loans and Letter of Credit Disbursements owing to, each Lender pursuant to the terms hereof from time to time (the "*Register*"). The entries in the Register shall be conclusive absent manifest error, and the Borrower, the Administrative Agent, the Issuer and the Lenders may treat each Person whose name is recorded in the Register pursuant to the terms hereof as a Lender hereunder for all purposes of this Agreement, notwithstanding notice to the contrary. The Register shall be available for inspection by the Borrower, the Issuer and any Lender, at any reasonable time and from time to time upon reasonable prior notice.

(e)     Upon its receipt of a duly completed Assignment and Acceptance executed by an assigning Lender and an assignee, the assignee's completed Administrative Questionnaire (unless the assignee shall already be a Lender hereunder), the processing and recordation fee referred to in Section 13.3(b) and any written consent to such assignment required by Section 13.3(b), the Administrative Agent shall accept such Assignment and Acceptance and record the information contained therein in the Register; provided that if either the assigning Lender or the assignee shall have failed to make any payment required to be made by it pursuant to Section 2.3(d), Section 2.3(e), Section 2.2(d) or Section 13.2(c), the Administrative Agent shall have no obligation to accept such Assignment and Assumption and record the information therein in the Register unless and until such payment shall have been made in full, together with all accrued interest thereon. No assignment shall be effective for purposes of this Agreement unless it has been recorded in the Register as provided in this paragraph.

(f)     Any Lender may, without the consent of the Borrower, the Administrative Agent or the Issuer, sell participations to one or more banks or other entities (a "*Participant*") in all or a portion of such Lender's rights and obligations under this Agreement (including all or a portion of its Commitment and the Loans owing to it); *provided* that (A) such Lender's obligations under this Agreement shall remain unchanged, (B) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations and (C) the Borrower, the Administrative Agent, the Issuer and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement. Any agreement or instrument pursuant to which a Lender sells such a participation shall provide that such Lender shall retain the sole right to enforce this Agreement and to approve any amendment, modification or waiver of any provision of this Agreement. Subject to Section 13.3(g), the Borrower agrees that each Participant shall be entitled to the benefits of Section 2.14(b), Section 2.15 and Section 2.16 (subject to the limitations set forth in Section 2.16(e)) to the

same extent as if it were a Lender and had acquired its interest by assignment pursuant to paragraph (b) of this Section.

(g)     A Participant shall not be entitled to receive any greater payment under Section 2.14(b), Section 2.15 and Section 2.16 than the applicable Lender would have been entitled to receive with respect to the participation sold to such Participant, unless the sale of the participation to such Participant is made with the Borrower's prior written consent. A Participant that would be a Non-U.S. Lender if it were a Lender shall not be entitled to the benefits of Section 2.16 unless the Borrower is notified of the participation sold to such Participant and such Participant agrees, for the benefit of the Borrower, to comply with Section 2.16 as though it were a Lender.

(h)     Any Lender may at any time pledge or assign a security interest in all or any portion of its rights under this Agreement to secure obligations of such Lender, including without limitation any pledge or assignment to secure obligations to a Federal Reserve Bank, and this Section 13.3 shall not apply to any such pledge or assignment of a security interest; provided that no such pledge or assignment of a security interest shall release a Lender from any of its obligations hereunder or substitute any such pledgee or assignee for such Lender as a party hereto.

### Section 13.4     *Limitation of Liability*

The Borrower agrees that no Indemnitee shall have any liability (whether in contract, tort or otherwise) to any Loan Party or any of their respective Subsidiaries or any of their respective equity holders or creditors for or in connection with the transactions contemplated hereby and in the other Loan Documents, except to the extent such liability is determined in a final non-appealable judgment by a court of competent jurisdiction to have resulted primarily from such Indemnitee's (or such Indemnitee's Related Parties') gross negligence or willful misconduct. In no event, however, shall any Indemnitee or Loan Party be liable on any theory of liability for any special, indirect, consequential or punitive damages (including, without limitation, any loss of profits, business or anticipated savings). Each of the parties hereto hereby waives, releases and agrees (each for itself and on behalf of its Subsidiaries) not to sue upon any such claim for any special, indirect, consequential or punitive damages, whether or not accrued and whether or not known or suspected to exist in its favor.

