# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| U.S. CONCRETE, INC., *et al.*,[1] | § Case No. 10 -11407 (PJW) |
| | § |
| Debtors. | § Joint Administration Pending |
| | § |
| | § **Related Docket No. 14** |

INTERIM ORDER UNDER 11 U.S.C. §§ 105, 362, 363(b), 364(c) AND 364(e)
AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS
TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS
TO REPAY THE PREPETITION OBLIGATIONS AND (III) SCHEDULING
A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

Upon the motion, dated April 29, 2010 (the "Motion"), of U.S. Concrete, Inc. (the

"Borrower") and certain of its subsidiaries, each as debtor and debtor-in-possession (collectively,

the "Debtors") in the above-captioned cases (the "Cases") commenced on April 29, 2010 (the

"Petition Date") for interim and final orders under sections 105, 362, 363(b), 364(c) and 364(e)

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, if any, include: U.S. Concrete, Inc. (6680); Alberta Investments, Inc. (1497); Alliance Haulers, Inc. (3236); American Concrete Products, Inc. (3187); Atlas Redi-Mix, LLC (3123); Atlas-Tuck Concrete, Inc. (1542); Beall Concrete Enterprises, LLC (3536); Beall Industries, Inc. (2872); Beall Investment Corporation, Inc. (9865); Beall Management, Inc. (9839); Breckenridge Ready Mix, Inc. (2482); Central Concrete Supply Co., Inc. (1859); Central Precast Concrete, Inc. (9358); Concrete Acquisition III, LLC (5638); Concrete Acquisition IV, LLC (5720); Concrete Acquisition V, LLC (5777); Concrete Acquisition VI, LLC (5840); Concrete XXXIII Acquisition, Inc. (6120); Concrete XXXIV Acquisition, Inc. (6167); Concrete XXXV Acquisition, Inc. (6206); Concrete XXXVI Acquisition, Inc. (6240); Eastern Concrete Materials, Inc. (1165); Hamburg Quarry Limited Liability Company (3592); Ingram Concrete, LLC (6753); Local Concrete Supply & Equipment, LLC (6597); Master Mix Concrete, LLC (0135); Master Mix, LLC (8532); MG, LLC (9279); NYC Concrete Materials, LLC (0666); Pebble Lane Associates, LLC (6520); Redi-Mix Concrete, L.P. (4765); Redi-Mix GP, LLC (N/A); Redi-Mix, LLC (6751); Riverside Materials, LLC (3588); San Diego Precast Concrete, Inc. (6282); Sierra Precast, Inc. (4227); Smith Pre-Cast, Inc. (0673); Superior Concrete Materials, Inc. (6503); Titan Concrete Industries, Inc. (6374); U.S. Concrete On-Site, Inc. (0662); USC Atlantic, Inc. (6002); USC Management Co., LLC (6749); USC Payroll, Inc. (0665); and USC Technologies, Inc. (6055). The location of the debtors' corporate headquarters and the debtors' service address is: 2925 Briarpark, Suite 1050, Houston, Texas 77042.

of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking:

(I)    authorization for (a) Borrower to obtain up to $80,000,000 of postpetition financing (the "DIP Financing") consisting of a $45,000,000 term loan facility (the "Term Loan") and a $35,000,000 revolving asset based loan facility (the "ABL Facility"), on the terms and conditions set forth in this interim Order (this "Order") and the Revolving Credit, Term Loan and Guarantee Agreement (substantially in the form attached to the Motion as Exhibit A, and as hereafter amended, amended and restated, waived, supplemented or otherwise modified from time to time, the "DIP Agreement"[2] together with all notes, guaranties, agreements, security agreements, deposit account control agreements, securities account control agreements, real estate mortgages, intellectual property security agreements, uniform commercial code financing statements, documents and instruments delivered or executed in connection therewith, as hereafter amended, amended and restated, waived, supplemented or otherwise modified from time to time, including without limitation the Budget (as defined in the DIP Agreement), the "DIP Documents"), among the Borrower, each of its Subsidiaries party thereto and JPMorgan Chase Bank, N.A. ("JPMorgan"), as Administrative Agent (in such capacity, the "DIP Agent") for itself and a syndicate of other financial institutions party thereto from time to time (collectively, the "DIP Lenders"), and (b) the Debtors, other than the Borrower, (together with the

---

[2] Unless defined in this Order, capitalized terms are used herein as defined in the DIP Agreement.

