IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| U.S. CONCRETE, INC., *et al.*,[1] | ) Case No. 10-11407 (PJW) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KIRKLAND & ELLIS LLP AS ATTORNEYS TO U.S. CONCRETE, INC., *ET AL.*, *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] file this application (the "Application") for entry of an order, substantially in the form attached as **Exhibit A**, authorizing the Debtors to employ and retain Kirkland & Ellis LLP ("K&E") *nunc pro tunc* to the Petition Date (as defined herein) as their lead restructuring counsel. In support of this Application, the Debtors submit the Declaration of Patrick J. Nash, Jr., a partner at K&E (the

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, if any, include: U.S. Concrete, Inc. (6680); Alberta Investments, Inc. (1497); Alliance Haulers, Inc. (3236); American Concrete Products, Inc. (3187); Atlas Redi-Mix, LLC (3123); Atlas-Tuck Concrete, Inc. (1542); Beall Concrete Enterprises, LLC (3536); Beall Industries, Inc. (2872); Beall Investment Corporation, Inc. (9865); Beall Management, Inc. (9839); Breckenridge Ready Mix, Inc. (2482); Central Concrete Supply Co., Inc. (1859); Central Precast Concrete, Inc. (9358); Concrete Acquisition III, LLC (5638); Concrete Acquisition IV, LLC (5720); Concrete Acquisition V, LLC (5777); Concrete Acquisition VI, LLC (5840); Concrete XXXIII Acquisition, Inc. (6120); Concrete XXXIV Acquisition, Inc. (6167); Concrete XXXV Acquisition, Inc. (6206); Concrete XXXVI Acquisition, Inc. (6240); Eastern Concrete Materials, Inc. (1165); Hamburg Quarry Limited Liability Company (3592); Ingram Concrete, LLC (6753); Local Concrete Supply & Equipment, LLC (6597); Master Mix Concrete, LLC (0135); Master Mix, LLC (8532); MG, LLC (9279); NYC Concrete Materials, LLC (0666); Pebble Lane Associates, LLC (6520); Redi-Mix Concrete, L.P. (4765); Redi-Mix GP, LLC (N/A); Redi-Mix, LLC (6751); Riverside Materials, LLC (3588); San Diego Precast Concrete, Inc. (6282); Sierra Precast, Inc. (4227); Smith Pre-Cast, Inc. (0673); Superior Concrete Materials, Inc. (6503); Titan Concrete Industries, Inc. (6374); U.S. Concrete On-Site, Inc. (0662); USC Atlantic, Inc. (6002); USC Management Co., LLC (6749); USC Payroll, Inc. (0665); and USC Technologies, Inc. (6055). The location of the debtors' corporate headquarters and the debtors' service address is: 2925 Briarpark, Suite 1050, Houston, Texas 77042.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this application and the Debtors' restructuring, are set forth in greater detail in the Declaration of Robert D. Hardy (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code, on April 29, 2010 (the "Petition Date").

K&E 16440978

"Nash Declaration"), which is attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1, 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

### Background

4. On April 29, 2010 (the "Petition Date"), U.S. Concrete, Inc. and 43 of its affiliates each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and an official committee of unsecured creditors has not been appointed. On April 30, 2010, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases.

5. The Debtors are a major producer of ready-mixed concrete, precast concrete products, and concrete-related products in select markets in the United States. The Debtors are a public company that employs approximately 2,100 people throughout their more than 140 locations in the United States. They operate principally in Texas, California, New Jersey/

2

New York, and Michigan, with those operations representing approximately 35%, 30%, 15%, and 9%, respectively, of the Debtors' 2009 consolidated revenue.

6. The Debtors filed a pre-negotiated plan of reorganization (the "Plan") and corresponding disclosure statement on the Petition Date, and the Court has scheduled a hearing to seek approval of the disclosure statement and solicitation materials for June 3, 2010 at 3:30 p.m., prevailing Eastern Time. The Debtors' prepetition bondholders—a significant majority of which have entered into a Restructuring and Lock-Up Agreement to vote in favor of the Plan—are the only creditors impaired under the Plan.

