IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| U.S. CONCRETE, INC., *et al.*,[1] | ) Case No. 10-11407 (PJW) |
| Debtors. | ) Jointly Administered |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS RESTRUCTURING ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application"), for the entry of an order (the "Order"), pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain AlixPartners, LLP ("AlixPartners") as restructuring advisors for the Debtors in these cases effective *nunc pro tunc* to the Petition Date. In support of this Application, the Debtors submit the declaration of Alan

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, if any, include: U.S. Concrete, Inc. (6680); Alberta Investments, Inc. (1497); Alliance Haulers, Inc. (3236); American Concrete Products, Inc. (3187); Atlas Redi-Mix, LLC (3123); Atlas-Tuck Concrete, Inc. (1542); Beall Concrete Enterprises, LLC (3536); Beall Industries, Inc. (2872); Beall Investment Corporation, Inc. (9865); Beall Management, Inc. (9839); Breckenridge Ready Mix, Inc. (2482); Central Concrete Supply Co., Inc. (1859); Central Precast Concrete, Inc. (9358); Concrete Acquisition III, LLC (5638); Concrete Acquisition IV, LLC (5720); Concrete Acquisition V, LLC (5777); Concrete Acquisition VI, LLC (5840); Concrete XXXIII Acquisition, Inc. (6120); Concrete XXXIV Acquisition, Inc. (6167); Concrete XXXV Acquisition, Inc. (6206); Concrete XXXVI Acquisition, Inc. (6240); Eastern Concrete Materials, Inc. (1165); Hamburg Quarry Limited Liability Company (3592); Ingram Concrete, LLC (6753); Local Concrete Supply & Equipment, LLC (6597); Master Mix Concrete, LLC (0135); Master Mix, LLC (8532); MG, LLC (9279); NYC Concrete Materials, LLC (0666); Pebble Lane Associates, LLC (6520); Redi-Mix Concrete, L.P. (4765); Redi-Mix GP, LLC (N/A); Redi-Mix, LLC (6751); Riverside Materials, LLC (3588); San Diego Precast Concrete, Inc. (6282); Sierra Precast, Inc. (4227); Smith Pre-Cast, Inc. (0673); Superior Concrete Materials, Inc. (6503); Titan Concrete Industries, Inc. (6374); U.S. Concrete On-Site, Inc. (0662); USC Atlantic, Inc. (6002); USC Management Co., LLC (6749); USC Payroll, Inc. (0665); and USC Technologies, Inc. (6055). The location of the debtors' corporate headquarters and the debtors' service address is: 2925 Briarpark, Suite 1050, Houston, Texas 77042.

D. Holtz (the "Holtz Declaration"), attached hereto as **Exhibit B** and incorporated by reference herein. In further support of this Application, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules, and Rule 2014-1 of the Local Rules of the Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

## Background

4. On April 29, 2010 (the "Petition Date"), U.S. Concrete, Inc. and 43 of its affiliates each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and an official committee of unsecured creditors has not been appointed. On April 30, 2010, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases.

5. The Debtors are a major producer of ready-mixed concrete, precast concrete products, and concrete-related products in select markets in the United States. The Debtors are a public company that employs approximately 2,100 people throughout their more than 140 locations in the United States. They operate principally in Texas, California, New Jersey/

New York, and Michigan, with those operations representing approximately 35%, 30%, 15%, and 9%, respectively, of the Debtors' 2009 consolidated revenue.

6. The Debtors filed a pre-negotiated plan of reorganization (the "Plan") and corresponding disclosure statement on the Petition Date, and the Court has scheduled a hearing to seek approval of the disclosure statement and solicitation materials for June 3, 2010 at 3:30 p.m., prevailing Eastern Time. The Debtors' prepetition bondholders—a significant majority of which have entered into a Restructuring and Lock-Up Agreement to vote in favor of the Plan—are the only creditors impaired under the Plan.

## Relief Requested

7. By this Application, the Debtors seek entry of an order authorizing the employment and retention of AlixPartners pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) as their restructuring advisors in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and AlixPartners dated as of April 23, 2010 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit C** and incorporated herein by reference.

