Debtors may seek to investigate, file, and prosecute Claims and may object to Claims after Confirmation and Consummation of the Plan, irrespective of whether this Disclosure Statement identifies such Claims or objections to Claims.

**Information was provided by the Debtors and was relied upon by the Debtors' advisors.**

Counsel to and other advisors retained by the Debtors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

**No representations outside this Disclosure Statement are authorized.**

No representations concerning or relating to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to counsel to the Debtors, counsel to the Notes Committee, and the Office of the United States Trustee for the District of Delaware.

<u>**Confirmation of the Plan**</u>

**The Confirmation Hearing**

The Bankruptcy Court has scheduled the Confirmation Hearing for [•], 2010 at [•] a.m./p.m., prevailing Eastern Time, before the Honorable Peter J. Walsh, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street, 6th Floor, Courtroom 1, Wilmington, Delaware 19801. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or by any notice of adjournment of the Confirmation Hearing filed by the Debtors and posted on their website at http://dm.epiq11.com/usconcrete.

**Requirements For Confirmation of the Plan**

Among the requirements for the Confirmation of the Plan are that the Plan (a) is accepted by all Impaired Classes of Claims and Interests, or if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, (b) is feasible, and (c) is in the "best interests" of Holders of Claims and Interests that are Impaired under the Plan.

*Requirements of Section 1129(a) of the Bankruptcy Code*

The following requirements must be satisfied pursuant to section 1129(a) of the Bankruptcy Code before a bankruptcy court may confirm a plan of reorganization:

- The plan complies with the applicable provisions of the Bankruptcy Code.

- The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under a plan, for services or for costs and expenses in or in connection with the case, in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, a bankruptcy court as reasonable.

- The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor or a successor to the debtor under the plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policies.

- The proponent of the plan has disclosed the identity of any "insider" (as defined in section 101 of the Bankruptcy Code) that will be employed or retained by the reorganized debtors and the nature of any compensation for such insider.

- With respect to each holder within an impaired class of claims or interests —

  - each such holder (a) has accepted the plan, or (b) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on such date; or

  - if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class due to its election to retain a lien, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

- With respect to each class of claims or interests, such class (a) has accepted the plan, or (b) is not impaired under the plan (subject to the "cramdown" provisions discussed below).

- Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

  - with respect to a claim of a kind specified in sections 507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the effective date of the plan, the holder of the claim will receive on account of such claim cash equal to the allowed amount of such claim, unless otherwise agreed;

  - with respect to a class of claim of the kind specified in sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code, each holder of a claim of such class will receive (a) if such class has accepted the plan, deferred cash payments of a value, on the effective date of the plan, equal to the allowed amount of such claim; or (b) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

44

- with respect to a priority tax claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

- If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any "insider," as defined in section 101 of the Bankruptcy Code.

- Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

- All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

- The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(i)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

### Best Interests of Creditors

Notwithstanding acceptance of a plan by each impaired class, to confirm a plan, a bankruptcy court must determine that it is in the best interests of each holder of a claim or interest in any such impaired class that has not voted to accept the plan. Accordingly, if an impaired class does not unanimously accept a plan, the "best interests" test requires that a bankruptcy court find that the plan provides to each member of such impaired class a recovery on account of the member's claim or Interest that has a value, as of the effective date of the plan, at least equal to the value of the distribution that each such member would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code on such date. For additional information, as well as the Debtors' "best interests" analysis, please see the Section entitled "Liquidation Analysis."

### Acceptance

Section 1126(c) of the Bankruptcy Code provides that a class of claims has accepted a plan of reorganization if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class.

Section 1126(d) of the Bankruptcy Code provides that a class of interests has accepted a plan of reorganization if such plan has been accepted by holders of such interests that hold at least two-thirds in amount of the allowed interests of such class.

### Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan of reorganization is not likely to be followed by the liquidation, or the need for further financial

reorganization of the debtors, or any successor to the debtors (unless such liquidation or reorganization is proposed in the plan of reorganization).

To determine whether the Plan meets this feasibility requirement, the Debtors have analyzed their ability to meet their respective obligations under the Plan. As part of this analysis, the Debtors have prepared the Financial Projections. Based upon the Financial Projections, the Debtors believe that they will be a viable operation following the Chapter 11 Cases, and that the Plan will meet the feasibility requirements of the Bankruptcy Code.

### *Requirements of Section 1129(b) of the Bankruptcy Code*

The Bankruptcy Code permits confirmation of a plan of reorganization notwithstanding rejection of the plan by an impaired class so long as (a) the plan of reorganization otherwise satisfies the requirements for confirmation, (b) at least one impaired class of claims has accepted the plan of reorganization without taking into consideration the votes of any insiders in such class, and (c) the plan of reorganization is "fair and equitable" and does not "discriminate unfairly" as to any impaired class that has not accepted such plan. These so-called "cramdown" provisions are set forth in section 1129(b) of the Bankruptcy Code.

#### *"Fair and Equitable"*

The Bankruptcy Code establishes different "cramdown" tests for determining whether a plan is "fair and equitable" to dissenting impaired classes of secured creditors, unsecured creditors, and Interest holders as follows:

##### *Secured Creditors*

A plan of reorganization is fair and equitable as to an impaired class of secured claims that rejects the plan if the plan provides: (a) that each of the holders of the secured claims included in the rejecting class (i) retains the liens securing its claim to the extent of the allowed amount of such claim, to the extent of the allowed amount of such claims, whether the property subject to those liens is retained by the debtor or transferred to another entity, and (ii) receives on account of its secured claim deferred cash payments having a present value, as of the effective date of the plan of reorganization, at least equal to the value of such Holder's interest in the Estate's interest in such property; (b) that each of the holders of the secured claims included in the rejecting class realizes the "indubitable equivalent" of its allowed secured claim; or (c) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of such liens, with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds in accordance with clause (a) or (b) of this paragraph.

##### *Unsecured Creditors*

A plan of reorganization is fair and equitable as to an impaired class of unsecured claims that rejects the plan if the plan provides that: (a) each Holder of a claim included in the rejecting class receives or retains under the plan property of a value, as of the effective date of the plan of reorganization, equal to the amount of its allowed claim; or (b) the holders of claims and Interests that are junior to the claims of the rejecting class will not receive or retain any property under the plan of reorganization on account of such junior claims or interests.

K&E 16510765

*Holders of Interests*

A plan of reorganization is fair and equitable as to an impaired class of Interests that rejects the plan if the plan provides that: (a) each holder of an Interest included in the rejecting class receives or retains under the plan property of a value, as of the effective date of the plan of reorganization, equal to the greatest of the allowed amount of (i) any fixed liquidation preference to which such holder is entitled, (ii) the fixed redemption price to which such holder is entitled, or (iii) the value of the interest; or (b) the holder of any interest that is junior to the interests of the rejecting class will not receive or retain any property under the plan of reorganization on account of such junior interest.

The Plan is fair and equitable as to Holders of Claims in Class 4 because, pursuant to the Plan Support Agreement, the Debtors have sufficient support from such Holders so that such Classes vote to accept the Plan. The Plan is fair and equitable as to Holders of Claims in Classes 1, 2, 3, 5, and 6 because the Plan provides that their Allowed Claims and Allowed Interests are Unimpaired. The Plan is fair and equitable as to Holders of Interests in Class 7 because such Holders stand to recover more under the Plan than in a hypothetical chapter 7 liquidation (where such Holders would receive no recovery). The Debtors believe the Plan is fair and equitable as to Holders of Claims in Class 8, who are conclusively deemed to have rejected the Plan, because there are no Claims or Interests junior to Class 8 Claims and, as such, the Plan does not provide any distribution to such Claims or Interests.

*"Unfair Discrimination"*

A plan of reorganization does not "discriminate unfairly" if a dissenting class is treated substantially equally to other classes similarly situated and no such class receives more than it is legally entitled to receive for its claims or interests.

The Debtors do not believe that the Plan discriminates unfairly against any impaired Class of Claims or Interests. The Debtors believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

*Valuation of the Debtors*

In conjunction with formulating the Plan, the Debtors determined that it was necessary to estimate the post-Confirmation going concern value of the Debtors. Accordingly, such valuation is set forth in the Section herein entitled "Valuation Analysis."

## Effect of Confirmation of the Plan

### Retention of Jurisdiction by the Bankruptcy Court

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including (i) the resolution of any request for payment of any Administrative Claim, and (ii) the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.  decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.  resolve any matters related to:  (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.  ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.  adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.  adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.  enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.  enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.K.1 of the Plan;

13.  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.  determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

48

15. enter an order or Final Decree concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII of the Plan, regardless of whether such termination occurred prior to or after the Effective Date;

22. enforce all orders previously entered by the Bankruptcy Court; and

23. hear any other matter not inconsistent with the Bankruptcy Code.

