(b) *Treatment*: On the Effective Date, all Claims in Class 8 shall be cancelled without any distribution.

(c) *Voting:* Class 8 is Impaired under the Plan. Holders of Claims in Class 8 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

C. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

D. *Acceptance or Rejection of the Plan.*

1. Voting Classes.

Classes 4 and 7 are Impaired under the Plan. Each Holder of a Claim or Interest in such Classes is entitled to vote to accept or reject the Plan.

2. Presumed Acceptance of the Plan.

Classes 1, 2, 3, 5, and 6 are Unimpaired under the Plan. Each Holder of a Claim or Interest in such Classes is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

3. Presumed Rejection of Plan.

Class 8 is Impaired and shall receive no distribution under the Plan. Each Holder of a Class 8 Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

E. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by Class 4. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.

F. *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

G. *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Holders of Allowed Interests in any Class are intended to be and shall be final.

B.     *Restructuring Transactions.*

On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall enter into the Restructuring Transactions, including those described in the Restructuring Transactions Memorandum, and shall take any actions as may be necessary or appropriate to effect a restructuring of the overall corporate structure of the Reorganized Debtors, as and to the extent provided therein. The Restructuring Transactions may include one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions as may be determined by the Debtors or the Reorganized Debtors, as applicable, to be necessary or appropriate. The actions to effect the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

C.     *New U.S. Concrete Holdings.*

On the Effective Date, the New Board of New U.S. Concrete Holdings shall be established, and New U.S. Concrete Holdings shall adopt its New Organizational Documents, shall adopt and implement the Management Equity Incentive Plan on terms set forth in the Plan Supplement, and shall assume existing executive employment severance agreements with the Debtors' management. The employment severance agreements to be assumed shall be on terms acceptable to the Debtors, counsel to the Informal Noteholders Committee, and to the executives, provided that, for the Debtors' Chief Executive Officer, Chief Financial Officer, General Counsel, and Vice President of Human Resources, the cash severance benefit payable in the event such executive is terminated without cause or if such executive terminates his employment for good cause, shall be not less than twice the amount of such executive's base salary. New U.S. Concrete Holdings shall be authorized to implement the Restructuring Transactions and adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary or desirable to consummate the Plan.

D.     *Sources of Consideration for Plan Distributions.*

The Reorganized Debtors shall fund distributions under the Plan with Cash on hand, including Cash from operations.

1. **Exit Facility.**

On the Effective Date, the Reorganized Debtors will consummate the Exit Facility. In accordance with the Exit Financing Agreement, the Reorganized Debtors will use proceeds of the Exit Facility to fund ongoing operations and obligations under the Plan, including to pay or refinance the DIP Facility Claims.

2. **Intercompany Account Settlement.**

The Debtors and the Reorganized Debtors, as applicable, shall be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

3. **Issuance of New Warrants and New Equity.**

The issuance of the New Warrants and New Equity, including options, or other equity awards, if any, reserved for the Management Equity Incentive Plan, by New U.S. Concrete Holdings is authorized without the need for any further corporate action or without any further action by the Holders of Claims or Interests.

All of the shares of New Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

E. *Corporate Existence.*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

F. *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G. *Cancellation of Securities and Agreements.*

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under the Prepetition Secured Credit Agreement, the Note Indenture, and any other Certificate, Equity Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or

16

obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, including the Non-Filers, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their Affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; *provided, however,* that notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; *provided further, however,* that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors; *provided further, however,* that the foregoing shall not effect the cancellation of shares issued pursuant to the Restructuring Transactions nor any other shares held by one Debtor in the capital of another Debtor; *provided further, however,* that the following provisions of the Note Indenture shall continue in effect: (i) the Note Indenture Trustee's rights and remaining obligations relating to the Notes and Note Claims and to perform such other necessary functions with respect thereto including as set forth below with respect to the surrender of Notes as provided for in the Plan including Article IV.H hereof, and (ii) any right to indemnification, contribution, fees, expenses or other claim that the Note Indenture Trustee may have under the Note Indenture.

H.      *Surrender of Existing Securities.*

On the Effective Date, each Holder of Note Claims shall surrender its note(s) to the Note Indenture Trustee, or in the event such note(s) are held in the name of, or by a nominee of, The Depository Trust Company, the Reorganized Debtors shall seek the cooperation of The Depository Trust Company to provide appropriate instructions to the Note Indenture Trustee. No distributions under the Plan shall be made for or on behalf of such Holder unless and until such note is received by the Note Indenture Trustee or appropriate instructions from The Depository Trust Company shall be received by the Note Indenture Trustee or the loss, theft, or destruction of such Notes is established to the reasonable satisfaction of the Note Indenture Trustee, which satisfaction may require such Holder to submit: (1) a lost instrument affidavit; and (2) an indemnity bond holding the Debtors, the Reorganized Debtors, and the Note Indenture Trustee harmless in respect of such Notes and distributions made thereof. Upon compliance with this Section by a Holder of any Notes, such Holder shall, for all purposes under the Plan, be deemed to have surrendered such Notes. Any Holder that fails to surrender such Notes or satisfactorily explain its non-availability to the Note Indenture Trustee within one year of the Effective Date shall be deemed to have no further Claim against the Debtors, the Reorganized Debtors (or their property), or the Note Indenture Trustee in respect of such Claim and shall not participate in any distribution under the Plan. All property in respect of such forfeited distributions, including interest thereon, shall be promptly returned to the Reorganized Debtors by the Note Indenture Trustee, and any such security shall be cancelled.

I.      *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) adoption or assumption, as applicable, of the agreements with existing management; (2) selection of the directors and officers for the Reorganized Debtors and New U.S. Concrete Holdings; (3) the distribution of the New Equity and the New Warrants; (4) implementation of the Restructuring Transactions as set forth in the Restructuring Transactions Memorandum; (5) adoption and implementation of the Management Equity Incentive Plan, as will be set forth in the Plan Supplement; (6) execution of the Exit Facility; and (7) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors, the Reorganized Debtors, or New U.S. Concrete Holdings in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtors, the Reorganized Debtors, or New U.S. Concrete Holdings. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors, the Reorganized Debtors, or New U.S. Concrete Holdings, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect

the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors and New U.S. Concrete Holdings, including the Exit Facility, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.I shall be effective notwithstanding any requirements under non-bankruptcy law. The issuance of the New Equity shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director deputized for purposes thereof) as of the Effective Date.

*J.*     *New Organizational Documents.*

On or immediately prior to the Effective Date, each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state, province, or country of incorporation and its respective New Organizational Documents.

*K.*     *Directors and Officers of the Reorganized Debtors and New U.S. Concrete Holdings.*

As of the Effective Date, the term of the current members of the board of directors of the Debtors shall expire, and the initial boards of directors, including the New Boards, and the officers of each of the Reorganized Debtors shall be appointed in accordance with the respective New Organizational Documents. The New Board of New U.S. Concrete Holdings shall be composed of 5 members, which shall consist of the Chief Executive Officer of New U.S. Concrete Holdings and 4 directors to be selected by the Informal Noteholders Committee. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial board of directors or be an officer of each of the Reorganized Debtors and New U.S. Concrete Holdings. To the extent any such director or officer of the Reorganized Debtors or New U.S. Concrete Holdings is an "insider" under the Bankruptcy Code, the Debtors also will disclose the nature of any compensation to be paid to such director or officer. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors or New U.S. Concrete Holdings.

*L.*     *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors and New U.S. Concrete Holdings, and the officers and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors and New U.S. Concrete Holdings, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

*M.*     *Section 1146 Exemption.*

Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

K&E 16739170

*N.     Director and Officer Liability Insurance.*

On or before the Effective Date, the Reorganized Debtors will obtain sufficient liability insurance policy coverage for a period of six years after the Effective Date for the Debtors' and the Non-Filers' current and former directors and officers serving from and after the Petition Date.

