UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

JUDGE PETER J. WALSH

824 MARKET STREET
WILMINGTON, DE 19801
(302) 252-2925

June 21, 2010

Garvan F. McDaniel
Bifferato Gentilotti LLC
800 N. King Street
Plaza Level
Wilmington, Delaware 19801

Allan Diamond
Kyung S. Lee
Arley D. Finley
Diamond McCarthy LLP
620 Eighth Avenue, 39th Floor
New York, New York 10018

Attorneys for the Ad Hoc
Committee of Equity Holders


Pauline K. Morgan
Edmon L. Morton
Young Conaway Stargatt &
Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

Andrew N. Rosenberg
Lauren Shumejda
Sarah Harnett
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Attorneys for the Informal
Noteholders Committee

Laura Davis Jones
James E. O'Neill
Mark M. Billion
Pachulski Stang Ziehl &
Jones LLP
919 North Market Street
17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

James H.M. Sprayregen
Patrick Nash
Ross Kwasteniet
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654

Co-Counsel to Debtors

**Re:  U.S. Concrete, Inc., et al.
Case No. 10-11407 (PJW)**

Dear Counsel:

This is with respect to the Ad Hoc Committee of Equity Holders' motion for the appointment of an official committee of equity holders. (Doc. # 193.)  For the reasons stated below, I am denying the motion.

The issue is:  (a) whether there is a substantial likelihood that equity holders will receive a meaningful distribution under a strict application of the absolute priority rule and (b) whether equity holders are able to represent their interests in the bankruptcy case without an official committee.  I find for the objectors on both points.

Lazard's valuation is between $180 million and $208 million, with a midpoint of $194 million.  According to Debtors, funded debt claims as of the commencement of these chapter 11 cases were approximately $325 million, which included approximately $285 million of indebtedness under their senior unsecured notes that will be converted into stock under the Plan - equating to an approximately 50 percent recovery.

Lazard values Debtors at $180 million to $208 million, with a mid-point of $194 million, compared to approximately $325 million of prepetition debt (excluding certain outstanding trade debt).  Thus, per Debtors' calculation, shareholders are between $117 million and $145 million out of the money.  According to Debtors, Lazard estimates the value of the new equity of the

reorganized debtors at $143 million - about half of the total amount of claims held by holders of Notes.

The Noteholders point out that as of June 15, 2010, the Notes were trading at $0.51 on the dollar. This is evidence that there will not be a full recovery to unsecured creditors, let alone any meaningful distribution to existing equity holders.

The Gordian November 2009 presentation contains a preliminary valuation that pegs the TEV of Debtors at between $175 million and $325 million. As of the Petition Date Debtors had approximately $325 million in funded debt. Thus, even the high end of the TEV in the Gordian November presentation leaves equity out of the money.

If Gordian now produces a valuation report that shows that the equity owners are meaningfully in the money, that report would surely suggest a dramatic difference between Gordian and Lazard and a significant departure from Gordian's November presentation. Under those circumstances, I will likely have to conclude at the confirmation hearing that either Lazard or Gordian got it wrong. But on the record before me, I do not find that there is a substantial likelihood that equity holders will receive a meaningful distribution and I do not believe that the estate should pay for the Gordian report.

According to Debtors and the Noteholders, the members of Debtors' board of directors and senior management hold, in the

4

aggregate, a larger percentage of Debtors' existing equity than the Ad Hoc Committee of Equity Holders does. Based on the board of directors' and management's fiduciary duties to equity holders and their holdings of existing equity, the board and management adequately represent the interests of equity holders.

The Ad Hoc Committee of Equity Holders has already committed to objecting to confirmation and litigating the issue of valuation. Accordingly, no official committee is necessary.

If the Ad Hoc Equity Group makes a substantial contribution in this case, then they may be entitled to seek reimbursement for their expenses, pursuant to section 503(b)(3)(D).

                                    Very truly yours,

                                    Peter J. Walsh

PJW:ipm