### Section 13.5     *Right of Set-off*

Subject to the terms of the Orders, upon the occurrence and during the continuance of any Event of Default each Lender and each Affiliate of a Lender may with the express written consent of the Requisite Lenders (and that, it shall, to the extent lawfully entitled to do so, upon the request of the Requisite Lenders) at any time and from time to time, to the fullest extent permitted by law, set off and apply any and all deposits (general or special, time or demand, provisional or final, but excluding any trust or fiduciary account) at any time held and other Indebtedness at any time owing by such Lender or its Affiliates to or for the credit or the account of the Borrower against any and all of the Obligations now or hereafter existing whether or not such Lender shall have made any demand under this Agreement or any other Loan Document and even though such Obligations may be unmatured. Each Lender agrees promptly to notify the Borrower after any such set-off and application made by such Lender or its Affiliates; *provided, however,* to the extent permitted by applicable law, that the failure to give such notice shall not affect the validity of such set-off and application.

### Section 13.6     *Sharing of Payments, Etc.*

(a)     Subject to (i) the Carve Out and (ii) the Interim Order (or the Final Order, as applicable), notwithstanding the provisions of Section 362 of the Bankruptcy Code, if any

Revolving Lender (directly or through an Affiliate thereof) obtains any payment (whether voluntary, involuntary, through the exercise of any right of set-off (including pursuant to Article XII, Section 13.5 or otherwise) of the Revolving Loans owing to it, any interest thereon, fees in respect thereof or amounts due pursuant to Section 13.2 (other than payments pursuant to Section 2.14, Section 2.15 or Section 2.16 or as otherwise set forth herein) or otherwise receives any Collateral or any Proceeds of Collateral (other than payments pursuant to Section 2.14, Section 2.15 or Section 2.16 or as otherwise set forth herein) (in each case, whether voluntary, involuntary, through the exercise of any right of set-off or otherwise (including pursuant to Section 13.5) in excess of its Revolving Percentage of all payments of such Obligations obtained by all the Revolving Lenders, such Revolving Lender (a " *Revolving Purchasing Lender*") shall forthwith purchase from the other Revolving Lenders (each, a "*Revolving Selling Lender*") such participations in their Revolving Loans or other related Obligations as shall be necessary to cause such Revolving Purchasing Lender to share the excess payment ratably with each of them.

(b)     Subject to (i) the Carve Out and (ii) the Interim Order (or the Final Order, as applicable), notwithstanding the provisions of Section 362 of the Bankruptcy Code, if any Term Lender (directly or through an Affiliate thereof) obtains any payment (whether voluntary, involuntary, through the exercise of any right of set-off (including pursuant to Article XII, Section 13.5 or otherwise) of the Term Loans owing to it, any interest thereon, fees in respect thereof or amounts due pursuant to Section 13.2 (other than payments pursuant to Section 2.14, Section 2.15 or Section 2.16 or as otherwise set forth herein) or otherwise receives any Collateral or any Proceeds of Collateral (other than payments pursuant to Section 2.14, Section 2.15 or Section 2.16 or as otherwise set forth herein) (in each case, whether voluntary, involuntary, through the exercise of any right of set-off or otherwise (including pursuant to Section 13.5) in excess of its Term Percentage of all payments of such Obligations obtained by all the Term Lenders, such Term Lender (a " *Term Purchasing Lender*"; together with the Revolving Purchasing Lenders, a "*Purchasing Lender*") shall forthwith purchase from the other Term Lenders (each, a "*Term Selling Lender*" ; together with the Term Selling Lenders, a "*Selling Lender*")) such participations in their Term Loans or other related Obligations as shall be necessary to cause such Term Purchasing Lender to share the excess payment ratably with each of them.