2

Specified Non-Filers, the "<u>Guarantors</u>") to guaranty on a secured basis the Borrower's and each other Guarantor's obligations in respect of the DIP Financing;

(II)     authorization for the Debtors to execute, deliver and perform the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(III)     authorization for the Debtors to repay the Prepetition Obligations (as defined below) arising out of the Amended and Restated Credit Agreement, dated as of June 30, 2006 (as amended, supplemented or otherwise modified, the "<u>Prepetition Credit Agreement</u>"; and together with any other notes, security agreements, pledge or guaranty agreements, deposit account control agreements, securities account control agreements, real estate mortgage, intellectual property security agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "<u>Prepetition Documents</u>"), among the Borrower, the lenders party thereto from time to time (the "<u>Prepetition Lenders</u>") and JPMorgan, as administrative agent (JPMorgan is herein referred to, in such capacity, as the "<u>Prepetition Agent</u>") for the Prepetition Lenders;

(IV)     authorize the use of proceeds from the Loans under the DIP Agreement and Letters of Credit in each case in a manner consistent with the terms and conditions of the DIP Documents;

-Active.12006209

(V) subject to the terms of this Order, authorization for the DIP Agent to exercise remedies under the DIP Documents upon the occurrence and continuance of an Event of Default;

(VI) authorization to deem all letters of credit issued by the Prepetition Agent under the Prepetition Credit Agreement (the "Prepetition L/Cs") to be Letters of Credit under the DIP Agreement pursuant to Section 364 of the Bankruptcy Code;

(VII) subject to entry of the Final Order (as defined below), authorization to grant liens to the DIP Lenders (subject to the Carve Out (as defined below)) on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

(VIII) subject to entry of the Final Order, the waiver by the Debtors of any right to seek to surcharge the DIP Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the Bankruptcy Code;

(IX) to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Order authorizing the Borrower, on an interim basis, to borrow under the DIP Agreement up to $30,000,000 of the ABL Facility (subject to the limitations set forth in the DIP Agreement) and $45,000,000 of the Term Loan to be used for working capital and general corporate purposes of the Loan Parties as well as for the repayment of the Prepetition Obligations; and

4

(X)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing the Borrower on a final basis to borrow the balance of the ABL Facility.

The Interim Hearing having been held by this Court on April [___], 2010, and upon the record made by the Debtors at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Jurisdiction.*  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     *Notice.*  The Debtors provided notice of the Interim Hearing to, and, upon entry of this Order, will serve this Order on:  (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Local Rule 2002-1(b); (c) counsel to the DIP Agent and Prepetition Agent; (d) the indenture trustee for the 8 3/8% Senior Subordinated Notes due 2014; (e) counsel to the informal committee of holders of 8 3/8% Senior Subordinated Notes (the "Informal Noteholders Committee"); (f) the Securities and Exchange Commission; and (g) the Internal Revenue Service.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3.     *Debtors' Stipulation.*  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 14 and 15 below) the Debtors

5

admit, stipulate, and agree that as of the Petition Date, the Debtors were truly and justly indebted

to the Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate

principal amount of not less than $40,275,228.82 in respect of loans made by the Prepetition

Lenders pursuant to the Prepetition Credit Agreement, plus accrued and unpaid interest thereon,

any cash management obligations owed to any Prepetition Lender or its affiliates, any fronting

fees in respect of Prepetition L/Cs, any obligations in respect of hedging contracts owed to a

Prepetition Lender or its affiliates, any fees, costs, and other charges payable under the

Prepetition Credit Agreement and any out-of-pocket fees and expenses (including reasonable

fees and expenses of attorneys and advisors) as provided in the Prepetition Documents (the

"Prepetition Obligations").