## Relief Requested

7. By this Application, the Debtors seek the entry of an order authorizing the employment and retention of K&E as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and K&E dated as of December 14, 2010 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to **Exhibit A** hereto and incorporated herein by reference.[3]

## K&E's Qualifications

8. K&E has been actively involved in major chapter 11 cases and has represented debtors in many cases, including, among others: *In re Bear Island Company, L.L.C.*, Case No. 10-31202 (Bankr. E.D. Va. March 25, 2010); *In re Atrium Corp.*, No. 10-10150 (Bankr. D. Del. Feb. 25, 2010); *In re Citadel Broadcasting Corp.*, No. 09-17442 (Bankr. S.D.N.Y. Feb. 3, 2009); *In re The Majestic Star Casino, LLC*, Case No. 09-14136 (Bankr. D. Del. Nov. 23, 2009);

---

3 The Debtors also seek to employ and retain Pachulski Stang Ziehl & Jones ("Pachulski Stang") as their co-counsel and conflicts counsel in connection with these chapter 11 cases to handle matters that the Debtors may encounter that cannot be handled appropriately by K&E because of a conflict of interest, or alternatively, which can be handled more efficiently by Pachulski Stang. It is intended that the services of Pachulski Stang shall complement, and not duplicate, the services to be rendered by K&E. Indeed, the Debtors are extremely mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is no such duplication.

*In re Stallion Oilfield Services Ltd.*, Case No. 09-13562 (Bankr. D. Del. Nov. 16, 2009); *In re The Readers Digest Assoc.*, Case No. 09-3529 (Bankr. S.D.N.Y. Sept. 17, 2009); *In re Lear Corp.*, Case No. 09-14326 (Bankr. S.D.N.Y. July 31, 2009); *In re UTGR, Inc. d/b/a/ Twin River, et al*, Case No. 09-12418 (Bankr. D. R.I. July 30, 2009); *In re ION Media Networks, Inc.*, Case No. 09-13125 (Bankr. S.D.N.Y. June 23, 2009); *In re Visteon Corp.*, Case No. 09-11786 (Bankr. D. Del. June 19, 2009); *In re DBSD North America, Inc.*, Case No. 09-13061 (Bankr. S.D.N.Y. June 9, 2009); *In re General Growth Props., Inc.*, Case No. 09-11977 (Bankr. S.D.N.Y. May 26, 2009); *In re Norwood Promotional Products Holdings, Inc.*, Case No. 09-11547 (Bankr. D. Del. May 5, 2009); *In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. Apr. 29, 2009); *In re Sun-Times Media Group, Inc.*, Case No. 09-11092 (Bankr. D. Del. Apr. 29, 2009); *In re Source Interlink Companies, Inc.*, Case No. 09-11424 (Bankr. D. Del. Apr. 28, 2009); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. Apr. 15, 2009); *In re Masonite Corp.*, Case No. 09-10844 (Bankr. D. Del. Apr. 15, 2009); *In re Muzak Holdings LLC*, No. 09-10422 (Bankr. D. Del. Feb. 10, 2009); *In re Tronox, Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Feb.6, 2009); *In re Flying J, Inc.*, Case No. 08-13384 (Bankr. D. Del. Jan. 15, 2009); *In re Portola Packaging, Inc.*, Case No. 08-12001 (Bankr. D. Del. Sept. 22, 2008); *In re Hines Horticulture, Inc.*, Case No. 08-11922 (Bankr. D. Del. Sep. 10, 2008); *In re Pierre Foods Inc.*, Case No. 08-11480 (Bankr. D. Del. Aug. 14, 2008); *In re ACG Holdings, Inc.*, Case No. 08-11467 (Bankr. D. Del. Aug. 11, 2008); *In re Kimball Hill, Inc.*, Case No. 08-10095 (Bankr. N.D. Ill. May 13, 2008); and *In re Wellman, Inc.*, Case No. 08-10595 (Bankr. S.D.N.Y. Feb. 22, 2008).