## AlixPartners' Qualifications

8. The Debtors are familiar with the professional standing and reputation of AlixPartners. The Debtors' understand that AlixPartners has a wealth of experience in providing restructuring advisory services to financially troubled organizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

9. AlixPartners is well-suited to provide the restructuring services required by the Debtors. AlixPartners' professionals have assisted and provided strategic advice to debtors,

creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases. AlixPartners, its predecessor entities, and its affiliate, AP Services, LLC, have provided restructuring or crisis management services to debtors in numerous large cases in this district and in other districts, including, most recently, *In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (MFW) (Bankr. D. Del. 2009); *In re VeraSun Energy Corp.*, No. 08-12606 (BLS) (Bankr. D. Del. 2008); *In re Motor Coach Indus. Int'l*, No. 08-12136 (BLS) (Bankr. D. Del. 2008); *In re SemCrude, L.P.*, No. 08-11525 (BLS) (Bankr. D. Del. 2008); *In re ACG Holdings, Inc.*, No. 08-11467 (CSS) (Bankr. D. Del. 2008); *In re Hilex Poly Co., LLC*, No. 08-10890 (KJC) (Bankr. D. Del. 2008); *In re Tropicana Entm't., LLC*, No. 08-10856 (KJC) (Bankr. D. Del. 2008); *In re Charys Holding Co., Inc.*, No. 08-10289 (BLS) (Bankr. D. Del. 2008); *In re Remy Int'l, Inc.*, No. 07-11481 (KJC) (Bankr. D. Del. 2007); *In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC) (Bankr. D. Del. 2007); *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. 2006); *In re Sea Containers Ltd.*, No. 06-11156 (KJC) (Bankr. D. Del. 2006); see also *In re General Motors Corp.*, No. 09-50026 (REG) (Bankr. S.D.N.Y. 2009); *In re Gen. Growth Props., Inc.*, No. 09-11977 (ALG) (Bankr. S.D.N.Y. 2009); *In re Charter Commc'ns, Inc.*, No. 09-11435 (JMP) (Bankr. S.D.N.Y. 2009); *In re BearingPoint, Inc.*, No. 09-10691 (REG) (Bankr. S.D.N.Y. 2009); *In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. 2009); *In re Bally Total Fitness of Greater New York*, No. 08-14818 (BRF) (Bankr. S.D.N.Y. 2008) and No. 07-12395 (BRL) (Bankr. S.D.N.Y. 2007); *In re Paper Int'l, Inc.*, No. 08-13917 (RDD) (Bankr. S.D.N.Y. 2008); *In re Gainey Corp.*, No. 08-09092 (JDG) (Bankr. W.D. Mich. 2008); *In re BHM Technologies*, No. 08-04413 (SWD) (Bankr. W.D. Mich. 2008); *In re Caruso Homes, Inc.*, No.08-18254 (JFS) (Bankr. D. Md. 2008); *In re*

*Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. 2006); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. 2005).[2]

10. Furthermore, in conducting its prepetition work on behalf of the Debtors, AlixPartners acquired significant knowledge of the Debtors and their businesses and is now familiar with the Debtors' financial affairs, debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, AlixPartners' professionals have worked closely with the Debtors' management and their other advisors. Accordingly, AlixPartners has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.

### Services To Be Provided

11. Subject to further order of the Court and consistent with the Engagement Letter, the Debtors request the employment and retention of AlixPartners to render the following restructuring and advisory services including:[3]

    a. Work with the senior management and other employees of the Debtors and their advisors to provide financial consulting services and restructuring advice, including the evaluation of various restructuring and/or financing alternatives.

    b. Assist the Debtors with the preparation of their statements of financial affairs, schedules, monthly operating reports, and other regular reports required in these chapter 11 cases and in contract rejection analysis.

    c. Assist the Debtors with various motions and pleadings to be filed in these chapter 11 cases, and render testimony, as requested from time to time, regarding any of the matters to which AlixPartners is providing services.

---

[2] Because of the voluminous nature of the orders cited herein and in footnote 4, such orders are not attached to the Application. Copies of these orders are available upon request of the Debtors' counsel.

[3] The description of the services to be rendered pursuant to the Engagement Letter herein is a summary. To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

5

d.  Assist management with its existing short-term cash flow and liquidity forecasting process, including updating, monitoring, and reporting actual activity against that forecasted.

e.  Assist with the development and distribution of information required by the Debtors' various constituents, including any statutory committees, suppliers, lenders, and investors.

f.  Assist with the preparation of the Debtors' business plans and financial forecasts and in monitoring and reporting actual activity against that forecasted, as necessary.

g.  Assist the Debtors in developing and executing a communications strategy covering all key constituents, including customers, suppliers, employees, creditors, and the media.

h.  Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

12. The Debtors and AlixPartners intend that all of the services that AlixPartners will provide to the Debtors will be: (a) appropriately directed by the Debtors so as to avoid duplicative efforts among the other professionals retained in these chapter 11 cases; and (b) performed in accordance with applicable standards of the profession.