**Settlement, Release, Injunction, and Related Provisions**

*Compromise and Settlement*

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE ALLOWANCE, CLASSIFICATION, AND TREATMENT OF ALL ALLOWED CLAIMS AND THEIR RESPECTIVE DISTRIBUTIONS AND TREATMENTS HEREUNDER TAKES INTO ACCOUNT AND CONFORMS TO THE RELATIVE PRIORITY AND RIGHTS OF THE CLAIMS AND THE INTERESTS IN EACH CLASS IN CONNECTION WITH ANY CONTRACTUAL, LEGAL, AND EQUITABLE SUBORDINATION RIGHTS RELATING THERETO WHETHER ARISING UNDER GENERAL PRINCIPLES OF EQUITABLE SUBORDINATION, SECTION 510 OF THE BANKRUPTCY CODE, OR OTHERWISE. AS OF THE EFFECTIVE DATE, ANY AND ALL SUCH RIGHTS DESCRIBED IN THE PRECEDING SENTENCE ARE SETTLED, COMPROMISED, AND RELEASED PURSUANT HERETO. THE CONFIRMATION ORDER WILL CONSTITUTE THE BANKRUPTCY COURT'S FINDING AND DETERMINATION THAT THE SETTLEMENTS REFLECTED IN THE PLAN ARE (1) IN THE BEST INTERESTS OF THE DEBTORS, THEIR ESTATES, AND ALL HOLDERS OF CLAIMS, (2) FAIR, EQUITABLE, AND REASONABLE, (3) MADE IN GOOD FAITH, AND (4) APPROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019. IN ADDITION, THE ALLOWANCE, CLASSIFICATION, AND TREATMENT OF ALLOWED CLAIMS TAKE INTO ACCOUNT ANY CAUSES OF ACTION, WHETHER UNDER THE BANKRUPTCY CODE OR OTHERWISE UNDER APPLICABLE NON-BANKRUPTCY LAW, THAT MAY EXIST BETWEEN THE DEBTORS AND ANY RELEASED PARTY; AS OF THE EFFECTIVE DATE, ANY AND ALL SUCH CAUSES OF ACTION ARE SETTLED, COMPROMISED, AND RELEASED PURSUANT HERETO. THE CONFIRMATION ORDER SHALL APPROVE THE**

RELEASES BY ALL ENTITIES OF ALL SUCH CONTRACTUAL, LEGAL, AND EQUITABLE SUBORDINATION RIGHTS OR CAUSES OF ACTION THAT ARE SATISFIED, COMPROMISED, AND SETTLED PURSUANT HERETO. NOTHING IN ARTICLE VIII.A OF THE PLAN SHALL COMPROMISE OR SETTLE IN ANY WAY WHATSOEVER, ANY CAUSES OF ACTION THAT THE DEBTORS OR THE REORGANIZED DEBTORS, AS APPLICABLE, MAY HAVE AGAINST A NON-RELEASED PARTY OR PROVIDE FOR THE INDEMNITY OF ANY NON-RELEASED PARTY.

IN ACCORDANCE WITH THE PROVISIONS OF THIS PLAN, AND PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AFTER THE EFFECTIVE DATE (1) THE REORGANIZED DEBTORS MAY, IN THEIR SOLE AND ABSOLUTE DISCRETION, COMPROMISE AND SETTLE CLAIMS AGAINST THE DEBTORS AND (2) THE REORGANIZED DEBTORS MAY, IN THEIR SOLE AND ABSOLUTE DISCRETION, COMPROMISE AND SETTLE CAUSES OF ACTION AGAINST OTHER ENTITIES.

### *Discharge of Claims and Termination of Interests*

PURSUANT TO SECTION 1141(D) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR IN ANY CONTRACT, INSTRUMENT, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, THE DISTRIBUTIONS, RIGHTS, AND TREATMENT THAT ARE PROVIDED IN THE PLAN SHALL BE IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE, EFFECTIVE AS OF THE EFFECTIVE DATE, OF CLAIMS (INCLUDING ANY INTERCOMPANY CLAIMS RESOLVED OR COMPROMISED AFTER THE EFFECTIVE DATE BY THE REORGANIZED DEBTORS), INTERESTS, AND CAUSES OF ACTION OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS OR INTERESTS FROM AND AFTER THE PETITION DATE, WHETHER KNOWN OR UNKNOWN, AGAINST, LIABILITIES OF, LIENS ON, OBLIGATIONS OF, RIGHTS AGAINST, AND INTERESTS IN, THE DEBTORS OR ANY OF THEIR ASSETS OR PROPERTIES, REGARDLESS OF WHETHER ANY PROPERTY SHALL HAVE BEEN DISTRIBUTED OR RETAINED PURSUANT TO THE PLAN ON ACCOUNT OF SUCH CLAIMS AND INTERESTS, INCLUDING DEMANDS, LIABILITIES, AND CAUSES OF ACTION THAT AROSE BEFORE THE EFFECTIVE DATE, ANY LIABILITY (INCLUDING WITHDRAWAL LIABILITY) TO THE EXTENT SUCH CLAIMS OR INTERESTS RELATE TO SERVICES PERFORMED BY EMPLOYEES OF THE DEBTORS PRIOR TO THE EFFECTIVE DATE AND THAT ARISE FROM A TERMINATION OF EMPLOYMENT, ANY CONTINGENT OR NON-CONTINGENT LIABILITY ON ACCOUNT OF REPRESENTATIONS OR WARRANTIES ISSUED ON OR BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN SECTIONS 502(G), 502(H), OR 502(I) OF THE BANKRUPTCY CODE; PROVIDED, HOWEVER, THAT, UPON THE EFFECTIVE DATE, ALL ALLOWED GENERAL UNSECURED CLAIMS SHALL BE REINSTATED AND SHALL NOT BE SUBJECT TO THE DISCHARGE PROVISIONS OF ARTICLE VIII.B OF THE PLAN. ANY DEFAULT BY THE DEBTORS OR AFFILIATES WITH RESPECT TO ANY CLAIM OR INTEREST THAT EXISTED IMMEDIATELY PRIOR TO OR ON ACCOUNT OF THE FILING OF THE CHAPTER 11 CASES SHALL BE DEEMED CURED ON THE EFFECTIVE DATE. THE CONFIRMATION ORDER SHALL BE A JUDICIAL DETERMINATION OF THE DISCHARGE OF ALL CLAIMS AND INTERESTS SUBJECT TO THE EFFECTIVE DATE OCCURRING. ARTICLE VIII.B OF THE PLAN ALSO SHALL APPLY TO ANY AND ALL CLAIMS AGAINST THE NON-FILERS ON ACCOUNT OF OR RELATING TO THE NOTES.

*Releases*

*Release of Liens*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR IN ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, ON THE EFFECTIVE DATE AND CONCURRENTLY WITH THE APPLICABLE DISTRIBUTIONS MADE PURSUANT TO THE PLAN AND, IN THE CASE OF A SECURED CLAIM, SATISFACTION IN FULL OF THE PORTION OF THE SECURED CLAIM THAT IS ALLOWED AS OF THE EFFECTIVE DATE, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATES SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL OF THE RIGHTS, TITLE, AND INTERESTS OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL REVERT TO THE REORGANIZED DEBTORS AND THEIR SUCCESSORS AND ASSIGNS.

*Releases by the Debtors*

PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THEIR AFFILIATES, THE CHAPTER 11 CASES, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN AND RELATED DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE OF THE PLAN, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATED TO ANY CONTRACTUAL OR FIXED MONETARY OBLIGATION OWED TO THE DEBTORS OR THE REORGANIZED DEBTORS. NOTWITHSTANDING ANY OTHER PROVISION OF THE PLAN TO THE CONTRARY, THE DEBTORS AND THE NON-FILERS DO NOT RELEASE AND SHALL NOT BE DEEMED TO HAVE RELEASED ANY CLAIMS, RIGHTS, OR CAUSES OF ACTION RELATED TO THE

51

OPERATION OF THE MICHIGAN JOINT VENTURE, INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS, RIGHTS, OR CAUSES OF ACTION AGAINST THE MICHIGAN JOINT VENTURE ENTITIES OR THE MICHIGAN JOINT VENTURE PARTNER OR ANY RIGHTS UNDER ANY AGREEMENTS RELATED TO THE MICHIGAN JOINT VENTURE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THIS ARTICLE VIII.D; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

*Releases by Holders of Claims and Interests*

EXCEPT AS PROVIDED IN THE LAST SENTENCE OF ARTICLE VIII.E OF THE PLAN, AS OF THE EFFECTIVE DATE, EACH HOLDER OF A CLAIM OR AN INTEREST IN THE DEBTORS, EXCEPT TO THE EXTENT THAT SUCH HOLDER EITHER VOTED TO REJECT THE PLAN OR IS CLASSIFIED IN A CLASS THAT IS DEEMED TO REJECT THE PLAN, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED AND DISCHARGED THE THIRD PARTY RELEASEES FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED ON BEHALF OF A DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE NON-FILERS, THE DEBTORS' RESTRUCTURING, THE CHAPTER 11 CASES, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE RELATED DISCLOSURE STATEMENT, THE RELATED PLAN SUPPLEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT,

OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE THIRD PARTY RELEASEES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THIS ARTICLE VIII.E; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY ENTITY GRANTING A THIRD PARTY RELEASE FROM ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD PARTY RELEASE.

NOTHING IN THIS THIRD PARTY RELEASE SHALL BE DEEMED TO RELEASE OR IMPAIR ANY ALLOWED GENERAL UNSECURED CLAIM AGAINST THE DEBTORS, AND ALL ALLOWED GENERAL UNSECURED CLAIMS AGAINST THE DEBTORS SHALL BE REINSTATED UNDER THE PLAN.