*O.     Management Equity Incentive Plan.*

On the Effective Date, 9.5% of the New Equity, on a fully-diluted basis, shall be reserved for issuance as grants of stock, restricted stock, options, or stock appreciation rights or similar equity awards to management and employees in connection with the Management Equity Incentive Plan, and 0.5% of the New Equity, on a fully-diluted basis shall be reserved for Director Equity. The terms and conditions of the grant of the Director Equity shall be set forth in the Management Equity Incentive Plan.

A minimum of 3.5% of the fully-diluted New Equity shall be issued to management and employees within 30 days of the Effective Date pursuant to the terms of the Management Equity Incentive Plan. The initial allocation of New Equity to the Debtors' Chief Executive Officer, Chief Financial Officer, General Counsel, and Vice President of Human Resources shall be determined prior to Confirmation. Such initial awards of New Equity shall vest quarterly 33% in the first year after the Effective Date, 33% in the second year after the Effective Date, and 33% in the third year after the Effective Date, provided that in the event an employee is terminated without cause, any New Equity previously awarded and any New Equity awards that would have vested in the six month period following such employee's termination shall vest immediately and shall be exercisable by such employee within the twelve month period following termination. A material portion of such New Equity shall be comprised of restricted stock units.

All New Equity reserved pursuant to the Management Equity Incentive Plan and not issued shall be granted to managers of the Reorganized Debtor within 5 years of the Effective Date.

*P.     Employee and Retiree Benefits.*

All employment, retirement, indemnification, and other agreements or arrangements in place as of the Effective Date with the Debtors' and the Non-Filers' officers or employees, or retirement income plans and welfare benefit plans for such persons, or discretionary bonus plans or variable incentive plans regarding payment of a percentage of annual salary based on performance goals and financial targets for certain employees identified as key leaders, top level managers, or sales leaders, including, but not limited to, the Debtors' 2010 Incentive Plan, the Non-Executive Bonus Plan, or indemnification arrangements with directors of non-Debtor subsidiaries, shall be assumed by the Reorganized Debtors and shall remain in place after the Effective Date, as may be amended by agreement between the beneficiaries of such agreements, plans, or arrangements, on the one hand, and the Debtors and counsel to the Informal Noteholders Committee, on the other hand, or, after the Effective Date, by agreement with the Reorganized Debtors, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans; *provided, however,* that the foregoing shall not apply to any equity-based compensation or incentive-based plan, agreement, or arrangement existing as of the Petition Date. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

*Q.     Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may**

rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. **The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

R.     *Release of Avoidance Actions.*

On Effective Date, the Debtors shall release any and all Avoidance Actions and the Debtors and the Reorganized Debtors and any of their successors or assigns and any Entity acting on behalf of the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     *Assumption of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

B.     *Indemnification Obligations.*

Each Indemnification Obligation of directors, officers, and employees of the Debtors who served in such capacity prior to, on, or after the Petition Date shall be assumed by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, to the extent such Indemnification Obligation is executory. Each Indemnification Obligation that is assumed, deemed assumed, honored, or reaffirmed shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

C.     *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on

such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding: (1) the amount of any payments to cure such a default; (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. At least 10 days prior to the Confirmation Hearing, the Debtors shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served, and actually received by the Debtors at least three days prior to the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

*D.     Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

*E.     Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

*F.     Reservation of Rights.*

Nothing contained in the Plan, shall constitute an admission by the Debtors that any Executory Contract or Unexpired Lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

*G.     Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

*H.*     *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.*     *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim or Allowed Interest) on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, each Holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

*B.*     *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

*C.*     *Rights and Powers of Disbursing Agent.*

     1.     <u>Powers of the Disbursing Agent.</u>

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

     2.     <u>Expenses Incurred On or After the Effective Date.</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

*D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

    1.      Delivery of Distributions in General.

        Except as otherwise provided herein, the Reorganized Debtors shall make distributions to Holders of Allowed Claims and Allowed Interests on the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided, however,* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

    2.      Minimum Distributions.

        No fractional shares of New Equity or New Warrants shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed Interest would otherwise result in the issuance of a number of shares of New Equity or New Warrants that is not a whole number, the actual distribution of shares of New Equity or New Warrants shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Equity and New Warrants to be distributed to Holders of Allowed Claims and Allowed Interests shall be adjusted as necessary to account for the foregoing rounding.

    3.      Undeliverable Distributions and Unclaimed Property.

        In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date; *provided further, however,* that the Debtors shall use commercially reasonable efforts to locate a Holder if any distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

*E.      Manner of Payment*

    1.      All distributions of the New Equity to the Holders of Claims and Interests under the Plan shall be made by the Disbursing Agent on behalf of New U.S. Concrete Holdings.

    2.      All distributions of Cash under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor.

    3.      At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

*F.      Section 1145 Exemption.*

        Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Equity, New Warrants, and New Equity deliverable upon exercise of the New Warrants and Management Equity Incentive Plan, as contemplated by Article III.B hereof to Classes 4 and 7, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code, such New Equity will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or

instruments and subject to any restrictions in the New Warrant Agreement or the New Organizational Documents, as applicable.

G. *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

H. *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

I. *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim.

J. *Setoffs and Recoupment.*

The Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim it may have against the Holder of such Claim.

K. *Claims Paid or Payable by Third Parties.*

1. Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2. Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN

A. *Disputed Claims Process.*

Holders of Claims, Interests, and Administrative Claims need not file proofs of claim with the Bankruptcy Court and shall be subject to the Bankruptcy Court process only to the extent provided in the Plan. On and after the Effective Date, except as otherwise provided in the Plan, all Allowed Claims shall be paid in the ordinary course of business of the Reorganized Debtors. If the Debtors or Reorganized Debtors dispute any Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced, *provided, however,* that the Debtors or Reorganized Debtors may elect, at their sole option, to object to any Claim (other than Claims expressly Allowed by the Plan) and to have the validity or amount of any Claim adjudicated by the Bankruptcy Court; *provided further, however,* that Holders of Claims and Administrative Claims may elect to resolve the validity or amount of any Claim in the Bankruptcy Court. If a Holder makes such an election, the Bankruptcy Court shall apply the law that would have governed the dispute if the Chapter 11 Cases had not been filed.

B. *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

C. *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

K&E 16739170

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A.*      *Compromise and Settlement.*

Notwithstanding anything contained herein to the contrary, the allowance, classification, and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised, and released pursuant hereto. The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their estates, and all Holders of Claims, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. In addition, the allowance, classification, and treatment of Allowed Claims take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party; as of the Effective Date, any and all such Causes of Action are settled, compromised, and released pursuant hereto. The Confirmation Order shall approve the releases by all Entities of all such contractual, legal, and equitable subordination rights or Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in this Article VIII.A shall compromise or settle in any way whatsoever, any Causes of Action that the Debtors or the Reorganized Debtors, as applicable, may have against a non-Released Party or provide for the indemnity of any non-Released Party.

In accordance with the provisions of this Plan, and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Claims against the Debtors and (2) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Causes of Action against other Entities.

*B.*      *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; *provided, however,* that, upon the Effective Date, all Allowed General Unsecured Claims shall be Reinstated and shall not be subject to the discharge provisions of this Article VIII.B. Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring. This Article VIII.B also shall apply to any and all claims against the Non-Filers on account of or relating to the Notes.

*C.*      **Release of Liens.**

**Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion**

26

of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.