(c)     If all or any portion of any payment received by a Purchasing Lender is thereafter recovered from such Purchasing Lender, such purchase from each Selling Lender shall be rescinded and such Selling Lender shall repay to the Purchasing Lender the purchase price to the extent of such recovery together with an amount equal to such Selling Lender's ratable share (according to the proportion of (i) the amount of such Selling Lender's required repayment in relation to (ii) the total amount so recovered from the Purchasing Lender) of any interest or other amount paid or payable by the Purchasing Lender in respect of the total amount so recovered.

(d)     The Borrower agrees that any Purchasing Lender so purchasing a participation from a Selling Lender pursuant to this Section 13.6 may, to the fullest extent permitted by law, exercise all its rights of payment (including the right of set-off) with respect to such participation as fully as if such Lender were the direct creditor of the Borrower in the amount of such participation.

(e)     Notwithstanding any in this Section 13.6 to the contrary, the provisions of Section 2.12(g) shall be applicable with respect to the receipt of any Collateral or Proceeds.

### Section 13.7     Notices, Etc.

(a)     Except in the case of notices and other communications expressly permitted to be given by telephone (and subject to paragraph (b) below), all notices and other

communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by facsimile, as follows:

if to the Borrower:

U.S. CONCRETE
2925 Briarpark, Suite 1050
Houston, Texas  77042
Attention:  General Counsel
Telecopy no:  (713) 499-6201
E-Mail Address:  dwayne@us-concrete.com

with a copy to:

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attention: Patrick Nash and Michelle Kilkenney
Telephone No. (312) 862-2000
Facsimile: 312-862-2200

if to the Administrative Agent:

JPMorgan Chase Bank, N.A.
2200 Ross Avenue, 9th Floor
Dallas, Texas 75220
Attention: Mario Quintanilla
Telephone No. (214) 965-2371
Facsimile: (214) 965-4731

with a copy to:

JPMorgan Chase Bank, N.A.
10 South Dearborn, 22nd Floor
Chicago, Illinois, 60603-2003
Attention: Elena Ruiz
Telephone No. (312) 732-7572
Facsimile: (312) 732-7603

All such notices and other communications (i) sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when received or (ii) sent by facsimile shall be deemed to have been given when sent, *provided* that if not given during normal business hours for the recipient, shall be deemed to have been given at the opening of business on the next Business Day for the recipient.

(b)      Notices and other communications to the Lenders hereunder may be delivered or furnished by electronic communications (including e-mail and internet or intranet websites) pursuant to procedures approved by the Administrative Agent, *provided* that the foregoing shall not apply to notices pursuant to Article II unless otherwise agreed by the Administrative Agent and the applicable Lender. The Administrative Agent or the Borrower (on behalf of the Loan Parties) may, in its discretion, agree to accept notices and other communications

to it hereunder by electronic communications pursuant to procedures approved by it; provided that approval of such procedures may be limited to particular notices or communications. All such notices and other communications (i) sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement), *provided* that if not given during normal business hours of the recipient, such notice or communication shall be deemed to have been given at the opening of business on the next Business Day for the recipient, and (ii) posted to an Internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient at its e-mail address as described in the foregoing clause (b)(i) of notification that such notice or communication is available and identifying the website address therefor.

(c)     Any party hereto may change its address or facsimile number for notices and other communications hereunder by notice to the other parties hereto.

### Section 13.8     No Waiver; Remedies

No failure on the part of any Lender, Issuer or the Administrative Agent to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

### Section 13.9     Governing Law

THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, AND TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

### Section 13.10     Submission to Jurisdiction; Service of Process

(a)     Any legal action or proceeding with respect to this Agreement or any other Loan Document may be brought in the courts of the Bankruptcy Court and, if the Bankruptcy Court does not have (or abstains from) jurisdiction, to the non-exclusive general jurisdiction of any State or Federal court of competent jurisdiction sitting in New York County, New York;. The parties hereto hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, that any of them may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions.

(b)     The Borrower irrevocably consents to the service of any and all process in any suit, action or proceeding brought in the United States of America by the mailing (by registered or certified mail, postage prepaid) of copies of such process to the Borrower at its address specified in Section 13.7. The Borrower agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(c)     Nothing contained in this Section 13.11 shall affect the right of the Administrative Agent or any Lender to serve process in any other manner permitted by law or commence legal proceedings or otherwise proceed against the Borrower or any other Loan Party in any other jurisdiction.