    4.    *Findings Regarding The DIP Financing.*

    (a)    Good cause has been shown for the entry of this Order.

    (b)    The Debtors have an immediate need to obtain the DIP Financing, in order

to, among other things, permit the orderly continuation of their businesses, preserve the going

concern value of the Debtors, make payroll and satisfy other working capital and general

corporate purposes of the Debtors. Further, Prepetition L/Cs should be deemed to be Letters of

Credit under the DIP Agreement in order to, among other things, avoid additional debt and

leverage on the Debtors and to permit the Debtors to maintain such obligations as contingent

obligations, which maximizes the value of the Debtors' estates. Moreover, repayment of the

Prepetition Obligations reflects the Debtors' exercise of prudent business judgment because the

Prepetition Lenders are oversecured claimants, and, were the Prepetition Obligations to remain

outstanding for the duration of these Cases, the Prepetition Lenders would be entitled to

postpetition interest pursuant to section 506(b) of the Bankruptcy Code, potentially, at the default

6

rate set forth in the Prepetition Credit Agreement. Repaying and discharging the Prepetition Obligations at the outset of these Cases, therefore, maximizes the value of the Debtors' estates.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.

(d)     The terms of the DIP Financing pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all loans made to and all Letters of Credit issued or deemed issued for the account of the Borrower pursuant to the DIP Agreement (ii) all Cash Management Obligations and obligations in respect of Hedging Contracts and (iii) all other obligations of the Debtors (including, without limitation, indemnification and fee obligations) under the DIP Documents and this Order owing to any DIP Lenders or in the case of clause (ii) the DIP Lenders and their Affiliates (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

7

(f)     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent granting the interim relief set forth in this Order, the Debtors' estates and the Specified Non-Filers will be immediately and irreparably harmed. Consummation of the DIP Financing and repayment of the Prepetition Obligations in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

5.     *Authorization Of The DIP Financing And The DIP Documents.*

(a)     The Debtors are hereby authorized to execute, deliver and perform their respective obligations under the DIP Documents (including incurrence of their obligations under the DIP Documents) and, in the case of the Borrower, to borrow under the DIP Agreement up to an aggregate principal amount of $30,000,000 of the ABL Facility (subject to the limitations set forth in the DIP Agreement) and $45,000,000 of the Term Loan for working capital and other general corporate purposes of the Debtors and the Loan Parties, including without limitation, to pay all interest, fees and expenses in connection with the DIP Financing and to repay in full the Prepetition Obligations.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts and to execute and deliver all instruments and documents that such Debtor or the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the DIP Lenders may agree, and no further

8

approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not (A) shorten the maturities of the ABL Facility or the Term Loan or (B) increase the Commitments or the rates of interest payable on the ABL Facility or the Term Loan under the DIP Agreement (other than as a result of default interest); provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and any statutory committee appointed in the Cases (a "Committee");

(iii)     the non-refundable payment to the DIP Agent, its affiliates and the DIP Lenders, as the case may be, of the fees set forth in the DIP Documents and in the Fee Letter, dated March 22, 2010, among the Borrower, the DIP Agent and one or more of the DIP Agent's affiliates; and

(iv)     the performance of all other acts (including any act in its capacity as member of any Specified Non-Filer) required under or in connection with the DIP Documents.

(c)     Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents.  No obligation, payment, transfer or grant of security by the Debtors under the DIP Documents or this Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