9. K&E began representing the Debtors in December 2009 with respect to a potential restructuring. In preparing for its representation of the Debtors in these chapter 11

cases, K&E has become familiar with the Debtors' businesses and many of the potential legal issues that may arise in the context of these chapter 11 cases. The Debtors believe that K&E is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to be Provided

10. Subject to further order of the Court and consistent with the Engagement Letter, the Debtors request the employment and retention of K&E to render the following legal services:

   a. advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

   b. advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

   c. attending meetings and negotiating with representatives of the creditors and other parties in interest;

   d. taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

   e. preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

   f. representing the Debtors in connection with obtaining authority to continue using cash collateral and, if necessary, postpetition financing;

   g. advising the Debtors in connection with any potential sale of assets;

   h. appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

   i. advising the Debtors regarding tax matters;

   j. taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.  performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

## Professional Compensation

11. K&E intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines established by the United States Trustee for the District of Delaware (the "United States Trustee"), and any other applicable procedures and orders of the Court, on an hourly basis. The hourly rates and corresponding rate structure that K&E will use in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure that K&E predominantly uses for other restructuring matters, as well as similar complex corporate, securities and litigation matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that corporate restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

12. K&E operates in a dynamic national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors. Because the sub-markets for legal services are fragmented and are affected by a variety of individualized and interdependent factors, K&E has no one rate for an individual biller that applies to all matters for all clients. K&E's rates for an individual biller may vary as a function of the type of matter, geographic factors, nature of certain long-term client relationships, and various other factors.

13. K&E's hourly rates are set at a level designed to fairly compensate K&E for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere. In particular, K&E's current hourly rates for matters related to these chapter 11 cases range as follows:[4]

| Billing Category | Range |
|---|---|
| Partners | $580-$995 |
| Of Counsel | $435-$995 |
| Associates | $340-$670 |
| Paraprofessionals | $135-$285 |

14. The following professionals presently are expected to have primary responsibility for providing services to the Debtors: James H.M. Sprayregen ($995), Patrick J. Nash, Jr. ($885), and Ross M. Kwasteniet ($680). In addition, as necessary, other K&E professionals and paraprofessionals will provide services to the Debtors.

15. It is K&E's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also K&E's policy to charge its clients only the amount actually incurred by K&E in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, outgoing facsimile transmissions, airfare, meals, and lodging.

---

[4] For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate. After converting these foreign rates into U.S. dollars it is possible that certain rates may exceed the billing ranges listed in the chart herein.

16. To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time K&E utilizes the services of overtime secretaries. K&E charges fees for these services pursuant to the Engagement Letter, which permits K&E to bill the Debtors for overtime secretarial charges that arise out of business necessity. In addition, K&E professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

17. K&E currently charges $0.15 per page for standard duplication in its offices in the United States. Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, K&E will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases. K&E does not charge its clients for facsimile transmissions. K&E has negotiated a discounted rate for Westlaw computer-assisted legal research. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer-assisted legal research) techniques.

## Compensation Received by K&E from the Debtors

18. Consistent with the terms of the Engagement Letter, on December 18, 2009, the Debtors paid $50,000.00 to K&E as a classic retainer. Subsequently, the Debtors paid to K&E additional classic retainers of $50,000.00 on January 26, 2010, $100,000.00 on February 19, 2010, $75,000.00 on March 22, 2010, and $75,000.00 on April 15, 2010. The foregoing retainer payments constitute "classic retainer" payments as defined in *In re Prod. Assocs., Ltd.*, 264 B.R. 180, 184-85 (Bankr. N.D. Ill. 2001), and *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 997-99 (Bankr. N.D. Ill. 1990). As such, K&E earned the classic retainer upon receipt and, consequently, K&E placed the amounts into its general cash account. The amounts K&E has invoiced the Debtors against the classic retainer for professional services and for the reimbursement of reasonable and necessary expenses incurred in connection therewith are set forth in the chart below. As of the Petition Date, the retainer balance was approximately $300,000.

19. The amounts for legal services billed by K&E and payments made by the Debtors during the period prior to the Petition Date include the following:

| Type of Transaction | Invoice Number | Invoice Date | Billed Amount | Payment Date | Payment Amount | Retainer Balance |
|---|---|---|---|---|---|---|
| Initial Retainer | | | | 12/18/2009 | $50,000.00 | $50,000.00 |
| Invoice | 3531395 | 1/20/2010 | $48,512.91 | | | $1,487.09 |
| Retainer Replenishment | | | | 1/26/2010 | $48,512.91 | $50,000.00 |
| Retainer Increase | | | | 1/26/2010 | $50,000.00 | $100,000.00 |
| Invoice | 3538708 | 1/29/2010 | $60,616.17 | | | $39,383.83 |
| Retainer Replenishment | | | | 2/4/2010 | $60,616.17 | $100,000.00 |
| Invoice | 3541581 | 2/5/2010 | $33,842.94 | | | $66,157.06 |
| Invoice | 3545548 | 2/11/2010 | $56,499.49 | | | $9,657.57 |
| Retainer Replenishment | | | | 2/19/2010 | $90,342.43 | $100,000.00 |
| Retainer Increase | | | | 2/19/2010 | $100,000.00 | $200,000.00 |
| Invoice | 3547388 | 2/19/2010 | $103,827.79 | | | $96,172.21 |
| Retainer | | | | 2/23/2010 | $103,827.79 | $200,000.00 |