13. The Engagement Letter also contains standard indemnification language with respect to AlixPartners' services, including, without limitation, an agreement by the Debtors to indemnify AlixPartners, its affiliates, and its partners, directors, officers, owners, employees, and agents from and against all claims, liabilities, losses, expenses, and actual damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter. Accordingly, as part of this Application, the Debtors request that this Court approve the indemnification provisions as set forth in the Engagement Letter.

14. If AlixPartners finds it desirable to augment its professional staff with independent contractors (each, an "Independent Contractor") in these chapter 11 cases, (a) AlixPartners will file, and require the Independent Contractor to file, declarations indicating

that the Independent Contractor has reviewed the list of the interested parties in these chapter 11 cases, disclosing the Independent Contractor's relationships, if any, with the interested parties, and indicating that the Independent Contractor is disinterested, (b) the Independent Contractor will remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Debtors, and (c) the Independent Contractor will represent that he/she will not work for the Debtors or other parties-in-interest in these chapter 11 cases during the time AlixPartners is involved in providing services to the Debtors. AlixPartners will charge for an Independent Contractor's services at the rate charged to AlixPartners by such Independent Contractor.

### Professional Compensation

15. The Debtors understand that AlixPartners intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of this Court, guidelines established by the Office of the U.S. Trustee, and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure"), to which the Debtors respectfully refers this Court for a full recitation of the Fee Structure and the terms and conditions related thereto.

16. The standard hourly rates, subject to periodic adjustments, charged by additional AlixPartners professionals that may be assigned as Temporary Staff to these chapter 11 cases are as follows:

| Managing Directors | $710-995 |
| Directors | $530-685 |
| Vice Presidents | $395-520 |
| Associates | $280-380 |
| Analysts | $245-270 |
| Paraprofessionals | $190-210 |

7

17. AlixPartners reviews and revises its billing rates on January 1 of each year.

18. In addition to compensation for professional services rendered by AlixPartners personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these chapter 11 cases, including, but not limited to, transportation costs, lodging, food, telephone, third party copying, and messenger services.

19. AlixPartners typically works for compensation that includes base fee and contingent incentive compensation earned upon achieving meaningful results. In the instant case, AlixPartners is not seeking contingent incentive compensation.

20. The Fee Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms in connection with the rendering of similar services under similar circumstances. In determining the Fee Structure to be paid to AlixPartners and the reasonableness of such compensation, the Debtors compared AlixPartners' fee proposal to other proposals received by the Debtors in the restructuring advisor selection process. After such comparison, AlixPartners and the Debtors believe that the Fee Structure is in fact reasonable, market-based, and designed to compensate fairly AlixPartners for its work and to cover fixed and routine overhead expenses.

21. AlixPartners' comprehensive strategic, financial, accounting, analytical, and operational expertise, as well as its capital markets knowledge, financing skills, restructuring and liquidation capabilities, mergers and acquisitions expertise, and its state-of-the-art bankruptcy advisory services, some or all of which may be required by the Debtors during the term of AlixPartners' engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of AlixPartners' services hereunder cannot be measured solely by reference to the number of hours to be expended by AlixPartners' professionals in the

8

K&E 16320894.9

performance of such services. Indeed, the Debtors and AlixPartners have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of AlixPartners and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for AlixPartners, and (b) the actual time and commitment required of AlixPartners and its professionals to perform its services under the Engagement Agreement may vary substantially from week to week and month to month, creating "peak load" issues for AlixPartners.

22. AlixPartners will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these cases by category and nature of the services rendered and reasonably detailed descriptions of those services provided on behalf of the Debtors, the approximate time expended in providing those services (in .10 of an hour increments), and the individuals who provided professional services on behalf of the Debtors. AlixPartners will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines established by the U.S. Trustee, and any applicable orders of this Court.

23. AlixPartners received from the Debtors an initial advance retainer of $100,000 on February 19, 2010, $25,000 on March 2, 2010, $25,000 on March 12, 2010, and $100,000 on April 27, 2010 (collectively, the "Retainer"). Pursuant to the Engagement Letter, invoiced amounts have been recouped against the Retainer, and payments on the invoices have been used to replenish the Retainer. During the 90 days prior to the Petition Date, the Debtors paid AlixPartners a total of $982,716.96, incurred in providing services to the Debtors in contemplation of, and in connection with, prepetition restructuring activities.