*Exculpation*

NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM ANY EXCULPATED CLAIM OR ANY OBLIGATION, CAUSE OF ACTION, OR LIABILITY FOR ANY EXCULPATED CLAIM; *PROVIDED, HOWEVER,* THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; *PROVIDED FURTHER* THAT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN. THE DEBTORS AND THE REORGANIZED DEBTORS (AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS, AND ATTORNEYS) HAVE PARTICIPATED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF THE SECURITIES PURSUANT TO THE PLAN, AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

*Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.D OR ARTICLE VIII.E HEREOF, DISCHARGED PURSUANT TO ARTICLE VIII.A HEREOF, OR ARE SUBJECT TO EXCULPATION PURSUANT TO

ARTICLE VIII.F HEREOF ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE NON-FILERS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN. SUBJECT ONLY TO ENTRY OF A FINAL ORDER APPROVING THE CALIFORNIA WAGE AND HOUR 9019 MOTION, THE CALIFORNIA WAGE AND HOUR LITIGATION IS PERMANENTLY ENJOINED BY THIS ARTICLE VIII.G AND EACH AND EVERY PLAINTIFF, CLASS MEMBER, OR PARTY TO THE CALIFORNIA WAGE AND HOUR LITIGATION IS PERMANENTLY BOUND BY THIS INJUNCTION.

## Important Securities Laws Disclosure

Under the Plan, shares of New Equity will be distributed to Holders of Claims in Class 4 and New Warrants will be issued to Holders of Interests in Class 7.

New U.S. Concrete Holdings and the Reorganized Debtors will rely on section 1145 of the Bankruptcy Code to exempt from the registration requirements of the Securities Act the offer and distribution of the New Equity. Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan of reorganization from registration under Section 5 of the Securities Act and state laws when such securities are to be exchanged for claims or principally in exchange for claims and partly for cash. In general, securities issued under section 1145 may be resold without registration unless the recipient is an "underwriter" with respect to those securities. Section 1145(b)(1) of the Bankruptcy Code defines an "underwriter" as any person who:

1.      purchases a claim against, an interest in, or a claim for an administrative expense against the debtor, if that purchase is with a view to distributing any security received in exchange for such a claim or interest;

2.      offers to sell securities offered under a plan of reorganization for the holders of those securities;

3.      offers to buy those securities from the holders of the securities, if the offer to buy is (a) with a view to distributing those securities, and (b) under an agreement made in connection with the

54

plan of reorganization, the completion of the plan of reorganization, or with the offer or sale of securities under the plan of reorganization; or

4.    is an issuer with respect to the securities, as the term "issuer" is defined in Section 2(a)(11) of the Securities Act.

To the extent that Entities who receive the New Equity are deemed to be "underwriters," resales by those Entities would not be exempted from registration under the Securities Act or other applicable law by section 1145 of the Bankruptcy Code.  Those Entities would, however, be permitted to sell New Equity or other securities without registration if they are able to comply with the provisions of Rule 144 under the Securities Act, as described further below.

**You should confer with your own legal advisors to help determine whether or not you are an "underwriter."**

Under certain circumstances, Holders of New Equity deemed to be "underwriters" may be entitled to resell their securities pursuant to the limited safe harbor resale provisions of Rule 144 of the Securities Act, to the extent available, and in compliance with applicable state securities laws.  Generally, Rule 144 of the Securities Act provides that persons who are affiliates of an issuer who resell securities will not be deemed to be underwriters if certain conditions are met.  These conditions include the requirement that current public information with respect to the issuer be available, a limitation as to the amount of securities that may be sold, the requirement that the securities be sold in a "brokers transaction" or in a transaction directly with a "market maker," and that notice of the resale be filed with the SEC.

<u>Nominee Voting Instructions</u>

Only the Holders of Claims in Class 4 and Holders of Interests in Class 7 are entitled to vote to accept or reject the Plan, and such Holders may do so by completing the appropriate Ballots and returning them in the envelope provided.  The failure of a Holder to deliver a duly executed Ballot will be deemed to constitute an abstention by such Holder with respect to voting to accept or reject the Plan, and such abstentions will not be counted as votes to accept or reject the Plan.  Voting instructions are attached to each Beneficial Holder Ballot.

With respect to Holders of the Claims in Class 4 and Interests in Class 7, a broker, dealer, commercial bank, trust company, or other agent or nominee of beneficial holders (each, a "<u>Nominee</u>") should deliver the Beneficial Holder Ballot and other documents relating to the Plan, including this Disclosure Statement, to each beneficial holder ("<u>Beneficial Holder</u>") of the eligible Note Claims or Interests in U.S. Concrete, Inc., as applicable, for which they serve as Nominee.

A Nominee has two options with respect to voting.  Under the first option, the Nominee will forward the solicitation package, including the Beneficial Holder Ballot and related subscription forms, to each Beneficial Holder for voting and include a return envelope provided by and addressed to the Nominee so that the Beneficial Holder may return the completed Beneficial Holder Ballot to the nominee.  Upon receipt of the Beneficial Holder Ballots, the Nominee will summarize the individual votes of its respective Beneficial Holders on the appropriate Master Ballot and then return the master ballot to the voting agent before the Voting Deadline.

K&E 16510765

Under the second option, if the Nominee elects to "pre-validate" Beneficial Holder Ballots:

The Nominee shall forward the solicitation package or copies thereof (including (a) this Disclosure Statement (together with the Plan attached thereto as Exhibit A, and all other exhibits), (b) an individual Beneficial Holder Ballot that has been pre-validated, as indicated in the paragraph immediately below, and (c) a return envelope provided by and addressed to the Notice, Claims, and Balloting Agent) to the Beneficial Holder within five business days of the receipt by such nominee of the solicitation package in a manner customary in the securities industry;

To "pre-validate" a Beneficial Holder Ballot, the Nominee shall complete and execute the Beneficial Holder Ballot and indicate on the Beneficial Holder Ballot the name of the registered Holder, the amount of securities held by the Nominee for the Beneficial Holder, and the account number(s) for the account(s) in which such securities are held by the Nominee; and

The Beneficial Holder shall return the pre-validated Beneficial Holder Ballot to the Notice, Claims, and Balloting Agent by the Voting Deadline.

If a Master Ballot is received after the Voting Deadline, the votes and elections on such Master Ballot may be counted only in the sole and absolute discretion of the Debtors. The method of delivery of a Master Ballot to be sent to the Notice, Claims, and Balloting Agent is at the election and risk of each Nominee. Except as otherwise provided in this Disclosure Statement, such delivery will be deemed made only when the executed Master Ballot is actually received by the Notice, Claims, and Balloting Agent. Instead of effecting delivery by mail, it is recommended, though not required, that such entities use an overnight or hand delivery service. In all cases, sufficient time should be allowed to assure timely delivery. No Beneficial Holder Ballot should be sent to the Debtors, or the Debtors' financial or legal advisors, but only to the Notice, Claims, and Balloting Agent as set forth under "How do I vote for or against the Plan?" in the Section herein entitled "Questions and Answers Regarding this Disclosure Statement and the Plan."

Nominees must provide appropriate information for each of the items on the Master Ballot, including identifying the votes to accept or reject the Plan.

By returning a Master Ballot, each Nominee will be certifying to the Debtors and the Bankruptcy Court, among other things, that:

- it has received a copy of the Disclosure Statement, the Beneficial Holder Ballots, and the Solicitation Package and has delivered the same to the Beneficial Holders listed on the Beneficial Holder Ballots or to any intermediary Nominee, as applicable.

- it has received a completed and signed Beneficial Holder Ballot from each Beneficial Holder for which it is a Nominee or from an intermediary Nominee, as applicable;

- it is the registered Holder of the Note Claims being voted;

- it has authorized by each such Beneficial Holder or intermediary Nominee, as applicable, to vote on the Plan and to make applicable elections;

- it has properly disclosure: (i) the number of Beneficial Holders who contemplated Beneficial Holder Ballots; (ii) the respective amounts of the Note Claims owned, as may be, by each Beneficial Holder who completed a Beneficial Holder Ballot; (iii) each such Beneficial Holder's respective vote concerning the Plan; (iv) each such Beneficial Holder's certification as to the

56

other Note Claims voted; and (v) the customer account or other identification number for each such Beneficial Holder;

- each such Beneficial Holder has certified to the undersigned or to an intermediary Nominee, as applicable, that it is eligible to vote on the Plan;

- each such Beneficial Holder has certified to the Nominee that such Beneficial Holder has not submitted any other ballot for such Claims held in other accounts or other names, or, if it has submitted another ballot held in other accounts or names, that the Beneficial Holders has certified to the Nominee that such Beneficial Holder has cast the same vote for such Claims, and the undersigned has identified such other accounts or owner and such other ballots; and

- It will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders or by intermediary Nominees (whether properly completed or defective) for at least one year after the Voting Deadline and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

Except as otherwise provided herein, each Master Ballot must be returned in sufficient time to allow it to be RECEIVED by the Notice, Claims, and Balloting Agent by no later than the Voting Deadline.

## Certain U.S. Federal Income Tax Consequences of the Plan

The following discussion summarizes certain federal income tax consequences of the Plan to the Debtors, New U.S. Concrete Holdings, the Holders of Claims, and the Holders of Interests in U.S. Concrete, Inc. based upon the Internal Revenue Code of 1986, as amended (the "IRC"), Treasury regulations promulgated thereunder, judicial authorities, and current administrative rulings and practices now in effect, all of which are subject to change at any time by legislative, judicial, or administrative action. Any such change could be retroactively applied in a manner that could adversely affect the Debtors, New U.S. Concrete Holdings, Holders of Claims, or Holders of Interests. In particular, some of the consequences discussed herein are based on Treasury regulations or IRS Notices that have been proposed but not finalized, which regulations are particularly susceptible to change at any time.