### D.    Releases by the Debtors.

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, including any derivative Claims asserted or that could possibly have been asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Affiliates, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and related Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date of the Plan, other than Claims or liabilities arising out of or related to any contractual or fixed monetary obligation owed to the Debtors or the Reorganized Debtors.  Notwithstanding any other provision of the Plan to the contrary, the Debtors and the Non-Filers do not release and shall not be deemed to have released any claims, rights, or Causes of Action related to the operation of the Michigan Joint Venture, including, but not limited to, any claims, rights, or Causes of Action against the Michigan Joint Venture Entities or the Michigan Joint Venture Partner or any rights under any agreements related to the Michigan Joint Venture.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this Article VIII.D; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors asserting any claim or Cause of Action released pursuant to the Debtor Release.

### E.    Releases by Holders of Claims and Interests.

Except as provided in the last sentence of this Article VIII.E, as of the Effective Date, each Holder of a Claim or an Interest in the Debtors, except to the extent that such Holder either voted to reject the Plan or is classified in a Class that is deemed to reject the Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Third Party Releasees from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, including any derivative Claims, asserted on behalf of a debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Non-Filers, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation,

27

formulation, or preparation of the Plan, the related Disclosure Statement, the related Plan Supplement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (1) in exchange for the good and valuable consideration provided by the Third Party Releasees; (2) a good faith settlement and compromise of the Claims released by this Article VIII.E; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity granting a Third Party Release from asserting any claim or Cause of Action released pursuant to the Third Party Release.

Nothing in this Third Party Release shall be deemed to release or Impair any Allowed General Unsecured Claim against the Debtors, and all Allowed General Unsecured Claims against the Debtors shall be Reinstated under the Plan.

## F.   *Exculpation.*

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, cause of action, or liability for any Exculpated Claim; *provided, however,* that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined by a Final Order to have constituted gross negligence or willful misconduct; *provided further* that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Debtors and the Reorganized Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys) have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## G.   *Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.D or Article VIII.E hereof, discharged pursuant to Article VIII.A hereof, or are subject to exculpation pursuant to Article VIII.F hereof are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Filers, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Subject only to entry of a Final Order approving the California Wage and Hour 9019 Motion, the California Wage and Hour Litigation is permanently

enjoined by this Article VIII.G and each and every plaintiff, class member, or party to the California Wage and Hour Litigation is permanently bound by this Injunction.

*H.      Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, no Entities, including Governmental Units, shall discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*I.      Setoffs.*

**Except as otherwise expressly provided for in the Plan, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor or the Reorganized Debtors, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however,* that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of a Debtor or a Reorganized Debtor, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date.**

*J.      Recoupment.*

**In no event shall any Holder of a Claim or an Interest be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date.**

*K.      Subordination Rights.*

Any distributions under the Plan to Holders shall be received and retained free from any obligations to hold or transfer the same to any other Holder, and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

*L.      Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

K&E 16739170

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Confirmation.*

It shall be a condition precedent to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.   the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors and reasonably acceptable to the Informal Noteholders Committee;

2.   the Confirmation Order shall:

(a)      authorize the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)      authorize the Reorganized Debtors to: (i) issue the New Equity pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; and (ii) enter into any agreements contained in the Plan Supplement;

(d)      decree that the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

(e)      authorize the implementation of the Plan in accordance with its terms; and

(f)      provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax (including, any mortgages or security interest filing to be recorded or filed in connection with the Exit Facility); and

3.   the Plan must be in form and substance acceptable to the Debtors and reasonably acceptable to counsel to the Informal Noteholders Committee.

4.   all documentation related to the Plan must be in form and substance reasonably acceptable to the counsel to the Informal Noteholders Committee.

B.      *Conditions Precedent to the Effective Date.*

It shall be a condition precedent to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.   the Confirmation Order shall have become a Final Order;

K&E 16739170

2.    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in form and substance acceptable to the Debtors and reasonably acceptable to counsel to the Informal Noteholders Committee;

3.    all actions, documents, Certificates, and agreements necessary to implement the Plan, including documents contained in the Plan Supplement, shall have been effected or executed and delivered, as the case may be, to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws; *provided, however*, that each document, instrument, and agreement must be acceptable to the Debtors and reasonably acceptable to counsel to the Informal Noteholders Committee;

4.    all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan shall have been received;

5.    the initial boards of directors of the Reorganized Debtors shall have been appointed;

6.    the effectiveness of the Exit Facility, in form and substance acceptable to the Debtors and reasonably acceptable to counsel to the Informal Noteholders Committee; and

7.    The Debtors shall have satisfied the requirements of Article IV.N of the Plan by purchasing a director and officer liability insurance tail policy on terms and conditions satisfactory to the Debtors and Counsel to the Informal Noteholders Committee.

C.    *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived only by consent of the Debtors and counsel to the Informal Noteholders Committee, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

D.    *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by the Debtors, any Holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect.

### ARTICLE X.
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors, with the reasonable consent of counsel to the Informal Noteholders Committee, reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or, with the reasonable consent of counsel to the Informal Noteholders Committee, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

K&E 16739170

*B.      Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.   If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:   (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity, including the Non-Filers; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity, including the Non-Filers.

# ARTICLE XI.
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including (i) the resolution of any request for payment of any Administrative Claim, and (ii) the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

32

8. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.K.1 hereof;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15. enter an order or Final Decree concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22. enforce all orders previously entered by the Bankruptcy Court; and

23. hear any other matter not inconsistent with the Bankruptcy Code.

K&E 16739170

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.*    *Immediate Binding Effect.*

Subject to Article IX.B hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

*B.*    *Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C.*    *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

*D.*    *Payment of Fees and Expenses of Professionals in Connection with the Funded Debt.*

On the Effective Date, the Disbursing Agent shall pay in full in Cash all reasonable and documented unpaid fees and expenses of the advisors retained by the Informal Noteholders Committee; *provided, however,* that reasonably detailed fee invoices provided by the Entity shall be required as a condition of payment hereunder.

*E.*    *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Prepetition Secured Agent, the Note Indenture Trustee (except as otherwise specifically provided for in the Plan, including Article IV.G and Article IV.H hereof, and as set forth in this paragraph), or the Informal Noteholders Committee, and any other statutory committees after the Effective Date. Notwithstanding the preceding sentence, all reasonable Note Indenture Trustee fees and expenses owed to the Note Indenture Trustee shall be paid by the Debtors, in Cash, on the Effective Date. The Bankruptcy Court shall resolve any objection by the Debtors to the reasonableness of such Note Indenture Trustee fees and expenses, *provided, however*, that the Debtors shall pay and all amounts not in dispute pending determination by the Bankruptcy Court. The Note Indenture Trustee shall be compensated for all services and disbursements related to obligations and distributions pursuant to this Plan occurring on or after the Effective Date (and for the related fees and expenses of any agent, counsel, or other professional engaged by the Note Indenture Trustee with respect to administering or implementing such obligations and distributions), by the Reorganized Debtors in the ordinary course upon the presentation of invoices by the Note Indenture Trustee. Compensation of the Note Indenture Trustee for services relating to obligations or distributions under this Plan on or after the Effective Date shall be made without the need for filing any application or request with, or approval by, the Bankruptcy Court. The rights of the Note Indenture Trustee to assert a lien or administrative claim (as set forth in Section 7.07 in the Note Indenture) against distributions to be

made under this Plan shall be discharged to the extent that the Note Indenture Trustee fees and expenses (occurring both prior to and/or subsequent to the Effective Date) are paid in full by the Debtors (or Reorganized Debtors) or otherwise by order of the Bankruptcy Court.