(d)     If for the purposes of obtaining judgment in any court it is necessary to convert a sum due hereunder in Dollars into another currency, the parties hereto agree, to the fullest extent that they may effectively do so, that the rate of exchange used shall be that at which in accordance with normal banking procedures the Administrative Agent could purchase Dollars with such other currency at the spot rate of exchange quoted by the Administrative Agent at 11:00 a.m. (New York time) on the Business Day preceding that on which final judgment is given, for the purchase of Dollars, for delivery 2 Business Days thereafter.

### Section 13.11   Waiver of Jury Trial

EACH OF THE ADMINISTRATIVE AGENT, THE LENDERS, THE ISSUERS AND THE BORROWER IRREVOCABLY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT.

### Section 13.12   Bankruptcy Court Pleadings

No Loan Party will without the express consent of the Administrative Agent (a) mention in any pleading or argument before the Bankruptcy Court in support of, or in any way relating to, a position that Bankruptcy Court authorization should be granted on the ground that such authorization is permitted by this Agreement (unless a Person opposing any such pleading or argument relies on this Agreement to assert or question the propriety of such) or (b) in any way attempt to support a position before the Bankruptcy Court based on the provisions of this Agreement.

### Section 13.13   Marshaling; Payments Set Aside

None of the Administrative Agent, any Lender or any Issuer shall be under any obligation to marshal any assets in favor of the Borrower or any other party or against or in payment of any or all of the Obligations. To the extent that the Borrower makes a payment or payments to the Administrative Agent, the Lenders or the Issuers or any such Person receives payment from the proceeds of the Collateral or exercise their rights of setoff, and such payment or payments or the proceeds of such enforcement or setoff or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party, then to the extent of such recovery, the obligation or part thereof originally intended to be satisfied, and all Liens, right and remedies therefor, shall be revived and continued in full force and effect as if such payment had not been made or such enforcement or setoff had not occurred.

### Section 13.14   Section Titles

The section titles contained in this Agreement are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto, except when used to reference a section.

### Section 13.15   Execution in Counterparts

This Agreement may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are attached to the same document. Delivery of an executed signature page of this Agreement by facsimile transmission or email shall be as effective as delivery of a manually executed counterpart hereof. A set of the copies of this Agreement signed by all parties shall be lodged with the Borrower and the Administrative Agent.

### Section 13.16    Entire Agreement

This Agreement, together with all of the other Loan Documents and all certificates and documents delivered hereunder or thereunder, embodies the entire agreement of the parties and supersedes all prior agreements and understandings relating to the subject matter hereof, except to the extent otherwise expressly provided in the Commitment Letter dated as of March 22, 2010. Subject to the terms of Section 2.22, In the event of any conflict between the terms of this Agreement and any other Loan Document, the terms of this Agreement shall govern.

### Section 13.17    Confidentiality

Each Lender and the Administrative Agent agree to use all reasonable efforts to keep information obtained by it pursuant hereto and the other Loan Documents confidential in accordance with such Lender's or the Administrative Agent's, as the case may be, customary practices and agrees that it shall only use such information in connection with the transactions contemplated by this Agreement and not disclose any such information other than (a) to such Lender's or the Administrative Agent's, as the case may be, employees, representatives and agents that are or are expected to be involved in the evaluation of such information in connection with the transactions contemplated by this Agreement and are advised of the confidential nature of such information, (b) to the extent such information presently is or hereafter becomes available to such Lender or the Administrative Agent, as the case may be, on a non-confidential basis from a source other than the Borrower or any other Loan Party, (c) to the extent disclosure is required by law, regulation or judicial order or requested or required by bank regulators or auditors, (d) if requested in the Cases or (e) to current or prospective assignees and Participants, contractual counterparties in any Hedging Contract permitted hereunder and to their respective legal or financial advisors, in each case and to the extent such assignees, Participants, grantees or counterparties agree to be bound by the provisions of this Section 13.18. Notwithstanding any other provision in this Agreement, the Administrative Agent, the Arranger and the Lenders hereby agree that the Borrower and each of its officers, directors, employees, accountants, attorneys and other advisors may disclose to any and all persons, without limitation of any kind, the U.S. tax treatment and U.S. tax structure of the Facilities and the transactions contemplated hereby and all materials of any kind (including opinions and other tax analyses) that are provided to each of them relating to such U.S. tax treatment and U.S. tax structure.