9

6.    *Superpriority Claims.*

(a)    Except to the extent expressly set forth in this Order in respect of the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims (the "Superpriority Claims") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(b)    For purposes hereof, the "Carve Out" shall mean, collectively, the amounts described in clauses (i), (ii), and (iii) below:  (i) in the event of the occurrence and during the continuance of an Event of Default, the payment of Professional Fees incurred at any time after the first business day following delivery of the Trigger Notice of the occurrence of an Event of Default (to the extent allowed by the Bankruptcy Court at any time) by the Loan Parties and any Committee in an aggregate amount not in excess of the Carve Out Cap, (ii) all unpaid Professional Fees incurred by the Loan Parties and any Committee at any time on or prior to the first business day following delivery of the Trigger Notice to the extent allowed by the Bankruptcy Court at any time, and the payment of fees pursuant to 28 U.S.C. §1930 and (iii) fees and expenses up to $250,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the Trigger Notice).  Notwithstanding the foregoing, (x) except for the $50,000 of the Loans under the DIP Agreement that may be used by any Committee to

10

investigate the Prepetition Obligations as provided in Paragraph 15 below, the Carve Out shall not be available to pay any professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition Lenders or the Prepetition Agent, (y) so long as an Event of Default shall not have occurred and be continuing, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. § 330 and § 331, as the same may be due and payable, and the same shall not reduce the Carve Out and (z) the Carve Out Cap shall not be reduced by the payment of Professional Fees incurred on or prior to the first business day following delivery of a Trigger Notice without regard to when such amounts are allowed by the Bankruptcy Court. Upon the commencement of a liquidation, the Debtors are directed to deposit an amount equal to the unpaid Professional Fees, including the Carve Out Cap, prior to making any distributions to creditors, in a segregated account solely for payment of Professional Fees that are within the Carve Out. Nothing herein shall be construed as a waiver of the right of the Administrative Agent or any Lender to object to the allowance of any Professional Fees and disbursements.

7.     *DIP Liens.*  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a) and (b) below being collectively referred to as the "DIP Collateral"), subject only to the Carve Out

11

(all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "DIP Liens"):

    (a)    <u>First Lien On Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "<u>Unencumbered Property</u>"), including without limitation, any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, trucks, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of the Borrower and the proceeds of all of the foregoing, and, subject to the entry of the Final Order, any proceeds or property recovered in respect of any Avoidance Actions, <u>provided</u> that, the Unencumbered Property shall not include (i) the Avoidance Actions and any assets upon which security may not be lawfully granted, (ii) 34% of the issued and outstanding Stock of any new or existing Excluded Foreign Subsidiary (and, for the avoidance of doubt, 100% of the issued and outstanding Stock of any new or existing Excluded Foreign Subsidiary not owed directly by a Debtor) or (iii) any Excluded Collateral (collectively, the "<u>Excluded Property</u>").  For the avoidance of doubt, the first lien collateral securing the Prepetition Obligations (the "<u>Prepetition Liens</u>") shall be Unencumbered Property upon repayment of the Prepetition Obligations to the extent otherwise unencumbered as of the Petition Date.

12

(b)  <u>Liens Junior To Certain Existing Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors (other than Excluded Property), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders shall be junior to such valid, perfected and unavoidable liens.

(c)  <u>Liens Senior To Certain Other Liens</u>.  The DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

8.  *Remedies After Event Of Default.*  The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the DIP Documents, other than those rights and remedies against the DIP Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default, and the giving of five (5) business days' prior written notice to the Debtors (with a copy to counsel to the Debtors, counsel to any Committee and to the U.S. Trustee), all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Order (including, without limitation, the right to setoff monies

13

of the Debtors in accounts maintained with the DIP Agent or any DIP Lender). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing. In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or any other collateral securing the DIP Obligations. The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or any DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement. Notwithstanding anything to the contrary contained in this Order or any DIP Document, if an Event of Default has occurred and is continuing, the Borrower shall be entitled upon one (1) business day notice to prepay all Obligations under the DIP Documents. Upon such prepayment of the Obligations, the liens granted under this Order and each other DIP Document shall automatically terminate.

9. *Limitation On Charging Expenses Against Collateral.* Subject to and effective upon entry of the Final Order, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent and no such consent shall be implied from any other action or inaction by the DIP Agent or the DIP Lenders.

10. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or the Prepetition Agent on behalf of the Prepetition Lenders

14

pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

11.    *Repayment of the Prepetition Obligations.*

(a)    The Debtors are hereby authorized to use a portion of the DIP Financing proceeds to repay in full all the Prepetition Obligations on the Closing Date.  Upon satisfaction of the Prepetition Obligations, the Prepetition Credit Agreement shall be deemed to be cancelled and the obligations of the Debtors thereunder shall be discharged; provided that the Prepetition Credit Agreement shall continue in effect solely to preserve the Prepetition Agent's and the Prepetition Lenders' rights that are expressly stated as surviving the termination of the Prepetition Credit Agreement; provided, further, that all revolving credit Prepetition Lenders are, as of the date the Prepetition Obligations are satisfied, hereby released and discharged from the obligations with respect to their Ratable Portion (as defined in the Prepetition Credit Agreement) in any Prepetition L/Cs.

(b)    The Debtors, the Prepetition Agent and the Prepetition Lenders are hereby authorized to take all actions necessary to effectuate the provisions of this paragraph 11, including, without limitation, to make such filings or releases as necessary to cancel, terminate, release, discharge and/or extinguish any publicly-filed liens, financing statements and/or security interests.

(c)    Nothing in this Order or the DIP Agreement shall prejudice the rights, remedies and privileges of the Prepetition Agent and the Prepetition Lenders granted in the Bankruptcy Code or as set forth in the Prepetition Documents to the extent the Prepetition Obligations are not fully repaid and discharged as contemplated by this Order.

15

12. *Perfection Of DIP Liens.*

(a)     The DIP Agent and the DIP Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, vehicle titles, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens granted to them hereunder. Whether or not the DIP Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens, such DIP Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

(b)     A certified copy of this Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, vehicle titles, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Order for filing and recording.

(c)     The Debtors shall execute and deliver to the DIP Agent all such agreements, financing statements, instruments and other documents as the DIP Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens, in each case in accordance with and to the extent required by, the DIP Documents.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or

16

other DIP Collateral related thereto, shall have no force and effect with respect to the granting of the DIP Liens on the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Lenders in accordance with the terms of the DIP Documents or this Order. Subject to the entry of the Final Order, any such provision shall be deemed to be inconsistent with the applicable provisions of the Bankruptcy Code and shall have no force and effect with respect to the granting of the DIP Liens on such lease or other license, contract or other agreement.

13.    *Preservation Of Rights Granted Under The Order.*

(a)    No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent or the DIP Lenders, shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) or the Commitments remain outstanding, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations shall have been paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement if any of the Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or (ii) an order converting or dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the greatest extent permitted by applicable law, that (A) the Superpriority Claims, the other administrative claims granted pursuant to this Order and, the DIP Liens shall

17

continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full (other than contingent indemnity and fee obligations) (and that such Superpriority Claims, the other administrative claims granted pursuant to this Order and the DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (A) above.

(c) If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP liens. Notwithstanding any such reversal, stay, modification or vacatur, any DIP Obligations incurred by the Debtors to the DIP Agent or the DIP Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agent and the DIP Lenders, shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all DIP Obligations.

(d) Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders, granted by this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an

18

order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Obligations, the Superpriority Claims, the other administrative Claims granted pursuant to this Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders granted by this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations (other than contingent indemnity and fee obligations) are paid in full in cash.

14. *Effect Of Stipulations On Third Parties.* The stipulations and admissions contained in this Order, including without limitation, in paragraph 3 of this Order, shall be binding solely upon the Debtors and the other Loan Parties under all circumstances. The stipulations and admissions contained in this Order, including without limitation, in paragraph 3 of this Order, shall be binding upon all other parties in interest, including without limitation, any Committee, unless (a) any Committee or any other party-in-interest with standing to do so (including, if the Cases are converted cases under chapter 7 prior to the expiration of the challenge period set forth in this paragraph 14, the chapter 7 trustee in such successor cases) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including without limitation, in paragraph 15) by no later than the date that is the earlier of (x) 75 days after entry of this Order or (y) 60 days after the formation of a Committee of unsecured creditors, (A) challenging the validity, enforceability, priority or extent of the

19

Prepetition Obligations or the Prepetition Liens or (B) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Agent or any of the Prepetition Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations or the Prepetition Liens and (b) an order is entered and becomes final in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter, provided that, as to the Debtors and the other Loan Parties, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If any such adversary proceeding or contested matter results in a final order sustaining any such challenge or claim, the Prepetition Lenders will comply with such order and any relief granted therein and the terms of such order shall govern. If no such adversary proceeding or contested matter is timely filed in respect of the Prepetition Obligations, (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the Prepetition Liens shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, and perfected, not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Prepetition Agent and the Prepetition Lenders, as the case may be, and the Prepetition Liens shall not be subject to any other or further challenge by any Committee or any other party-in-interest, and any Committee or such party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely

20

filed, the stipulations and admissions contained in paragraph 3 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other party-in-interest, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including without limitation, Claims and Defenses with respect to the Prepetition Documents and the Prepetition Obligations, or any liens granted by any Debtor to secure any of the foregoing.

15. *Limitation On Use Of DIP Financing And DIP Collateral.* The Debtors shall use the DIP Financing solely as provided in this Order and the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Agreement, no DIP Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Documents or the liens or claims granted under this Order, the DIP Documents or the Prepetition Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders hereunder or under the DIP Documents, or the Prepetition Documents, in the case of each of the foregoing clauses (a) through (d), without such

party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date (other than the Prepetition Obligations) unless such payments are (i) approved by an Order of this Court and (ii) permitted under the DIP Documents, provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the Loans under the DIP Agreement, the DIP Collateral or the Carve Out may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations or investigate any Claims and Defenses or other causes action against the Prepetition Agent or the Prepetition Lenders.

16.     *Insurance*.  To the extent the Prepetition Agent is listed as loss payee under the Debtors' insurance policies, the DIP Agent is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies to the payment in full of the DIP Obligations.

17.     *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

18.     *Binding Effect; Successors And Assigns*.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property

22

of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP

Lenders, the Prepetition Agent, the Prepetition Lenders and the Debtors and their respective

successors and assigns.

19. *Limitation on Liability.* Subject to paragraph 14 hereof, nothing in this Order or

in the DIP Documents shall in any way be construed or interpreted to impose or allow the

imposition upon the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition

Lenders any liability for any claims arising from the pre-petition or post-petition activities of any

of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

20. *Effectiveness.* This Order shall constitute findings of fact and conclusions of law

and shall take effect immediately upon execution hereof as of the Petition Date, and there shall

be no stay of execution of effectiveness of this Order.

*Final Hearing.* The Final Hearing is scheduled for ___May 21___, 2010 at _9:30_

A.m., prevailing Eastern time, before this Court.

21. *Final Hearing Notice.* The Debtors shall promptly mail copies of this Order

(which shall constitute adequate notice of the Final Hearing, including without limitation, notice

of the Extraordinary Provisions described in the introductory language to this Order) to the

parties having been given notice of the Interim Hearing, and to any other party that has filed a

request for notices with this Court and to any Committee after the same has been appointed, or

Committee counsel, if the same shall have been appointed. Any party-in-interest objecting to the

relief sought at the Final Hearing shall serve and file written objections; which objections shall

be served upon (a) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654

Attention: Patrick Nash and Ross Kwasteniet, and Pachulski Stang Ziehl & Jones LLP, 919

North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705

23

Attention: Laura Davis Jones and James E. O'Neill, attorneys for the Debtors, (b) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attention: Mark J. Thompson, Esq., and Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq., attorneys for the DIP Agent and the Prepetition Agent, (c) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064 Attention: Andrew Rosenberg and Laruen Shumejda, attorneys for the Informal Noteholders Committee, and (d) the Office of the U.S. Trustee for the District of Delaware, and shall be filed with the Clerk of the United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by the foregoing no later than May 18 2010 at 4:00 p.m., prevailing Eastern time.

Dated:  April 30, 2010
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

-Active.12006209