| | | | | | |
|---|---|---|---|---|---|
| Replenishment | | | | | |
| Invoice | 3548112 | 2/25/2010 | $113,356.35 | | $86,643.65 |
| Retainer Replenishment | | | 3/3/2010 | $113,356.35 | $200,000.00 |
| Invoice | 3551225 | 3/3/2010 | $99,789.85 | | $100,210.15 |
| Retainer Replenishment | | | 3/9/2010 | $99,789.85 | $200,000.00 |
| Invoice | 3558131 | 3/9/2010 | $129,298.94 | | $70,701.06 |
| Retainer Replenishment | | | 3/15/2010 | $129,298.94 | $200,000.00 |
| Invoice | 3560200 | 3/17/2010 | $137,214.07 | | $62,785.93 |
| Retainer Replenishment | | | 3/22/2010 | $137,214.07 | $200,000.00 |
| Retainer Increase | | | 3/22/2010 | $75,000.00 | $275,000.00 |
| Invoice | 3562914 | 3/26/2010 | $147,015.18 | | $127,984.82 |
| Retainer Replenishment | | | 4/2/2010 | $147,015.18 | $275,000.00 |
| Invoice | 3564559 | 4/1/2010 | $120,740.75 | | $154,259.25 |
| Retainer Replenishment | | | 4/9/2010 | $120,740.75 | $275,000.00 |
| Invoice | 3570391 | 4/9/2010 | $164,804.61 | | $110,195.39 |
| Retainer Replenishment | | | 4/15/2010 | $164,804.61 | $275,000.00 |
| Retainer Increase | | | 4/15/2010 | $75,000.00 | $350,000.00 |
| Invoice | 3573423 | 4/16/2010 | $106,236.11 | | $243,763.89 |
| Retainer Replenishment | | | 4/19/2010 | $106,236.11 | $350,000.00 |
| Invoice | 3575741 | 4/23/2010 | $271,288.93 | | $78,711.07 |
| Retainer Replenishment | | | 4/27/2010 | $271,288.93 | $350,000.00 |

20. Moreover, pursuant to Bankruptcy Rule 2016(b), K&E has not shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with K&E or (b) any compensation another person or party has received or may receive.

21. As of the Petition Date, the Debtors do not owe K&E any amounts for legal services rendered before the Petition Date. Although certain expenses and fees may have been incurred, but not yet applied to K&E's classic retainer, such amounts, if any, would be less than the balance of K&E's classic retainer as of the Petition Date.

## K&E's Disinterestedness

22. To the best of the Debtors' knowledge and as disclosed herein and in the Nash Declaration: (a) K&E is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) K&E has no connection to the Debtors, their creditors, or its related parties except as may be disclosed in the Nash Declaration.

23. K&E will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, K&E will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Supporting Authority

24. The Debtors seek retention of K&E as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out the [debtor]s' duties under this title.

11 U.S.C. § 327(a).

25. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

26. Finally, Local Rule 2014-1 states as follows:

> Any entity seeking approval of employment of a professional person ... shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval. Promptly after learning of any additional material information relating to such employment (such as potential or actual conflicts of interest), the professional employed or to be employed shall file and serve a supplemental affidavit setting forth the additional information.

Del. Bankr. LR 2014-1.

27. The Debtors submit that, for all the reasons stated above and in the Nash Declaration, the retention of K&E as counsel to the Debtors is warranted and appropriate.

## Notice

28. The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) the agent for the Debtors' postpetition secured lenders; (c) the indenture trustee for the 8.375% senior subordinated notes; (d) the informal committee of the Debtors' senior subordinated notes; (e) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (f) the Securities and Exchange Commission; (g) the Internal Revenue Service; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

29. No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: May 4, 2010

Robert D. Hardy
Executive Vice President and Chief Financial Officer