24. Due to ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the Petition Date, AlixPartners has incurred but unbilled fees and reimbursable expenses totaling $489.50, which relate to the prepetition period. AlixPartners hereby seeks this Court's approval to apply the Retainer to these amounts and any further prepetition fees and expenses AlixPartners becomes aware of during its ordinary course billing review and reconciliation. Upon the proposed applications of the Retainer, the Debtors would not owe AlixPartners any sums for pre-petition services.

## AlixPartners' Disinterestedness & Eligibility

23. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Holtz Declaration: (a) AlixPartners is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors' estates; and (b) AlixPartners has no connection to the Debtors, their creditors, or their related parties.

24. AlixPartners will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that AlixPartners discovers any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention, AlixPartners will use reasonable efforts to file promptly a supplemental declaration.

25. AlixPartners has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

## Basis for Relief

26. Section 327(a) of the Bankruptcy Code provides that a debtor subject to court approval:

10

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

27. In addition, the Debtors seek approval of the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a) (emphasis added).

28. Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

29. The terms and conditions of the Engagement Letter, including the indemnification provisions contained therein, were negotiated by the Debtors and AlixPartners at arm's length and in good faith. The Debtors and AlixPartners respectfully submit that the indemnification provisions are customary and reasonable for restructuring advisory engagements, both out of court and in comparable chapter 11 cases, and reflect the qualifications and limitations on

11

indemnification provisions that are customary in this district and other jurisdictions.[4] Further, when viewed in conjunction with the other terms of AlixPartners' proposed retention, the indemnification provisions contained in the Engagement Letter are reasonable and in the best interests of the Debtors' estates, creditors, and all parties in interest.

30. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

## Notice

31. The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) the agent for the Debtors' postpetition secured lenders; (c) the indenture trustee for the 8.375% senior subordinated notes; (d) the informal committee of the Debtors' senior subordinated notes; (e) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (f) the Securities and Exchange Commission; (g) the Internal Revenue Service; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice is necessary.

---

[4] *See, e.g., In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (MFW) (Bankr. D. Del. July 8, 2009) (order authorizing retention of AlixPartners); *In re VeraSun Energy Corp.*, No. 08-12606 (BLS) (Bankr. D. Del. Dec. 9, 2008) (same); *In re Motor Coach Indus. Int'l*, No. 08-12136 (BLS) (Bankr. D. Del. Oct. 15, 2008) (same); *In re SemCrude, L.P.*, No. 08-11525 (BLS) (Bankr. D. Del. Aug. 19, 2008) (same); *In re ACG Holdings, Inc.*, No. 08-11467 (CSS) (Bankr. D. Del. Aug. 12, 2008) (same); *In re Hilex Poly Co., LLC*, No. 08-10890 (KJC) (Bankr. D. Del. May 30, 2008) (same); *In re Tropicana Entm't, LLC*, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (same); *In re FLYi, Inc.*, No. 05-20011 (MFW) (Bankr. D. Del. Jan. 12, 2006) (order authorizing retention of Miller Buckfire & Co., LLC ); *In re Foamex Int'l, Inc.*, No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (same); *In re Oakwood Homes Corp.*, No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (same); *see also In re Gen. Growth Props., Inc.*, No. 09-11977 (ALG) (Bankr. S.D.N.Y. July 13, 2009) (order authorizing the retention of AlixPartners); *In re Charter Commc'ns, Inc.*, No. 09-11435 (Bankr. S.D.N.Y. April 15, 2009) (same); *In re Paper Int'l, Inc.*, No. 08-13971 (Bankr. S.D.N.Y. Oct. 31, 2008) (same); *In re Granite Broad. Corp.*, No. 06-12984 (Bankr. S.D.N.Y. Feb. 13, 2007) (ordering authorizing retention of Houlihan Lokey Howard & Zukin Capital, Inc.); *In re Dana Corp.*, No. 06-10354 (Bankr. S.D.N.Y. March 26, 2006) (ordering authorizing retention of AlixPartners); *In re Calpine Corp.*, No. 05-60200 (Bankr. S.D.N.Y. March 7, 2006) (same); *In re Parmalat USA Corp.*, No. 04-11139 (same).

## No Prior Request

32. No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

K&E 16320894.9

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: May 4, 2010

*Robert D. Hardy*
Robert D. Hardy
Executive Vice President and Chief Financial Officer