The tax consequences of certain aspects of the Plan are uncertain due to the lack of applicable legal authority and may be subject to administrative or judicial interpretations that differ from the discussion below. The Debtors have not requested, nor do they intend to request, a tax ruling from the Internal Revenue Service (the "IRS"). Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. Further, the federal income tax consequences to the Debtors, New U.S. Concrete Holdings, Holders of Claims, and Holders of Interests may be affected by matters not discussed below. For example, the following discussion does not address state, local, or foreign tax considerations that may be applicable and the discussion does not address the tax consequences of the Plan to certain types of Holders of Claims and Holders of Interests, creditors and stockholders (including foreign persons, financial institutions, life insurance companies, tax-exempt organizations, and taxpayers who may be subject to the alternative minimum tax) who may be subject to special rules not addressed herein. The following discussion assumes that Holders of Claims and Holders of Interests hold such Claims and Interests as "capital assets" within the meaning of Section 1221 of the IRC.

**THE DISCUSSION SET FORTH BELOW IS INCLUDED FOR GENERAL INFORMATION ONLY. THE PLAN PROPONENTS AND THEIR COUNSEL AND FINANCIAL ADVISORS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE**

57

PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN, NOR ARE THEY RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES. THE TAX LAWS APPLICABLE TO CORPORATIONS IN BANKRUPTCY ARE EXTREMELY COMPLEX, AND THE FOLLOWING SUMMARY IS NOT EXHAUSTIVE. HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE STRONGLY URGED TO CONSULT THEIR TAX ADVISORS REGARDING TAX CONSEQUENCES OF THE PLAN, INCLUDING U.S. FEDERAL, STATE AND LOCAL AND FOREIGN TAX CONSEQUENCES.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, ANY TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE IRC. TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE DISCLOSURE STATEMENT. EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## A. Certain U.S. Federal Income Tax Consequences to the Debtors

In general, the Debtors do not expect to incur any substantial tax liability as a result of implementation of the Plan. However, the Debtors do expect to realize a significant amount of cancellation of indebtedness income upon implementation of the Plan, which income is likely to result in the elimination of a substantial portion of the Debtors' tax attributes, including some or all of their net operating losses ("NOLs") and the tax basis in their assets.

**Cancellation of Debt Income**

Under the IRC, a taxpayer generally recognizes gross income to the extent that indebtedness of the taxpayer is cancelled for less than the amount owed by the taxpayer, subject to certain judicial or statutory exceptions. The most significant of these exceptions with respect to the Debtors is that taxpayers who are operating under the jurisdiction of a federal bankruptcy court are not required to recognize such income. In that case, however, the taxpayer must reduce its tax attributes, such as its NOLs, general business credits, capital loss carryforwards, and tax basis in assets, by the amount of the cancellation of indebtedness income ("CODI") avoided.

**Limitation on NOLs and Built-in Losses**

Under Section 382 of the IRC, any corporation that undergoes an "ownership change" within the meaning of Section 382 becomes subject to an annual limitation on its ability to utilize its NOLs and "built-in losses" in its assets. A corporation has a built-in loss in its assets to the extent that the Corporation's tax basis in its assets is greater than the value of such assets. The Debtors may have NOLs remaining after implementation of the Plan, and it is possible that the Debtors will also have a built-in loss in their assets.

The restructuring should constitute an ownership change for purposes of Section 382. If and to the extent that the Debtors have NOLs remaining after implementation of the Plan, then the Debtors' ability to use those NOLs would be subject to an annual limitation. Similarly, if and to the extent that the Debtors have a built-in loss in their assets, then the Debtors' ability to claim a deduction for those built-in

58

losses, including as depreciation or amortization deductions for its assets, could be subject to an annual limitation during the first five years after the restructuring is completed. Outside of bankruptcy, the amount of such annual limitation would be approximately equal to the amount determined by multiplying the long-term tax exempt bond rate (currently approximately 4%) by the Debtors' equity value immediately before the ownership change; however, because the Debtors' ownership change will occur pursuant to a Chapter 11 Plan, certain beneficial exceptions are available.

An exception to the foregoing annual limitation rules generally applies when so-called "qualified creditors" and continuing shareholders of a debtor company in chapter 11 receive, in respect of their claims, at least 50% of the vote and value of the stock of the reorganized debtor (or a controlling corporation if also in chapter 11) pursuant to a confirmed chapter 11 plan (the "382(l)(5) Exception"). Under the 382(l)(5) Exception, a debtor's NOLs and built-in losses ("Pre-Change Losses") are not limited on an annual basis but, instead, are required to be reduced by the amount of any interest deductions claimed during the three taxable years preceding the effective date of the plan of reorganization, and during the part of the taxable year prior to and including the effective date of the plan of reorganization, in respect of all debt converted into stock in the reorganization. If the 382(l)(5) Exception applies and a debtor undergoes another ownership change within two years, the debtor's Pre-Change Losses effectively would be eliminated in their entirety.

Where the 382(l)(5) Exception is not applicable (either because the debtor does not qualify for it or the debtor elects not to utilize the 382(l)(5) Exception), a second special rule will generally apply (the "382(l)(6) Exception"). When the 382(l)(6) Exception applies, a debtor corporation that undergoes an "ownership change" generally is permitted to determine the fair market value of its stock, for purposes of calculating the annual limitation, after taking into account the increase in value resulting from any surrender or cancellation of creditors' claims in the bankruptcy. This differs from the ordinary rule that requires the fair market value of a debtor corporation that undergoes an "ownership change" to be determined before the events giving rise to the change. The 382(l)(6) Exception also differs from the 382(l)(5) Exception in that (i) the debtor corporation is not required to reduce its NOLs by the amount of interest deductions claimed within the prior three-year period and (ii) the debtor may undergo another ownership change within two years without triggering the elimination of its NOLs. Whether a debtor takes advantage of the 382(l)(5) Exception or the 382(l)(6) Exception, the debtor's use of the Pre-Change Losses may be adversely affected if the debtor were to undergo another ownership change.

While it is not certain, it is doubtful at this point that the Debtors will elect to utilize the 382(l)(5) Exception. In the event that the Debtors do not use the 382(l)(5) Exception, the Debtors expect that their use of any remaining Pre-Change Losses after the Effective Date will be subject to limitation based on the rules discussed above, but taking into account the 382(l)(6) Exception.

## B.    Certain U.S. Federal Income Tax Consequences to Holders of Claims and Interests

### (i)    Consequences to Holders of Priority Claims

Pursuant to the Plan, each Holder of a Priority Claim will receive payment in full in Cash on the Effective Date. A Holder that receives Cash in exchange for its Claim pursuant to the Plan generally will recognize gain or loss for U.S. federal income tax purposes in an amount equal to the difference between (i) the amount of Cash received in exchange for its Claim and (ii) the Holder's adjusted tax basis in its Claim. Such gain or loss should be capital in nature (subject to the "accrued interest" and "market discount" rules described below) and should be long term capital gain or loss if the Claim was held for more than one year by the Holder.

(ii)     **Consequences to Holders of Other Secured Claims**

Pursuant to the Plan, each Other Secured Claim will be Reinstated or otherwise rendered Unimpaired for the benefit of the Holder thereof. If an Other Secured Claim is Reinstated, then a Holder thereof should not recognize gain or loss except to the extent that collateral securing such Claim is changed, and the change in collateral constitutes a "significant modification" of the Other Secured Claim within the meaning of the Treasury Regulations promulgated under Section 1001 of the IRC.

(iii)     **Consequences to Holders of General Unsecured Claims**

Pursuant to the Plan, each Holder of an General Unsecured Claim will either receive payment in full in Cash on the Effective Date or in the ordinary course of business according to the terms of the General Unsecured Claim. A Holder that receives Cash in exchange for its Claim pursuant to the Plan generally will recognize gain or loss for U.S. federal income tax purposes in an amount equal to the difference between (i) the amount of Cash received in exchange for its Claim and (ii) the Holder's adjusted tax basis in its Claim. Such gain or loss should be capital in nature, subject to the "market discount" rules described below.

(iv)     **Consequences to Holders of Note Claims**

Pursuant to the Plan, each Holder of a Note Claim will receive its pro rata share of the New Equity in partial satisfaction of its Claim. The U.S. federal income tax consequences of the Plan to a Holder of a Note Claim depend, in part, on whether or to what extent such Claim constitutes "securities" for tax purposes.

Whether an instrument constitutes a "security" is determined based on all the facts and circumstances, but most authorities have held that the length of the term of a debt instrument is an important factor in determining whether such instrument is a security for federal income tax purposes. These authorities have indicated that a term of less than five years is evidence that the instrument is not a security, whereas a term of ten years or more is evidence that it is a security. There are numerous other factors that could be taken into account in determining whether a debt instrument is a security, including the security for payment, the creditworthiness of the obligor, the subordination or lack thereof to other creditors, the right to vote or otherwise participate in the management of the obligor, convertibility of the instrument into an equity interest of the obligor, whether payments of interest are fixed, variable or contingent, and whether such payments are made on a current basis or accrued.

In general, the Debtors believe that the Note Claims do qualify as "securities" for federal income tax purposes.

If the Note Claims <u>do</u> qualify as "securities" for federal income tax purposes, a Holder of such a Claim who receives New Equity in satisfaction of such Holder's Claim should recognize no gain or loss (or bad debt deduction) on the receipt of New Equity. A Holder's aggregate tax basis in the New Equity received under the Plan in respect of a Note Claim that qualifies as a security, apart from amounts allocable to interest, generally should equal the Holder's basis in the Claim. The holding period for any New Equity received under the Plan in respect of a Claim constituting a security, apart from amounts allocable to interest, generally should include the holding period of the Claim surrendered.

On the other hand, if a debt instrument constituting a surrendered Claim is <u>not</u> treated as a security, a Holder of such a Claim should be treated as exchanging its Claim for New Equity in a fully taxable exchange. A Holder of a Note Claim who is subject to fully taxable exchange treatment should recognize gain or loss equal to the difference between (i) the fair market value of the New Equity as of the

60

Effective Date, and (ii) the Holder's basis in the debt instrument constituting the surrendered Note Claim. Such gain or loss should be capital in nature (subject to the "market discount" rules described below) and should be long-term capital gain or loss if the debts constituting the surrendered Note Claim were held for more than one year. A Holder's tax basis in the New Equity received should equal the fair market value of the New Equity as of the Effective Date. A Holder's holding period for the New Equity should begin on the day following the Effective Date.

**HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR NOTE CLAIMS.**

### (a)    Accrued Interest

To the extent that any amount received by a Holder of a surrendered Claim under the Plan is attributable to accrued interest, such amount should be taxable to the Holder as interest income. Conversely, a Holder of a surrendered Claim may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the debt instruments constituting such Claim was previously included in the Holder's gross income but was not paid in full by the Debtors. Such loss may be ordinary, but the tax law is unclear on this point.

The extent to which the consideration received by a Holder of a surrendered Claim will be attributable to accrued interest on the debts constituting the surrendered Claim is unclear. Treasury regulations generally treat a payment under a debt instrument first as a payment of accrued and untaxed interest and then as a payment of principal. Pursuant to the Plan, all distributions in respect of any Claim will be allocated first to the principal amount of such Claim, to the extent otherwise permitted and as determined for federal income tax purposes, and thereafter to the remaining portion of such Claim, if any.

**HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS AND THE FEDERAL INCOME TAX TREATMENT OF ACCRUED BUT UNPAID INTEREST.**

### (b)    Market Discount

Under the "market discount" provisions of sections 1276 through 1278 of the IRC, some or all of the gain realized by a Holder of a Claim who exchanges the debt instrument for other property on the Effective Date may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on the debt instruments constituting the surrendered Claim.

In general, a debt instrument is considered to have been acquired with "market discount" if its Holder's adjusted tax basis in the debt instrument is less than (i) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or, (ii) in the case of a debt instrument issued with OID, its adjusted issue price, by at least a *de minimis* amount (equal to 0.25 percent of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

Any gain recognized by a Holder on the taxable disposition of surrendered debts (determined as described above) that had been acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while such debts were considered to be held by the Holder (unless the Holder elected to include market discount in income as it accrued).

(v)     **Consequences to Holders of Interests in U.S. Concrete, Inc.**

Pursuant to the Plan, each Holder of an Interest in U.S. Concrete, Inc. will receive its Pro Rata share of the New Warrants. A Holder of an Interest in U.S. Concrete, Inc. that receives New Warrants pursuant to the Plan will not recognize income, gain, deduction, or loss on the receipt of New Warrants. A Holder's aggregate tax basis in the New Warrants received generally should equal the Holder's basis in the Interest. The holding period for the New Warrants will include the Holder's holding period for the Existing Common Stock.

(a)     **Dividends on New Equity**

For U.S. federal income tax purposes, the gross amount of any distribution (other than certain distributions, if any, of shares distributed to all shareholders of New U.S. Concrete Holdings) made to a Holder with respect to New Equity will constitute dividends to the extent of New U.S. Concrete Holdings' current and accumulated earnings and profits (as determined under U.S. federal income tax principles). Non-corporate Holders generally will be taxed on such distributions at the lower rates applicable to long-term capital gains (*i.e.*, gains from the sale of capital assets held for more than one year) with respect to taxable years beginning on or before December 31, 2010. If distributions with respect to New Equity exceed New U.S. Concrete Holdings' current and accumulated earnings and profits as determined under U.S. federal income tax principles, the excess would be treated first as a tax-free return of capital to the extent of the Holder's adjusted tax basis in the New Equity. Any amount in excess of the amounts treated as (i) a dividend and (ii) a return of capital would be treated as capital gain.

(vi)     **Consequences to Holders of Section 510(b) Claims**

Pursuant to the Plan, each Section 510(b) Claim will be cancelled without any distribution. A Holder may be entitled in the year of cancellation (or in an earlier year) to a bad debt deduction in some amount under section 166(a) of the Tax Code to the extent of such Holder's tax basis in the Section 510(b) Claim. The rules governing the timing and amount of bad debt deductions place considerable emphasis on the facts and circumstances of the Holder, the obligor and the instrument with respect to which a deduction is claimed. Holders of Section 510(b) Claims therefore are urged to consult their own tax advisors with respect to their ability to take such a deduction.

C.     **Backup Withholding**

In general, information reporting requirements may apply to distributions or payments under the Plan. Additionally, under the backup withholding rules, a Holder of a Claim may be subject to backup withholding (currently at a rate of 28%) with respect to distributions or payments made pursuant to the Plan unless that Holder:     (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact; or (b) timely provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional tax but is, instead, an advance payment that may be refunded to the extent it results in an overpayment of tax; *provided*, *however*, that the required information is timely provided to the IRS.

The Debtors will, through the Disbursing Agent, withhold all amounts required by law to be withheld from payments of interest. The Debtors will comply with all applicable reporting requirements of the IRS.

62

**Recommendation of the Debtors**

In the opinion of the Debtors, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger distribution to the Debtors' stakeholder than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims and Allowed Interests than proposed under the Plan. Accordingly, the Debtors recommend that Holders of Claims and Interests entitled to vote to accept or reject the Plan support Confirmation of the Plan and vote to accept the Plan.

K&E 16510765

Dated: June 2 , 2010

Respectfully submitted,

U.S. CONCRETE, INC.
(for itself and on behalf of each of its affiliated
debtors)

By: _____
Name: Michael W. Harlan
Title: President and Chief Executive Officer

Prepared by:

KIRKLAND & ELLIS LLP
James H.M. Sprayregen (admitted *pro hac vice*)
Patrick Nash (admitted *pro hac vice*)
Ross Kwastenient (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

- and -

PACHULSKI, STANG, ZIEHL & JONES LLP
919 North Market Street
17th Floor
Wilmington, Delaware 19899
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

CO-COUNSEL FOR THE DEBTORS

## EXHIBIT A

## PLAN OF REORGANIZATION

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| U.S. CONCRETE, INC., *et al.*,[1] | ) | Case No. 10-11407 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## JOINT PLAN OF REORGANIZATION OF U.S. CONCRETE, INC., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**KIRKLAND & ELLIS LLP**

300 North LaSalle Street
Chicago, Illinois 60611
Telephone:    (312) 862-2200
Facsimile:    (312) 862-2200

Co-Counsel for the Debtors

Dated: June 2, 2010

**PACHULSKI, STANG, ZIEHL & JONES LLP**

919 North Market Street
17th Floor
Wilmington, Delaware 19899
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: U.S. Concrete, Inc. (6680); Alberta Investments, Inc. (1497); Alliance Haulers, Inc. (3236); American Concrete Products, Inc. (3187); Atlas Redi-Mix, LLC (3123); Atlas-Tuck Concrete, Inc. (1542); Beall Concrete Enterprises, LLC (3536); Beall Industries, Inc. (2872); Beall Investment Corporation, Inc. (9865); Beall Management, Inc. (9839); Breckenridge Ready Mix, Inc. (2482); Central Concrete Supply Co., Inc. (1859); Central Precast Concrete, Inc. (9358); Concrete Acquisition III, LLC (5638); Concrete Acquisition IV, LLC (5720); Concrete Acquisition V, LLC (5777); Concrete Acquisition VI, LLC (5840); Concrete XXXIII Acquisition, Inc. (6120); Concrete XXXIV Acquisition, Inc. (6167); Concrete XXXV Acquisition, Inc. (6206); Concrete XXXVI Acquisition, Inc. (6240); Eastern Concrete Materials, Inc. (1165); Hamburg Quarry Limited Liability Company (3592); Ingram Concrete, LLC (6753); Local Concrete Supply & Equipment, LLC (6597); Master Mix Concrete, LLC (0135); Master Mix, LLC (8532); MG, LLC (9279); NYC Concrete Materials, LLC (0666); Pebble Lane Associates, LLC (6520); Redi-Mix Concrete, L.P. (4765); Redi-Mix GP, LLC (N/A); Redi-Mix, LLC (6751); Riverside Materials, LLC (3588); San Diego Precast Concrete, Inc. (6282); Sierra Precast, Inc. (4227); Smith Pre-Cast, Inc. (0673); Superior Concrete Materials, Inc. (6503); Titan Concrete Industries, Inc. (6374); U.S. Concrete On-Site, Inc. (0662); USC Atlantic, Inc. (6002); USC Management Co., LLC (6749); USC Payroll, Inc. (0665); and USC Technologies, Inc. (6055). The location of the debtors' corporate headquarters and the debtors' service address is: 2925 Briarpark, Suite 1050, Houston, Texas 77042.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ........................................................................................................1
    A.      Defined Terms. .................................................................................................1
    B.      Rules of Interpretation. ....................................................................................9
    C.      Computation of Time. ....................................................................................10
    D.      Governing Law. ..............................................................................................10
    E.      Reference to Monetary Figures. .....................................................................10

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS.........................10
    A.      Administrative Claims. ..................................................................................10
    B.      DIP Facility Claims. .......................................................................................11
    C.      Priority Tax Claims. .......................................................................................11

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...........11
    A.      Classification of Claims and Interests............................................................11
    B.      Treatment of Claims and Interests. ................................................................12
    C.      Special Provision Governing Unimpaired Claims. ........................................14
    D.      Acceptance or Rejection of the Plan. .............................................................14
    E.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .................14
    F.      Controversy Concerning Impairment..............................................................14
    G.      Subordinated Claims ......................................................................................14

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .........................................15
    A.      General Settlement of Claims and Interests. ..................................................15
    B.      Restructuring Transactions. ...........................................................................15
    C.      New U.S. Concrete Holdings. ........................................................................15
    D.      Sources of Consideration for Plan Distributions. ..........................................15
    E.      Corporate Existence. ......................................................................................16
    F.      Vesting of Assets in the Reorganized Debtors. .............................................16
    G.      Cancellation of Securities and Agreements. ..................................................16
    H.      Surrender of Existing Securities. ...................................................................17
    I.      Corporate Action. ...........................................................................................17
    J.      New Organizational Documents. ...................................................................18
    K.      Directors and Officers of the Reorganized Debtors and New U.S. Concrete Holdings. .................18
    L.      Effectuating Documents; Further Transactions. .............................................18
    M.      Section 1146 Exemption. ...............................................................................18
    N.      Director and Officer Liability Insurance. .......................................................19
    O.      Management Equity Incentive Plan. ..............................................................19
    P.      Employee and Retiree Benefits. .....................................................................19
    Q.      Preservation of Causes of Action. ..................................................................19
    R.      Release of Avoidance Actions. ......................................................................20

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .....20
    A.      Assumption of Executory Contracts and Unexpired Leases. .........................20
    B.      Indemnification Obligations............................................................................20
    C.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed...................20
    D.      Insurance Policies. ..........................................................................................21
    E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements.........................21
    F.      Reservation of Rights. ....................................................................................21
    G.      Nonoccurrence of Effective Date. ..................................................................21
    H.      Contracts and Leases Entered Into After the Petition Date. ...........................22

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .........................................................22
    A.    Timing and Calculation of Amounts to Be Distributed. ...........................................22
    B.    Disbursing Agent. .......................................................................................................22
    C.    Rights and Powers of Disbursing Agent. ...................................................................22
    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions.................23
    E.    Manner of Payment .....................................................................................................23
    F.    Section 1145 Exemption. ............................................................................................23
    G.    Compliance with Tax Requirements. ..........................................................................24
    H.    Allocations. .................................................................................................................24
    I.    No Postpetition Interest on Claims. ............................................................................24
    J.    Setoffs and Recoupment. ............................................................................................24
    K.    Claims Paid or Payable by Third Parties. ...................................................................24

ARTICLE VII. TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN ..............................25
    A.    Disputed Claims Process..............................................................................................25
    B.    No Distributions Pending Allowance...........................................................................25
    C.    Distributions After Allowance. ...................................................................................25

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS.............26
    A.    Compromise and Settlement. ......................................................................................26
    B.    Discharge of Claims and Termination of Interests. ....................................................26
    **C.**    **Release of Liens.** .......................................................................................................26
    **D.**    **Releases by the Debtors.** .........................................................................................27
    **E.**    **Releases by Holders of Claims and Interests.** ......................................................27
    **F.**    **Exculpation.** .............................................................................................................28
    **G.**    **Injunction.** ................................................................................................................28
    H.    Protections Against Discriminatory Treatment. ..........................................................29
    **I.**    **Setoffs.** ....................................................................................................................29
    **J.**    **Recoupment.** ...........................................................................................................29
    K.    Subordination Rights. .................................................................................................29
    L.    Document Retention. ..................................................................................................29

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
    THE PLAN ..............................................................................................................................30
    A.    Conditions Precedent to Confirmation........................................................................30
    B.    Conditions Precedent to the Effective Date. ..............................................................30
    C.    Waiver of Conditions. .................................................................................................31
    D.    Effect of Failure of Conditions. ..................................................................................31

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ................31
    A.    Modification and Amendments.....................................................................................31
    B.    Effect of Confirmation on Modifications. ..................................................................32
    C.    Revocation or Withdrawal of Plan. ............................................................................32

ARTICLE XI. RETENTION OF JURISDICTION.................................................................................32

ARTICLE XII. MISCELLANEOUS PROVISIONS ...............................................................................34
    A.    Immediate Binding Effect. ..........................................................................................34
    B.    Additional Documents. ...............................................................................................34
    C.    Payment of Statutory Fees. .........................................................................................34
    D.    Payment of Fees and Expenses of Professionals in Connection with the Funded Debt.................34
    E.    Statutory Committee and Cessation of Fee and Expense Payment.............................34
    F.    Reservation of Rights. ................................................................................................35
    G.    Successors and Assigns...............................................................................................35
    H.    Notices. .......................................................................................................................35
    I.    Term of Injunctions or Stays.......................................................................................36

| | | |
|---|---|---|
| J. | Entire Agreement. | 36 |
| K. | Exhibits. | 36 |
| L. | Nonseverability of Plan Provisions. | 36 |
| M. | Votes Solicited in Good Faith. | 36 |
| N. | Closing of Chapter 11 Cases. | 37 |
| O. | Waiver or Estoppel. | 37 |
| P. | Conflicts. | 37 |

iii

# INTRODUCTION

U.S. Concrete, Inc., together with its Affiliates, Alberta Investments, Inc., Alliance Haulers, Inc., American Concrete Products, Inc., Atlas Redi-Mix, LLC, Atlas-Tuck Concrete, Inc., Beall Concrete Enterprises, LLC, Beall Industries, Inc., Beall Investment Corporation, Inc., Beall Management, Inc., Breckenridge Ready Mix, Inc., Central Concrete Supply Co., Inc., Central Precast Concrete, Inc., Concrete Acquisition III, LLC, Concrete Acquisition IV, LLC, Concrete Acquisition V, LLC, Concrete Acquisition VI, LLC, Concrete XXXIII Acquisition, Inc., Concrete XXXIV Acquisition, Inc., Concrete XXXV Acquisition, Inc., Concrete XXXVI Acquisition, Inc., Eastern Concrete Materials, Inc., Hamburg Quarry Limited Liability Company, Ingram Concrete, LLC, Local Concrete Supply & Equipment, LLC, Master Mix Concrete, LLC, Master Mix, LLC, MG, LLC, NYC Concrete Materials, LLC, Pebble Lane Associates, LLC, Redi-Mix Concrete, L.P., Redi-Mix GP, LLC, Redi-Mix, LLC, Riverside Materials, LLC, San Diego Precast Concrete, Inc., Sierra Precast, Inc., Smith Pre-Cast, Inc., Superior Concrete Materials, Inc., Titan Concrete Industries, Inc., U.S. Concrete On-Site, Inc., USC Atlantic, Inc., USC Management Co., LLC, USC Payroll, Inc., and USC Technologies, Inc. as debtors and debtors in possession (each, a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>") propose this joint plan of reorganization (the "<u>Plan</u>") for the resolution of the outstanding claims against and interests in the Debtors pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.     Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses awarded or Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

2.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

3.      "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest as to which no (i) objection to allowance therof has been interposed on or prior to the Effective Date or (ii) as to which any objection has been determined by Final Order to the extent such objection is determined in favor of the respective Holder, (b) a Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (c) a Claim or Interest expressly allowed hereunder.

1

4. *"Allowed California Wage and Hour Claim"* shall mean that Claim arising on account of the California Wage and Hour Litigation, which, subject to approval of the California Wage and Hour 9019 Motion, shall be an Unimpaired Class 3 Allowed Claim in the amount of approximately $1.5 million plus administrative costs not to exceed $50,000 plus the Debtors' portion of withholding taxes for any payment amounts that are deemed to be on account of employee wages.

5. *"Avoidance Actions"* means Claims and causes of action arising under sections 544, 545, 546, 547, 548, 549, 550, and 553(b) of the Bankruptcy Code.

6. *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware or any other court having jurisdiction over the Chapter 11 Cases.

7. *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

8. *"Business Day"* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

9. *"California Wage and Hour Joint Motion"* means the *Joint Motion of U.S. Concrete, et. al., and the Class Representatives For Entry of (I) a Preliminary Order (A) Certifying Class Proof of Claim, (B) Approving Settlement on a Preliminary Basis, (C)Approving Form of Notice to Class Members, and (D) Approving Estimate Procedures for Opt-out Claimants and (II) a Final Order Approving Settlement and Voluntary Dismissal of Class Action on a Final Basis and Granting Allowed Claim* [Docket No. 104], filed on May 13, 2010, to, among other things, approve the Allowed California Wage and Hour Claim in settlement of the California Wage and Hour Litigation.

10. *"California Wage and Hour Litigation"* means the class action against Debtor Central Concrete Supply Co., Inc. pending currently in the Superior Court of the State of California, in and for the County of Alameda under case number HG7319366.

11. *"Cash"* means cash and cash equivalents.

12. *"Causes of Action"* means any: (a) Claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises; (b) all rights of setoff, counterclaim, or recoupment and Claims on contracts or for breaches of duties imposed by law; (c) rights to object to Claims or Interests; (d) Claims pursuant to sections 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code; and (e) Claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date including through the Effective Date, in contract, in tort, in law, or in equity, or pursuant to any other theory of law.

13. *"Certificate"* means any instrument evidencing a Claim or an Interest.

14. *"Chapter 11 Cases"* means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

15. *"Claim"* means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

16. *"Class"* means a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

17. *"CM/ECF"* means the Bankruptcy Court's Case Management and Electronic Case Filing system.

K&E 16739170

18. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been (a) satisfied or (b) waived pursuant to Article IX.C hereof.

19. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

20. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

21. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

22. "*Consummation*" means the occurrence of the Effective Date.

23. "*Creditors Committee*" means that certain official committee of unsecured creditors appointed by the Office of the United States Trustee for the District of Delaware on May 12, 2010 [Docket No. 94].

24. "*Cure Claim*" means a Claim based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

25. "*Debtor Release*" means the release given by the Debtors to the Released Parties as set forth in Article VIII.D.

26. "*DIP Agent*" means JPMorgan Chase Bank, N.A.

27. "*DIP Facility*" means that certain $80,000,000 Revolving Credit, Term Loan, and Guarantee Agreement among U.S. Concrete, Inc., as borrower, certain Affiliates thereof, as guarantors, the DIP Agent, and certain Lenders thereof..

28. "*DIP Facility Claims*" means any secured Claim held by the DIP Lenders and or the DIP Agent arising under or related to the DIP Facility.

29. "*DIP Lenders*" means those certain lenders party to the DIP Facility.

30. "*DIP Order*" means the order entered by the Bankruptcy Court on May 21, 2010, authorizing and approving the DIP Facility.

31. "*Director Equity*" means up to 0.5% of the fully-diluted New Equity to be reserved for issuance to directors of New U.S. Concrete Holdings.

32. "*Disbursing Agent*" means the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors, as applicable, to make or facilitate distributions pursuant to the Plan.

33. "*Disclosure Statement*" means the *Disclosure Statement Relating to the Joint Plan of Reorganization of U.S. Concrete, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code,* dated June 2, 2010, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

34. "*Disputed*" means any Claim or Interest that is not yet Allowed.

35. "*Distribution Record Date*" means other than with respect to any publicly held securities, the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be five Business Days after the Confirmation Date.

3

36.     *"Effective Date"* means the date selected by the Debtors that is a Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been met or waived pursuant to Article IX.B and Article IX.C hereof and (b) no stay of the Confirmation Order is in effect. Unless otherwise specifically provided herein, anything required to be done by the Debtors or the Reorganized Debtors, as applicable, on the Effective Date may be done on the Effective Date.

37.     *"Entity"* means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

38.     *"Equity Security"* means any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

39.     *"Estate"* means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

40.     *"Exchange Act"* means the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*

41.     *"Exculpated Claim"* means any Claim related to any prepetition or postpetition act taken or omitted to be taken in connection with, relating to, or arising out of the Debtors' out-of-court restructuring efforts, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the preparation or filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, and the administration and implementation of the Plan, including the issuance of New Equity or the distribution of property under the Plan or any other agreement.

42.     *"Exculpated Party"* means each of:  (a) the Debtors and (b) the Released Parties.

43.     *"Exit Facility"* means a credit facility to be entered into by the Reorganized Debtors to fund ongoing operations and obligations under the Plan.

44.     *"Executory Contract"* means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

45.     *"Federal Judgment Rate"* means the federal judgment rate in effect as of the Petition Date.

46.     *"File"* or *"Filed"* means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

47.     *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely Filed, or as to which any appeal that has been taken, any petition for certiorari, or motion for a new trial, re-argument, or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

48.     *"General Administrative Claim"* means any Administrative Claim, including Cure Claims, other than a Professional Fee Claim.

49.     *"General Unsecured Claims"* means any Claim against the Debtors that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, a Note Claim, an Intercompany Claim, or a Section 510(b) Claim.

50.     *"Governmental Unit"* means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

51.    "*Holdback Amount*" means the aggregate holdback of those Professional fees billed to the Debtors during the Chapter 11 Cases that are held back pursuant to the Professional Fee Order or any other order of the Bankruptcy Court, which amount is to be deposited in the Holdback Escrow Account as of the Effective Date.  The Holdback Amount shall not be considered property of the Debtors or the Reorganized Debtors.  When all Professional Fee Claims have been paid, amounts remaining in the Holdback Escrow Account, if any, shall be paid to the Reorganized Debtors.

52.    "*Holdback Escrow Account*" means the escrow account established by the Reorganized Debtors into which Cash equal to the Holdback Amount shall be deposited on the Effective Date for the payment of Allowed Professional Fee Claims to the extent not previously paid or disallowed.

53.    "*Holder*" means an Entity holding a Claim or an Interest.

54.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

55.    "*Indemnification Obligation*" means a Debtor's obligation under an Executory Contract or otherwise to indemnify directors, officers, or employees of the Debtors with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtors' respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect on the Effective Date.

56.    "*Informal Noteholders Committee*" means the informal committee of the Holders of Note Claims represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP, which represents the requisite number, and which collectively hold the requisite amount, of Note Claims needed to confirm a plan of reorganization pursuant to Section 1126(c) of the Bankruptcy Code.

57.    "*Intercompany Claim*" means any Claim held by a Debtor or a Non-Filer against another Debtor or Non-Filer or any Claim held by an Affiliate against a Debtor.

58.    "*Intercompany Interest*" means any Interest in a Debtor or a Non-Filer held by another Debtor or Non-Filer or any Interest in a Debtor or a Non-Filer held by an Affiliate of a Debtor or a Non-Filer.

59.    "*Interests*" means any: (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto; and (b) partnership, limited liability company, or similar interest in a Debtor.

60.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

61.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

62.    "*Management Equity Incentive Plan*" means that certain post-Effective Date management equity incentive plan, the form of which shall be included in the Plan Supplement, the terms of which shall be consistent with what is described in Article IV.O below.

63.    "*Michigan Joint Venture*" means a joint venture entered into by the Non-Filers, on the one hand, and the Michigan Joint Venture Partner, on the other hand, whereby the Non-Filers and the Michigan Joint Venture Partner formed the Michigan Joint Venture Entities.

64.    "*Michigan Joint Venture Entities*" means Superior Materials Holdings, LLC, Superior Materials, LLC, and BWB, LLC, each a Michigan limited liability company.

65.    "*Michigan Joint Venture Partner*" means Edw. C. Levy Co., a Michigan corporation, d/b/a Clawson Concrete Company, and any of its successors or assigns.

5

66.     *"New Boards"* means, with respect to the Reorganized Debtors that are corporations or manager-managed limited liability companies, the initial boards of directors of such Reorganized Debtors.

67.     *"New Equity"* means the equity of New U.S. Concrete Holdings authorized pursuant to the Plan.

68.     *"New Organizational Documents"* means such certificates or articles of incorporation, bylaws, or such other applicable formation documents of each of the Reorganized Debtors and New U.S. Concrete Holdings, which will be included in the Plan Supplement.

69.     *"New U.S. Concrete Holdings"* means a newly formed corporation or a Reorganized Debtor used to implement the Restructuring Transactions.

70.     *"New Warrants"* means, subject in all respects to the New Warrant Agreement, two tranches of warrants, each with a 7 year term issued by New U.S. Concrete Holdings to acquire New Equity (both subject to dilution by the Management Equity Incentive Plan): (i) warrants to acquire 7.5% of the New Equity on a fully diluted basis exercisable at a New Equity value that is equal to a Par Plus Accrued Interest Recovery to holders of Note Claims; and (ii) warrants to acquire an additional 7.5% of the New Equity on a fully diluted basis exercisable at a New Equity value that is equal to a Par Plus Accrued Interest Recovery plus $50 million to holders of Note Claims.

71.     *"New Warrant Agreement"* means that certain warrant agreement, dated as of the Effective Date, governing the New Warrants to be issued by the Reorganized Debtors, substantially in the form to be included in the Plan Supplement.

72.     *"Non-Executive Bonus Plan"* means that certain prepetition bonus program for non-executive employees, which provides for payment of $400,000 in the aggregate to non-executive employees.

73.     *"Non-Filers"* means Builders' Redi-Mix, LLC, BWB, Inc. of Michigan, Kurtz Gravel Company, Superior Holdings, Inc., and USC Michigan, Inc.

74.     *"Notes"* means the $285 million in 8.375% unsecured senior subordinated notes due April 1, 2014, issued by U.S. Concrete, Inc. pursuant to the Note Indenture, of which approximately $282.2 million in principal amount and past and due interest, plus accrued interest thereon, remains outstanding as of the Petition Date.

75.     *"Note Claims"* means Claims arising under the Note Indenture.

76.     *"Note Indenture"* means that certain indenture, dated as of March 31, 2004, as amended by the First Supplemental Indenture, dated as of July 5, 2006, by and among U.S. Concrete, Inc., as issuer, certain of its Affiliates, as guarantors, and Wells Fargo Bank, National Association, as indenture trustee.

77.     *"Note Indenture Trustee"* means Wells Fargo Bank, National Association., and/or its successors, as indenture trustee under the Note Indenture.

78.     *"Notice, Claims, and Balloting Agent"* means Epiq Bankruptcy Solutions, LLC, located at 757 Third Avenue, New York, New York 10017, (646) 282-2400, retained as the Debtors' notice, claims, and balloting agent.

79.     *"Other Priority Claims"* means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

80.     *"Other Secured Claim"* means any Secured Claim that is not a Prepetition Secured Claim.

81.     *"Par Plus Accrued Interest Recovery"* means the value of the New Equity is equal to $285.009 million.

6

82. *"Petition Date"* means April 29, 2010, the date on which the Debtors commenced the Chapter 11 Cases.

83. *"Plan"* means this *Joint Plan of Reorganization of the U.S. Concrete, Inc., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, including the Plan Supplement, which is incorporated herein by reference.

84. *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be Filed by the Debtors no later than 10 days prior to the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, comprised of, among other documents, the following: (a) New Organizational Documents; (b) a list of retained Causes of Action; (c) Restructuring Transaction Memorandum; (d) Management Equity Incentive Plan; (e) New Warrant Agreement; and (f) Exit Facility. Any reference to the Plan Supplement in this Plan shall include each of the documents identified above as (a) through (f). The Debtors shall have the right to amend the documents contained in the Plan Supplement, and add additional documents to the Plan Supplement, through and including the Effective Date in accordance with Article IX hereof.

85. *"Postpetition Period"* means the period of time following the Petition Date through the Confirmation Date.

86. *"Prepetition Secured Agent"* means JPMorgan Chase Bank, N.A., and/or its successors and assigns, as administrative agent under the Prepetition Secured Credit Agreement.

87. *"Prepetition Secured Claims"* means Claims arising under the Prepetition Secured Credit Agreement and any other Claims that, pursuant to the terms of the Prepetition Secured Credit Agreement, rank *pari passu* with and are secured equally and ratably with such Claims.

88. *"Prepetition Secured Credit Agreement"* means that certain amended and restated credit agreement, dated as of June 30, 2006, by and among U.S. Concrete, Inc., as borrower, and certain of its Affiliates, as guarantors, JPMorgan Chase Bank, N.A., as administrative agent, Bank of America, N.A., as syndication agent, JPMorgan Chase Bank, as documentation agent, and certain financial institutions and lender parties thereto, and any schedules, amendments, guarantees, security documents, and other documents in connection therewith.

89. *"Priority Tax Claim"* means any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

90. *"Pro Rata"* means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

91. *"Professional"* means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

92. *"Professional Fee Claims"* means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through the Confirmation Date.

93. *"Professional Fee Order"* means that certain order of the Bankruptcy Court, establishing procedures for interim compensation and reimbursement of expenses of Professionals.

94. *"Reinstated"* means: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest Unimpaired; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any

7

such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensating the Holder of such Claim or Interest (other than a Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder.

95.     "*Released Party*" means each of: (a) the DIP Agent, the DIP Lenders, and the Holders of DIP Facility Claims, in each case, in their capacity as such; (b) the Prepetition Secured Agent and the Holders of Prepetition Secured Claims, in each case, in their capacity as such; (c) members of the Informal Noteholders Committee who vote to accept the Plan, the Holders of Note Claims who vote to accept the Plan, and the Note Indenture Trustee, in each case, in their capacity as such; (d) the Exit Facility agent and lenders, in each case, in their capacity as such; and (e) with respect to each of the foregoing entities in clauses (a) through (d), such person's current and former Affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such; and (f) the Debtors' and the Reorganized Debtors' current and former Affiliates, including the Non-Filers, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such. No Holder of a Claim or Interest who votes to reject the Plan shall be a Released Party.

96.     "*Reorganized Debtors*" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including New U.S. Concrete Holdings.

97.     "*Reorganized U.S. Concrete, Inc.*" means U.S. Concrete, Inc., or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

98.     "*Restructuring Transactions*" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors or the Reorganized Debtors determine to be necessary or appropriate to effect a restructuring of a Debtor's business or a restructuring of the overall corporate structure of the Reorganized Debtors, including those described in the Restructuring Transactions Memorandum.

99.     "*Restructuring Transactions Memorandum*" means the memorandum describing the Restructuring Transactions, including those inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors or the Reorganized Debtors may determine to be necessary or appropriate to implement the Restructuring Transactions and to effect a restructuring of a Debtor's business or a restructuring of the overall corporate structure of the Reorganized Debtors, which will be included in the Plan Supplement.

100.     "*Section 510(b) Claim*" means any Claim against the Debtors arising from rescission of a purchase or sale of a Security of any of the Debtors or an Affiliate of any of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

101.     "*Secured*" means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed as such pursuant to the Plan.

102. *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, together with the rules and regulations promulgated thereunder.

103. *"Security"* means a security as defined in section 2(a)(1) of the Securities Act.

104. *"Successive Forgiveness Period"* means each 12-month period beginning upon the termination of the First Forgiveness Period.

105. *"Third Party Release"* means the release provision set forth in Article VIII.E hereof.

106. *"Third Party Releasees"* means the Debtors, the Reorganized Debtors, the Released Parties, and solely with respect to Note Claims, the Non-Filers.

107. *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

108. *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

109. *"Unsecured Claim"* means any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

*B.     Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) all references to events occurring on a specified date shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; and (15) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

9

*C.   Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

*D.   Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation of the relevant Debtor or the Reorganized Debtors, as applicable.

*E.   Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

*A.   Administrative Claims.*

1.   General Administrative Claims.

Except as specified in this Article II hereof, unless otherwise agreed to by the Holder of a General Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim in the ordinary course of the Debtors' business, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claims, without any further action by the Holders of such Allowed General Administrative Claims.

2.   Professional Compensation.

(a)   Final Fee Applications.

All final requests for payment of Professional Fee Claims, including the Holdback Amount and Professional Fee Claims incurred during the period from Petition Date through the Confirmation Date, must be filed with the Bankruptcy Court and served on the Reorganized Debtors no later than 45 days after the Confirmation Date, unless the Debtors agree otherwise.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, the allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

(b)   Post-Confirmation Date Fees and Expenses.

K&E 16739170

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Reorganized Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

B.    *DIP Facility Claims.*

Notwithstanding anything to the contrary herein, and subject to the terms of the DIP Facility, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of all DIP Facility Claims, on the Effective Date, the DIP Facility Claims shall be paid in full and in Cash.

C.    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims, DIP Facility Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.    Class Identification.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | Note Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | Interests in U.S. Concrete, Inc. | Impaired | Entitled to Vote |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

11

*B.*     *Treatment of Claims and Interests.*

    1.    <u>Class 1 - Other Priority Claims.</u>

        (a)    *Classification*: Class 1 consists of all Other Priority Claims against the Debtors.

        (b)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class 1 agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 1, each such Holder shall be paid in full in Cash by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business.

        (c)    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

    2.    <u>Class 2 - Other Secured Claims.</u>

        (a)    *Classification*: Class 2 consists of all Other Secured Claims against the Debtors.

        (b)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class 2 agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 2, each such Claim shall be Reinstated or otherwise rendered Unimpaired for the benefit of the Holders thereof.

        (c)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

    3.    <u>Class 3 – General Unsecured Claims.</u>

        (a)    *Classification:* Class 3 consists of all General Unsecured Claims against the Debtors.

        (b)    *Treatment:* On the Effective Date, except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment of its Allowed General Unsecured Claim or has been paid prior to the Effective Date, each Allowed General Unsecured Claim shall be paid in full, in Cash, in the ordinary course of business or otherwise rendered Unimpaired. An Allowed Unsecured Ongoing Operations Claim that is not due and payable on or before the Effective Date shall be paid thereafter (i) in the ordinary course of business in accordance with the terms of any agreement that governs such General Unsecured Claim or (ii) in accordance with the course of practice between the Debtors and such Holder with respect to such General Unsecured Claim. Holders of General Unsecured Claims who received payment(s) from the Debtors during the Chapter 11 Cases pursuant to any Bankruptcy Court Final Order shall not be excluded from receiving distributions under the Plan of Reorganization on account of such Claims unless such Claims were fully satisfied by any prior payments from the Debtors. The Debtors reserve the right to challenge the legal basis and amount of any General Unsecured Claim.

        (c)    *Voting:* Class 3 is Unimpaired under the Plan. Holders of Claims in Class 3 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

K&E 16739170

4.    <u>Class 4 - Note Claims</u>.

    (a)    *Classification*:  Class 4 consists of all Note Claims against the Debtors.

    (b)    *Treatment*:  On the Effective Date, except to the extent that a Holder of a Note Claim agrees to less favorable treatment of its Allowed Note Claim, each Holder of an Allowed Note Claim against the Debtors shall receive its Pro Rata share of 100% of the New Equity issued on the Effective Date (subject to dilution by amounts reserved pursuant to the Management Equity Incentive Plan and the New Warrants).

    (c)    *Voting*:  Class 4 is Impaired under the Plan.  Each Holder of a Note Claim is entitled to vote to accept or reject the Plan.

5.    <u>Class 5 - Intercompany Claims</u>.

    (a)    *Classification*:  Class 5 consists of all Intercompany Claims.

    (b)    *Treatment*:  Intercompany Claims may be Reinstated as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, be cancelled, and no distribution shall be made on account of such Claims.

    (c)    *Voting*:  Class 5 is Unimpaired under the Plan.  Holders of Claims in Class 5 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

6.    <u>Class 6 - Intercompany Interests</u>.

    (a)    *Classification*:  Class 6 consists of all Intercompany Interests.

    (b)    *Treatment*:  Intercompany Interests may be Reinstated as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, be cancelled, and no distribution shall be made on account of such Interests.

    (c)    *Voting*:  Class 6 is Unimpaired under the Plan.  Holders of Interests in Class 6 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7.    <u>Class 7 - Interests in U.S. Concrete, Inc</u>.

    (a)    *Classification:*  Class 7 consists of all Interests in U.S. Concrete, Inc.

    (b)    *Treatment:*  On the Effective Date, except to the extent that a Holder of an Interest in U.S. Concrete, Inc. agrees to less favorable treatment of its Allowed Interest, each Holder of an Interest in U.S. Concrete, Inc. shall receive its Pro Rata share of the New Warrants.

    (c)    *Voting:*  Class 7 is Impaired under the Plan.  Each Holder of an Interest in U.S. Concrete, Inc. is entitled to vote to accept or reject the Plan.

8.    <u>Class 8 - Section 510(b) Claims</u>.

    (a)    *Classification*:  Class 8 consists of all Section 510(b) Claims.

K&E 16739170