F.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

G.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

H.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

       1.      <u>If to the Debtors, to:</u>

            U.S. Concrete, Inc.
            2925 Briarpark
            Suite 1050
            Houston, Texas 77024
            Facsimile: (713) 499-6201
            Attention:  Curt Lindeman
            E-mail address:  clindeman@us-concrete.com

            with copies to:

            Kirkland & Ellis LLP
            300 North LaSalle St.
            Chicago, Illinois 60654
            Facsimile:  (312) 862-2200
            Attention: Patrick Nash and Ross Kwasteniet
            E-mail addresses:  patrick.nash@kirkland.com and ross.kwasteniet@kirkland.com

       2.      <u>If to the Informal Noteholders Committee, to:</u>

            Paul, Weiss, Rifkind, Wharton & Garrison LLP
            1285 Avenue of the Americas
            New York, New York 10019-6064
            Facsimile: (212) 757-3990
            Attention: Andrew Rosenberg and Laruen Shumejda
            E-mail addresses:  arosenberg@paulweiss.com and lshumejda@paulweiss.com

3.     If to the Creditors Committee, to :

        McDonald Hopkins LLFC
        600 Superior Avenue East
        Cleveland, OH 44114
        Facsimile: (216) 348-5474
        Attention:  Sean Malloy and Scott Opincar
        E-mail addresses:  smalloy@mcdonaldhopkins.com and sopincar@mcdonaldhopkins.com

After the Effective Date, the Debtors have authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

I.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

J.      *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

K.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://chapter11.epiqsystms.com/usconcrete or the Bankruptcy Court's website at www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

L.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

M.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code,

36

the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

### N. Closing of Chapter 11 Cases.

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

### O. Waiver or Estoppel.

**Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the Note Indenture Trustee or their counsel, or any other Entity, including the Non-Filers, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.**

### P. Conflicts.

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

K&E 16739170

Dated: June 2 , 2010

Respectfully submitted,

U.S. CONCRETE, INC.
(for itself and on behalf of each of its affiliated
Debtors)

By: _____
    Name:    Michael W. Harlan
    Title:    President and Chief Executive Officer

Prepared by:

KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000 (telephone)

- and -

PACHULSKI, STANG, ZIEHL & JONES LLP
919 North Market Street
17th Floor
Wilmington, Delaware 19899
(302) 652-4100 (telephone)

CO-COUNSEL FOR THE DEBTORS

**EXHIBIT B**

**LIQUIDATION ANALYSIS**

**U.S. Concrete, Inc. [A]**
**Liquidation Analysis - Consolidated**
*($ in 000's)*

| Assets Available for Distribution | Notes | Unaudited Balance[B] 28-Feb-10 | | Estimated Asset Realization Percentage Low | High | Hypothetical Liquidation Values Low | High |
|---|---|---|---|---|---|---|---|
| Cash | C | $ | 4,342 | 100% | 100% | $ 4,347 $ | 4,347 |
| AR-Trade | D | | 55,019 | 60% | 70% | 32,901 | 38,403 |
| Other Receivables | D | | 3,771 | 15% | 30% | 566 | 1,131 |
| Inventory - Raw Materials | E | | 29,112 | 25% | 35% | 7,278 | 10,189 |
| Prepaid Expenses | F | | 3,501 | 0% | 5% | - | 175 |
| Deferred Tax Asset | G | | 7,848 | 0% | 0% | - | - |
| Other Current Assets | H | | 1,376 | 20% | 30% | 275 | 413 |
| Property, Plant and Equipment, net | I | | 215,900 | 38% | 54% | 82,717 | 115,783 |
| Goodwill | J | | 14,083 | 0% | 0% | - | - |
| Other Noncurrent Assets | K | | 6,628 | 0% | 5% | - | 331 |
| Equity Interest in the Michigan JV | L | | 9,362 | 0% | 50% | - | 4,681 |
| **Total Assets and Net Proceeds Available for Distribution** | | | **350,923** | **36%** | **50%** | **128,084** | **175,454** |

**Estimated Chapter 7 Expenses**

| | Notes | | | | | Low | High |
|---|---|---|---|---|---|---|---|
| Net Operational Wind Down Costs | M | | | | | 18,205 | 17,225 |
| Chapter 7 Trustee Fees | M | | | | | 3,843 | 5,264 |
| Chapter 7 Professional Fees & Costs | M | | | | | 5,000 | 4,000 |
| **Total Chapter 7 Administrative Claims** | | | | | | **27,047** | **26,488** |
| **Net Proceeds after Chapter 7 Administrative Claims** | | | | | | **$ 101,037 $** | **148,966** |

| Estimated Creditor Recoveries | Notes | Estimated Claims Low | High | Est. Creditor Recovery % Low | High | Hyp. Creditor Recovery $ Low | High |
|---|---|---|---|---|---|---|---|
| **Net Proceeds after Chapter 7 Administrative Claims** | | | | | | **$ 101,037 $** | **148,966** |
| Carveout for Professionals | N | 1,500 | 1,500 | 100% | 100% | 1,500 | 1,500 |
| DIP Facility Claims | N | 69,637 | 69,637 | 100% | 100% | 69,637 | 69,637 |
| Administrative Claims | O | 23,753 | 23,753 | 100% | 100% | 23,753 | 23,753 |
| Priority Tax Claims | O | 2,832 | 2,317 | 100% | 100% | 2,317 | 2,832 |
| **Net Proceeds for Secured & Admin Claims** | | **97,723** | **97,208** | **100%** | **100%** | **97,208** | **97,723** |
| **Net Proceeds Available for Unsecured Claims** | P | **310,082** | **310,082** | **1%** | **17%** | **3,315** | **51,243** |
| **Total Consolidated Claims** | | **$ 407,804 $** | **407,289** | **25%** | **36%** | **$ 101,037 $** | **148,451** |

© 2010 U.S. Concrete, Inc. CONFIDENTIAL Not for public disclosure or investment purposes.<br>Forward-looking statements are subject to risks & uncertainties; actual results may differ materially.

**Consol. Liquidation Analysis**

K&E 16775471.1

# NOTES TO LIQUIDATION ANALYSIS

*Note A - Organization and Ownership*

US Concrete Inc. is the direct or indirect parent entity for all the Debtors and non-Debtors Subsidiaries and Affiliates. Its primary assets are the direct and indirect ownership interests in its Subsidiaries. The Liquidation Analysis has been prepared on a consolidated basis. Balance sheet accounts exclude the assets of the Michigan JV, the value of which has been considered independently and reflected under "Equity in Joint Venture."

*Note B - Book Values at February 28, 2010*

Unless stated otherwise, the book values used in this Liquidation Analysis are the unaudited net book values of the Debtors as of February 28, 2010 which are assumed to be a proxy for book values as of June 30, 2010.

*Note C - Cash and Cash Equivalents*

It has been assumed in the Liquidation Analysis that operations during the liquidation period would not generate additional cash available for distribution except for net proceeds from the disposition of non-cash assets. Debtors' cash and cash equivalents are unrestricted. It is assumed that the unrestricted cash and cash equivalents of approximately $4.3 million held in US Concrete's accounts are fully available for distribution.

*Note D - Accounts Receivable*

Accounts receivable are made up of trade accounts receivables and other receivables. The analysis of accounts receivable assumes that a Chapter 7 trustee would retain certain existing staff of the Debtors to handle an aggressive collection effort for outstanding trade accounts receivable for the entities undergoing an orderly liquidation. The liquidation value of trade accounts receivable was estimated based upon a review of the Debtors' historical borrowing base certificates. The historical effective rate in the borrowing base has been approximately 70%, which Management deems to be the highest recovery expected for trade receivables. Management also believes that the low range could correspondingly be approximately 10% lower than the historical effective rate.

Other accounts receivable is comprised of other third party receivables, rebate receivables, and other insurance reimbursement receivables. Management reviewed each of these accounts and determined the likelihood for recovery. Insurance receivables were deemed to have no recovery. Other third party and rebate receivables were deemed to have low recovery values based on performance and volume targets that may not be met during fiscal year 2010.

*Note E - Inventories*

Inventories are comprised of certain raw materials, Precast division work-in-process, and building materials. The Liquidation Analysis contemplates Precast customers would presumably be willing to compensate the Debtors for the cost of WIP. All other raw materials, including sand, rock, stone, slag, accelerants and other raw materials are assumed to be sold. Accordingly, the Liquidation Analysis assumes no new purchases of raw materials are made after June 30, 2010, except for amounts sufficient to supply customers during the wind down period. Management believes the high recovery range on inventory is best approximated by the Debtors' historical borrowing base certificates. The effective rate

for inventory has been approximately 35% of the net book value. In addition, Management also believes that the range between high and low recovery values would be approximately 10%.

*Note F - Prepaid Expenses*

Prepaid expenses include prepaid taxes, prepaid insurance, prepaid licenses, prepaid rent, and other prepaid expenses. The Debtors reviewed each account across each business unit and determined the likelihood of recovery for each category of prepaid expense. Other prepaid expense and prepaid rent were likely to get a very small recovery value on the high end and no recovery on the low end. All other prepaid expenses were not expected to have a recovery.

*Note G - Deferred Tax Asset*

Deferred tax asset would only accrete to the estate and have any recovery value, if the Debtors were a going concern. Accordingly, in Chapter 7, deferred tax asset is estimated to have no recoverable value.

*Note H - Other Current Assets*

Other current assets are comprised primarily of deposits, notes receivable, retainage receivables, and other current receivables. The majority of other current receivables are retention receivables. Retention receivables represent holdback amounts from projects, which will be released when certain performance milestones are met. Management believes that some of the retention receivables will be recovered; however, there will be no recovery value for the remaining assets in this account.

*Note I - Property, Plant & Equipment, Net*

Property, Plant & Equipment includes all land, aggregate deposits, buildings & improvements, computers, construction in progress, plant and mobile equipment, furniture and fixture, and vehicles owned by the Debtors.

For purposes of the Liquidation Analysis, the Debtors have assumed that 50% of its plants and equipment would be sold to competitors or other parties as turnkey properties, while the other 50% of the plants and equipment would be disassembled and sold off piecemeal.

The liquidation value of land and improvements assumes that all land and improvements are restored to a sellable state, prior to liquidation (Site remediation costs are included in the "Chapter 7 Net Operational Wind Down Costs"). Management believes that the land could be sold for industrial purposes or other real estate opportunities. The recovery value reflects a proxy of book value and market conditions, less selling costs in the various markets where the properties are located.

Aggregate deposit values are based on geological surveys conducted at various times. In some cases, the aggregate tonnage may be underestimated until new surveys are conducted. As a result of recent surveys made at the Hamburg quarry, the Debtors believe that it may recover significant value from its aggregate deposits up to 100% of its net book value.

Management believes Buildings & Improvements would have a low recovery value. Many of the buildings are one use structures and not easily removed and restored for alternative use. Computers are assumed to have a low recovery value based on their short useful life. Furniture and Fixtures are deemed to have a negligible recovery value.

3

Construction in Progress and Plant and Mobile Equipment are assumed to have 50% recovery value, based on historical data. Management also believes that the range between high and low recovery values would be approximately 15%.

The Debtors have assumed that equipment secured by capital leases located at various plant sites will be returned to the lessor in satisfaction of the capital lease obligations. As a result, proceeds available for distribution from PP&E have been reduced by the outstanding obligations. Any deficiency claim remaining after disposal of the equipment is assumed to be a General Unsecured Claim.

US Concrete has vehicles, and various trucks and trailers at each plant location. In August 2009, the Debtors' lenders had an appraisal done for its 804 ready mix concrete mixer trucks located at various manufacturing locations. The Debtors believes the appraisal and the collateral value the lenders assigned to the truck fleet is an appropriate basis to determine the recovery value in this analysis. The information provided by the appraisal was used to determine the high end of the recovery value. The Debtors also obtained a forced liquidation appraisal for its mixer drums, trucks, semi tractors, and trailers for the Michigan JV in August 2009. The forced liquidation appraisal was used as a basis to derive the low end of recovery value for the Debtors' vehicles.

The Liquidation Analysis does not include any value associated with any leased properties. All leased properties, are assumed returned to the respective lessor in satisfaction of any secured claim.

*Note J - Goodwill*

Goodwill is related to going concern value and is estimated to have no value in liquidation.

*Note K - Other Noncurrent Assets*

Other noncurrent assets are comprised primarily of deferred financing costs, deposits, and other noncurrent assets. The Debtors reviewed each account and determined an appropriate recovery value. The Debtors believes that there is little recovery value in the other noncurrent assets.

*Note L - Equity Interest in the Michigan JV*

Equity interest in the Michigan JV is based on the Debtors' portion of book value of equity for the joint venture (of which the Debtors' ownership is 60% of the total equity). Due to the currently depressed Michigan market and coupled with the unfunded pension plan it may be difficult to find a buyer for its equity interest in the short term. However, a strategic buyer may purchase the Debtors' equity interest or a portion thereof. The Debtors assume recovery to be from 0% to 50% of the Equity interest in the Michigan JV.

However, due to current market conditions and the unlikelihood of finding a strategic buyer quickly, the low end recover value could be 0%.

*Note M - Costs Associated with Liquidation*

Corporate payroll and certain operating costs during the liquidation are based upon the assumption that certain plant and corporate functions would be retained to oversee the wind down process. The remaining staff would also be needed to maintain and close the accounting records and to complete certain administrative tasks including payroll and tax forms and records. Certain minimum staff would be required at the physical locations to complete the closure of the facilities, to disassemble

4

equipment, to conduct and complete site remediation work, and to oversee the sale process for equipment and real estate. Additionally, this analysis includes costs associated with employees that fall under the WARN Act. It is assumed that the WARN Act would impact the 50% of the employees whose plants are not purchased and hired by a potential buyer.

For purposes of estimating the maximum liquidation value for the Debtors, no additional payments for employee retention through the Chapter 7 liquidation period are assumed to be made.

As previously stated Management estimates that half of the plants would be sold in their current condition to various buyers. However, Management estimates that approximately 49 plants will require some site remediation. Restoring the land would require removing such things as underground storage, concrete placements and conveyor systems. An estimate for these costs has been included in this analysis.

Chapter 7 trustee fees include those fees associated with the appointment of a Chapter 7 trustee in accordance with section 326 of the Bankruptcy Code. Trustee fees are estimated based on historical experience in other similar cases at 3% of the total net liquidation value of the Debtors' assets.

Chapter 7 professional fees include legal, appraisal, broker and accounting fees expected to be incurred during the nine-month liquidation period and not already deducted from liquidation values.

*Note N - Super-priority Administrative Claims*

The estimated obligation under the DIP Credit Facility is estimated to be **$[49]** million at June 30, 2010. In addition, it is estimated that approximately **$[21]** million of letters of credit issued for benefit of the Debtors would be drawn upon conversion to a Chapter 7. The letters of credit primarily relate to insurance retention and would be used to satisfy these claims (note the unsecured claims have been reduced by the associated amount). In addition, there are surety letters of credit that would also be drawn and used to satisfy claims arising from the non-completion of work.

The Carve-Out at June 30, 2010 is estimated to be $1.5 million. Obligations under the DIP Credit Facility and the Carve-Out for accrued and unpaid professional fees from the Chapter 11 Estates are assumed to be paid after the liquidation costs of the Chapter 7 estates, with the Carve-Out assumed paid in its entirety first and the DIP Facility Claim paid subsequently.

*Note O - Administrative and Priority Claims*

Administrative and priority claims include unpaid post-petition operating expenses of the Chapter 11 Estates as estimated by the post-petition accounts payable and accrued expenses reflected in the books and records of the Debtors at February 28, 2010, estimated Chapter 7 administrative claims, unpaid professional fees from the Chapter 11 Estates and estimated Priority Claims. Administrative claims are assumed paid on a pro rata basis from the net proceeds, if any, remaining after the payment of liquidation costs, DIP Facility Claims (including the Carve-Out), and Secured Claims.

Other Priority Claims include unpaid payroll taxes and sales taxes of the Chapter 11 Estate. Other Priority Claims are assumed to be paid on a pro rata basis from the net proceeds available, if any, after the payment of liquidation costs, DIP Facility Claims (including the Carve-Out), Secured Claims and Administrative Claims. These Claims are assumed to have their priority as set out in the Bankruptcy Code. Administrative and Priority Claims are estimated to be **$[27]** million.

*Note P - Unsecured Claims*

For purposes of the Liquidation Analysis, The Debtors has assumed that unsecured claims will consist of estimated unsecured claims as defined in the Plan. Unsecured Claims include other claims arising out of accrued liabilities, settlement of the California class action suit, and notes claim related to the high yield bonds. It should be noted that the Liquidation Analysis does not attempt to estimate potential additional unsecured claims that would likely arise as a result of the termination of the Debtors' pension and benefit plans, the rejection of remaining executory contracts and leases, deficiency claims arising from the return of equipment under capital leases, and the failure of the Debtors to perform under existing contracts with its customers. Such additional claims would likely result from a cessation of operations as contemplated herein and would likely be substantial in amount. Unsecured claims are assumed to be paid on a pro rata basis from the net liquidation proceeds available, if any, after the payment of all other Claims. Unsecured Claims are estimated to be **$[325]** million solely for purposes of this Liquidation Analysis.

6

# EXHIBIT C

## REORGANIZED DEBTORS' FINANCIAL PROJECTIONS

<u>Financial Projections</u>

**A.  Principal Assumptions**

The Financial Projections reflect numerous assumptions with respect to the anticipated future performance of the Reorganized Debtors and the successful implementation of the Debtors' existing business plan (the "<u>Business Plan</u>").  *Therefore, while the Projections are necessarily presented with numerical specificity, the actual results achieved will vary from the projected results. These variations may be material.  Accordingly, no representation can be or is being made with respect to the accuracy of the Projections or the ability of the Reorganized Debtors to achieve the projected results.*  See the "Risk Factors" section in the Disclosure Statement for a discussion of certain factors that may affect the future financial performance.

While the Debtors believe that the assumptions underlying the Financial Projections, when considered on an overall basis, are reasonable in light of current circumstances, no assurance can be or is being given that the Financial Projections will be realized.

In deciding whether to accept or reject the Plan, Holders of Claims or Interests against the Debtors must make their own determinations as to the reasonableness of the assumptions made in arriving at, and the reliability of, the Financial Projections.  See the "Projected Financial Information" section of the Disclosure Statement.

Additional information relating to the principal assumptions used in preparing the Projections is set forth below.

1.  <u>Income Statements and Cash Flow Assumptions</u>

a)  *Competitive Market Conditions:* The Financial Projections are based on the assumption that the concrete business continues to be a highly competitive industry. The Reorganized Debtors will be affected by, among other factors, its ability to attract new customers, differentiate itself in a competitive market by emphasizing new product development and value added sales, and marketing, hiring, and retaining employees.

b)  *Revenue:* Total revenue growth is projected to be (1)% in 2010, 13% in 2011, 12% in 2012, 11% in 2013 and 8% in 2014.  Volume growth assumptions reflect a recovery trajectory in line with industry forecasts but below on absolute dollar terms, as the Debtors served end markets which declined faster than the broader heavy building material market over the 2006-2009 period.  Revenue growth will ultimately be driven by the recovery of residential home construction, commercial construction and public works spending and the overall health of the U.S. economy, particularly the construction sector.

c)  *Gross Profit:* Gross profit as a percentage of revenue in 2010 is projected to decrease (1)% year-over-year to 14%, which is primarily attributable to the effect of fixed costs being spread over lower volumes and to higher per unit delivery costs. However, the Debtors are projecting gross profit to steadily increase to 20% in 2014 from higher volumes and slight improvements in materials spread over the Projected Period.

d)  *EBITDA:* EBITDA is expected to decline 32% year-over-year in 2010, followed by a 139% increase in 2011 and a 33% compounded annual growth rate from 2011 to 2014.  This growth is highly dependent on the volume, revenue, and cost

assumptions noted above. The Debtors are projecting increased revenue (volume and pricing) and improved asset and overhead utilization, which is expected to drive the improved profitability in the out years of the Projection Period.

e) *Depreciation and Amortization Expenses:* Depreciation and amortization expenses reflect estimated amounts based on current property, plant and equipment values, projected capital expenditures, and existing estimated useful lives.

f) *Interest Expense:* Interest expense projections are based on the current debt structure prior to filing, the DIP Facility during bankruptcy and entry into the Exit Facility upon the Effective Date.

g) *Restructuring Expenses:* Restructuring charges related to the chapter 11 filing are comprised of professional fees, financing fees, and utility deposits. Professional fees were projected by examining the run-rate for professionals billing at hourly and fixed-rates and estimating projected run-rate billing levels, accounting for hold-backs and success fees. Financing fees reflect terms of the DIP Facility and Exit Facility related fees.

h) *Income Taxes:* The Financial projections assume that the Debtors' existing NOL carryforwards are fully-utilized to offset a portion of the income resulting from the CODI. Any CODI in excess of the NOL carryforward is then utilized to reduce the tax basis in assets. Financial Projections assume only state and local taxes are paid for 2010 and 2011 and a 40% corporate tax rate thereafter. Further tax diligence will be required to confirm the underlying tax assumptions.

i) *Capital Expenditures:* Annual cash capital expenditures are assumed to range from $10 million in 2010 to $31 million in 2014 and include plant, rolling stock replacement, and rolling stock expansion due to expected volume levels requiring additional fleet capacity to meet customer demand. The significant increase reflects the curtailment of capex spending in 2007 through 2010 with the majority of capex in 2011 through 2014 comprised of replacement spending for catch-up required to manage the ageing fleet.

2. Balance Sheet Assumptions

The Reorganized Debtors' Projected Balance Sheets set forth the projected financial position after giving effect to the proposed restructuring. The Projected Balance Sheets were developed from the December 31, 2009 balance sheet contained in the Debtors' Annual Report on Form 10-K for the fiscal year ended December 31, 2009, as adjusted for the Plan and projected income and cash flows over the Projection Period and non-debtor entities and may not be in accordance with GAAP.

The Balance Sheet contains certain pro forma adjustments as a result of Consummation including the impact of generally accepted "fresh start" accounting. The pro forma Balance Sheet adjustments contained herein account for (i) the reorganization and related transactions pursuant to the Plan and (ii) the implementation of "fresh start" accounting. The fresh start adjustments are based on a total equity value of approximately $143 million but are not allocated to individual asset categories. Further diligence is required to fully-allocate deficiency accounts subject to valuation.

2

The Balance Sheet also includes the debt and other obligations that will continue to remain outstanding and will be paid in the ordinary course of operations. The projected cash balances include the effects of anticipated changes in working capital related items. On the Effective Date, actual cash may vary from cash reflected in the balance sheets because of variance in the projections and potential changes in cash needs for Consummation.

3

## Projected Pro Forma Consolidated Balance Sheet

(Unaudited, USD in thousands)

| BALANCE SHEET | | | | | |
| --- | --- | --- | --- | --- | --- |
| ASSETS | 2010E | 2011E | 2012E | 2013E | 2014E |
| Current Assets | | | | | |
| Cash | $1,000 | $1,000 | $1,000 | $4,012 | $17,262 |
| AR | 66,890 | 74,236 | 83,374 | 92,944 | 100,597 |
| Inventories | 28,668 | 29,603 | 31,499 | 34,688 | 35,952 |
| Prepaid Expenses | 3,139 | 3,242 | 3,353 | 3,693 | 3,994 |
| Other Current Assets | 5,726 | 6,097 | 7,071 | 8,043 | 8,680 |
| Total Current Assets | $105,422 | $114,177 | $126,297 | $143,379 | $166,484 |
| Non-Current Assets | | | | | |
| PP&E, Net | $203,995 | $211,008 | $216,429 | $220,652 | $229,273 |
| Goodwill | 14,063 | 14,063 | 14,063 | 14,063 | 14,063 |
| Other Non-Current Assets | 4,398 | 4,198 | 3,998 | 3,798 | 3,598 |
| Investments in Michigan JV | 9,329 | 7,883 | 7,804 | 9,045 | 10,716 |
| Unallocated Deficiency Account Subject to Valuation | (82,498) | (82,498) | (82,498) | (82,498) | (82,498) |
| Total Non-Current Assets | $149,288 | $154,655 | $159,797 | $165,060 | $175,152 |
| **Total Assets** | **$254,710** | **$268,832** | **$286,094** | **$308,439** | **$341,637** |
| LIABILITIES & EQUITY | | | | | |
| Current Liabilities | | | | | |
| Accounts Payable | $28,668 | $33,155 | $36,749 | $40,469 | $43,768 |
| Accrued Liabilities | 37,530 | 43,296 | 48,918 | 52,715 | 58,263 |
| Total Current Liabilities | $66,198 | $76,451 | $85,667 | $93,184 | $102,031 |
| Non-Current Liabilities | | | | | |
| Total Debt | $48,734 | $52,256 | $50,350 | $45,000 | $45,000 |
| Net Deferred Income Taxes | 1,811 | 1,811 | 1,811 | 1,811 | 1,811 |
| Other Long-Term Obligations | 6,303 | 6,303 | 6,303 | 6,303 | 6,303 |
| Total Non-Current Liabilities | $56,849 | $60,370 | $58,464 | $53,114 | $53,114 |
| **Total Liabilities** | **$123,047** | **$136,821** | **$144,131** | **$146,298** | **$155,145** |
| **Shareholders' Equity** | **$131,663** | **$132,011** | **$141,963** | **$162,141** | **$186,491** |
| **Total Liabilities and Equity** | **$254,710** | **$268,832** | **$286,094** | **$308,439** | **$341,637** |

**Projected Pro Forma Consolidated Income Statement**
(Unaudited, USD in thousands)

| INCOME STATEMENT | | | | | |
|---|---|---|---|---|---|
| | 2010E | 2011E | 2012E | 2013E | 2014E |
| Revenues | $480,762 | $542,451 | $608,787 | $678,158 | $733,912 |
| COGS | (412,943) | (447,833) | (496,083) | (546,115) | (590,555) |
| Gross Profit | $67,819 | $94,618 | $112,704 | $132,043 | $143,356 |
| SG&A | ($54,417) | ($65,287) | ($70,643) | ($74,184) | ($79,153) |
| Stock Compensation | (2,507) | (3,322) | (2,731) | (2,420) | (2,407) |
| D&A | (25,677) | (22,475) | (21,951) | (22,053) | (22,404) |
| Operating Expenses | ($82,601) | ($91,084) | ($95,325) | ($98,658) | ($103,964) |
| Other Income | 477 | 847 | 847 | 847 | 847 |
| Settlement Costs | 372 | -- | -- | -- | -- |
| Amortization/Write Off of Financing Fees | (3,796) | (300) | (300) | (300) | (300) |
| Restructuring Fees | (17,877) | -- | -- | -- | -- |
| Interest Expense | (11,515) | (5,353) | (5,630) | (5,576) | (5,038) |
| Income / (Loss) from Michigan JV | (4,212) | (1,446) | (79) | 1,240 | 1,671 |
| Pre-Tax Income | ($51,332) | ($2,717) | $12,217 | $29,597 | $36,573 |
| Income Taxes | (256) | (256) | (4,997) | (11,839) | (14,629) |
| Net Income | ($51,588) | ($2,973) | $7,220 | $17,758 | $21,944 |
| **Memo:** | | | | | |
| EBIT[a] | ($14,782) | $3,535 | $17,379 | $33,386 | $39,392 |
| EBITDA[a] | 10,895 | 26,010 | 39,329 | 55,439 | 61,796 |

(a)    Excludes extraordinary items.

**Projected Pro Forma Consolidated Statement of Cash Flows**
(Unaudited, USD in thousands)

| CASH FLOW STATEMENT | | | | | |
|---|---|---|---|---|---|
| | **2010E** | **2011E** | **2012E** | **2013E** | **2014E** |
| **CASH FLOWS FROM OPERATING ACTIVITIES** | | | | | |
| Net Income/(Loss) | ($51,588) | ($2,973) | $7,220 | $17,758 | $21,944 |
| Depreciation, Depletion and Amortization | 25,677 | 22,475 | 21,951 | 22,053 | 22,404 |
| Change in Deferred Income Taxes | 0 | -- | -- | -- | -- |
| Change in Other Non-Current Assets | (1,355) | 200 | 200 | 200 | 200 |
| Stock-based Compensation | 2,507 | 3,322 | 2,731 | 2,420 | 2,407 |
| Change in Other Long-Term Obligations | (613) | -- | -- | -- | -- |
| Other[a] | (13) | -- | -- | -- | -- |
| (Income) / Loss from Michigan JV | 4,212 | 1,446 | 79 | (1,240) | (1,671) |
| Changes in Net Working Capital | 696 | 1,498 | (2,904) | (6,553) | (1,008) |
| **Net Cash Provided by Operating Activities** | **($20,477)** | **$25,967** | **$29,277** | **$34,638** | **$44,275** |
| | | | | | |
| **CASH FLOWS FROM INVESTING ACTIVITIES** | | | | | |
| Purchases of Properties, Plant and Equipment | ($9,655) | ($29,489) | ($27,372) | ($26,277) | ($31,024) |
| Proceeds from Disposals of Properties, Plant and Equipment | 270 | -- | -- | -- | -- |
| Other Investing Activities | (128) | -- | -- | -- | -- |
| Contributions to Michigan JV | (2,627) | -- | -- | -- | -- |
| **Net Cash Used in Investing Activities** | **($12,141)** | **($29,489)** | **($27,372)** | **($26,277)** | **($31,024)** |
| | | | | | |
| **CASH FLOWS FROM FINANCING ACTIVITIES** | | | | | |
| Proceeds/(Payments) of Pre-Petition Revolver | ($16,700) | $0 | $0 | $0 | $0 |
| Proceeds/(Payments) of Exit RCL | 3,521 | 3,734 | (1,906) | (5,350) | -- |
| Proceeds/(Payments) of Exit Senior Secured Notes | 45,000 | -- | -- | -- | -- |
| Proceeds/(Payments) of Other Notes Payable | (2,105) | (213) | -- | -- | -- |
| Other[b] | (69) | -- | -- | -- | -- |
| **Net Cash Provided by Financing Activities** | **$29,648** | **$3,521** | **($1,906)** | **($5,350)** | **$0** |
| Cash and Cash Equivalents at Beginning of Period | $3,970 | $1,000 | $1,000 | $1,000 | $4,012 |
| Net Increase/(Decrease) in Cash and Cash Equivalents | (2,970) | -- | -- | 3,012 | 13,250 |
| **Cash and Cash Equivalents at End of Period** | **$1,000** | **$1,000** | **$1,000** | **$4,012** | **$17,262** |

(a)    Other includes gain / losses from asset sales, amortization of OID on Sub Notes, and other items.

(b)    Represents purchases of treasury stock.

# Projected Pro Forma Balance Sheet – July 31, 2010
(Unaudited, USD in thousands)

| | PRO FORMA PROJECTED BALANCE SHEET | | | |
|---|---|---|---|---|
| | Projected Pre-Confirmation July 31, 2010 Balance Sheet | Reorganization Adjustments — Recapitalization Adjustments | Fresh-Start Adjustments | Pro Forma Reorganized July 31, 2010 Balance Sheet |
| **ASSETS** | | | | |
| Current Assets | | | | |
| Cash | $1,000 | $0 | $0 | $1,000 |
| AR | 88,366 | -- | -- | 88,366 |
| Inventories | 31,030 | -- | -- | 31,030 |
| Deferred Income Taxes | (1,811) | -- | -- | (1,811) |
| Prepaid Expenses | 3,775 | -- | -- | 3,775 |
| Other Current Assets | 10,070 | (2,460) (a) | -- | 7,610 |
| Total Current Assets | $132,431 | ($2,460) | $0 | $129,971 |
| Non-Current Assets | | | | |
| PP&E, Net | $210,712 | $0 | $0 | $210,712 |
| Goodwill | 14,063 | -- | -- | 14,063 |
| Other Non-Current Assets | 5,161 | (497) (b) | -- | 4,665 |
| Investments in Michigan JV | 8,983 | -- | -- | 8,983 |
| Unallocated Deficiency Account Subject to Valuation | -- | -- | (82,498) (k) | (82,498) |
| Total Non-Current Assets | $238,920 | ($497) | ($82,498) | $155,925 |
| **Total Assets** | **$371,351** | **($2,957)** | **($82,498)** | **$285,896** |
| **LIABILITIES** | | | | |
| Current Liabilities | | | | |
| Accounts Payable | $38,141 | $0 | $0 | $38,141 |
| Accrued Liabilities | 59,664 | (13,189) (c) | -- | 46,475 |
| Total Current Liabilities | $97,805 | ($13,189) | $0 | $84,616 |
| Non-Current Liabilities | | | | |
| Total Debt | $321,019 | ($268,820) | $0 | $52,199 |
| Existing Revolver | -- | -- | -- | -- |
| DIP RCL | 3,511 | (3,511) (d) | -- | -- |
| DIP Term Loan | 45,000 | (45,000) (d) | -- | -- |
| Exit RCL | -- | 6,511 (e) | -- | 6,511 |
| Exit Senior Notes | -- | 45,000 (e) | -- | 45,000 |
| Senior Subordinated Notes | 271,820 | (271,820) (f) | -- | -- |
| Other Notes Payable | 688 | -- | -- | 688 |
| Capital Leases | -- | -- | -- | -- |
| Other Long-Term Obligations | 6,303 | -- | -- | 6,303 |
| Total Non-Current Liabilities | $327,322 | ($268,820) | $0 | $58,502 |
| **Total Liabilities** | **$425,127** | **($282,009)** | **$0** | **$143,118** |
| **EQUITY** | | | | |
| Common Stock | $38 | $0 | ($38) (j) | $0 |
| Additional Paid-In Capital | 269,299 | -- | (269,299) (j) | -- |
| Retained Earnings/(Deficit) | (319,760) | 136,274 (g) | 183,486 (j) | -- |
| Treasury Stock, at Cost | (3,353) | -- | 3,353 (j) | -- |
| New Equity to Note Holders | -- | 142,778 (f) | -- | 142,778 |
| Total Shareholders' Equity | ($53,777) | $279,052 | ($82,498) | $142,778 |
| Non-Controlling Interest | -- | -- | -- | -- |
| **Shareholders' Equity** | **($53,777)** | **$279,052** | **($82,498)** | **$142,778** |
| **Total Liabilities and Equity** | **$371,351** | **($2,957)** | **($82,498)** | **$285,896** |

**Notes to Projected Pro Forma Balance Sheet – July 31, 2010**

Upon the Effective Date, the Reorganized Debtors will be required to adopt fresh start accounting in accordance with U.S. GAAP, which requires the Reorganized Debtors to revalue its assets and liabilities at their estimated fair value. The fresh start adjustments are based on the Total Enterprise Value of approximately $143 million.

The foregoing estimates and assumptions are inherently subject to significant uncertainties and contingencies beyond control of the Debtors or the Reorganized Debtors. Accordingly, the Reorganized Debtor cannot provide assurance that the estimates, assumptions, and values reflected in the valuations will be realized and actual results could vary materially.

(a)    Reflects the write-off of unamortized deferred financing fees associated with the DIP Facility.

(b)    Reflects the write-off of unamortized deferred financing fees associated with the Notes and offset by the capitalization of the estimated fees associated with the Exit Facility.

(c)    Represents the cancellation of pre-petition liabilities associated with the Notes' accrued interest.

(d)    Reflects the repayment of the DIP Facility through the funding of the Exit Facility at the Effective Date.

(e)    Includes payment of estimated fees associated with the Exit Facility.

(f)    Represents the cancellation of the Note Claims in exchange for the issuance of New Equity.

(g)    Reflects the estimated CODI less write-off of deferred financing fees.

(h)    Represents adjustments to reflect the reorganization value of assets and liabilities in excess of amounts allocable to identifiable assets based on the midpoint of the estimated Total Enterprise Value (approximately $194 million). *See* the section of the Disclosure Statement entitled Valuation Analysis. Amounts will be allocated to identifiable tangible and intangible assets once the values are determined through additional valuations.

(i)    Reflects the cancellation of all Interests in U.S. Concrete, Inc.

**EXHIBIT D**

**DEBTORS' PREPETITION CORPORATE STRUCTURE**

U.S. Concrete, Inc. (DE)
USC Management Co., LLC (TX)
USC Payroll, Inc. (DE)
Alliance Haulers, Inc. (TX)
Alberta Investments, Inc. (TX)
Atlas-Tuck Concrete, Inc. (OK)
Titan Concrete Industries, Inc. (DE)
Superior Concrete Materials, Inc. (DC)
U.S. Concrete On-Site, Inc. (DE)
USC Technologies, Inc. (DE)
USC Atlantic, Inc. (DE)
Beall Industries, Inc. (TX)
Beall Investment Corporation, Inc. (DE)
Beall Management, Inc. (TX)
Beall Concrete Enterprises, LLC (TX)
Redi-Mix, LLC (TX)
Atlas Redi-Mix, LLC (TX)
Ingram Concrete, LLC (TX)
LP 99%
Redi-Mix GP, LLC (TX)
GP 1%
Redi-Mix Concrete, L.P. (TX)
Breckenridge Ready Mix, Inc. (TX)
MG, LLC (MD)
NYC Concrete Materials, LLC (DE)
Eastern Concrete Materials, Inc. (NJ)
Pebble Lane Associates, LLC (DE)
Local Concrete Supply & Equipment, LLC (DE)
Master Mix, LLC (DE)
Master Mix Concrete, LLC (NJ)
Hamburg Quarry Limited Liability Company (NJ)
Riverside Materials, LLC (DE)
Central Concrete Supply Co., Inc. (CA)
Central Precast Concrete, Inc. (CA)
San Diego Precast Concrete, Inc. (DE)
Smith Pre-Cast, Inc. (DE)
Sierra Precast, Inc. (CA)
American Concrete Products, Inc. (CA)
Concrete XXXIII Acquisition, Inc. (DE)
Concrete XXXIV Acquisition, Inc. (DE)
Concrete XXXV Acquisition, Inc. (DE)
Concrete XXXVI Acquisition, Inc. (DE)
Concrete Acquisition III, LLC (DE)
Concrete Acquisition IV, LLC (DE)
Concrete Acquisition V, LLC (DE)
Concrete Acquisition VI, LLC (DE)