### Section 13.18    Patriot Act Notice

Each Lender subject to the Patriot Act hereby notifies the Borrower that, pursuant to Section 326 of the Patriot Act, it is required to obtain, verify and record information that identifies the Borrower, including, the name and address of the Borrower and other information that will allow such Lender to identify the Borrower in accordance with the Patriot Act.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

U.S. CONCRETE, INC.
*as Borrower*


By: _____
    Name:
    Title:


ALBERTA INVESTMENTS, INC.
ALLIANCE HAULERS, INC.
AMERICAN CONCRETE PRODUCTS, INC.
ATLAS REDI-MIX, LLC
ATLAS-TUCK CONCRETE, INC.
BEALL CONCRETE ENTERPRISES, LLC
BEALL INDUSTRIES, INC.
BEALL INVESTMENT CORPORATION, INC.
BEALL MANAGEMENT, INC.
BUILDERS' REDI-MIX, LLC
BWB, INC. OF MICHIGAN
CENTRAL CONCRETE SUPPLY CO., INC.
CENTRAL PRECAST CONCRETE, INC.
HAMBURG QUARRY LIMITED LIABILITY
COMPANY
INGRAM CONCRETE, LLC
MG, LLC
REDI-MIX CONCRETE, L.P.
REDI-MIX GP, LLC
REDI-MIX, LLC
SAN DIEGO PRECAST CONCRETE, INC.
SIERRA PRECAST, INC.
SMITH PRE-CAST, INC.
SUPERIOR CONCRETE MATERIALS, INC.
U.S. CONCRETE ON-SITE, INC.
USC MANAGEMENT CO., LLC
USC PAYROLL, INC.
USC TECHNOLOGIES, INC., *each as a Guarantor*


By: _____
    Name:
    Title:

KURTZ GRAVEL COMPANY
SUPERIOR HOLDINGS, INC.
TITAN CONCRETE INDUSTRIES, INC., *each as a Guarantor*

By: _____
    Name:
    Title:


BRECKENRIDGE READY MIX, INC, *as a Guarantor*


By: _____
    Name:
    Title:


RIVERSIDE MATERIALS, LLC, *as a Guarantor*


By: _____
    Name:
    Title:


EASTERN CONCRETE MATERIALS, INC., *as a Guarantor*


By: _____
    Name:
    Title:


LOCAL CONCRETE SUPPLY & EQUIPMENT, LLC
MASTER MIX CONCRETE, LLC
MASTER MIX, LLC
NYC CONCRETE MATERIALS, LLC
PEBBLE LANE ASSOCIATES, LLC, *each as a Guarantor*


By: _____
    Name:
    Title:

CONCRETE XXXIII ACQUISITION, INC.
CONCRETE XXXIV ACQUISITION, INC.
CONCRETE XXXV ACQUISITION, INC.
CONCRETE XXXVI ACQUISITION, INC., *each as a Guarantor*

By: _____
     Name:
     Title:


CONCRETE ACQUISITION III, LLC
CONCRETE ACQUISITION IV, LLC
CONCRETE ACQUISITION V, LLC
CONCRETE ACQUISITION VI, LLC, *each as a Guarantor*


By: _____
     Name:
     Title:


USC ATLANTIC, INC., *as a Guarantor*


By: _____
     Name:
     Title:


USC MICHIGAN, INC., *as a Guarantor*


By: _____
     Name:
     Title:

JPMORGAN CHASE BANK, N.A., *as Administrative Agent, Issuer and Lender*

By: _____
    Name:
    Title:

*Lender*

By: _____
  Name:
  Title: