**Plan Supplement Exhibits**

**Exhibit A** - New Organizational Documents

**Exhibit B** - Retained Causes of Action

**Exhibit C** - Restructuring Transaction Memorandum

**Exhibit D** - Management Equity Incentive Plan

**Exhibit E** - New Warrant Agreement

**Exhibit F** - Exit Facility

# EXHIBIT A

**New Organizational Documents**

**Working Draft 7/19/10**
**Subject to Material Modification**

# THIRD AMENDED AND RESTATED

# BYLAWS

# OF

# U.S. CONCRETE, INC.

**Effective as of [_____], 2010**

# TABLE OF CONTENTS

**Page**

**ARTICLE I STOCKHOLDERS** ................................................................................................1
    Section 1.1    Annual Meetings.............................................................................1
    Section 1.2    Special Meetings.............................................................................1
    Section 1.3    Notice of Meetings.........................................................................1
    Section 1.4    Adjournments.................................................................................2
    Section 1.5    Quorum ..........................................................................................2
    Section 1.6    Organization...................................................................................2
    Section 1.7    Voting; Proxies ..............................................................................2
    Section 1.8    Fixing Date for Determination of Stockholders of Record..........4
    Section 1.9    List of Stockholders Entitled To Vote ..........................................5
    Section 1.10   Business Brought Before a Meeting of the Stockholders .............5
    Section 1.11   No Action By Consent of Stockholders.......................................11
    Section 1.12   Conduct of Meetings....................................................................11

**ARTICLE II BOARD OF DIRECTORS** ................................................................................11
    Section 2.1    Regular Meetings.........................................................................11
    Section 2.2    Special Meetings...........................................................................11
    Section 2.3    Telephonic Meetings.....................................................................11
    Section 2.4    Organization.................................................................................12
    Section 2.5    Order of Business.........................................................................12
    Section 2.6    Notice of Meetings.......................................................................12
    Section 2.7    Quorum; Vote Required for Action ..............................................12
    Section 2.8    Action by Written Consent ..........................................................12

**ARTICLE III BOARD COMMITTEES** ................................................................................12
    Section 3.1    Board Committees ........................................................................13
    Section 3.2    Board Committee Rules................................................................13
    Section 3.3    Action by Written Consent. .........................................................13

**ARTICLE IV OFFICERS**..........................................................................................................13
    Section 4.1    Designation ..................................................................................13
    Section 4.2    CEO...............................................................................................14
    Section 4.3    Powers and Duties of Other Officers ..........................................14
    Section 4.4    Term of Office, etc........................................................................14

**ARTICLE V CAPITAL STOCK** ............................................................................................14
    Section 5.1    Certificates ...................................................................................14
    Section 5.2    Transfer of Shares ........................................................................15
    Section 5.3    Ownership of Shares.....................................................................15
    Section 5.4    Regulations Regarding Certificates .............................................15
    Section 5.5    Lost or Destroyed Certificates .....................................................15

**ARTICLE VI INDEMNIFICATION**.......................................................................................15

Section 6.1    Right to Indemnification ............................................................................15
Section 6.2    Prepayment of Expenses ...........................................................................16
Section 6.3    Claims .......................................................................................................16
Section 6.4    Nonexclusivity of Rights ..........................................................................16
Section 6.5    Other Sources ............................................................................................16
Section 6.6    Amendment or Repeal ..............................................................................16
Section 6.7    Other Indemnification and Prepayment of Expenses ................................16

**ARTICLE VII MISCELLANEOUS ...................................................................................17**
Section 7.1    Fiscal Year ...............................................................................................17
Section 7.2    Seal ...........................................................................................................17
Section 7.3    Interested Directors; Quorum ...................................................................17
Section 7.4    Form of Records .......................................................................................17
Section 7.5    Bylaw Amendments ..................................................................................17
Section 7.6    Notices; Waiver of Notice ........................................................................17
Section 7.7    Resignations .............................................................................................18
Section 7.8    Reliance on Books, Reports and Records ..................................................18
Section 7.9    Certain Definitional Provisions .................................................................19
Section 7.10   Captions ....................................................................................................19

**THIRD AMENDED AND RESTATED**

**BYLAWS**

**OF**

**U.S. CONCRETE, INC.**

The Board of Directors of U.S. Concrete, Inc. (the "Corporation") by resolution has duly adopted these Bylaws to govern the Corporation's internal affairs.

ARTICLE I
STOCKHOLDERS

Section 1.1    Annual Meetings. If required by applicable law, the Corporation will hold an annual meeting of the holders of its capital stock (each, a "Stockholder") for the election of directors of the Corporation (each, a "Director") at such date, time and place as the Board of Directors of the Corporation (the "Board") by resolution may designate from time to time. The Corporation may transact any other business at an annual meeting which has properly come before that meeting in accordance with Section 1.10.

Section 1.2    Special Meetings. Special meetings of the Stockholders may only be called in the manner provided in the Corporation's certificate of incorporation as then in effect (the "Certificate of Incorporation").  Business transacted at any special meeting of Stockholders shall be limited to business brought by or at the direction of the Board and shall be limited to the purposes stated in the notice.  The Board may postpone or reschedule any previously scheduled special meeting.

Section 1.3    Notice of Meetings. By or at the direction of the chairman of the Board (the "Chairman") or the secretary of the Corporation (the "Secretary") whenever Stockholders are to take any action at a meeting, the Corporation will give a notice of that meeting to the Stockholders entitled to vote at that meeting which states the place, if any, date, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at the meeting, hour of that meeting, the record date for determining the Stockholders entitled to vote at the meeting, if such date is different from the record date for determining Stockholders entitled to notice of the meeting, and, in the case of a special meeting, the purpose or purposes for which that meeting is called. Unless the Certificate of Incorporation, these Bylaws or applicable law otherwise provides, the Corporation will give the notice of any meeting of Stockholders not less than 10 nor more than 60 days before the date of that meeting. If mailed to any Stockholder, any such notice will be deemed given (whether or not delivered) when deposited in the United States mail, postage prepaid, directed to that Stockholder at his address as it appears in the stock records of the Corporation. If given by facsimile telecommunication, such notice shall be deemed given when directed to a number at which the Stockholder has consented to receive notice by facsimile.  Subject to the limitations of Section 7.6, if given by electronic transmission, such notice shall be deemed to be delivered:  (i) by electronic mail, when directed to an electronic mail address at which the Stockholder has consented to receive notice; (ii) if by a posting on an electronic network together with separate notice to the Stockholder of such specific posting, upon the later of (x) such posting and (y) the

~7867258

giving of such separate notice; and (iii) if by any other form of electronic transmission, when directed to the Stockholder.

Section 1.4    Adjournments. Any meeting of Stockholders, annual or special, may adjourn from time to time to reconvene at the same or some other place, and notice need not be given of any such adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting the Corporation may transact any business it might have transacted at the original meeting. If the adjournment is for more than 30 days, or if after the adjournment the Board fixes a new record date for the adjourned meeting, the Corporation will give, in accordance with Section 1.3, notice of the adjourned meeting to each Stockholder of record and entitled to vote at the adjourned meeting.

Section 1.5    Quorum. Except as the Certificate of Incorporation, these Bylaws or applicable law otherwise provides: (i) at each meeting of Stockholders the presence in person or by proxy of the holders of shares of stock having a majority of the votes the holders of all outstanding shares of stock entitled to vote at the meeting could cast will be necessary and sufficient to constitute a quorum; and (ii) the holders of stock so present and entitled to vote at any duly convened meeting at which the necessary quorum has been ascertained may continue to transact business until that meeting adjourns notwithstanding any withdrawal from that meeting of shares of stock counted in determining the existence of that quorum. In the absence of a quorum, the chairman of the meeting or the Stockholders so present may, by majority vote, adjourn the meeting from time to time in the manner Section 1.4 provides until a quorum attends. Shares of its own stock belonging to the Corporation or to another corporation, limited liability company, partnership or other entity (each, an "Entity"), if the Corporation, directly or indirectly, holds a majority of the shares entitled to vote in the election of directors (or the equivalent) of that other Entity, will be neither entitled to vote nor counted for quorum purposes; provided, however, that the foregoing will not limit the right of the Corporation to vote stock, including but not limited to its own stock, it holds in a fiduciary capacity.

Section 1.6    Organization. The Chairman will chair and preside over any meeting of Stockholders at which he is present. The Board will designate the chairman and presiding officer over any meeting of Stockholders from which the Chairman is absent. In the absence of such designation by the Board, the chairman of the meeting will be chosen at the meeting. The Secretary will act as secretary of meetings of Stockholders, but in his absence from any such meeting the chairman of that meeting may appoint any person to act as secretary of that meeting. The chairman of any meeting of Stockholders will announce at that meeting the date and time of the opening and the closing of the polls for each matter on which the Stockholders will vote at that meeting.

Section 1.7    Voting; Proxies. (a) Except as the Certificate of Incorporation otherwise provides, each Stockholder entitled to vote at any meeting of Stockholders will be entitled to one vote for each share of capital stock of the Corporation he holds which has voting power on the matter in question.  Each Stockholder entitled to vote at a meeting of Stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such Stockholder by proxy, but no proxy will be voted or acted on after three years from its date, unless that proxy provides for a longer period.  A proxy will be irrevocable if it states that it is irrevocable and if, and only so long as, it is coupled with an

2

interest sufficient in law to support an irrevocable power.  A Stockholder may revoke any proxy which is not irrevocable by attending that meeting and voting in person or by filing an instrument in writing revoking the proxy or by delivering a proxy in accordance with applicable law bearing a later date to the Secretary.  Proxies for use at any meeting of Stockholders must be filed, before or at the time of that meeting, with the Secretary or such other person as the Board by resolution may designate from time to time.

(b)     The secretary of any meeting of Stockholders will take charge of and canvass all ballots delivered at that meeting and will decide all questions relating to the qualification of voters, the validity of proxies and the acceptance or rejection of votes at that meeting, unless the chairman has appointed an inspector or inspectors to decide those questions. Voting at meetings of Stockholders: (i) need not be by written ballot unless the Board, in its discretion, by resolution so requires or, in the case of any such meeting, the chairman of that meeting, in his discretion, so requires; and (ii) unless applicable law otherwise requires, need not be conducted by inspectors of election unless so determined by the holders of shares of stock having a majority of the votes the holders of all outstanding shares of stock entitled to vote thereon which are present in person or by proxy at that meeting could cast.

(c)     The Corporation may, and shall if required by law, in advance of any meeting of Stockholders, appoint one or more inspectors of election, who may be employees of the Corporation, to act at the meeting or any adjournment thereof and to make a written report thereof.  The Corporation may designate one or more persons as alternate inspectors to replace any inspector who fails to act.  In the event that no inspector so appointed or designated is able to act at a meeting of Stockholders, the person presiding at the meeting shall appoint one or more inspectors to act at the meeting. Each inspector, before entering upon the discharge of his or her duties, shall take and sign an oath to execute faithfully the duties of inspector with strict impartiality and according to the best of his or her ability.  The inspector or inspectors so appointed or designated shall (i) ascertain the number of shares of capital stock of the Corporation outstanding and the voting power of each such share, (ii) determine the shares of capital stock of the Corporation represented at the meeting and the validity of proxies and ballots, (iii) count all votes and ballots, (iv) determine and retain for a reasonable period a record of the disposition of any challenges made to any determination by the inspectors, and (v) certify their determination of the number of shares of capital stock of the Corporation represented at the meeting and such inspectors' count of all votes and ballots. Such certification and report shall specify such other information as may be required by law. In determining the validity and counting of proxies and ballots cast at any meeting of Stockholders of the Corporation, the inspectors may consider such information as is permitted by applicable law.  No person who is a candidate for an office at an election may serve as an inspector at such election.

(d)     At all meetings of Stockholders at which a quorum is present for the election of Directors, a plurality of the votes cast by the holders of outstanding shares of stock of the Corporation entitled to vote in the election of Directors will be sufficient to elect, except as the Certificate of Incorporation may otherwise provide; provided that, whenever the holders of any class or series of capital stock of the Corporation are entitled

to elect one or more directors pursuant to the provisions of the Certificate of Incorporation (including, but not limited to, any duly authorized certificate of designation), such directors shall be elected by a plurality of the votes of such class or series present in person or represented by proxy at the meeting and entitled to vote in the election of such directors. In the case of any question to which the stockholder approval policy of any national securities exchange or quotation system on which capital stock of the Corporation is traded or quoted on the Corporation's application, the requirements under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), or any provision of the Internal Revenue Code of 1986, as amended, or the rules and regulations thereunder (the "Code") applies, in each case for which question the Certificate of Incorporation, these Bylaws or the General Corporation Law of the State of Delaware, as amended (the "DGCL"), does not specify a higher voting requirement, that question will be decided by the requisite vote that stockholder approval policy, Exchange Act requirement or Code provision, as the case may be, specifies (or the highest requisite vote if more than one applies). A majority of the votes cast on the question whether to approve or ratify the appointment of independent public accountants (if that question is submitted for a vote of Stockholders) will be sufficient to approve or ratify. All other elections and questions which have properly come before any meeting will, unless the Certificate of Incorporation, these Bylaws or applicable law otherwise provides, be decided by the vote of the holders of shares of stock of the Corporation present in person or by proxy at that meeting and having a majority of the votes entitled to vote thereon.

Section 1.8    Fixing Date for Determination of Stockholders of Record. In order that the Corporation may determine the Stockholders entitled to notice of or to vote at any meeting of Stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board by resolution may fix a record date, which record date: (i) must not precede the date on which the Board adopts that resolution; (ii) in the case of a determination of Stockholders entitled to vote at any meeting of Stockholders or adjournment thereof, will, unless applicable law otherwise requires, not be more than 60 nor less than 10 days before the date of that meeting; (iii) in the case of a determination of Stockholders entitled to express consent to corporate action in writing without a meeting, will not be more than 10 days from the date on which the Board adopts the resolution fixing the record date; and (iv) in the case of any other action, will not be more than 60 days prior to that other action. If the Board does not fix a record date: (i) the record date for determining Stockholders entitled to notice of or to vote at a meeting of Stockholders will be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held; (ii) the record date for determining Stockholders entitled to express consent to corporate action in writing without a meeting will be (A) if applicable law does not require a prior action by the Board, the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation in accordance with applicable law; and (B) if applicable law requires prior action by the Board, at the close of business on the day on which the Board adopts the resolution taking that prior action; and (iii) the record date for determining Stockholders for any other purpose will be at the close of business on the day on which the Board adopts the resolution relating thereto. A determination of Stockholders of record entitled

4

to notice of or to vote at a meeting of Stockholders will apply to any adjournment of that meeting; provided, however, that the Board may fix a new record date for the adjourned meeting.

Section 1.9    List of Stockholders Entitled To Vote. The Secretary will prepare and make, at least 10 days before each meeting of Stockholders, a list of the Stockholders entitled to vote at that meeting which complies with the requirements of Section 219 of the DGCL as in effect at that time.

Section 1.10    Business Brought Before a Meeting of the Stockholders.

(a)    Annual Meetings.

(i)    At an annual meeting of the Stockholders, only such nominations of persons for election to the Board shall be considered and such business shall be conducted as shall have been properly brought before the meeting.  To be properly brought before an annual meeting, nominations and other business must be a proper matter for stockholder action under Delaware law and must be (A) specified in the notice of meeting (or any supplement thereto) given by or at the direction of the Board, (B) brought before the meeting by or at the direction of the Board or (C) otherwise properly brought before the meeting by a Stockholder who (I) is a Stockholder of record (and, with respect to any beneficial owner, if different, on whose behalf such business is proposed or such nomination or nominations are made, only if such beneficial owner is the beneficial owner of shares of the Corporation) both at the time the notice provided for in paragraph (a) of this Section 1.10 is delivered to the Secretary and on the record date for the determination of Stockholders entitled to vote at the annual meeting of Stockholders, (II) is entitled to vote at the meeting and (III) complies with the notice procedures set forth in paragraph (a) of this Section 1.10.  For nominations or other business to be properly brought before an annual meeting by a Stockholder, the Stockholder must have given timely notice thereof in writing and in proper form to the Secretary.  To be timely, a Stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation, not later than the close of business on the ninetieth (90th) day nor earlier than the close of business on the one hundred twentieth (120th) day prior to the first anniversary of the preceding year's annual meeting (provided, however, that in the event that the date of the annual meeting is more than thirty (30) days before or more than sixty (60) days after such anniversary date, notice by the Stockholder must be so delivered not earlier than the close of business on the one hundred twentieth (120th) day prior to such annual meeting and not later than the close of business on the later of the ninetieth (90th) day prior to such annual meeting or the tenth (10th) day following the day on which Public Announcement of the date of such meeting is first made by the Corporation).  In no event shall any adjournment, deferral or postponement of an annual meeting or the Public Announcement thereof commence a new time period (or extend any time period) for the giving of a Stockholder's notice as described above.  Notwithstanding anything in this paragraph to the contrary, in the event that the number of directors to be elected to the Board at an annual meeting is

5

increased and there is no Public Announcement by the Corporation naming the nominees for the additional directorships at least one hundred (100) days prior to the first anniversary of the preceding year's annual meeting, a Stockholder's notice required by paragraph (a) of this Section 1.10 shall also be considered timely, but only with respect to nominees for the additional directorships, if it shall be delivered to the secretary at the principal executive offices of the Corporation not later than the close of business on the tenth (10th) day following the day on which such Public Announcement is first made by the Corporation.

(ii)     A Stockholder's notice providing for the nomination of a person or persons for election as a Director or Directors shall set forth (A) as to the Stockholder giving the notice and the beneficial owner, if any, on whose behalf the nomination is made (and for purposes of clauses (II) through (IX) below, including any interests described therein held by any affiliates or associates (each within the meaning of Rule 12b-2 under the Exchange Act for purposes of these Bylaws) of such Stockholder or beneficial owner or by any member of such Stockholder's or beneficial owner's immediate family sharing the same household, in each case as of the date of such Stockholder's notice, which information shall be confirmed or updated, if necessary, by such Stockholder and beneficial owner as of the record date for determining the Stockholders entitled to notice of the meeting of Stockholders and as of the date that is ten (10) business days prior to such meeting of the Stockholders or any adjournment or postponement thereof, and such confirmation or update shall be received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the fifth business day after the record date for the meeting of Stockholders (in the case of the update and supplement required to be made as of the record date), and not later than the close of business on the eighth business day prior to the date for the meeting of Stockholders or any adjournment or postponement thereof (in the case of the update and supplement required to be made as of ten (10) business days prior to the meeting of Stockholders or any adjournment or postponement thereof)) (I) the name and address of such Stockholder, as they appear on the Corporation's books, and of such beneficial owner, (II) the class or series and number of shares of capital stock of the Corporation which are, directly or indirectly, beneficially owned (within the meaning of Rule 13d-3 under the Exchange Act) (provided that a person shall in all events be deemed to beneficially own any shares of any class or series and number of shares of capital stock of the Corporation as to which such person has a right to acquire beneficial ownership at any time in the future) and owned of record by such Stockholder or beneficial owner, (III) the class or series, if any, and number of options, warrants, puts, calls, convertible securities, stock appreciation rights, or similar rights, obligations or commitments with an exercise or conversion privilege or a settlement payment or mechanism at a price related to any class or series of shares or other securities of the Corporation or with a value derived in whole or in part from the value of any class or series of shares or other securities of the Corporation, whether or not such instrument, right, obligation or commitment shall be subject to settlement in the underlying class or series of shares or other securities of the Corporation (each a "Derivative Security"), which are, directly or

6

indirectly, beneficially owned by such Stockholder or beneficial owner, (IV) any agreement, arrangement, understanding, or relationship, including any repurchase or similar so-called "stock borrowing" agreement or arrangement, engaged in, directly or indirectly, by such Stockholder or beneficial owner, the purpose or effect of which is to mitigate loss to, reduce the economic risk (of ownership or otherwise) of any class or series of capital stock or other securities of the Corporation by, manage the risk of share price changes for, or increase or decrease the voting power of, such Stockholder or beneficial owner with respect to any class or series of capital stock or other securities of the Corporation, or that provides, directly or indirectly, the opportunity to profit from any decrease in the price or value of any class or series or capital stock or other securities of the Corporation, (V) a description of any other direct or indirect opportunity to profit or share in any profit (including any performance-based fees) derived from any increase or decrease in the value of shares or other securities of the Corporation, (VI) any proxy, contract, arrangement, understanding or relationship pursuant to which such Stockholder or beneficial owner has a right to vote any shares or other securities of the Corporation, (VII) any rights to dividends on the shares of the Corporation owned beneficially by such Stockholder or such beneficial owner that are separated or separable from the underlying shares of the Corporation, (VIII) any proportionate interest in shares of the Corporation or Derivative Securities held, directly or indirectly, by a general or limited partnership in which such Stockholder or beneficial owner is a general partner or, directly or indirectly, beneficially owns an interest in a general partner, if any, (IX) a description of all agreements, arrangements, and understandings between such Stockholder or beneficial owner and any other person(s) (including their name(s)) in connection with or related to the ownership or voting of capital stock of the Corporation or Derivative Securities, (X) any other information relating to such Stockholder or beneficial owner that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for the election of directors in a contested election pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder, (XI) a statement as to whether either such Stockholder or beneficial owner intends to deliver a proxy statement and form of proxy to holders of at least the percentage of the Corporation's voting shares required under applicable law to elect such Stockholder's nominees and/or otherwise to solicit proxies from the Stockholders in support of such nomination and (XII) a representation that the Stockholder is a holder of record of shares of the Corporation entitled to vote at such meeting and intends to appear in person or by proxy at the meeting to propose such nomination, and (B) as to each person whom the Stockholder proposes to nominate for election or reelection as a Director, (I) all information relating to such person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors pursuant to the Exchange Act and the rules and regulations promulgated thereunder (including such person's written consent to being named in the proxy statement as a nominee and to serving as a Director if elected), (II) a description of all direct and indirect compensation and other material agreements,

7

arrangements and understandings during the past three years, and any other material relationships, between or among such Stockholder or beneficial owner, if any, and their respective affiliates and associates, or others acting in concert therewith, on the one hand, and each proposed nominee and his or her respective affiliates and associates, or others acting in concert therewith, on the other hand, including all information that would be required to be disclosed pursuant to Rule 404 promulgated under Regulation S-K if the Stockholder making the nomination and any beneficial owner on whose behalf the nomination is made, or any affiliate or associate thereof or person acting in concert therewith, were the "registrant" for purposes of such rule and the nominee were a director or executive officer of such registrant, (III) a completed and signed questionnaire regarding the background and qualifications of such person to serve as a Director, a copy of which may be obtained upon request to the Secretary, (IV) all information with respect to such person that would be required to be set forth in a Stockholder's notice pursuant to this Section 1.10 if such person were a Stockholder or beneficial owner, on whose behalf the nomination was made, submitting a notice providing for the nomination of a person or persons for election as a Director or Directors in accordance with this Section 1.10, and (V) such additional information that the Corporation may reasonably request to determine the eligibility or qualifications of such person to serve as a Director or an independent director of the Corporation, or that could be material to a reasonable Stockholder's understanding of the qualifications and/or independence, or lack thereof, of such nominee as a Director.

(iii)    A Stockholder's notice regarding business proposed to be brought before a meeting of Stockholders other than the nomination of persons for election to the Board shall set forth (A) as to the Stockholder giving notice and the beneficial owner, if any, on whose behalf the proposal is made, the information called for by clauses (A)(I) through (A)(IX) of the immediately preceding paragraph (ii) (including any interests described therein held by any affiliates or associates of such Stockholder or beneficial owner or by any member of such Stockholder's or beneficial owner's immediate family sharing the same household, in each case as of the date of such Stockholder's notice, which information shall be confirmed or updated, if necessary, by such Stockholder and beneficial owner as of the record date for determining the Stockholders entitled to notice of the meeting of Stockholders and as of the date that is ten (10) business days prior to such meeting of the Stockholders or any adjournment or postponement thereof, and such confirmation or update shall be received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the fifth business day after the record date for the meeting of Stockholders (in the case of the update and supplement required to be made as of the record date), and not later than the close of business on the eighth business day prior to the date for the meeting of Stockholders or any adjournment or postponement thereof (in the case of the update and supplement required to be made as of ten (10) business days prior to the meeting of Stockholders or any adjournment or postponement thereof)), (B) a brief description of (I) the business desired to be brought before such meeting, (II) the reasons for conducting such business at the meeting and

8

(III) any material interest of such Stockholder or beneficial owner in such business, including a description of all agreements, arrangements and understandings between such Stockholder or beneficial owner and any other person(s) (including the name(s) of such other person(s)) in connection with or related to the proposal of such business by the Stockholder, (C) as to the Stockholder giving notice and the beneficial owner, if any, on whose behalf the proposal is made, (I) a statement as to whether either such Stockholder or beneficial owner intends to deliver a proxy statement and form of proxy to holders of at least the percentage of the Corporation's voting shares required under applicable law to approve the proposal and/or otherwise to solicit proxies from Stockholders in support of such proposal and (II) any other information relating to such Stockholder or beneficial owner that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for the election of directors in a contested election pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder, (D) if the matter such Stockholder proposes to bring before any meeting of Stockholders involves an amendment to the Corporation's Bylaws, the specific wording of such proposed amendment, (E) a representation that the Stockholder is a holder of record of shares of the Corporation entitled to vote at such meeting and intends to appear in person or by proxy at the meeting to propose such business and (F) such additional information that the Corporation may reasonably request regarding such Stockholder or beneficial owner, if any, and/or the business that such Stockholder proposes to bring before the meeting. The foregoing notice requirements shall be deemed satisfied by a Stockholder if the Stockholder has notified the Corporation of his or her intention to present a proposal at an annual meeting in compliance with Rule 14a-8 (or any successor thereof) promulgated under the Exchange Act and such Stockholder's proposal has been included in a proxy statement that has been prepared by the Corporation to solicit proxies for such annual meeting.

(b)     Special Meetings of Stockholders.  Only such business shall be conducted at a special meeting of Stockholders as is a proper matter for stockholder action under Delaware law and as shall have been brought before the meeting by or at the direction of the Board.  The notice of such special meeting shall include the purpose for which the meeting is called.  Nominations of persons for election to the Board may be made at a special meeting of Stockholders at which Directors are to be elected pursuant to the Corporation's notice of meeting (i) by or at the direction of the Board or (ii) provided that the Board has determined that Directors shall be elected at such meeting, by any Stockholder of the Corporation who (A) is a Stockholder of record of the Corporation (and, with respect to any beneficial owner, if different, on whose behalf such nomination or nominations are made, only if such beneficial owner is the beneficial owner of shares of the Corporation) both at the time the notice provided for in paragraph (b) of this Section 1.10 is delivered to the Secretary and on the record date for the determination of Stockholders entitled to vote at the special meeting, (B) is entitled to vote at the meeting and upon such election, and (C) complies with the notice procedures set forth in the third sentence of paragraph (b) of this Section 1.10.  In the event the Corporation calls a special meeting of Stockholders for the purpose of electing one or more Directors to the

Board, any such Stockholder entitled to vote in such election of Directors may nominate a person or persons (as the case may be) for election to such position(s) as specified in the Corporation's notice of meeting, if the Stockholder's notice required by paragraph (a)(ii) of this Section 1.10 is delivered to the Secretary at the principal executive offices of the Corporation not earlier than the close of business on the one hundred twentieth (120th) day prior to such special meeting and not later than the close of business on the later of the ninetieth (90th) day prior to such special meeting or the tenth (10th) day following the day on which Public Announcement is first made of the date of the special meeting and of the nominees proposed by the Board to be elected at such meeting.  In no event shall any adjournment, deferral or postponement of a special meeting or the public announcement thereof commence a new time period (or extend any time period) for the giving of a Stockholder's notice as described above.

(c)     General.

(i)     Only such persons who are nominated in accordance with the procedures set forth in this Section 1.10 shall be eligible to be elected at an annual or special meeting of Stockholders to serve as Directors and only such business shall be conducted at a meeting of Stockholders as shall have been brought before the meeting in accordance with the procedures set forth in this Section 1.10. Notwithstanding the foregoing provisions of this Section 1.10, if the Stockholder (or a qualified representative of the Stockholder) does not appear at the annual or special meeting of Stockholders to present a nomination or business, such nomination shall be disregarded and such proposed business shall not be transacted, notwithstanding that proxies in respect of such vote may have been received by the Corporation.

(ii)    For purposes of this section, "Public Announcement" shall mean disclosure in a press release reported by Dow Jones News Service, Associated Press or a comparable national news service in the United States or in a document publicly filed by the Corporation with the Securities and Exchange Commission pursuant to Sections 13, 14 or 15(d) of the Exchange Act.

(iii)   Notwithstanding the foregoing provisions of this Section 1.10, a Stockholder shall also comply with all applicable requirements of the Exchange Act and the rules and regulations promulgated thereunder with respect to the matters set forth in this Section 1.10; provided, however, that any references in these Bylaws to the Exchange Act or the rules and regulations promulgated thereunder are not intended to and shall not limit the requirements applicable to any nomination or other business to be considered pursuant to this Section 1.10.

(iv)    Nothing in these Bylaws shall be deemed to (A) affect any rights of Stockholders to request inclusion of proposals in the Corporation's proxy statement pursuant to Rule 14a-8 under the Exchange Act, (B) confer upon any Stockholder a right to have a nominee or any proposed business included in the Corporation's proxy statement, or (C) affect any rights of the holders of any series

10

of preferred stock to elect directors pursuant to any applicable provisions of the Certificate of Incorporation.

(v) The presiding officer of a meeting of Stockholders shall, if the facts warrant, determine and declare to the meeting that a nomination was not properly made or any business was not properly brought before the meeting, as the case may be, in accordance with the provisions of this Section 1.10; if he or she should so determine, he or she shall so declare to the meeting and any such nomination not properly made or any business not properly brought before the meeting, as the case may be, shall not be transacted.

Section 1.11    No Action By Consent of Stockholders. Unless the Certificate of Incorporation otherwise provides, all actions of the Stockholders must be taken at an annual or special meeting of the Stockholders, and no Stockholder action may be taken without a meeting, without prior notice and without a vote.

Section 1.12    Conduct of Meetings. The Board may adopt by resolution such rules and regulations for the conduct of meetings of Stockholders as it deems appropriate. Except to the extent inconsistent with those rules and regulations, if any, the chairman of any meeting of Stockholders will have the right and authority to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of that chairman, are appropriate for the proper conduct of that meeting. Those rules, regulations or procedures whether adopted by the Board or prescribed by the chairman of the meeting may include, without limitation, the following: (i) the establishment of an agenda or order of business for the meeting; (ii) rules and procedures for maintaining order at the meeting and the safety of those present; (iii) limitations on attendance at or participation in the meeting to Stockholders of record, their duly authorized and constituted proxies or such other persons as the chairman of the meeting may determine; (iv) restrictions on entry to the meeting after the time fixed for the commencement thereof; and (v) limitations on the time allotted to questions or comments by participants. Except to the extent the Board or the chairman of any meeting otherwise prescribes, no rules or parliamentary procedure will govern any meeting of Stockholders.

ARTICLE II
BOARD OF DIRECTORS

Section 2.1    Regular Meetings. The Board will hold its regular meetings at such places, on such dates and at such times as the Board by resolution may determine from time to time, and any such resolution will constitute due notice to all Directors of the regular meeting or meetings to which it relates. By notice pursuant to Section 2.6, the Chairman or a majority of the Board may change the place, date or time of any regular meeting of the Board.

Section 2.2    Special Meetings. The Board will hold a special meeting at any place or time whenever the Chairman or a majority of the Board by resolution calls that meeting by notice pursuant to Section 2.6.

Section 2.3    Telephonic Meetings. Members of the Board may hold and participate in any Board or committee of the Board (a "Board Committee") meeting by means of conference

11

telephone or other communications equipment that permits all persons participating in the meeting to hear each other, and participation of any Director in a meeting pursuant to this Section 2.3 will constitute the presence in person of that Director at that meeting for purposes of these Bylaws, except in the case of a Director who so participates only for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business on the ground that the meeting has not been called or convened in accordance with applicable law or these Bylaws.

Section 2.4    Organization. The Chairman will chair and preside over meetings of the Board at which he is present. A majority of the Directors present at any meeting of the Board from which the Chairman is absent will designate one of their number as chairman and presiding officer over that meeting. The Secretary will act as secretary of meetings of the Board, but in his absence from any such meeting the chairman of that meeting may appoint any person to act as secretary of that meeting.

Section 2.5    Order of Business. The Board will transact business at its meetings in such order as the Chairman or the Board by resolution will determine.

Section 2.6    Notice of Meetings. To call a special meeting of the Board, the Chairman or a majority of the Board must give a timely notice to each Director of the time and place of, and the general nature of the business the Board will transact at, all special meetings of the Board. To change the time or place of any regular meeting of the Board, the Chairman or a majority of the Board must give a timely notice to each Director of that change. To be timely, any notice this Section 2.6 requires must be delivered to each Director personally or by mail, telegraph, telecopier or other communication at least one day before the meeting to which it relates; provided, however, that notice of any meeting of the Board need not be given to any Director who waives the requirement of that notice (whether after that meeting or otherwise) or is present at that meeting.

Section 2.7    Quorum; Vote Required for Action. At all meetings of the Board, the presence in person of a majority of the total number of Directors then in office will constitute a quorum for the transaction of business, and the participation by a Director in any meeting of the Board will constitute that Director's presence in person at that meeting unless that Director expressly limits that participation to objecting, at the beginning of the meeting, to the transaction of any business at that meeting on the ground that the meeting has not been called or convened in accordance with applicable law or these Bylaws. Except in cases in which the Certificate of Incorporation or these Bylaws otherwise provide, the vote of a majority of the Directors present at a meeting at which a quorum is present will be the act of the Board.

Section 2.8    Action by Written Consent. Unless otherwise restricted by the Certificate of Incorporation, any action required or permitted to be taken by the Board may be taken without a meeting, prior notice or a vote, if all members of the Board consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board.

ARTICLE III
BOARD COMMITTEES

12

Section 3.1     Board Committees. (a) The Board may designate one or more Board Committees consisting of one or more of the Directors. The Board may designate one or more Directors as alternate members of any Board Committee, who may replace any absent or disqualified member at any meeting of that committee. The member or members present at any meeting of any Board Committee and not disqualified from voting at that meeting may, whether or not constituting a quorum, unanimously appoint another Director to act at that meeting in any place of any member of that committee who is absent from or disqualified to vote at that meeting.

(b)     The Board by resolution may change the membership of any Board Committee at any time and fill vacancies on any of those committees. A majority of the members of any Board Committee will constitute a quorum for the transaction of business by that committee unless the Board by resolution requires a greater number for that purpose. The Board by resolution may elect a chairman of any Board Committee. The election or appointment of any Director to a Board Committee will not create any contract rights of that Director, and the Board's removal of any member of any Board Committee will not prejudice any contract rights that member otherwise may have.

(c)     Pursuant to Section 3.1(a), the Board may designate an executive committee (the "Executive Committee") to exercise, subject to applicable provisions of law, all the powers of the Board in the management of the business and affairs of the Corporation when the Board is not in session, including the powers to (i) declare dividends and (ii) authorize the issuance by the Corporation of any class or series of its capital stock. The Executive Committee will include the Chairman among its members.

(d)     Each other Board Committee the Board may designate pursuant to Section 3.1(a) will, subject to applicable provisions of law, have and may exercise all the powers and authorities of the Board to the extent the Board resolution designating that committee so provides.

Section 3.2     Board Committee Rules. Unless the Board otherwise provides, each Board Committee may make, alter and repeal rules for the conduct of its business. In the absence of those rules, each Board Committee will conduct its business in the same manner as the Board conducts its business pursuant to Article II.

Section 3.3     Action by Written Consent.  Unless otherwise restricted by the Certificate of Incorporation, any action required or permitted to be taken by any Board Committee may be taken without a meeting, prior notice or a vote, if all members of such Board Committee consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of such Board Committee.

ARTICLE IV
OFFICERS

Section 4.1     Designation. The officers of the Corporation will consist of a chief executive officer ("CEO"), chief financial officer, chief operating officer, chief accounting

officer, president, Secretary, treasurer and such senior or other vice presidents, assistant secretaries, assistant treasurers and other officers as the Board or the CEO may elect or appoint from time to time. Any person may hold any number of offices of the Corporation.

Section 4.2    CEO. The CEO will, subject to the control of the Board: (i) have general supervision and control of the affairs, business, operations and properties of the Corporation; (ii) see that all orders and resolutions of the Board are carried into effect; (iii) have the power to appoint and remove all subordinate officers, employees and agents of the Corporation, except for those the Board elects or appoints; and (iv) sign and execute, under the seal of the Corporation, all contracts, instruments, mortgages and other documents (collectively, "documents") of the Corporation which require that seal, except as applicable law otherwise requires or permits any document to be signed and executed and except as these Bylaws, the Board or the CEO authorize other officers of the Corporation to sign and execute documents. The CEO also will perform such other duties and may exercise such other powers as generally pertain to his office or these Bylaws or the Board by resolution assigns to him from time to time.

Section 4.3    Powers and Duties of Other Officers. The other officers of the Corporation will have such powers and duties in the management of the Corporation as the Board by resolution may prescribe and, except to the extent so prescribed, as generally pertain to their respective offices, subject to the control of the Board. The Board may require any officer, agent or employee to give security for the faithful performance of his duties.

Section 4.4    Term of Office, etc. Each officer will hold office until the first meeting of the Board after the annual meeting of Stockholders next succeeding his election, and until his successor is elected and qualified or until his earlier resignation or removal. No officer of the Corporation will have any contractual right against the Corporation for compensation by reason of his election or appointment as an officer of the Corporation beyond the date of his service as such, except as a written employment or other contract otherwise may provide. The Board may remove any officer with or without cause at any time, but any such removal will not prejudice the contractual rights of that officer, if any, against the Corporation. The Board by resolution may fill any vacancy occurring in any office of the Corporation by death, resignation, removal or otherwise for the unexpired portion of the term of that office at any time.

ARTICLE V
CAPITAL STOCK

Section 5.1    Certificates. Shares of capital stock of the Corporation will be evidenced by certificates in such form or forms as the Board by resolution may approve from time to time or, if and to the extent the Board so authorizes by resolution, may be uncertificated. The Chairman, the president or any vice president of the Corporation, the treasurer or any assistant treasurer of the Corporation or the Secretary or any assistant secretary of the Corporation may sign certificates evidencing certificated shares. Any of or all the signatures and the Corporation's seal on each such certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before the Corporation issues that certificate, the Corporation may issue that certificate with the same effect as if he were such officer, transfer agent or registrar at the date of that issue.

14

Section 5.2    Transfer of Shares. The Corporation may act as its own transfer agent and registrar for shares of its capital stock or use the services of such one or more transfer agents and registrars as the Board by resolution may appoint from time to time. When shares are represented by certificates, the Corporation shall issue and deliver to each holder to whom such shares have been issued or transferred, certificates representing the shares owned by such holder, and shares of the Corporation's capital stock will be transferable only on the books of the Corporation by the holders thereof in person or by their duly authorized attorneys or legal representatives on surrender and cancellation of certificates for a like number of shares. When shares are not represented by certificates, shares of the Corporation's capital stock will be transferrable only on the books of the Corporation by the holder of record thereof or by such holder's attorney or legal representatives duly authorized in writing, with such evidence of the authenticity of such transfer, authorization and other matters as the Corporation may reasonably require, and accompanied by all necessary stock transfer stamps, and within a reasonable time after the transfer of such shares, the Corporation shall send the holder to whom such shares have been issued or transferred a written statement of the information required by applicable law.  Unless otherwise provided by applicable law, the Certificate of Incorporation, these Bylaws or any other instrument, the rights and obligations of shareholders are identical, whether or not their shares are represented by certificates.

Section 5.3    Ownership of Shares. The Corporation will be entitled to treat the holder of record of any share or shares of its capital stock as the holder in fact thereof and, accordingly, will not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it has express or other notice thereof, except as the applicable laws of the State of Delaware otherwise provide.

Section 5.4    Regulations Regarding Certificates. The Board will have the power and authority to make all such rules and regulations as it may deem expedient concerning the issue, transfer and registration or the replacement of certificates for shares of capital stock of the Corporation.

Section 5.5    Lost or Destroyed Certificates. The Board may determine the conditions on which a new certificate of stock may be issued in place of a certificate alleged to have been lost, stolen or destroyed and may, in its discretion, require the owner of the allegedly lost, stolen or destroyed certificate or his legal representative to give bond, with sufficient surety, to indemnify the Corporation and each transfer agent and registrar against any and all losses or claims that may arise by reason of the issue of a new certificate in the place of the one allegedly so lost, stolen or destroyed.

ARTICLE VI
INDEMNIFICATION

Section 6.1    Right to Indemnification.  The Corporation shall indemnify and hold harmless, to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, any person (a "Covered Person") who was or is made or is threatened to be made a party or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "proceeding"), by reason of the fact that he, or a person for whom he is the legal representative, is or was a Director or officer of the Corporation or, while a

Director or officer of the Corporation, is or was serving at the request of the Corporation as a Director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, enterprise or nonprofit entity, including service with respect to employee benefit plans, against all liability and loss suffered and expenses (including attorneys' fees) reasonably incurred by such Covered Person.  Notwithstanding the preceding sentence, except as otherwise provided in Section 6.3, the Corporation shall be required to indemnify a Covered Person in connection with a proceeding (or part thereof) commenced by such Covered Person only if the commencement of such proceeding (or part thereof) by the Covered Person was authorized by the Board of Directors of the Corporation.

Section 6.2    Prepayment of Expenses.  The Corporation shall pay the expenses (including attorneys' fees) incurred by a Covered Person in defending any proceeding in advance of its final disposition, provided, however, that, to the extent required by law, such payment of expenses in advance of the final disposition of the proceeding shall be made only upon receipt of an undertaking by the Covered Person to repay all amounts advanced if it should be ultimately determined that the Covered Person is not entitled to be indemnified under this Article VI or otherwise.

Section 6.3    Claims.  If a claim for indemnification or advancement of expenses under this Article VI is not paid in full within thirty days after a written claim therefor by the Covered Person has been received by the Corporation, the Covered Person may file suit to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim.  In any such action the Corporation shall have the burden of proving that the Covered Person is not entitled to the requested indemnification or advancement of expenses under applicable law.

Section 6.4    Nonexclusivity of Rights.  The rights conferred on any Covered Person by this Article VI shall not be exclusive of any other rights which such Covered Person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation, these Bylaws, agreement, vote of Stockholders or disinterested Directors or otherwise.

Section 6.5    Other Sources.  The Corporation's obligation, if any, to indemnify or to advance expenses to any Covered Person who was or is serving at its request as a Director, officer, employee or agent of another corporation, partnership, joint venture, trust, enterprise or nonprofit entity shall be reduced by any amount such Covered Person may collect as indemnification or advancement of expenses from such other corporation, partnership, joint venture, trust, enterprise or non-profit enterprise.

Section 6.6    Amendment or Repeal.  Any repeal or modification of the foregoing provisions of this Article VI shall not adversely affect any right or protection hereunder of any Covered Person in respect of any act or omission occurring prior to the time of such repeal or modification.

Section 6.7    Other Indemnification and Prepayment of Expenses.  This Article VI shall not limit the right of the Corporation, to the extent and in the manner permitted by law, to indemnify and to advance expenses to persons other than Covered Persons when and as authorized by appropriate corporate action.

16

ARTICLE VII
MISCELLANEOUS

Section 7.1    Fiscal Year. The Board by resolution will determine the fiscal year of the Corporation.

Section 7.2    Seal. The corporate seal will have the name of the Corporation inscribed thereon and will be in such form as the Board by resolution may approve from time to time. Notwithstanding the foregoing, no seal shall be required by virtue of this section.

Section 7.3    Interested Directors; Quorum. No contract or transaction between the Corporation and one or more of its Directors or officers, or between the Corporation and any other Entity in which one or more of its Directors or officers are directors or officers (or hold equivalent offices or positions), or have a financial interest, will be void or voidable solely for this reason, or solely because the Director or officer is present at or participates in the meeting of the Board or Board Committee which authorizes the contract or transaction, or solely because his or their votes are counted for that purpose, if: (i) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the Board or the Board Committee, and the Board or Board Committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested Directors, even though the disinterested Directors be less than a quorum; or (ii) the material facts as to the Director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the Stockholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of those Stockholders; or (iii) the contract or transaction is fair as to the Corporation as of the time it is authorized, approved or ratified by the Board, a Board Committee or the Stockholders. Common or interested Directors may be counted in determining the presence of a quorum at a meeting of the Board or of a Board Committee which authorizes the contract or transaction.

Section 7.4    Form of Records. Any records the Corporation maintains in the regular course of its business, including its stock ledger, books of account, and minute books, may be kept on, or be in the form of, punch cards, magnetic tape, photographs, microphotographs or any other information storage device, provided that the records so kept can be converted into clearly legible paper form within a reasonable time.

Section 7.5    Bylaw Amendments. The Board has the power to adopt, amend and repeal from time to time the Bylaws of the Corporation, subject to the right of Stockholders entitled to vote with respect thereto to amend or repeal those Bylaws as adopted or amended by the Board. Bylaws of the Corporation may be adopted, amended or repealed by the affirmative vote of the holders of at least 66.7% of the combined voting power of the outstanding shares of all classes of capital stock of the Corporation entitled to vote generally in the election of Directors, voting together as a single class, at any annual meeting, or at any special meeting if notice of the proposed amendment is contained in the notice of that special meeting, or by the Board as specified in the preceding sentence.

Section 7.6    Notices; Waiver of Notice. Whenever any notice is required to be given to any Stockholder, Director or member of any Board Committee under the provisions of the

DGCL, the Certificate of Incorporation or these Bylaws, that notice will be deemed to be sufficient if given (i) subject to the limitations of the following paragraph, by telegraphic, facsimile, cable, electronic mail, wireless transmission, other electronic transmission or other lawful means or (ii) by deposit of the same in the United States mail, with postage paid thereon, addressed to the person entitled thereto at his address as it appears in the records of the Corporation, and that notice will be deemed to have been given on the day of such transmission or mailing, as the case may be. An affidavit of the secretary or an assistant secretary of the Corporation, the transfer agent of the Corporation or any other agent of the Corporation that the notice has been given shall, in the absence of fraud, be *prima facie* evidence of the facts stated therein.

Without limiting the manner by which notice otherwise may be given effectively to Stockholders of the Corporation pursuant to the DGCL, the Certificate of Incorporation or these Bylaws, any notice to Stockholders of the Corporation given by the Corporation under any provision of the DGCL, the Certificate of Incorporation or these Bylaws shall be effective if given by a form of electronic transmission consented to by the Stockholder of the Corporation to whom the notice is given.  Any such consent shall be deemed revoked if:  (i) the Corporation is unable to deliver by electronic transmission two (2) consecutive notices given by the Corporation in accordance with such consent; and (ii) such inability becomes known to the secretary or an assistant secretary of the Corporation or to the transfer agent or other person responsible for the giving of notice.  However, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.  For purposes of these Bylaws, except as otherwise limited by applicable law, the term "electronic transmission" means any form of communication not directly involving the physical transmission of paper that creates a record that may be retained, retrieved and reviewed by a recipient thereof and that may be directly reproduced in paper form by such recipient through an automated process.

Whenever any notice is required to be given to any Stockholder or Director under the provisions of the DGCL, the Certificate of Incorporation or these Bylaws, a waiver thereof in writing signed by the person or persons entitled to that notice or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, will be equivalent to the giving of that notice. Attendance of a person at a meeting will constitute a waiver of notice of that meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Stockholders, the Board or any Board Committee need be specified in any written waiver of notice or any waiver by electronic transmission unless the Certificate of Incorporation or these Bylaws so require.

Section 7.7    Resignations. Any Director or officer of the Corporation may resign at any time. Any such resignation will take effect at the time specified in that resignation, or, if that resignation does not specify any time, at the time of its receipt by the Chairman or the Secretary. The acceptance of a resignation will not be necessary to make it effective, unless that resignation expressly so provides.

Section 7.8    Reliance on Books, Reports and Records. Each Director and each member of any Board Committee designated by the Board will, in the performance of his duties, be fully

18

protected in relying in good faith on the books of account or reports made to the Corporation by any of its officers, or by an independent certified public accountant, or by an appraiser selected with reasonable care by the Board or by any such committee, or in relying in good faith upon other records of the Corporation.

Section 7.9    <u>Certain Definitional Provisions</u>. (a) When used in these Bylaws, the words "herein," "hereof" and "hereunder" and words of similar import refer to these Bylaws as a whole and not to any provision of these Bylaws, and the words "Article" and "Section" refer to Articles and Sections of these Bylaws unless otherwise specified.

(b)    Whenever the context so requires, the singular number includes the plural and vice versa, and a reference to one gender includes the other gender and the neuter.

(c)    The word "including" (and, with correlative meaning, the word "include") means including, without limiting the generality of any description preceding that word, and the words "shall" and "will" are used interchangeably and have the same meaning.

Section 7.10    <u>Captions</u>. Captions to Articles and Sections of these Bylaws are included for convenience of reference only, and these captions do not constitute a part hereof for any other purpose or in any way affect the meaning or construction of any provision hereof.

**End of Bylaws**

19

**Working Draft 7/19/10**
**Subject to Material Modification**

## AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION
## OF
## U.S. CONCRETE, INC.

U.S. Concrete, Inc. (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "DGCL"), hereby adopts this Amended and Restated Certificate of Incorporation and does hereby further certify that:

1.    The name of the Corporation is U.S. Concrete, Inc. The original certificate of incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on July 15, 1997 under the original name Main Street Equity III, Inc.; a Restated Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on May 4, 1999; and a Restated Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on May 9, 2006.

2.    The Corporation and certain of the Corporation's direct and indirect subsidiaries filed a joint plan of reorganization (the "Plan") which, pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), was confirmed by an order, entered [July __,] 2010, of the United States Bankruptcy Court for the District of Delaware, a court having jurisdiction of a proceeding under the Bankruptcy Code, and that such order provides for the making and filing of this Amended and Restated Certificate of Incorporation.

3.    This Amended and Restated Certificate of Incorporation amends and, as amended, restates in its entirety the Certificate of Incorporation and has been duly made, executed and acknowledged by the officers of the Corporation in accordance with Sections 242, 245 and 303 of the General Corporation Law of the State of Delaware.

2

4.    The Certificate of Incorporation is hereby amended and restated to read in its entirety as follows:

2

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**First:**        The name of the Corporation is U.S. Concrete, Inc.

**Second:**        The address of the registered office of the Corporation in the State of Delaware is 1013 Centre Road, in the City of Wilmington, County of New Castle. The name of the Corporation's registered agent at that address is the Corporation Service Company.

**Third:**        The purpose of the Corporation is to engage in any lawful business, act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware or any successor statute (the "DGCL").

**Fourth:**        The aggregate number of shares of capital stock which the Corporation will have authority to issue is [___] million, divided into [____] shares of common stock, par value [$.001] per share ("Common Stock") and Ten Million (10,000,000) shares of preferred stock, par value $.001 per share ("Preferred Stock"). The Corporation may issue shares of any class of its capital stock for such consideration and for such corporate purposes as the Board of Directors of the Corporation (the "Board of Directors") may from time to time determine.

Except as otherwise provided by the DGCL or this Amended and Restated Certificate of Incorporation (this "Certificate of Incorporation") and subject to the rights of holders of any series of Preferred Stock, all of the voting power of the stockholders of the Corporation shall be vested in the holders of the Common Stock. Each share of Common Stock shall entitle the holder thereof to one vote for each share held by such holder on all matters voted upon by the stockholders of the Corporation; provided, however, that, except as otherwise required by law, holders of Common Stock, as such, shall not be entitled to vote on any amendment to this Certificate of Incorporation (including any certificate of designations relating to any series of Preferred Stock) that relates solely to the terms of one or more outstanding series of Preferred Stock if the holders of such affected Series are entitled, either separately or together with the holders of one or more other such series, to vote thereon pursuant to this Certificate of Incorporation (including any certificate of designations relating to any series of Preferred Stock).

Notwithstanding anything to the contrary in this Certificate of Incorporation, the Corporation shall not issue nonvoting equity securities to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)). The prohibition on the issuance of nonvoting equity securities is included in this Certificate of Incorporation in compliance with Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. § 1123(a)(6)).

The Preferred Stock may be divided into and issued from time to time in one or more series as may be fixed and determined by the Board of Directors. The relative rights and preferences of the Preferred Stock of each series will be such as are stated in any resolution or resolutions adopted by the Board of Directors setting forth the designation of that series and fixing and determining the relative rights and preferences thereof, any such resolution or resolutions being herein called a "Directors' Resolution." The Board of Directors hereby is authorized to fix and determine the powers, designations, preferences, and relative, participating, optional or other rights (including, without limitation, voting powers, full or limited, preferential

rights to receive dividends or assets on liquidation, rights of conversion or exchange into Common Stock, Preferred Stock of any series or other securities, any right of the Corporation to exchange or convert shares into Common Stock, Preferred Stock of any series or other securities, or redemption provisions or sinking fund provisions) as between series and as between or among series of Preferred Stock and as between the Preferred Stock or any series thereof and the Common Stock, and the qualifications, limitations or restrictions thereof, if any, all as shall be stated in a Directors' Resolution, and the shares of Preferred Stock or any series thereof may have full or limited voting powers, or be without voting powers, all as shall be stated in a Directors' Resolution. Within the limitations or restrictions stated in any resolution or resolutions of a Directors' Resolution fixing the number of shares constituting a series of Preferred Stock, the Board of Directors may increase or decrease (but not below the number of shares of any such series of Preferred Stock then outstanding) by resolution the number of shares of any such series of Preferred Stock. The number of authorized shares of Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority in voting power of the outstanding shares of capital stock of the Corporation entitled to vote, without the separate vote of the holders of the Preferred Stock as a class irrespective of the provisions of Section 242(b)(2) of the DGCL unless a vote of any such holders is required pursuant to the terms of any Preferred Stock designation.

Consistent with this Article Fourth and applicable law, any of the voting powers, designations, preferences, rights and qualifications, limitations or restrictions of any series of Preferred Stock may be dependent on facts ascertainable outside this Certificate of Incorporation or any amendment hereto, or outside resolutions of the Board of Directors pursuant to authority expressly vested in it by this Certificate of Incorporation. Except as applicable law or this Certificate of Incorporation otherwise may require, the terms of any series of Preferred Stock may be amended without consent of the holders of any other series of Preferred Stock or of any class of capital stock of the Corporation.

No stockholder will, by reason of the holding of shares of any class or series of capital stock of the Corporation, have a preemptive or preferential right to acquire or subscribe for any shares or securities of any class, whether now or hereafter authorized, which may at any time be issued, sold or offered for sale by the Corporation, unless a Directors' Resolution specifically so provides with respect to a series of Preferred Stock.

Cumulative voting of shares of any class or series of capital stock having voting rights is prohibited unless specifically provided for in a Directors' Resolution with respect to a series of Preferred Stock.

**Fifth:**

(a)    <u>Directors</u>. The business and affairs of the Corporation will be managed by or under the direction of the Board of Directors. In addition to the authority and powers conferred on the Board of Directors by the DGCL or by the other provisions of this Certificate of Incorporation, the Board of Directors hereby is authorized and empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject to the provisions of the DGCL, this Certificate of Incorporation and any Bylaws adopted by the stockholders of the Corporation; *provided, however*, that no Bylaws hereafter adopted by the

4

stockholders of the Corporation, or any amendments thereto, will invalidate any prior act of the Board of Directors that would have been valid if such Bylaws or amendment had not been adopted.

(b)    <u>Number, Election and Terms of Directors</u>. The number of directors which will constitute the whole Board of Directors shall be fixed from time to time by a majority of the directors then in office, subject to an increase in the number of directors by reason of any provisions contained in or established pursuant to Article Fourth, but in any event will not be less than three. Each director shall be elected to serve a term of one year, with each director's term to expire at the annual meeting next following the director's election. The foregoing notwithstanding, each director will serve until his successor shall have been duly elected and qualified or until his earlier death, resignation or removal.

Election of directors need not be by written ballot unless the Bylaws of the Corporation so provide.

(c)    <u>Removal of Directors</u>. Any director of the Corporation may be removed from office as a director, by vote or other action of the stockholders or otherwise, with or without cause by the affirmative vote of the holders of at least a majority of the voting power of all outstanding shares of capital stock of the Corporation generally entitled to vote in the election of directors, voting together as a single class. Notwithstanding the foregoing, whenever holders of outstanding shares of one or more series of Preferred Stock are entitled to elect members of the Board of Directors pursuant to the provisions applicable in the case of arrearages in the payment of dividends or other defaults contained in the Directors' Resolution providing for the establishment of any series of Preferred Stock, any such director of the Corporation so elected may be removed in accordance with the provisions of that Directors' Resolution.

(d)    <u>Vacancies</u>. Except as a Directors' Resolution providing for the establishment of any series of Preferred Stock may provide otherwise, newly created directorships resulting from any increase in the number of directors and any vacancies on the Board of Directors resulting from death, resignation, removal or other cause will be filled by the affirmative vote of a majority of the remaining directors then in office, even though less than a quorum of the Board of Directors. Any director elected in accordance with the preceding sentence will hold office for the remainder of the full term of the class of directors in which the new directorship was created or the vacancy occurred and until that director's successor shall have been elected and qualified or until his earlier death, resignation or removal. No decrease in the number of directors constituting the Board of Directors will shorten the term of any incumbent director.

**Sixth:**    From and after the first date as of which the Corporation has a class or series of capital stock registered under the Securities Exchange Act of 1934, as amended, except as a Directors' Resolution may establish with respect to any series of Preferred Stock, any action required or permitted to be taken by the stockholders of the Corporation must be effected at an annual or special meeting of stockholders of the Corporation and may not be effected by any consent in writing by those stockholders. Except as applicable law requires, or as a Directors' Resolution may prescribe, special meetings of stockholders of the Corporation may be called only by (i) the Chairman of the Board of Directors or (ii) the Board of Directors pursuant to a resolution a majority of the entire Board of Directors approves by an affirmative vote.

5

**Seventh:** No director of the Corporation will be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director; provided, however, that the foregoing provisions will not eliminate or limit the liability of a director (a) for any breach of that director's duty of loyalty to the Corporation or its stockholders, (b) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (c) under Section 174 of the DGCL, as the same exists or as that provision hereafter may be amended, supplemented or replaced, or (d) for any transactions from which that director derived an improper personal benefit. If the DGCL is amended after the filing of this Certificate of Incorporation to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation, in addition to the limitation on personal liability provided herein, will be limited to the fullest extent permitted by that law, as so amended. Any repeal or modification of this Article Seventh by the stockholders of the Corporation will be prospective only and will not adversely affect any limitation on the personal liability of a director of the Corporation existing at the time of that repeal or modification.

**Eighth:** In furtherance of, and not in limitation of, the powers conferred by statute, the Board of Directors is expressly authorized to adopt, amend or repeal the Bylaws of the Corporation, or adopt new Bylaws, without any action on the part of the stockholders, except as applicable law or the Bylaws of the Corporation may provide otherwise.

**Ninth:** Whenever a compromise or arrangement is proposed between the Corporation and its creditors or any class of them and/or between the Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of the Corporation or of any creditor or stockholder thereof, or on the application of any receiver or receivers appointed for the Corporation under Section 291 of Title 8 of the Delaware Code, or on the application of trustees in dissolution or of any receiver or receivers appointed for the Corporation under Section 279 of Title 8 of the Delaware Code, order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of the Corporation, as the case may be, to be summoned in such manner as the said court directs. If the majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders, of the Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of the Corporation as a consequence of that compromise or arrangement, the said compromise or arrangement and the said reorganization will, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of the Corporation, as the case may be, and also on the Corporation.

**Tenth:** The Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director or officer of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim against the Corporation arising pursuant to any provision of the DGCL or the Certificate of Incorporation or Bylaws or (iv) any action asserting a claim against the Corporation governed by the internal affairs doctrine.

6

\* \* \* \* \*

IN WITNESS WHEREOF, the Corporation has caused this certificate to be executed this [_]th day of August, 2010

**U.S. CONCRETE, INC.**

By:

7

\* \* \* \* \*

# EXHIBIT B

## Retained Causes of Action

**List of Retained Causes of Action**

Article IV.Q of the *Joint Plan of Reorganization of U.S. Concrete, Inc.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code*, which was filed in this case on June 2, 2010 [Docket No. 197] (as amended, supplemented, or modified from time to time, the "Plan") provides as follows:[1]

> In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

> In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.  The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding and without limiting the generality of Article IV.Q of the Plan, the following Exhibit A(i) through Exhibit A(xi) include specific types of Causes of Actions expressly

---

[1]   All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Plan.

preserved by the Debtors and the Reorganized Debtors, including:  (a) claims related to contracts and leases; (b) claims related to insurance policies; (c) claims related to deposits, adequate assurance postings, and other collateral postings; (d) claims, defenses, cross-claims, and counter-claims related to litigation and possible litigation; (e) claims related to accounts receivable and accounts payable; (f) claims related to customer and vendor obligations; (g) claims related to employees; (h) claims related to professionals; (i) claims related to taxes; (j) claims related to co-debtors; and (k) claims related to guaranties, which are attached hereto as Exhibit A(i), Exhibit A(ii), Exhibit A(iii), Exhibit A(iv), Exhibit A(v), Exhibit A(vi), Exhibit A(vii), Exhibit A(viii), Exhibit A(ix), Exhibit A(x), and Exhibit A(xi), respectively.[2]   Each of Exhibit A(i), Exhibit A(ii), Exhibit A(iii), Exhibit A(iv), Exhibit A(v), Exhibit A(vi), Exhibit A(vii), Exhibit A(viii), Exhibit A(ix), Exhibit A(x), and Exhibit A(xi) is subject to the information provided in this Exhibit A.

**The Causes of Action set forth herein are for illustrative purposes only.  Accordingly, the absence of any particular Cause of Action or any particular category of Causes of Action shall not release nor shall such absence deem released any particular Cause of Action, it being the Debtors' intent to retain all Causes of Action not expressly released pursuant to Article VIII.D of the Plan.[3]**

---

[2]   Exhibit A(i), Exhibit A(ii), Exhibit A(iii), Exhibit A(iv), Exhibit A(v), Exhibit A(vi), Exhibit A(vii), Exhibit A(viii), Exhibit A(ix), Exhibit A(x), and Exhibit A(xi) attached hereto and each of the other documents filed as part of the Plan Supplement are subject to continuing review and revision by the Debtors.

[3]   *See, e.g.*, *USN Communications, Inc.*, 280 B.R. 589-95 (Bankr. D. Del. 2002) (holding Bankruptcy Code does not require as a condition to retaining any particular cause of action that a plan "specifically identify each and every claim and/or interest belonging to the debtor that may be subject to retention and enforcement" as it is sufficient that the plan "include a general reservation of . . . right[s] to pursue certain causes of action at a later date" (Walsh, J.)).

**EXHIBIT A(i)**

Claims Related to Contracts and Leases

Unless otherwise released by the Plan, the Debtors expressly reserve all defenses and Causes of Actions, based in whole or in part upon any and all contracts and leases to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, whether or not such contract or lease or the counterparty to any such contract or lease is specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether such counterparty has filed a proof of claim or appeared in the chapter 11 cases or any claim or cause of action arising out of such contract or lease has been asserted in, brought before, or adjudicated in the Bankruptcy Court.  The claims and defenses and Causes of Actions reserved include, without limitation, defenses and Causes of Action against vendors, suppliers of goods or services, landlords, lessors or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lendor, bondholder, lessor, or other party; (e) for any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by any one or more of the Debtors; (f) arising out of environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies, or suppliers of environmental services or goods, including any claims for indemnification or claims for such parties' failure to perform any obligations under applicable agreements; (g) counter-claims and defenses related to any contractual obligations; (h) any turnover actions arising under section 542 or 543 of the Bankruptcy Code; and (i) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims.  There is no schedule to this Exhibit A(i).

**EXHIBIT A(ii)**

Claims Related to Insurance Policies

The following Exhibit A(ii) includes Entities with whom the Debtors have entered into insurance contracts, insurance policies, occurrence policies, and occurrence contracts.  Unless otherwise released by the Plan, the Debtors expressly reserve all defenses and Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence policies, and occurrence contracts to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, whether or not the contract or policy or the counterparty to any such contract or policy is specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether such counterparty has filed a proof of claim or appeared in the chapter 11 cases or any claim or cause of action arising out of such contract or policy has been asserted in, brought before, or adjudicated in the Bankruptcy Court, including defenses and Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters, regardless of whether such Entity is included on Exhibit A(ii).

# *U.S. Concrete, Inc. et al.*

## Retained Causes of Action

### Insurance

| Legal Entity | Counterparty and Policy Number | Nature |
|---|---|---|
| U.S. Concrete, Inc. | ACE American Insurance Company - HDO G2 49 36 55 7 <br><br> 436 Walnut St <br><br> Philadelphia, PA 19106 | General Liability |
| U.S. Concrete, Inc. | ACE American Insurance Company - ISA H0 85 83 09 2 <br><br> 436 Walnut St <br><br> Philadelphia, PA 19106 | Automobile Liability |
| U.S. Concrete, Inc. | ACE American Insurance Company - SCF C4 57 06 63 1 (NJ) <br><br> 436 Walnut St <br><br> Philadelphia, PA 19106 | Workers Compensation & Employers Liability |

# Insurance

| Legal Entity | Counterparty and Policy Number | Nature |
|---|---|---|
| U.S. Concrete, Inc. | ACE American Insurance Company - WLR C4 57 06 62 A<br><br>436 Walnut St<br><br>Philadelphia, PA 19106 | Workers Compensation & Employers Liability |
| U.S. Concrete, Inc. | Allied World National Insurance Co. - 34-MGU-09-A19109 (Excess)<br><br>199 Water St., 24th Floor<br><br>New York, NY 10038 | Directors and Officers Liability |
| U.S. Concrete, Inc. | Chubb Group of Insurance Companies - 8158-2946<br><br>15 Mountain View Road<br><br>Warren, NJ 07059 | Executive Fiduciary and Criminal Liability |

# Insurance

| Legal Entity | Counterparty and Policy Number | Nature |
| --- | --- | --- |
| U.S. Concrete, Inc. | Everest National Insurance Co. - 71G6000041-091<br><br>477 Martinsville Rd.<br><br>Basking Ridge, NJ 07920 | Excess Automobile Liability |
| U.S. Concrete, Inc. | Great American Insurance Company - TUU 2534562-11<br><br>580 Walnut St.<br><br>Cincinnati, OH 45202 | Umbrella Liability |
| U.S. Concrete, Inc. | Illinois Union Insurance Company - USTG21977500-006<br><br>525 W Monrow St., Suite 400<br><br>Chicago, IL 60661-3629 | Storage Tank Liability |

# Insurance

| Legal Entity | Counterparty and Policy Number | Nature |
| --- | --- | --- |
| U.S. Concrete, Inc. | Lexington Insurance Company - EEI6997355<br><br>100 Summer Street<br><br>Boston, MA 02110 | Employers Excess Indemnity |
| U.S. Concrete, Inc. | Lexington Insurance Company - EPIC7328504<br><br>100 Summer Street<br><br>Boston, MA 02110 | Comprehensive Indemnity |
| U.S. Concrete, Inc. | Liberty Insurance Underwriters, Inc. - LQ1B71185336046<br><br>175 Berkeley St<br><br>Boston, MA 02116 | Excess Liability |

# Insurance

| Legal Entity | Counterparty and Policy Number | Nature |
|---|---|---|
| U.S. Concrete, Inc. | Liberty Mutual Insurance Company - YU2L9L535307-039<br><br>175 Berkeley St<br><br>Boston, MA 02116 | Property and Inland Marine |
| U.S. Concrete, Inc. | Specialty Insurance Co. - 34-MGU-09-A19109 (Primary)<br><br>190 South LaSalle Street, Suite 950<br><br>Chicago, IL 60603 | Directors and Officers Liability |
| U.S. Concrete, Inc. | Westchester Fire Insurance Co.- G23615253004<br><br>500 Colonial Center Pkwy., Suite 200<br><br>Roswell, GA 30076 | Professional Liability-Claims Adjusters |

## Insurance

| Legal Entity | Counterparty and Policy Number | Nature |
|---|---|---|
| U.S. Concrete, Inc. | XL Specialty - 34-MGU-09-A19109 (Side A)<br>190 South LaSalle Street, Suite 950<br>Chicago, IL 60603 | Directors and Officers Liability |

**EXHIBIT A(iii)**

<u>Claims Related to Deposits, Adequate Assurance Postings, and Other Collateral Postings</u>

Unless otherwise released by the Plan, the Debtors expressly reserve all defenses and Causes of Action based in whole or in part upon any and all postings of a security deposit, adequate assurance payment, or any other type of deposit or collateral, whether or not any related agreement or the counterparty to any such agreement or the party that received any security deposit, adequate assurance payment, or any other type of deposit or collateral is specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether such party has filed a proof of claim or appeared in the chapter 11 cases or any claim or cause of action arising out of any agreement between such party and the Debtors has been asserted in, brought before, or adjudicated in the Bankruptcy Court.  There is no schedule to this <u>Exhibit A(iii)</u>.

**EXHIBIT A(iv)**

<u>Claims, Defenses, Cross-Claims, and Counter-Claims Related to Litigation and Possible</u>
<u>Litigation</u>

The following <u>Exhibit A(iv)</u> includes Entities that are party to or that the Debtors believe may become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, including, for the avoidance of doubt, Eugene Martineau on account of any breach or potential breach of any agreements of confidentiality between the Debtors and any other parties or any other agreements or actions, and any claims arising out of any divestiture of stock or assets, including any indemnification claims.  Unless otherwise released by the Plan, the Debtors expressly reserve all defenses and Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, regardless of whether such Entity is included on <u>Exhibit A(iv)</u>.

# *U.S. Concrete, Inc. et al.*

## Retained Causes of Action

## Litigation

| Legal Entity | Name of Counterparty | Nature |
|---|---|---|
| Alliance Haulers, Inc. | Progressive Insurance Company<br>6300 Wilson Mills Road<br>Mayfield Village, OH 44143 | Insurance Dispute |
| Atlas-Tuck Concrete, Inc. | Christopher Jarvis<br>1515 South 19th Street<br>Chickasha, OK 73018 | Subrogation Claim |
| Central Concrete Supply Co., Inc. | Gary Miller<br>11311 MANZANITA RD<br>Lakeside, CA 92040 | Class Action Claim |

# Litigation

| Legal Entity | Name of Counterparty | Nature |
| --- | --- | --- |
| Central Concrete Supply Co., Inc. | James Huddle<br>6700 SHALIMAR ST<br>CITRUS HEIGHTS, CA 95611 | Class Action Claim |
| Central Concrete Supply Co., Inc. | Russell Kastanos<br>17033 Via Cielo<br>San Lorenzo, CA 94580 | Class Action Claim |
| Eastern Concrete Materials, Inc. | Ada Reeves<br>1010 N Bancroft Pkwy<br>Suite 22<br>Wilmington, DE 19805 | Subrogation Claim |

# Litigation

| Legal Entity | Name of Counterparty | Nature |
|---|---|---|
| Ingram Concrete, LLC | David Melton<br>9601 Waldrup Road<br>Lipan , TX 76462 | Subrogation Claim |
| Ingram Concrete, LLC | Fuller Log Homes, Inc.<br>Robert D. Royse Jr.<br>14160 Dallas Parkway, Suite 705<br>Dallas, TX 75224 | Litigation - Other |
| Ingram Concrete, LLC | Lindsay Hodges<br>431 Henry Street<br>Dublin, TX 76446 | Subrogation Claim |

# Litigation

| Legal Entity | Name of Counterparty | Nature |
| --- | --- | --- |
| Redi-Mix Concrete, L.P. | Hipolito Farias<br>1721 E. Frankford Rd. #2813<br>Carrollton, TX 75007 | Subrogation Claim |
| Redi-Mix Concrete, L.P. | John Gonzalez<br>1355 Dutch Hollow<br>Frisco, TX 75034 | Class Action Claim |
| Redi-Mix Concrete, L.P. | Miguel Rodriguez<br>923 W. Jefferson Blvd<br>Dallas, TX 75208 | Subrogation Claim |

# Litigation

| Legal Entity | Name of Counterparty | Nature |
|---|---|---|
| Redi-Mix Concrete, L.P. | Progressive Insurance Company<br><br>6300 Wilson Mills Road<br><br>Mayfield Village, OH 44143 | Insurance Dispute |
| Superior Concrete Materials, Inc. | Carroll Gross Trucking<br><br>Law Offices of Samuel M. Riley, LLC<br>409 Washington Avenue, Suite 200<br>Baltimore, MD 21204 | Insurance Dispute |
| U.S. Concrete, Inc. | All current or former employees classified by Central Concrete Supply Co., Inc. as "Ready Mix Drivers" who worked any hours for Central Concrete Supply Co., Inc. from April 6, 2003 through August 31, 2009. | Class Action Claim |

# Litigation

| Legal Entity | Name of Counterparty | Nature |
| --- | --- | --- |
| U.S. Concrete, Inc. | Atlas Concrete Inc.<br>850, 335 Eighth Avenue S.W.<br>Calgary, Alberta, Canada T2P 1C9 | Indemnification, Confidentiality, Other Claims |
| U.S. Concrete, Inc. | Edward C. Levy Co.<br>8800 DIX AVENUE<br>DETROIT, MI 48209 | Contract Claim |
| U.S. Concrete, Inc. | Gene Martineau<br>122 REGENTS PLACE<br>PONTE VEDRA BEACH, FL 32082 | Litigation - Other |

# Litigation

| Legal Entity | Name of Counterparty | Nature |
| --- | --- | --- |
| U.S. Concrete, Inc. | Gordian Group, LLC<br>950 Third Avenue<br>17th Floor<br>New York, NY 10022 | Litigation - Other |
| U.S. Concrete, Inc. | Liberty Mutual Group<br>175 Berkeley St<br>Boston, MA 02116 | Property Dispute |
| U.S. Concrete, Inc. | Randy Turpin<br>3825 Wieuca Terrace<br>N.E.<br>Atlanta, GA 30342 | Employment Dispute |

# Litigation

| Legal Entity | Name of Counterparty | Nature |
| --- | --- | --- |
| U.S. Concrete, Inc. | Terence McLaughlin<br>6435 Hesket Ct<br>San Jose, CA 95123 | Class Action Claim |
| U.S. Concrete, Inc. | Wild Rose Holdings, Ltd.<br>850, 335 Eighth Avenue S.W.<br>Calgary, Alberta, Canada T2P 1C9 | Indemnification, Confidentiality, Other Claims |

**EXHIBIT A(v)**

Claims Related to Accounts Receivable and Accounts Payable

Unless otherwise released by the Plan, the Debtors expressly reserve all defenses and Causes of Action against or related to all Entities that owe or that may in the future owe money to the Debtors or Reorganized Debtors, whether or not any agreement between the Debtors and any such Entity or the Entity itself is specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether such Entity has filed a proof of claim or appeared in the chapter 11 cases or any claim or cause of action arising out of any agreement between the Debtors and such Entity or any related understanding has been asserted in, brought before, or adjudicated in the Bankruptcy Court.  Furthermore, the Debtors expressly reserve all Causes of Action against or related to all Entities who assert or may assert that the Debtors or Reorganized Debtors owe money to them.  There is no schedule to this Exhibit A(v).

**EXHIBIT A(vi)**

Claims Related to Vendor and Customer Obligations

Unless otherwise released by the Plan, the Debtors, the Reorganized Debtors, their affiliates and any entity created in accordance with the Plan expressly reserve all defenses and Causes of Action against or related to all customers or vendors that owe or may in the future owe money to the Debtors or Reorganized Debtors, whether for unpaid invoices; unreturned, missing, or damaged inventory; or any other matter whatsoever, including contracts; for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities or setoff; for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; for improper draw on any letters of credit; for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection of the subject contracts; or for any current or potential Cause of Action, whether or not any contract between the Debtors and any customer or vendor or the customer or vendor itself is specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether such customer or vendor has filed a proof of claim or appeared in the chapter 11 cases or any claim or cause of action arising out of any agreement or understanding between the Debtors and any such customer or vendor has been asserted in, brought before, or adjudicated in the Bankruptcy Court.  There is no schedule to this Exhibit A(vi).

**EXHIBIT A(vii)**

Claims Related to Employees

The Debtors, the Reorganized Debtors, their affiliates and any entity created in accordance with the Plan expressly preserve all defenses and claims available with respect to employees including any defenses and Causes of Action related to current or former directors, officers, employees or agents of the Debtors or arising out of employment related matters, whether or not any employment agreement or any employee is specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether such employee has filed a proof of claim or appeared in the chapter 11 cases or any claim or cause of action arising out of such employment agreement or other understanding has been asserted in, brought before, or adjudicated in the Bankruptcy Court, including, without limitation, claims, defenses and Causes of Action arising from:  breaches of confidentiality; breaches of non-solicitation obligations; breaches of agreements not to compete with the Debtors; breaches of non-disparagement obligations; failure to return property of the Debtors; infringement of the Debtors' intellectual property rights or claims or ownership or rights.  There is no schedule to this Exhibit A(vii).

**EXHIBIT A(viii)**

Claims Related to Professionals

The Debtors, the Reorganized Debtors, their affiliates and any entity created in accordance with the Plan expressly preserve all defenses and claims available with respect to professionals and professional payments, including, for the avoidance of doubt, all claims and defenses the Debtors and Reorganized Debtors may have against Gordian Group LLC ("Gordian"), whether arising through breach of any agreement(s) of confidentiality between the Debtors and Gordian or otherwise, whether or not any agreement or understanding between the Debtors and any professional or such professional is specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether such professional has filed a proof of claim or appeared in the chapter 11 cases or any claim or whether any cause of action arising out of any agreement or understanding between the Debtors and such professional has been asserted in, brought before, or adjudicated in the Bankruptcy Court.  There is no schedule to this Exhibit A(viii).

**EXHIBIT A(ix)**

<u>Claims Related to Taxes</u>

The Debtors, the Reorganized Debtors, their affiliates and any entity created in accordance with the Plan expressly preserve all defenses and claims available with respect to local, state, federal, and foreign taxing authorities for refunds of overpayments or other payments; general tax matters; and any other existing or potential defenses and Cause of Action, whether or not the any agreements or understandings between the Debtors and any such local, state, federal or foreign taxing authorities or such taxing authorities themselves are specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether such parties have filed a proof of claim or appeared in the chapter 11 cases or any claim or whether any cause of action between the Debtors on the one hand any local, state, federal, and foreign taxing authorities, on the other hand, has been asserted in, brought before, or adjudicated in the Bankruptcy Court.  There is no schedule to this <u>Exhibit A(ix)</u>.

**EXHIBIT A(x)**

Claims Related to Co-Debtors

The Debtors, the Reorganized Debtors, their affiliates and any entity created in accordance with the Plan expressly preserve all defenses and claims available with respect to co-debtors, whether or not any agreements or understanding between and among the Debtors are specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether any co-debtor has filed a proof of claim or appeared in the chapter 11 cases or whether any claim or cause of action arising out of any agreement or understanding between or among the Debtors has been asserted in, brought before, or adjudicated in the Bankruptcy Court.  There is no schedule to this Exhibit A(x).

**EXHIBIT A(xi)**

Claims Related to Guaranties

The Debtors and the Reorganized Debtors, and their affiliates expressly preserve all defenses and claims available with respect to any guaranties or letters of credit issued by or on behalf of the Debtors, the Reorganized Debtors, or their affiliates, whether or not any such guarantee or the counterparty to any such guarantee is specifically mentioned in the Plan, the Disclosure Statement or Plan Supplement or any exhibits or schedules thereto, or whether such counterparty has filed a proof of claim or appeared in the chapter 11 cases or whether any claim or cause of action arising out of such guarantee has been asserted in, brought before, or adjudicated in the Bankruptcy Court.  There is no schedule to this Exhibit A(xi).

## EXHIBIT C

**Restructuring Transaction Memorandum**


[NONE]

## EXHIBIT D

**Management Equity Incentive Plan**


[TO COME]

## EXHIBIT E

**New Warrant Agreement**

**WORKING DRAFT**
**SUBJECT TO MATERIAL MODIFICATION**

## WARRANT AGREEMENT

THIS WARRANT AGREEMENT (this "Agreement") is made as of the [___]th day of [ ], 2010 between U.S. Concrete, Inc., a Delaware corporation (the "Company"), American Stock Transfer & Trust Company, LLC, as Warrant Agent (the "Warrant Agent").

WHEREAS, on April 28, 2010, the Company and certain of its affiliates (collectively, the "Debtors") filed petitions with the United States Bankruptcy Court (the "Bankruptcy Court") under Title 11 of the United States Code, 11 U.S.C. §§ 101-1330;

WHEREAS, the Company proposes to issue shares of New Common Stock (as defined below) pursuant to the order of the United States Bankruptcy Court for the District of Delaware, Case No. 10-11407, and the Plan of Reorganization confirmed therein in connection with the reorganization of the Company under Chapter 11 of Title 11 of the United States Code;

WHEREAS, the Company proposes to issue, at the Effective Date (as defined below), warrants (the "Warrants") to purchase, in the aggregate, [_____] shares of New Common Stock at an exercise price of $[_____], to all holders of Old Common Stock (as defined below) on a pro rata basis, based upon the proportion that the number of shares of Old Common Stock held by such holder bears to the total number of outstanding shares of Old Common Stock;

WHEREAS, the Company desires to provide for the form and provisions of the Warrants, the terms upon which they shall be issued and exercised, and the respective rights, limitation of rights, and immunities of the Company, the Warrant Agent, and the holders of the Warrants;

WHEREAS, the Company desires the Warrant Agent to act on behalf of the Company, and the Warrant Agent is willing to so act, in connection with the issuance, registration, transfer, exchange, exercise and cancellation of the Warrants; and

WHEREAS, all acts and things have been done and performed which are necessary to make the Warrants, when executed on behalf of the Company and countersigned by or on behalf of the Warrant Agent, as provided herein, the valid, binding and legal obligations of the Company, and to authorize the execution and delivery of this Agreement.

NOW, THEREFORE, in consideration of the mutual agreements herein contained, the parties hereto agree as follows:

### ARTICLE I

### DEFINITIONS

Section 1.1    Definition of Terms.  As used in this Agreement, the following capitalized terms shall have the following respective meanings:

(a)    "Business Day" shall mean any day other than a Saturday, Sunday or other day on which banks in the State of New York or New Jersey are authorized by law to remain closed.

K&E 16780540.11

(b)  "Beneficial Holder" shall mean any Person that holds beneficial interests in a Global Warrant Certificate.

(c)  "Board" shall mean the Board of Directors of the Company.

(d)  "Effective Date" has the meaning set forth in the Plan of Reorganization.

(e)  "Expiration Date" shall mean 5:00 p.m., New York City time, on [ ], 2017, or if such day is not a Business Day, the next succeeding day which is a Business Day.

(f)  "Fair Market Value" shall mean either:

(i)  in the case of Section 4.5, the fair market value of a Warrant Share as of the Net Issuance Exercise Date, which shall be determined as follows: (a) if traded on the NYSE, NASDAQ or another stock exchange, the trailing 20-day volume-weighted average price of the Warrant Shares on the NYSE, NASDAQ or such other exchange for the period ending on the trading day immediately prior to the Net Issuance Exercise Date; (b) if traded over-the-counter, the trailing 20-day volume-weighted average price of the Warrant Shares for the period ending on the trading day immediately prior to the Net Issuance Exercise Date; and (c) if there is no public market for the Warrant Shares, a good faith determination of such fair market value by the Board after consultation with an investment banking firm of nationally recognized standing; or

(ii)  in the case of Section 5.1(c), the fair market value of the Warrants, which shall be determined based on such factors as the Person making such determination shall consider relevant, including without limitation (v) the aggregate fair market value of the equity of the Company and its subsidiaries, on a consolidated basis, at the time of valuation, (w) the risk free rate (based upon the U.S. Treasury security with a maturity comparable to the 7-year life of the Warrant) at the time of valuation, (x) the Exercise Price, (y) the amount of time remaining in the Exercise Period (assuming the Warrant remained exercisable until the Expiration Date and was not earlier terminated pursuant to Section 5.1) and (z) an assumed volatility of 35%; provided, that, in the case of Section 5.1(c), if the consideration per share of New Common Stock (including the Fair Market Value of any such consideration to the extent that it is not cash) paid in such transaction exceeds the Exercise Price, the fair market value of this Warrant shall be deemed to equal the greater of (A) the excess of such consideration per Share (including the fair market value of any such consideration to the extent that it is not cash) over the Exercise Price or (B) an amount equal to the fair market value of this Warrant at the time of the consummation of the Fundamental Change (such fair market value to be determined in accordance with clauses (v) through (z) of this definition.

(g)  "NASDAQ" shall mean The NASDAQ Stock Market (including any of its subdivisions such as the NASDAQ Global Select Market) or any successor market thereto.

(h)  "New Common Stock" shall mean common stock, $[.001] par value per share, of the Company following the Effective Date.  For purposes of Article V hereof, references to "shares of New Common Stock" shall be deemed to include shares of any other class of stock resulting from successive changes or reclassifications of the New Common Stock consisting solely of changes in par value or from no par value to par value and vice versa.

2

(i)     "NYSE" shall mean The New York Stock Exchange or any successor stock exchange thereto.

(j)     "Old Common Stock" shall mean the common stock, par value $.001 per share, of the Company outstanding prior to the Effective Date.

(k)     "Person" shall mean any individual, firm, corporation, limited liability company, partnership, trust or other entity, and shall include any successor (by merger or otherwise) thereof or thereto.

(l)     "Plan of Reorganization" shall mean the joint plan of reorganization of the Debtors as finally approved by the bankruptcy court before which the Debtors' case under Chapter 11 of Title 11 of the United States Code was pending.

(m)     "Publicly Traded Company" shall mean a successor person whose shares of common stock have been registered under Section 12 of the Securities Exchange Act of 1934, as amended (or will be registered within 30 days of the Fundamental Change).

(n)     "Securities Act" shall mean the Securities Act of 1933, as amended.

(o)     "Warrant Shares" shall mean New Common Stock and any other securities purchased or purchasable upon exercise of the Warrants (and, if the context requires, securities which may thereafter be issued by the Company in respect of any such securities, by means of any stock splits, stock dividends, recapitalizations, reclassifications or the like, including as set forth in Article V).

Section 1.2     Table of Defined Terms.

| Term | Section Number |
| --- | --- |
| Agreement | Recitals |
| Appropriate Officer | Section 3.3(a) |
| Bankruptcy Court | Recitals |
| Book-Entry Warrants | Section 3.1 |
| Company | Recitals |
| Depositary | Section 3.2(b) |
| Exercise Amount | Section 4.5(a) |
| Exercise Form | Section 4.3(a) |
| Exercise Price | Section 4.1 |
| Extraordinary Distribution | Section 5.1(b) |
| Fundamental Change | Section 5.1(c) |
| Global Warrant Certificates | Section 3.2(a) |
| Holder | Section 4.1 |
| Net Issuance Exercise Date | Section 4.4(b) |
| Net Issuance Right | Section 4.5(b) |
| Net Issuance Warrant Shares | Section 4.5(b) |
| Registered Holder | Section 3.4(d) |
| Warrants | Recitals |
| Warrant Agent | Recitals |

3

Warrant Register                          Section 3.4(b)
Warrant Statements                        Section 3.1

## ARTICLE II

## APPOINTMENT OF WARRANT AGENT

Section 2.1    Appointment.  The Company hereby appoints the Warrant Agent to act as agent for the Company in respect of the Warrants upon the express terms and subject to the conditions herein set forth (and no implied terms), and the Warrant Agent hereby accepts such appointment and agrees to perform the same in accordance with the terms and conditions set forth in this Agreement.

## ARTICLE III

## WARRANTS

Section 3.1    Issuance of Warrants.  On the terms and subject to the conditions of this Agreement and in accordance with the terms of the Plan of Reorganization, on the Effective Date, Warrants to purchase the Warrant Shares will be issued by the Company to all holders of Old Common Stock on a pro rata basis, based upon the proportion that the number of shares of Old Common Stock held by such holder bears to the total number of outstanding shares of Old Common Stock.  On such date, the Company will deliver, or cause to be delivered to the Depositary, one or more Global Warrant Certificates evidencing a portion of the Warrants.  Upon receipt by the Warrant Agent of a written order of the Company pursuant to Section 3.4 hereof, the remainder of the Warrants shall be issued by book-entry registration on the books of the Warrant Agent ("Book-Entry Warrants") and shall be evidenced by statements issued by the Warrant Agent from time to time to the Registered Holders of Book-Entry Warrants reflecting such book-entry position (the "Warrant Statements").  The maximum number of shares of New Common Stock issuable pursuant to the Warrants shall be [_____] shares, as such amount may be adjusted from time to time pursuant to this Agreement.  The Company shall promptly notify the Warrant Agent in writing upon the occurrence of the Effective Date and, if such notification is given orally, the Company shall confirm same in writing on or prior to the Business Day next following.  Until such notice is received by the Warrant Agent, the Warrant Agent may presume conclusively for all purposes that the Effective Date has not occurred.

Section 3.2    Form of Warrant.

(a)    Subject to Section 6.1 of this Agreement, the Warrants shall be issued either (i) via book-entry registration on the books and records of the Warrant Agent and evidenced by the Warrant Statements, in substantially the form set forth in Exhibit A-1 attached hereto, or (ii) in the form of one or more global certificates (the "Global Warrant Certificates"), with the forms of election to exercise and of assignment printed on the reverse thereof, in substantially the form set forth in Exhibit A-2 attached hereto.  The Warrant Statements and Global Warrant Certificates may bear such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Agreement, may have such letters, numbers

4

or other marks of identification if required to comply with any law or with any rules made pursuant thereto or with any rules of any securities exchange.

(b)    The Global Warrant Certificates shall be deposited on or after the Effective Date with the Warrant Agent and registered in the name of Cede & Co., as the nominee of The Depository Trust Company (the "Depository").  Each Global Warrant Certificate shall represent such number of the outstanding Warrants as specified therein, and each shall provide that it shall represent the aggregate amount of outstanding Warrants from time to time endorsed thereon and that the aggregate amount of outstanding Warrants represented thereby may from time to time be reduced or increased, as appropriate, in accordance with the terms of this Agreement.

Section 3.3    Execution of Global Warrant Certificates.

(a)    The Global Warrant Certificates shall be signed on behalf of the Company by its Chairman of the Board of Directors, its Chief Executive Officer, its President, its Chief Financial Officer, any Vice President or its Treasurer (each, an "Appropriate Officer").  Each such signature upon the Global Warrant Certificates may be in the form of a facsimile signature of any such Appropriate Officer and may be imprinted or otherwise reproduced on the Global Warrant Certificates and for that purpose the Company may adopt and use the facsimile signature of any Appropriate Officer.

(b)    If any Appropriate Officer who shall have signed any of the Global Warrant Certificates shall cease to be such Appropriate Officer before the Global Warrant Certificates so signed shall have been countersigned by the Warrant Agent or disposed of by the Company, such Global Warrant Certificates nevertheless may be countersigned and delivered or disposed of as though such Appropriate Officer had not ceased to be such Appropriate Officer of the Company; and any Global Warrant Certificate may be signed on behalf of the Company by any person who, at the actual date of the execution of such Global Warrant Certificate, shall be a proper Appropriate Officer of the Company to sign such Global Warrant Certificate, although at the date of the execution of this Agreement any such person was not such Appropriate Officer.

Section 3.4    Registration and Countersignature.

(a)    Upon receipt of a written order of the Company, the Warrant Agent shall (i) register in the Warrant Register the Book-Entry Warrants and deliver Warrant Statements to the Registered Holders of Book-Entry Warrants and (ii) upon receipt of the Global Warrant Certificates duly executed on behalf of the Company, either manually or by facsimile signature countersign one or more Global Warrant Certificates evidencing Warrants and deliver such Global Warrant Certificates to or upon the written order of the Company.  Such written order of the Company shall specifically state the number of Warrants that are to be issued as Book-Entry Warrants and the number of Warrants that are to be issued as a Global Warrant Certificate.  A Global Warrant Certificate shall be, and shall remain, subject to the provisions of this Agreement until such time as all of the Warrants evidenced thereby shall have been duly exercised or shall have expired or been cancelled in accordance with the terms hereof.

5

(b)    No Global Warrant Certificate shall be valid for any purpose, and no Warrant evidenced thereby shall be exercisable, until such Global Warrant Certificate has been either manually or by facsimile signature countersigned by the Warrant Agent.  Such signature by the Warrant Agent upon any Global Warrant Certificate executed by the Company shall be conclusive evidence that such Global Warrant Certificate so countersigned has been duly issued hereunder.

(c)    The Warrant Agent shall keep, at an office designated for such purpose, books (the "Warrant Register") in which, subject to such reasonable regulations as it may prescribe, it shall register the Book-Entry Warrants as well as any Global Warrant Certificates and exchanges and transfers of outstanding Warrants in accordance with the procedures set forth in Section 6.1 of this Agreement, all in form satisfactory to the Company and the Warrant Agent. No service charge shall be made for any exchange or registration of transfer of the Warrants, but the Company may require payment of a sum sufficient to cover any stamp or other tax or other charge that may be imposed on the Registered Holder in connection with any such exchange or registration of transfer.  Notwithstanding anything in this Agreement to the contrary, the Warrant Agent shall have no obligation to take any action whatsoever with respect to an exchange or registration of transfer unless and until it is reasonably satisfied that all such payments required by the immediately preceding sentence have been made.

(d)    Prior to due presentment for registration of transfer or exchange of any Warrant in accordance with the procedures set forth in this Agreement, the Company and the Warrant Agent may deem and treat the Person in whose name any Warrant is registered upon the Warrant Register (the "Registered Holder" of such Warrant) as the absolute owner of such Warrant (notwithstanding any notation of ownership or other writing on a Global Warrant Certificate made by anyone other than the Company or the Warrant Agent), for the purpose of any exercise thereof, any distribution to the holder thereof and for all other purposes, and neither the Warrant Agent nor the Company shall be affected by notice to the contrary.

## ARTICLE IV

## TERMS AND EXERCISE OF WARRANTS

Section 4.1    Exercise Price.  On the Effective Date, each Warrant shall entitle (i) in the case of the Book-Entry Warrants, the Registered Holder thereof and (ii) in the case of Warrants held through the book-entry facilities of the Depositary or by or through Persons that are direct participants in the Depositary, the Beneficial Holder thereof ((i) and (ii) collectively, the "Holder"), subject to the provisions of such Warrant and of this Agreement, to purchase from the Company (and the Company shall issue and sell to each Holder) the number of Warrant Shares, at the price of $[_____] per whole share (as the same may be hereafter adjusted pursuant to Article V, the "Exercise Price"), specified in such Warrant.

Section 4.2    Duration of Warrants.  Warrants may be exercised by the Holder thereof, in whole or in part, at any time and from time to time during the period commencing on the Effective Date and terminating at 5:00 p.m., New York City time, on the Expiration Date.  Any Warrant, or any portion thereof, not exercised prior to 5:00 p.m., New York City time, on the Expiration Date, shall become permanently and irrevocably null and void at 5:00 p.m., New

York City time, on the Expiration Date, and all rights thereunder and all rights in respect thereof under this Agreement shall cease at such time.

Section 4.3    Method of Exercise.

(a)    Subject to the provisions of the Warrants and this Agreement, the Holder of a Warrant may exercise such Holder's right to purchase the Warrant Shares, in whole or from time to time in part, by: (x) in the case of Persons who hold Book-Entry Warrants, providing an exercise form for the election to exercise such Warrant ("Exercise Form") substantially in the form of Exhibit B-1 hereto, properly completed and duly executed by the Registered Holder thereof, and, in the case of an exercise for cash pursuant to Section 4.5(a), providing payment of the Exercise Amount, to the Warrant Agent, and (y) in the case of Warrants held through the book-entry facilities of the Depositary or by or through Persons that are direct participants in the Depositary, providing an Exercise Form (as provided by such Holder's broker), properly completed and duly executed by the Beneficial Holder thereof, and, in the case of an exercise for cash pursuant to Section 4.5(a), providing payment of the Exercise Amount, to its broker, and the exercising participant whose name appears on a securities position listing of the Depositary as the holder of such interest in the Book-Entry Warrant must comply with the Depositary's procedures relating to the exercise of such interest in such Book-Entry Warrant.

(b)    Any exercise of a Warrant pursuant to the terms of this Agreement shall be irrevocable and shall constitute a binding agreement between the Holder and the Company, enforceable in accordance with its terms.

(c)    The Warrant Agent shall:

(i)    examine all Exercise Forms and all other documents delivered to it by or on behalf of Holders as contemplated hereunder to ascertain whether or not, on their face, such Exercise Forms and any such other documents have been executed and completed in accordance with their terms and the terms hereof;

(ii)    where an Exercise Form or other document appears on its face to have been improperly completed or executed or some other irregularity in connection with the exercise of the Warrants exists, endeavor to inform the appropriate parties (including the Person submitting such instrument) of the need for fulfillment of all requirements, specifying those requirements which appear to be unfulfilled;

(iii)    inform the Company of and cooperate with and assist the Company in resolving any reconciliation problems between Exercise Forms received and the delivery of Warrants to the Warrant Agent's account;

(iv)    advise the Company no later than five (5) Business Days after receipt of an Exercise Form, of (A) the receipt of such Exercise Form and the number of Warrants exercised in accordance with the terms and conditions of this Agreement, (B) the instructions with respect to delivery of the Warrant Shares deliverable upon such exercise, subject to timely receipt from the Depositary of the necessary information, and (C) such other information as the Company shall reasonably require;

7

(v)   if requested by the Company and provided with the Warrant Shares and all other necessary information, liaise with the Depositary and endeavor to deliver the Warrant Shares to the relevant accounts at the Depositary in accordance with its customary requirements; and

(vi)   account promptly to the Company with respect to Warrants exercised and promptly deposit all monies received by the Warrant Agent for the purchase of Warrant Shares through the exercise of Warrants in the account of the Company maintained with the Warrant Agent for such purpose.

(d)   The Company reserves the right to reasonably reject any and all Exercise Forms not in proper form.  Such determination by the Company shall be final and binding on the Holders of the Warrants, absent manifest error.  Moreover, the Company reserves the absolute right to waive any of the conditions to the exercise of Warrants or defects in Exercise Forms with regard to any particular exercise of Warrants.  Neither the Company nor the Warrant Agent shall be under any duty to give notice to the Holders of the Warrants of any irregularities in any exercise of Warrants, nor shall it incur any liability for the failure to give such notice.

Section 4.4   Issuance of Warrant Shares.

(a)   Upon exercise of any Warrants pursuant to Section 4.3 and, if applicable, clearance of the funds in payment of the Exercise Price, the Company shall promptly at its expense, and in no event later than ten (10) Business Days thereafter, calculate and cause to be issued to the Holder of such Warrants the total number of whole Warrant Shares for which such Warrants are being exercised (as the same may be hereafter adjusted pursuant to Article V):

(i)   in the case of a Beneficial Holder who holds the Warrants being exercised through the Depositary's book-entry transfer facilities, by same-day or next-day credit to the Depositary for the account of such Beneficial Holder or for the account of a participant in the Depositary the number of Warrant Shares to which such Person is entitled, in each case registered in such name and delivered to such account as directed in the Exercise Form by such Beneficial Holder or by the direct participant in the Depositary through which such Beneficial Holder is acting, or

(ii)   in the case of a Registered Holder who holds the Warrants being exercised in the form of Book-Entry Warrants, a book-entry interest in the Warrant Shares registered on the books of the Company's transfer agent or, at the Registered Holder's option, by delivery to the address designated by such Registered Holder on its Exercise Form of a physical certificate representing the number of Warrant Shares to which such Registered Holder is entitled, in fully registered form, registered in such name or names as may be directed by such Registered Holder.

(b)   Any exercise of Net Issuance Right pursuant to Section 4.5(b) shall be effective upon receipt by the Warrant Agent of the Exercise Form properly completed and duly executed, or on such later date as is specified therein (the "Net Issuance Exercise Date").  The Holder of the Warrants shall be deemed to be the holder of record of the Warrant Shares issuable upon such exercise as of the time of receipt of the Exercise Form and payment of the aggregate

Exercise Price for the Warrant Shares for which a Warrant is then being exercised, in the case of an exercise for cash pursuant to Section 4.5(a), or as of the Net Issuance Exercise Date, in the case of a net issuance exercise pursuant to Section 4.5(b), except that, if the date of such receipt and payment or the Net Issuance Exercise Date is a date when the stock transfer books of the Company are closed, the Holder shall be deemed to have become the holder of such shares at the close of business on the next succeeding date on which the stock transfer books are open. Warrants may not be exercised by, or securities issued to, any Holder in any state in which such exercise or issuance would be unlawful.

(c)    If less than all of the Warrants evidenced by a Global Warrant Certificate or Warrant Statement, as applicable, surrendered upon the exercise of Warrants are exercised at any time prior to the Expiration Date, a new Global Warrant Certificate or Warrant Statement, as applicable, shall be issued for the remaining number of Warrants evidenced by such Global Warrant Certificate or Warrant Statement, as applicable, so surrendered, and the Warrant Agent is hereby authorized to countersign and deliver the required new Global Warrant Certificate or Warrant Statement, as applicable, pursuant to the provisions of Section 3.4 and this Section 4.4.

Section 4.5    Exercise of Warrant.

(a)    *Right to Exercise by Cash Payment*.  Warrants or any portion thereof may be exercised by the Holders thereof at any time or from time to time during the period specified in Section 4.2 hereof by delivery of payment to the Warrant Agent, for the account of the Company, by certified or bank cashier's check payable to the order of the Company (or as otherwise agreed to by the Company), in lawful money of the United States of America, of the full Exercise Price for the number of Warrant Shares specified in the Exercise Form (which shall be equal to the Exercise Price multiplied by the number of Warrant Shares in respect of which any Warrants are being exercised) and, to the extent required by Section 8.1 hereof, any and all applicable taxes and charges due in connection with the exercise of Warrants and the exchange of Warrants for Warrant Shares (the "Exercise Amount").

(b)    *Right to Exercise on a Net Issuance Basis*.  In lieu of exercising Warrants by cash payment pursuant to Section 4.5(a), Holders shall have the right to exercise Warrants or any portion thereof (the "Net Issuance Right") for Warrant Shares as provided in this Section 4.5(b) at any time or from time to time during the period specified in Section 4.2 hereof by the surrender to the Warrant Agent of a duly executed and properly completed Exercise Form marked to reflect net issuance exercise.  Upon exercise of the Net Issuance Right with respect to a particular number of Warrant Shares subject to such Warrants and noted on the Exercise Form (the "Net Issuance Warrant Shares"), the Company shall calculate and deliver or cause to be delivered to the Holder (without delivery by the Holder of any Exercise Amount or any cash or other consideration) that number of fully paid and nonassessable Warrant Shares (subject to the provisions of Section 4.7) equal to the quotient obtained by dividing (x) the value of such Warrants (or the specified portion hereof) on the Net Issuance Exercise Date, which value shall be determined by subtracting (A) the aggregate Exercise Amount of the Net Issuance Warrant Shares immediately prior to the exercise of the Net Issuance Right from (B) the aggregate Fair Market Value of the Net Issuance Warrant Shares issuable upon exercise of such Warrants (or the specified portion thereof) on the Net Issuance Exercise Date (as defined above) by (y) the

9

Fair Market Value of one Warrant Share on the Net Issuance Exercise Date.  Expressed as a formula, such net issuance exercise shall be computed as follows:

$$X = \frac{B - A}{Y}$$

Where:     $X =$     the number of Warrant Shares issuable to the Holder thereof

$Y =$     the Fair Market Value of one Warrant Share as of the Net Issuance Exercise Date

$A =$     the aggregate Exercise Amount (i.e., Net Issuance Warrant Shares x Exercise Price, plus, to the extent required by Section 8.1 hereof, any and all applicable taxes and charges due in connection with the exercise of the applicable Warrants and the exchange of such Warrants for such Net Issuance Warrant Shares)

$B =$     the aggregate Fair Market Value (i.e., Fair Market Value x Net Issuance Warrant Shares)

If the foregoing calculation results in a negative number, then no Warrant Shares shall be issuable upon exercise of the Net Issuance Right by the applicable Holder.

(c)     *Determination of the Number of Warrant Shares to be Issued*.  The number of Warrant Shares to be issued on each such exercise will be determined by the Company (with written notice thereof to the Warrant Agent) using the formula set forth in this Section 4.5.  The Warrant Agent shall have no duty or obligation to investigate or confirm whether the Company's determination of the number of Warrant Shares to be issued on such exercise, pursuant to this Section 4.5, is accurate or correct.

Section 4.6     Reservation of Shares.  The Company hereby agrees that at all times there shall be reserved for issuance and delivery upon exercise of Warrants such number of Warrant Shares as may be from time to time issuable upon exercise in full of the Warrants.  All Warrant Shares shall be duly authorized, and when issued upon such exercise, shall be validly issued, fully paid and non-assessable, free and clear of all taxes (subject to Section 8.1), liens, security interests, charges and other encumbrances or restrictions of any kind (other than any applicable restrictions under federal and state securities laws) and free and clear of all preemptive rights or similar rights of stockholders, and the Company shall take all such action as may be necessary or appropriate in order that the Company may validly and legally issue all Warrant Shares in compliance with this sentence.  If at any time prior to the Expiration Date the number and kind of authorized but unissued shares of the Company's capital stock shall not be sufficient to permit exercise in full of the Warrants, the Company will promptly take such corporate action as may, in the opinion of its counsel, be necessary to increase its authorized but unissued shares to such number of shares as shall be sufficient for such purposes.  The Company agrees that its issuance of Warrants shall constitute full authority to its officers who are charged with the issuance of Warrant Shares to issue shares of New Common Stock upon the exercise of Warrants.  Without limiting the generality of the foregoing, the Company will not increase the stated or par value per

10

share, if any, of the New Common Stock above the Exercise Price in effect immediately prior to such increase in stated or par value and will from time to time take all actions reasonably necessary to ensure that the stated or par value per share, if any, of the New Common Stock is at all times less than the Exercise Price then in effect.

Section 4.7    Fractional Shares.  The Company shall not be required to issue any fraction of a share of its capital stock in connection with the exercise of Warrants.  All shares of capital stock issuable upon conversion of more than one Warrant by a holder thereof shall be aggregated for purposes of determining whether the conversion would result in the issuance of any fractional share.  If, after the aforementioned aggregation, the conversion would result in the issuance of any fractional share, the Company shall, in lieu of issuing any fractional share, round such fraction of a share to the nearest whole number of shares.  For the avoidance of doubt, 0.5 of a share shall be rounded to one (1) share.

Section 4.8    Listing.  Subject to the restrictions on listing of New Common Stock as set forth in the Plan of Reorganization, the Company shall secure the listing of shares of New Common Stock issuable from time to time upon exercise of the Warrants or other Warrant Shares upon each national securities exchange or stock market, if any, upon which shares of New Common Stock (or securities of the same class as such other Warrant Shares, if applicable) are then listed (subject to official notice of issuance upon exercise of Warrants) and shall maintain, so long as any other shares of New Common Stock (or, as applicable, other securities) shall be so listed, such listing of all Warrant Shares from time to time issuable upon the exercise of Warrants.

Section 4.9    Redemption.  The Warrants shall not be redeemable by the Company or any other Person.

## ARTICLE V

## ADJUSTMENT OF SHARES OF NEW COMMON STOCK PURCHASABLE AND OF EXERCISE PRICE

The Exercise Price and the number and kind of Warrant Shares shall be subject to adjustment from time to time upon the happening of certain events as provided in this Article V.

Section 5.1    Mechanical Adjustments.

(a)    Subject to the provisions of Section 4.7, if at any time prior to the exercise in full of the Warrants, the Company shall (i) pay or declare a dividend or make a distribution on the New Common Stock payable in shares of its capital stock (whether shares of New Common Stock or of capital stock of any other class), (ii) subdivide, split, reclassify or recapitalize its outstanding New Common Stock into a greater number of shares, (iii) combine, reclassify or recapitalize its outstanding New Common Stock into a smaller number of shares, or (iv) issue any shares of its capital stock by reclassification of its New Common Stock (including any such reclassification in connection with a consolidation or a merger in which the Company is the continuing corporation), then the Exercise Price in effect at the time of the record date of such event shall be adjusted (either upward or downward, as the case may be) so that the Holders shall

11

be entitled to receive the aggregate number and kind of shares which, if their Warrants had been exercised in full immediately prior to such event, the Holders would have owned upon such exercise and been entitled to receive by virtue of such event. Any adjustment required by this Section 5.1(a) shall be made successively immediately after the earlier of the record date or the effective date of such event, as applicable, whenever any event in this Section 5.1(a) shall occur, to allow the purchase of such aggregate number and kind of shares.

(b)    If the Company distributes to holders of its New Common Stock any assets (including but not limited to cash, but excluding any Regular Dividends), securities, or warrants to purchase securities (including but not limited to New Common Stock), other than as described in Section 5.1(a) or Section 5.1(c) (any such non-excluded event being referred to herein as an "Extraordinary Distribution"), then the Exercise Price shall be decreased, effective immediately after the record or other distribution date of such Extraordinary Distribution, by the amount of cash and/or fair market value (as determined in good faith by the Board after consultation with an investment banking firm of nationally recognized standing) of any securities or assets paid or distributed on each share of New Common Stock in respect of such Extraordinary Distribution. Any adjustment required by this Section 5.1(b) shall be made successively immediately after the earlier of the record date or distribution date whenever any event in this Section 5.1(b) shall occur to allow the purchase of the aggregate number and kind of shares to which Holders may be entitled. Notwithstanding any other provision of this Section 5.1(b), the Exercise Price shall not be adjusted pursuant to this Section 5.1(b) if at the time of such distribution, the Company makes the same distribution to Holders of Warrants as it makes to holders of New Common Stock *pro rata* based on the number of shares of New Common Stock for which such Warrants are exercisable.

(c)    If any transaction or event (including, but not limited to, any merger, consolidation, sale of assets, tender or exchange offer, reorganization, reclassification, compulsory share exchange or liquidation) occurs in which all or substantially all of the outstanding New Common Stock is converted into or exchanged for stock, other securities, cash or assets (each, a "Fundamental Change"), if the consideration paid consists 90% or more of Publicly Traded Securities, the Holder of each Warrant outstanding immediately prior to the occurrence of such Fundamental Change will have the right upon any subsequent exercise (and payment of the applicable Exercise Price) to receive (but only out of legally available funds, to the extent required by applicable law) the kind and amount of stock, other securities, cash and assets that such Holder would have received if such Warrant had been exercised pursuant to the terms hereof immediately prior thereto (assuming such Holder failed to exercise his rights of election, if any, as to the kind or amount of securities, cash or other property receivable upon such Fundamental Change). Any adjustment required by this Section 5.1(c) shall be made successively immediately after the earlier of the record date or the effective date, as applicable, whenever any event in this Section 5.1(c) shall occur, to allow the purchase of the aggregate number and kind of shares or other consideration to which Holders may be entitled. The Company will not effect any capital reorganization or reclassification of its capital stock, or any consolidation or merger, or the sale of all or substantially all of its assets (where there is a change in or distribution with respect to the New Common Stock) unless prior to the consummation thereof the successor Person (if other than the Company) shall assume by written instrument the obligation to deliver to the Holder such shares of stock, securities or assets as, in accordance with the foregoing provisions, the Holder may be entitled to purchase. If a Fundamental Change

12

occurs (other than a Fundamental Change in which the consideration consists at least 90% of Publicly Traded Securities), then the Holders of the Warrants will be entitled to receive on the date the Fundamental Change is consummated, an amount equal to the Fair Market Value of the Warrant.

(d)      Subject to the provisions of Section 4.7, whenever the Exercise Price payable upon exercise of Warrants is adjusted pursuant to Section 5.1(a), the number of Warrant Shares issuable upon exercise of each Warrant shall simultaneously be adjusted to a number of Warrant Shares determined by multiplying the number of Warrant Shares initially issuable upon exercise of each Warrant by the Exercise Price in effect on the date of such adjustment and dividing the product so obtained by the Exercise Price, as adjusted.

(e)      If, at any time after the Issue Date, any adjustment is made to the applicable Exercise Price pursuant to this Section 5.1, such adjustment to the Exercise Price will be applicable with respect to all then outstanding Warrants and all Warrants issued in exchange or substitution therefor on or after the date of the event causing such adjustment to the Exercise Price.

(f)      No adjustment in the Exercise Price shall be required unless such adjustment would require an increase or decrease of at least five cents ($0.05) in such price; provided, however, that any adjustments which by reason of this Section 5.1(f) are not required to be made shall be carried forward and taken into account in any subsequent adjustment. All calculations under this Section 5.1 shall be made to the nearest cent ($0.01) (with $.005 being rounded upward) or to the nearest one-hundredth of a share (with .005 of a share being rounded upward), as the case may be. Notwithstanding anything in this Section 5.1 to the contrary, the Exercise Price shall not be reduced to less than the then existing par value of the New Common Stock as a result of any adjustment made hereunder.

(g)      In the event that at any time, as a result of any adjustment made pursuant to Section 5.1(a), Section 5.1(b) or Section 5.1(c), the Holder thereafter shall become entitled to receive any shares of the Company other than New Common Stock, thereafter the number of such other shares so receivable upon exercise of any Warrant shall be subject to adjustment from time to time in a manner and on terms as nearly equivalent as practicable to the provisions with respect to the New Common Stock contained in this Section 5.1.

(h)      The Company will not take any action that results in any adjustment hereunder if the total number of shares of New Common Stock issuable after such action upon exercise in full of the Warrants, together with all shares of New Common Stock then outstanding and all shares of New Common Stock then issuable upon exercise of all options and upon conversion of all convertible securities then outstanding, would exceed the total number of shares of New Common Stock authorized by the Company's then effective Certificate of Incorporation.

Section 5.2      Notices of Adjustment. Whenever the number and/or kind of Warrant Shares or the Exercise Price is adjusted as herein provided, the Company shall (i) prepare and deliver, or cause to be prepared and delivered, forthwith to the Warrant Agent a certificate signed by an Appropriate Officer of the Company setting forth the adjusted number and/or kind of

13

shares purchasable upon the exercise of Warrants and the Exercise Price of such shares after such adjustment, the facts requiring such adjustment and the computation by which adjustment was made, and (ii) cause the Warrant Agent to give written notice to each Registered Holder in the manner provided in Section 9.2 below, which notice shall state the record date or the effective date of the event in addition to the adjusted number and/or kind of shares purchasable upon the exercise of Warrants and the Exercise Price of such shares after such adjustment, the facts requiring such adjustment and the computation by which adjustment was made and, if applicable, the Black Scholes Warrant Value and a description of the procedures and method of payment in respect thereof.  Failure to give such notice, or any defect therein, shall not affect the legality or validity of such event.  The Warrant Agent shall be fully protected in relying upon such a certificate and shall have no duty with respect to, and shall not be deemed to have knowledge of, any adjustments, unless and until the Warrant Agent shall have received such a certificate.

Section 5.3    Form of Warrant After Adjustments.  The form of the Global Warrant Certificate need not be changed because of any adjustments in the Exercise Price or the number or kind of the Warrant Shares, and Warrants theretofore or thereafter issued may continue to express the same price and number and kind of shares as are stated in Warrants, as initially issued.  The Company, however, may at any time in its sole discretion make any change in the form of Global Warrant Certificate that it may deem appropriate to give effect to such adjustments and that does not affect the substance of the Global Warrant Certificate (including the rights, duties, immunities or obligations of the Warrant Agent), and any Global Warrant Certificate thereafter issued, whether in exchange or substitution for an outstanding Global Warrant Certificate or otherwise, may be in the form so changed.

## ARTICLE VI

### TRANSFER AND EXCHANGE
### OF WARRANTS AND WARRANT SHARES

Section 6.1    Registration of Transfers and Exchanges.

(a)    *Transfer and Exchange of Global Warrant Certificates or Beneficial Interests Therein*.  The transfer and exchange of Global Warrant Certificates or beneficial interests therein shall be effected through the Depositary, in accordance with this Agreement and the procedures of the Depositary therefor.

(b)    *Exchange of a Beneficial Interest in a Global Warrant Certificate for a Book-Entry Warrant*.

(i)    Any Holder of a beneficial interest in a Global Warrant Certificate may, upon request, exchange such beneficial interest for a Book-Entry Warrant.  Upon receipt by the Warrant Agent from the Depositary or its nominee of written instructions or such other form of instructions as is customary for the Depositary on behalf of any Person having a beneficial interest in a Global Warrant Certificate, and all other necessary information the Warrant Agent shall cause, in accordance with the standing instructions and procedures existing between the Depositary and Warrant Agent, the number of Warrants represented by the Global Warrant

14

Certificate to be reduced by the number of Warrants to be represented by the Book-Entry Warrants to be issued in exchange for the beneficial interest of such Person in the Global Warrant Certificate and, following such reduction, the Warrant Agent shall register in the name of the Holder a Book-Entry Warrant and deliver to said Holder a Warrant Statement.

(ii)     Book-Entry Warrants issued in exchange for a beneficial interest in a Global Warrant Certificate pursuant to this Section 6.1(b) shall be registered in such names as the Depositary, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Warrant Agent. The Warrant Agent shall deliver such Warrant Statements to the Persons in whose names such Warrants are so registered.

(c)     *Transfer and Exchange of Book-Entry Warrants*.   When Book-Entry Warrants are presented to or deposited with the Warrant Agent with a written request:

(i)     to register the transfer of any Book-Entry Warrants; or

(ii)     to exchange any Book-Entry Warrants for an equal number of Book-Entry Warrants of other authorized denominations, the Warrant Agent shall register the transfer or make the exchange as requested if its customary requirements for such transactions are met; provided, however, that the Warrant Agent has received a written instruction of transfer in form satisfactory to the Warrant Agent, properly completed and duly executed by the Registered Holder thereof or by his attorney, duly authorized in writing.

(d)     *Restrictions on Exchange or Transfer of a Book-Entry Warrant for a Beneficial Interest in a Global Warrant Certificate*.   A Book-Entry Warrant may not be exchanged for a beneficial interest in a Global Warrant Certificate except upon satisfaction of the requirements set forth below.   Upon receipt by the Warrant Agent of appropriate instruments of transfer with respect to a Book-Entry Warrant, in form satisfactory to the Warrant Agent, together with written instructions directing the Warrant Agent to make, or to direct the Depositary to make, an endorsement on the Global Warrant Certificate to reflect an increase in the number of Warrants represented by the Global Warrant Certificate equal to the number of Warrants represented by such Book-Entry Warrant, and all other necessary information, then the Warrant Agent shall cancel such Book-Entry Warrant on the Warrant Register and cause, or direct the Depositary to cause, in accordance with the standing instructions and procedures existing between the Depositary and the Warrant Agent, the number of Warrants represented by the Global Warrant Certificate to be increased accordingly.   If no Global Warrant Certificates are then outstanding, the Company shall issue and the Warrant Agent shall either manually or by facsimile countersign a new Global Warrant Certificate representing the appropriate number of Warrants.

(e)     *Restrictions on Transfer and Exchange of Global Warrant Certificates*. Notwithstanding any other provisions of this Agreement (other than the provisions set forth in Section 6.1(f)), unless and until it is exchanged in whole for a Book-Entry Warrant, a Global Warrant Certificate may not be transferred as a whole except by the Depositary to a nominee of the Depositary or by a nominee of the Depositary to the Depositary or another nominee of the Depositary or by the Depositary or any such nominee to a successor Depositary or a nominee of such successor Depositary.

15

(f)    *Book-Entry Warrants*.  If at any time, (i) the Depositary for the Global Warrant Certificates notifies the Company that the Depositary is unwilling or unable to continue as Depositary for the Global Warrant Certificates and a successor Depositary for the Global Warrant Certificates is not appointed by the Company within 90 days after delivery of such notice or (ii) the Company, in its sole discretion, notifies the Warrant Agent in writing that it elects to exclusively cause the issuance of Book-Entry Warrants under this Agreement, then the Warrant Agent, upon written instructions signed by an Appropriate Officer of the Company, and all other necessary information, shall register Book-Entry Warrants, in an aggregate number equal to the number of Warrants represented by the Global Warrant Certificates, in exchange for such Global Warrant Certificates in such names and in such amounts as directed by the Depositary or, in the absence of instructions from the Depositary, by the Company.

(g)    *Restrictions on Transfer*.  No Warrants or Warrant Shares shall be sold, exchanged or otherwise transferred in violation of the Securities Act or state securities laws.

(h)    *Cancellation of Global Warrant Certificate*.  At such time as all beneficial interests in Global Warrant Certificates have either been exchanged for Book-Entry Warrants, repurchased or cancelled, all Global Warrant Certificates shall be returned to, or retained and cancelled by, the Warrant Agent, upon written instructions from the Company satisfactory to the Warrant Agent.

Section 6.2    Obligations with Respect to Transfers and Exchanges of Warrants.

(i)    To permit registrations of transfers and exchanges, the Company shall execute Global Warrant Certificates, if applicable, and the Warrant Agent is hereby authorized, in accordance with the provisions of Section 3.4 and this Article VI, to countersign such Global Warrant Certificates, if applicable, or register Book-Entry Warrants, if applicable, as required pursuant to the provisions of this Article VI and for the purpose of any distribution of new Global Warrant Certificates contemplated by Section 7.2 or additional Global Warrant Certificates contemplated by Article V.

(ii)    All Book-Entry Warrants and Global Warrant Certificates issued upon any registration of transfer or exchange of Book-Entry Warrants or Global Warrant Certificates shall be the valid obligations of the Company, entitled to the same benefits under this Agreement as the Book-Entry Warrants or Global Warrant Certificates surrendered upon such registration of transfer or exchange.

(iii)    No service charge shall be made to a Holder for any registration, transfer or exchange, but the Company may require payment of a sum sufficient to cover any stamp or other tax or other charge that may be imposed on the Holder in connection with any such exchange or registration of transfer.

(iv)    So long as the Depositary, or its nominee, is the Registered Holder of a Global Warrant Certificate, the Depositary or such nominee, as the case may be, will be considered the sole owner or holder of the Warrants represented by such Global Warrant Certificate for all purposes under this Agreement.  Except as provided in Section 6.1(b) and Section 6.1(f) upon the exchange of a beneficial interest in a Global Warrant Certificate for

16

Book-Entry Warrants, Beneficial Holders will not be entitled to have any Warrants registered in their names, and will under no circumstances be entitled to receive physical delivery of any such Warrants and will not be considered the Registered Holder thereof under the Warrants or this Agreement.  Neither the Company nor the Warrant Agent, in its capacity as registrar for such Warrants, will have any responsibility or liability for any aspect of the records relating to beneficial interests in a Global Warrant Certificate or for maintaining, supervising or reviewing any records relating to such beneficial interests.

(v)     Subject to Section 6.1(b), Section 6.1(c), Section 6.1(d), and this Section 6.2, the Warrant Agent shall, upon receipt of all information required to be delivered hereunder, from time to time register the transfer of any outstanding Warrants in the Warrant Register, upon delivery to the Warrant Agent, at its office designated for such purpose, of a properly completed form of assignment substantially in the form of Exhibit C hereto, duly signed by the Registered Holder thereof or by the duly appointed legal representative thereof or by a duly authorized attorney, such signature to be guaranteed by a participant in the Securities Transfer Agent Medallion Program, the Stock Exchanges Medallion Program or the New York Stock Exchange, Inc. Medallion Signature Program and, in the case of a transfer of a Global Warrant Certificate, upon surrender to the Warrant Agent of such Global Warrant Certificate, duly endorsed.  Upon any such registration of transfer, a new Global Warrant Certificate or a Warrant Statement, as the case may be, shall be issued to the transferee.

Section 6.3     Fractional Warrants.  The Warrant Agent shall not be required to effect any registration of transfer or exchange which will result in the issuance of a warrant certificate for a fraction of a Warrant.

## ARTICLE VII

## OTHER PROVISIONS RELATING TO RIGHTS OF HOLDERS OF WARRANTS

Section 7.1     No Rights or Liability as Stockholder; Notice to Registered Holders.  Nothing contained in the Warrants shall be construed as conferring upon the Holder or his, her or its transferees the right to vote or to receive dividends or to consent or to receive notice as a stockholder in respect of any meeting of stockholders for the election of directors of the Company or of any other matter, or any rights whatsoever as stockholders of the Company.  No provision thereof and no mere enumeration therein of the rights or privileges of the Holder shall give rise to any liability of such holder for the Exercise Price hereunder or as a stockholder of the Company, whether such liability is asserted by the Company or by creditors of the Company.  To the extent not covered by any statement delivered pursuant to Section 5.2, the Company shall give notice to Registered Holders in accordance with Section 9.2 if at any time prior to the expiration or exercise in full of the Warrants:

(a)     any dividend or distribution (whether payable in cash, securities or other assets) upon the New Common Stock shall be proposed;

(b)     an offer for subscription pro rata to the holders of New Common Stock of any additional shares of stock of any class or other securities or rights shall be proposed;

17

(c)    a dissolution, liquidation or winding up of the Company shall be proposed;

(d)    any of the following additional events shall be proposed: a capital reorganization or reclassification of the New Common Stock; any consolidation or merger of the Company with or into another Person (other than a consolidation or merger in which the Company is the continuing corporation and that does not result in any reclassification or change of New Common Stock outstanding); any sale or conveyance to another Person of all or substantially all of the assets of the Company; or any other Fundamental Change.

Such giving of notice shall be initiated at least ten (10) Business Days prior to the date fixed as a record date or effective date or the date of closing of the Company's stock transfer books for the determination of the stockholders entitled to vote on any of the events described in clauses (a)-(d) immediately above.  Such notice shall specify such record date or the date of closing the stock transfer books or the date the relevant event shall take place, as the case may be, a reasonably detailed description of such event, and the anticipated timing thereof.  Failure to provide such notice shall not affect the validity of any action taken in connection with such proposed event.  For the avoidance of doubt, no such notice shall supersede or limit any adjustment called for by Section 5.1 by reason of any event as to which notice is required by this Section 7.1.

Section 7.2    Lost, Stolen, Mutilated or Destroyed Warrants.  If any Global Warrant Certificate or Warrant Statement is lost, stolen, mutilated or destroyed, the Company shall issue, and the Warrant Agent shall countersign and deliver, in exchange and substitution for and upon cancellation of the mutilated Global Warrant Certificate or Warrant Statement, as applicable, or in lieu of and substitution for such Global Warrant Certificate or Warrant Statement, as applicable, lost, stolen or destroyed, a new Global Warrant Certificate or Warrant Statement, as applicable, of like tenor and representing an equivalent number of Warrants, but only upon receipt of evidence and an affidavit reasonably satisfactory to the Company and the Warrant Agent of the loss, theft or destruction of such Global Warrant Certificate or Warrant Statement, as applicable, or the posting of a surety bond, indemnifying the Company and Warrant Agent for any losses in connection therewith, if requested by either the Company or the Warrant Agent, also satisfactory to them.  Applicants for such substitute Global Warrant Certificates or Warrant Statement, as applicable, shall also comply with such other reasonable regulations and pay such other reasonable charges as the Company or the Warrant Agent may prescribe and as required by Section 8-405 of the Uniform Commercial Code as in effect in the State of New York.

Section 7.3    No Restrictive Legends.  No legend shall be stamped or imprinted on any stock certificate for Warrant Shares issued upon the exercise of any Warrant and or stock certificate issued upon the direct or indirect transfer of any such Warrant Shares.

Section 7.4    Cancellation of Warrants.  If the Company shall purchase or otherwise acquire Warrants, the Global Warrant Certificates and the Book-Entry Warrants representing such Warrants shall thereupon be deposited with or delivered to the Warrant Agent, if applicable, and be cancelled by it and retired.  The Warrant Agent shall cancel all Global Warrant Certificates surrendered for exchange, substitution, transfer or exercise in whole or in part.  Such cancelled Global Warrant Certificates shall thereafter be disposed of in a manner satisfactory to the Company provided in writing to the Warrant Agent.

18

## ARTICLE VIII

### CONCERNING THE WARRANT AGENT AND OTHER MATTERS

Section 8.1    Payment of Taxes.  The Company will from time to time promptly pay all taxes and charges that may be imposed upon the Company or the Warrant Agent in respect of the issuance or delivery of the Warrant Shares upon the exercise of Warrants, but any taxes or charges in connection with the issuance of Warrants or Warrant Shares in any name other than that of the Holder of the Warrants shall be paid by such Holder; and in any such case, the Company and the Warrant Agent shall not be required to issue or deliver any Warrants or Warrant Shares until such taxes or charges shall have been paid or it is established to the Company's and the Warrant Agent's reasonable satisfaction that no tax or charge is due.

Section 8.2    Resignation, Consolidation or Merger of Warrant Agent.

(a)    *Appointment of Successor Warrant Agent*.  The Warrant Agent, or any successor to it hereafter appointed, may resign its duties and be discharged from all further duties and liabilities hereunder after giving thirty (30) days' notice in writing to the Company.  If the office of the Warrant Agent becomes vacant by resignation or incapacity to act or otherwise, the Company shall appoint in writing a successor Warrant Agent in place of the Warrant Agent.  If the Company shall fail to make such appointment within a period of thirty (30) calendar days after it has been notified in writing of such resignation or incapacity by the Warrant Agent or by the Registered Holder of a Warrant (who shall, with such notice, submit his Warrant for inspection by the Company), then the Registered Holder of any Warrant may apply to any court of competent jurisdiction located in the State of New York.  Any successor Warrant Agent, whether appointed by the Company or by such court, shall be a Person organized and existing under the laws of any state or of the United States of America, and shall be authorized under such laws to exercise corporate trust powers and subject to supervision or examination by federal or state authority.  After appointment, any successor Warrant Agent shall be vested with all the authority, powers, rights, immunities, duties and obligations of its predecessor Warrant Agent with like effect as if originally named as Warrant Agent hereunder, without any further act or deed; but if for any reason it becomes necessary or appropriate, the predecessor Warrant Agent shall execute and deliver, at the expense of the Company, an instrument transferring to such successor Warrant Agent all the authority, powers, rights, immunities, duties and obligations of such predecessor Warrant Agent hereunder; and upon request of any successor Warrant Agent, the Company shall make, execute, acknowledge and deliver any and all instruments in writing for more fully and effectually vesting in and confirming to such successor Warrant Agent all such authority, powers, rights, immunities, duties and obligations.  For the avoidance of doubt, any predecessor Warrant Agent shall deliver and transfer to its successor Warrant Agent any property at the time held by it hereunder and execute and deliver, at the expense of the Company, any further assurance, conveyance, act or deed necessary for the purpose.

(b)    *Notice of Successor Warrant Agent*.  In the event a successor Warrant Agent shall be appointed, the Company shall (i) give notice thereof to the predecessor Warrant Agent and the transfer agent for the New Common Stock not later than the effective date of any such appointment, and (ii) cause written notice thereof to be delivered to each Registered Holder at such holder's address appearing on the Warrant Register.  Failure to give any notice provided

19

for in this <u>Section 8.2(b)</u> or any defect therein shall not affect the legality or validity of the removal of the Warrant Agent or the appointment of a successor Warrant Agent, as the case may be.

(c)    *Merger, Consolidation or Name Change of Warrant Agent.*

(i)    Any Person or other entity into which the Warrant Agent may be merged or converted or with which it may be consolidated or any Person resulting from any merger, conversion, or consolidation to which the Warrant Agent shall be a party or any Person succeeding to the shareholder services business of the Warrant Agent or any successor Warrant Agent, shall be the successor Warrant Agent under this Agreement, without any further act or deed, if such Person would be eligible for appointment as a successor Warrant Agent under the provisions of <u>Section 8.2(a)</u>. If any of the Global Warrant Certificates have been countersigned but not delivered at the time such successor to the Warrant Agent succeeds under this Agreement, any such successor to the Warrant Agent may adopt the countersignature of the original Warrant Agent; and if at that time any of the Global Warrant Certificates shall not have been countersigned, any successor to the Warrant Agent may countersign such Global Warrant Certificates either in the name of the predecessor Warrant Agent or in the name of the successor Warrant Agent; and in all such cases such Global Warrant Certificates shall have the full force provided in the Global Warrant Certificates and in this Agreement.

(ii)    If at any time the name of the Warrant Agent is changed and at such time any of the Global Warrant Certificates have been countersigned but not delivered, the Warrant Agent whose name has changed may adopt the countersignature under its prior name; and if at that time any of the Global Warrant Certificates have not been countersigned, the Warrant Agent may countersign such Global Warrant Certificates either in its prior name or in its changed name; and in all such cases such Global Warrant Certificates shall have the full force provided in the Global Warrant Certificates and in this Agreement.

Section 8.3    <u>Fees and Expenses of Warrant Agent</u>.

(a)    *Remuneration.* The Company agrees to pay the Warrant Agent reasonable remuneration to be agreed upon between the Warrant Agent and the Company for its services as Warrant Agent hereunder and will reimburse the Warrant Agent upon demand for all expenditures (including reasonable counsel fees and expenses) that the Warrant Agent may reasonably incur in the preparation, delivery, administration, execution and amendment of this Agreement and the exercise and performance of its duties hereunder.

(b)    *Further Assurances.* The Company agrees to perform, execute, acknowledge and deliver or cause to be performed, executed, acknowledged and delivered all such further and other acts, instruments, and assurances as may reasonably be required by the Warrant Agent for the carrying out or performing of the provisions of this Agreement.

Section 8.4    <u>Liability of Warrant Agent</u>.

(a)    *Reliance on Company Statement.* Whenever in the performance of its duties under this Agreement the Warrant Agent shall deem it necessary or desirable that any fact or matter be proved or established by the Company prior to taking or suffering any action

20

hereunder, such fact or matter may be deemed to be conclusively proved and established by a statement signed by any Appropriate Officer and delivered to the Warrant Agent; and such certificate will be full authorization to the Warrant Agent for any action taken, suffered or omitted by it under the provisions of this Agreement in reliance upon such certificate.  The Warrant Agent is hereby authorized and directed to accept instructions with respect to the performance of its duties hereunder from any Appropriate Officer, and to apply to such officers for advice or instructions in connection with its duties, and it may rely upon such statement and will not be liable for any action taken, suffered or omitted to be taken by it in accordance with any such instructions or pursuant to the provisions of this Agreement.

(b) *Indemnity*.  The Warrant Agent shall be liable hereunder only for its own gross negligence, willful misconduct or bad faith (which gross negligence, willful misconduct or bad faith must be determined by a final, non-appealable order, judgment, decree or ruling of a court of competent jurisdiction).  The Company agrees to indemnify the Warrant Agent for, and to hold it harmless against, any loss, liability, suit, action, proceeding, judgment, claim, settlement, cost or expense (including reasonable counsel fees and expenses), incurred without gross negligence, willful misconduct or bad faith on the part of the Warrant Agent (which gross negligence, willful misconduct or bad faith must be determined by a final, non-appealable order, judgment, decree or ruling of a court of competent jurisdiction), for any action taken, suffered or omitted by the Warrant Agent in connection with the preparation, delivery, acceptance, administration, execution and amendment of this Agreement and the exercise and performance of its duties hereunder, including the costs and expenses of defending against any claim of liability arising therefrom, directly or indirectly.  The Warrant Agent shall not be obligated to expend or risk its own funds or to take any action which it believes would expose it to expense or liability or to a risk of incurring expense or liability, unless it has been furnished with assurances of repayment or indemnity satisfactory to it.  No provision in this Agreement shall be construed to relieve the Warrant Agent from liability for its own gross negligence, willful misconduct or bad faith (which gross negligence, willful misconduct or bad faith must be determined by a final, non-appealable order, judgment, decree or ruling of a court of competent jurisdiction).

(c) *Exclusions*.  The Warrant Agent shall have no responsibility with respect to the validity of this Agreement or with respect to the validity or execution of any Warrant (except its countersignature thereof); nor shall it be responsible for any breach by the Company of any covenant or condition contained in this Agreement or in any Warrant; nor shall it be responsible or have any duty to make any calculation or adjustment, or to determine when any calculation or adjustment required under the provisions of Article IV or Article V hereof should be made, how it should be made or what it should be, or have any responsibility or liability for the manner, method or amount of any such calculation or adjustment or the ascertaining of the existence of facts that would require any such calculation or adjustment; nor shall it by any act hereunder be deemed to make any representation or warranty as to the authorization or reservation of any Warrant Shares to be issued pursuant to this Agreement or any Warrant or as to whether any Warrant Shares will, when issued, be valid and fully paid and nonassessable.

Section 8.5    Acceptance of Agency.  The Warrant Agent hereby accepts the agency established by this Agreement and agrees to perform the same upon the express terms and conditions herein set forth and, among other things, shall account promptly to the Company with respect to Warrants exercised and concurrently account for and pay to the Company all moneys

21

received by the Warrant Agent for the purchase of Warrant Shares through the exercise of Warrants.

Section 8.6    Agent for the Company.  In acting in the capacity of Warrant Agent under this Agreement, the Warrant Agent is acting solely as agent of the Company and does not assume any obligation or relationship of agency or trust with any of the owners or holders of the Warrants.

Section 8.7    Counsel.  The Warrant Agent may consult with counsel satisfactory to it (which may be counsel to the Company), and the advice of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in accordance with the advice of such counsel.

Section 8.8    Documents.  The Warrant Agent shall be protected and shall incur no liability for or in respect of any action taken, suffered or omitted by it in reliance upon any notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been presented or signed by the proper parties.

Section 8.9    Certain Transactions.  The Warrant Agent, and its officers, directors and employees, may become the owner of, or acquire any interest in, any Warrant, with the same rights that it or they would have were it not the Warrant Agent hereunder, and, to the extent permitted by applicable law, it or they may engage or be interested in any financial or other transaction with the Company and may act on, or as a depositary, trustee or agent for, any committee or body of holders of Warrants, or other securities or obligations of the Company as freely as if it were not the Warrant Agent hereunder. Nothing in this Agreement shall be deemed to prevent the Warrant Agent from acting as trustee under an indenture.

Section 8.10    No Liability for Interest.  The Warrant Agent shall not be under any liability for interest on any monies at any time received by it pursuant to any of the provisions of this Agreement.

Section 8.11    No Liability for Invalidity.  The Warrant Agent shall not be under any responsibility with respect to the validity or sufficiency of this Agreement or the execution and delivery hereof (except the due execution and delivery hereof by the Warrant Agent) or with respect to the validity or execution of the Warrant Certificates (except its countersignature thereon).

Section 8.12    No Responsibilities for Recitals.  The recitals contained herein and in the Warrant Certificates (except as to the Warrant Agent's countersignature thereon) shall be taken as the statements of the Company and the Warrant Agent assumes no responsibility hereby for the correctness of the same.

Section 8.13    No Implied Obligations.  The Warrant Agent shall be obligated to perform such duties as are explicitly set forth herein and no implied duties or obligations shall be read into this Agreement against the Warrant Agent. The Warrant Agent shall not be under any obligation to take any action hereunder that may involve it in any expense or liability, the payment of which within a reasonable time is not, in its opinion, assured to it. The Warrant Agent shall not be accountable or under any duty or responsibility for the use by the Company of

22

any Warrant Certificate authenticated by the Warrant Agent and delivered by it to the Company pursuant to this Agreement or for the application by the Company of the proceeds of the issue and sale, or exercise, of the Warrants. The Warrant Agent shall have no duty or responsibility in case of any default by the Company in the performance of its covenants or agreements contained herein or in any Warrant Certificate or in the case of the receipt of any written demand from a Holder with respect to such default, including, without limiting the generality of the foregoing, any duty or responsibility to initiate or attempt to initiate any proceedings at law or otherwise or, to make any demand upon the Company.

Section 8.14   Agents.  The Warrant Agent may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys-in-fact, and the Warrant Agent shall not be responsible for any loss or expense arising out of, or in connection with, the actions or omissions to act of its agents or attorneys-in-fact, so long as the Warrant Agent acts without gross negligence, willful misconduct or bad faith (which gross negligence, willful misconduct or bad faith must be determined by a final, non-appealable order, judgment, decree or ruling of a court of competent jurisdiction) in connection with the selection of, and assignment of tasks to, such agents or attorneys-in-fact; provided, that this provision shall not permit the Warrant Agent to assign all or substantially all of its primary record-keeping responsibilities hereunder to any third party provider without the Company's prior written consent.

Section 8.15   Liability.  Notwithstanding anything in this Agreement to the contrary, in no event shall the Warrant Agent be liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Warrant Agent has been advised of the likelihood of the loss or damage and regardless of the form of the action.  Any liability of the Warrant Agent under this Agreement shall be limited to the amount of annual fees paid by the Company to the Warrant Agent.

Section 8.16   Force Majeure.  In no event shall the Warrant Agent be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused by, directly or indirectly, forces beyond its reasonable control, including without limitation strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software or hardware) services.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

Section 9.1   Binding Effects; Benefits.  This Agreement shall inure to the benefit of and shall be binding upon the Company, the Warrant Agent and the Holders and their respective heirs, legal representatives, successors and assigns.  Nothing in this Agreement, expressed or implied, is intended to or shall confer on any Person other than the Company, the Warrant Agent and the Holders, or their respective heirs, legal representatives, successors or assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

23

Section 9.2     Notices.  Any notice or other communication required or which may be given hereunder shall be in writing and shall be sent by certified or registered mail, by private national courier service (return receipt requested, postage prepaid), by personal delivery or by electronic or facsimile transmission.  Such notice or communication shall be deemed given (a) if mailed, two days after the date of mailing, (b) if sent by national courier service, one Business Day after being sent, (c) if delivered personally, when so delivered, or (d) if sent by electronic or facsimile transmission, on the Business Day after such transmission is sent, in each case as follows:

> if to the Warrant Agent, to:
>
> American Stock Transfer & Trust Company, LLC
> 6201 15th Street
> Brooklyn, NY 11219
> Tel: (718) 921-8208
> Fax: (718) 921-8335
>
> if to the Company, to:
>
> U.S. Concrete, Inc.
> 2925 Briarpark, Suite 1050
> Houston, Texas  77042
> Attention:  General Counsel
> Facsimile:  (713) 499-6201
>
> with a copy (which shall not constitute notice) to:
>
> Kirkland & Ellis LLP
> 300 North LaSalle Street
> Chicago, Illinois 60654
> Attention:      Carol Anne Huff
>                 Patrick Nash
> Facsimile: (312) 862-2200
>
> if to Registered Holders, at their addresses as they appear in the Warrant Register.

If the Company fails to maintain such office or agency or fails to give such notice of any change in the location thereof, presentation may be made and notices and demands may be served at the office of the Warrant Agent designated for such purpose.

Section 9.3     Persons Having Rights under this Agreement.  Nothing in this Agreement expressed and nothing that may be implied from any of the provisions hereof is intended, or shall be construed, to confer upon, or give to, any Person other than the parties hereto and the Holders, any right, remedy, or claim under or by reason of this Agreement or of any covenant, condition, stipulation, promise, or agreement hereof.  All covenants, conditions, stipulations, promises, and agreements contained in this Agreement shall be for the sole and exclusive benefit of the parties hereto, their successors and assigns and the Holders.

24

Section 9.4    Examination of this Agreement.  A copy of this Agreement shall be available at all reasonable times at the office of the Warrant Agent designated for such purpose, for examination by the Holder of any Warrant.  Prior to such examination, the Warrant Agent may require any such holder to submit his Warrant for inspection by it.

Section 9.5    Counterparts.  This Agreement may be executed in any number of original, facsimile, PDF or electronic counterparts and each of such counterparts shall for all purposes be deemed to be an original, and all such counterparts shall together constitute but one and the same instrument.

Section 9.6    Effect of Headings.  The section headings herein are for convenience only and are not part of this Agreement and shall not affect the interpretation hereof.

Section 9.7    Amendments.

(a)    Subject to Section 9.7(b) below, this agreement may not be amended except in writing signed by both parties hereto.

(b)    The Company and the Warrant Agent may from time to time supplement or amend this Agreement or the Warrants (i) without the approval of any Holders in order to cure any ambiguity, manifest error or other mistake in this Agreement or the Warrants, or to correct or supplement any provision contained herein or in the Warrants that may be defective or inconsistent with any other provision herein or in the Warrants, or to make any other provisions in regard to matters or questions arising hereunder that the Company and the Warrant Agent may deem necessary or desirable and that shall not adversely affect, alter or change the interests of any Holder or (ii) with the prior written consent of holders of the Warrants exercisable for a majority of the Warrant Shares then issuable upon exercise of the Warrants then outstanding.  Notwithstanding anything to the contrary herein, upon the delivery of a certificate from an Appropriate Officer of the Company and, if requested by the Warrant Agent, an opinion of counsel, which states that the proposed supplement or amendment is in compliance with the terms of this Section 9.7 and, provided such supplement or amendment does not change the Warrant Agent's rights, duties, liabilities, immunities or obligations hereunder, the Warrant Agent shall execute such supplement or amendment.  Any amendment, modification or waiver effected pursuant to and in accordance with the provisions of this Section 9.7 will be binding upon all Holders and upon each future Holder, the Company and the Warrant Agent.  In the event of any amendment, modification or waiver, the Company will give prompt notice thereof to all Registered Holders and, if appropriate, notation thereof will be made on all Global Warrant Certificates thereafter surrendered for registration of transfer or exchange.

Section 9.8    No Inconsistent Agreements.  The Company will not, on or after the date hereof, enter into any agreement with respect to its securities which conflicts with the rights granted to the Holders in the Warrants or the provisions hereof.  The Company represents and warrants to the Holders that, as of the date hereof, the rights granted hereunder do not in any way conflict with the rights granted to holders of the Company's securities under any other agreements.

25

Section 9.9    Integration/Entire Agreement.  This Agreement, the Warrants and the other agreements and documents referenced herein and therein constitute the complete agreement among the Company, the Warrant Agent and the Holders with respect to the subject matter hereof and supersede all prior agreements, oral or written, between or among the parties with respect thereto.

Section 9.10    Governing Law, Etc.  This Agreement and each Warrant issued hereunder shall be deemed to be a contract made under the laws of the State of New York and for all purposes shall be governed by and construed in accordance with the laws of such State.  Each party hereto consents and submits to the jurisdiction of the courts of the State of New York and of the federal courts of the Southern District of New York in connection with any action or proceeding brought against it that arises out of or in connection with, that is based upon, or that relates to this Agreement or the transactions contemplated hereby.  In connection with any such action or proceeding in any such court, each party hereto hereby waives personal service of any summons, complaint or other process and hereby agrees that service thereof may be made in accordance with the procedures for giving notice set forth in Section 9.2 hereof.  Each party hereto hereby waives any objection to jurisdiction or venue in any such court in any such action or proceeding and agrees not to assert any defense based on forum *non conveniens* or lack of jurisdiction or venue in any such court in any such action or proceeding.

Section 9.11    Termination.  This Agreement shall terminate on the Expiration Date. Notwithstanding the foregoing, this Agreement will terminate on any earlier date when all Warrants have been exercised.  The provisions of Section 8.4 and this Article IX shall survive such termination and the resignation or removal of the Warrant Agent.

Section 9.12    Waiver of Trial by Jury.  Each party hereto hereby irrevocably and unconditionally waives the right to a trial by jury in any action, suit, counterclaim or other proceeding (whether based on contract, tort or otherwise) arising out of, connected with or relating to this Agreement and the transactions contemplated hereby.

Section 9.13    Severability.  In the event that any one or more of the provisions contained herein or in the Warrants, or the application thereof in any circumstances, is held invalid, illegal or unenforceable, the validity, legality and enforceability of any such provisions in every other respect and of the remaining provisions contained herein and therein shall not be affected or impaired thereby; provided, that if any such excluded term, provision, covenant or restriction shall materially adversely affect the rights, immunities, duties or obligations of the Warrant Agent, the Warrant Agent shall be entitled to resign immediately.  Furthermore, subject to the preceding sentence, in lieu of any such invalid, illegal or unenforceable provision, the parties hereto intend that there shall be added as a part of this Agreement a provision as similar in terms and commercial effect to such invalid, illegal or unenforceable provision as may be possible and be valid and enforceable.

[Signature Page Follows]

26

IN WITNESS WHEREOF, this Agreement has been duly executed by the parties hereto as of the day and year first above written.

**U.S. CONCRETE, INC.**

By: _____
    Name:
    Title:

**AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC**

By: _____
    Name:
    Title:

[Signature Page to U.S. Concrete, Inc. Warrant]

**EXHIBIT A-1**

FORM OF WARRANT STATEMENT


[Attached]

**EXHIBIT A-2**

FORM OF FACE OF GLOBAL WARRANT CERTIFICATE

VOID AFTER 5:00 P.M., NEW YORK CITY TIME, ON [_____], 2017

This Global Warrant Certificate is held by The Depository Trust Company (the "Depositary") or its nominee in custody for the benefit of the beneficial owners hereof, and is not transferable to any Person under any circumstances except that (i) this Global Warrant Certificate may be exchanged in whole but not in part pursuant to Section 6.1(a) of the Warrant Agreement, (ii) this Global Warrant Certificate may be delivered to the Warrant Agent for cancellation pursuant to Section 6.1(h) of the Warrant Agreement and (iii) this Global Warrant Certificate may be transferred to a successor Depositary with the prior written consent of the Company.

Unless this Global Warrant Certificate is presented by an authorized representative of the Depositary to the Company or the Warrant Agent for registration of transfer, exchange or payment and any certificate issued is registered in the name of Cede & Co., or such other entity as is requested by an authorized representative of the Depositary (and any payment hereon is made to Cede & Co. or to such other entity as is requested by an authorized representative of the Depositary), any transfer, pledge or other use hereof for value or otherwise by or to any Person is wrongful because the registered owner hereof, Cede & Co., has an interest herein.

Transfers of this Global Warrant Certificate shall be limited to transfers in whole, but not in part, to nominees of the Depositary or to a successor thereof or such successor's nominee, and transfers of portions of this Global Warrant Certificate shall be limited to transfers made in accordance with the restrictions set forth in Article VI of the Warrant Agreement.

No registration or transfer of the securities issuable pursuant to the Warrant will be recorded on the books of the Company until these provisions have been complied with.

THE SECURITIES REPRESENTED BY THIS WARRANT CERTIFICATE (INCLUDING THE SECURITIES ISSUABLE UPON EXERCISE OF THE WARRANT) ARE SUBJECT TO ADDITIONAL AGREEMENTS SET FORTH IN THE WARRANT AGREEMENT DATED AS OF [_____], 2010 BY AND BETWEEN THE COMPANY AND THE WARRANT AGENT (THE "WARRANT AGREEMENT").

THIS WARRANT WILL BE VOID IF NOT EXERCISED PRIOR TO
5:00 P.M., NEW YORK CITY TIME, ON [_____], 2017

**WARRANT TO PURCHASE**

**_____ SHARES OF COMMON STOCK OF**

**U.S. CONCRETE, INC.**

CUSIP # _____
DISTRIBUTION DATE:  [_____]

No. _____

This certifies that, for value received, _____, and its registered assigns (collectively, the "Registered Holder"), is entitled to purchase from U.S. Concrete, Inc., a corporation incorporated under the laws of the State of Delaware (the "Company"), subject to the terms and conditions hereof, at any time before 5:00 p.m., New York City time, on [_____], 2017, the number of fully paid and non-assessable shares of Common Stock of the Company set forth above at the Exercise Price (as defined in the Warrant Agreement).  The Exercise Price and the number and kind of shares purchasable hereunder are subject to adjustment from time to time as provided in Article V of the Warrant Agreement.  The initial Exercise Price shall be $[_____].

This Warrant Certificate shall not be valid unless countersigned by the Warrant Agent.

IN WITNESS WHEREOF, this Warrant has been duly executed by the Company under its corporate seal as of the ____ day of _____, 20__.

**U.S. CONCRETE, INC.**

By: _____

Print Name: _____

Title: _____

Attest: _____
Secretary

**AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC**, as Warrant Agent

By: _____
      Name:
      Title:

Address of Registered Holder for Notices (until changed in accordance with this Warrant):

   _____
   _____
   _____
   _____
   _____

REFERENCE IS HEREBY MADE TO THE FURTHER PROVISIONS OF THIS WARRANT CERTIFICATE SET FORTH ON THE REVERSE HEREOF.  SUCH FURTHER PROVISIONS SHALL FOR ALL PURPOSES HAVE THE SAME EFFECT AS THOUGH FULLY SET FORTH AT THIS PLACE.

FORM OF REVERSE OF WARRANT

The Warrant evidenced by this Warrant Certificate is a part of a duly authorized issue of Warrants to purchase _____ shares of Common Stock issued pursuant to the Warrant Agreement, a copy of which may be inspected at the Warrant Agent's office designated for such purpose.  The Warrant Agreement hereby is incorporated by reference in and made a part of this instrument and is hereby referred to for a description of the rights, limitation of rights, obligations, duties and immunities thereunder of the Warrant Agent, the Company and the Registered Holders of the Warrants.  All capitalized terms used on the face of this Warrant herein but not defined that are defined in the Warrant Agreement shall have the meanings assigned to them therein.

Upon due presentment for registration of transfer of the Warrant at the office of the Warrant Agent designated for such purpose, a new Warrant Certificate or Warrant Certificates of like tenor and evidencing in the aggregate a like number of Warrants shall be issued to the transferee in exchange for this Warrant Certificate, subject to the limitations provided in the Warrant Agreement, without charge except for any applicable tax or other charge.

The Company shall not be required to issue fractions of Warrant Shares or any certificates that evidence fractional Warrant Shares.

No Warrants may be sold, exchanged or otherwise transferred in violation of the Securities Act or state securities laws.

This Warrant does not entitle the Registered Holder to any of the rights of a stockholder of the Company.

The Company and Warrant Agent may deem and treat the Registered Holder hereof as the absolute owner of this Warrant Certificate (notwithstanding any notation of ownership or other writing hereon made by anyone) for the purpose of any exercise hereof and for all other purposes, and neither the Company nor the Warrant Agent shall be affected by any notice to the contrary.

**EXHIBIT B-1**

EXERCISE FORM FOR REGISTERED HOLDERS
HOLDING BOOK-ENTRY WARRANTS

(To be executed upon exercise of Warrant)

The undersigned hereby irrevocably elects to exercise the right, represented by the Book-Entry Warrants, to purchase Warrant Shares and (check one):

☐       herewith tenders payment for _____ of the Warrant Shares to the order of U.S. Concrete, Inc. in the amount of $_____ in accordance with the terms of the Warrant Agreement and this Warrant; or

☐       herewith tenders this Warrant for _____ Warrant Shares pursuant to the net issuance exercise provisions of Section 4.4(b) of the Warrant Agreement.  This exercise and election shall ☐ be immediately effective or ☐ shall be effective as of 5:00 pm., New York City time, on [insert date].

The undersigned requests that [a statement representing] the Warrant Shares be delivered as follows:

Name         _____
Address      _____
             _____
Delivery Address (if different)

             _____
             _____

If said number of shares shall not be all the shares purchasable under the within Warrant Statement, the undersigned requests that a new Book-Entry Warrant representing the balance of such Warrants shall be registered, with the appropriate Warrant Statement delivered as follows:

Name         _____
Address      _____
             _____
Delivery Address (if different)

             _____
             _____

                                    Signature _____

_____
Social Security or Other Taxpayer
Identification Number of Holder

                                    Note: If the statement representing the Warrant Shares or any Book-Entry Warrants representing Warrants not exercised is to be registered in a name other than that in which the Book-Entry Warrants are registered, the signature of the holder hereof must be guaranteed.

                                    SIGNATURE GUARANTEED BY:

                                    _____

Signatures must be guaranteed by a participant in the Securities Transfer Agent Medallion Program, the Stock Exchanges Medallion Program or the New York Stock Exchange, Inc. Medallion Signature Program.

Countersigned:
Dated:              , 20

**AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC**, as Warrant Agent

Signature _____
          Authorized Signatory

**EXHIBIT B-2**

EXERCISE FORM FOR BENEFICIAL HOLDERS
HOLDING WARRANTS THROUGH THE DEPOSITORY TRUST COMPANY

TO BE COMPLETED BY DIRECT PARTICIPANT
IN THE DEPOSITORY TRUST COMPANY

(To be executed upon exercise of Warrant)

The undersigned hereby irrevocably elects to exercise the right, represented by _____ Warrants held for its benefit through the book-entry facilities of Depository Trust Company (the "Depositary"), to purchase Warrant Shares and (check one):

☐    herewith tenders payment for _____ of the Warrant Shares to the order of U.S. Concrete, Inc. in the amount of $_____ in accordance with the terms of the Warrant Agreement and this Warrant; or

☐    herewith tenders this Warrant for _____ Warrant Shares pursuant to the net issuance exercise provisions of Section 4.4(b) of the Warrant Agreement.  This exercise and election shall ☐ be immediately effective or ☐ shall be effective as of 5:00 pm., New York City time, on [insert date].

The undersigned requests that the Warrant Shares issuable upon exercise of the Warrants be in registered form in the authorized denominations, registered in such names and delivered, all as specified in accordance with the instructions set forth below; provided, that if the Warrant Shares are evidenced by global securities, the Warrant Shares shall be registered in the name of the Depositary or its nominee.

Dated:

NOTE:  THIS EXERCISE NOTICE MUST BE DELIVERED TO THE WARRANT AGENT, PRIOR TO 5:00 P.M., NEW YORK CITY TIME, ON THE EXPIRATION DATE.  THE WARRANT AGENT SHALL NOTIFY YOU (THROUGH THE CLEARING SYSTEM) OF (1) THE WARRANT AGENT'S ACCOUNT AT THE DEPOSITARY TO WHICH YOU MUST DELIVER YOUR WARRANTS ON THE EXERCISE DATE AND (2) THE ADDRESS, PHONE NUMBER AND FACSIMILE NUMBER WHERE YOU CAN CONTACT THE WARRANT AGENT AND TO WHICH WARRANT EXERCISE NOTICES ARE TO BE SUBMITTED.  NAME OF DIRECT PARTICIPANT IN THE DEPOSITARY:

(PLEASE PRINT)

ADDRESS:

CONTACT NAME:

ADDRESS:

TELEPHONE (INCLUDING INTERNATIONAL CODE):

FAX (INCLUDING INTERNATIONAL CODE):

SOCIAL SECURITY OR OTHER TAXPAYER IDENTIFICATION NUMBER (IF APPLICABLE):

ACCOUNT FROM WHICH WARRANTS ARE BEING DELIVERED:

DEPOSITARY ACCOUNT NO.

WARRANT EXERCISE NOTICES WILL ONLY BE VALID IF DELIVERED IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH IN THIS NOTIFICATION (OR AS OTHERWISE DIRECTED), MARKED TO THE ATTENTION OF "WARRANT EXERCISE".  WARRANT HOLDER DELIVERING WARRANTS, IF OTHER THAN THE DIRECT DEPOSITARY PARTICIPANT DELIVERING THIS WARRANT EXERCISE NOTICE:

NAME: _____
       (PLEASE PRINT)

 CONTACT NAME:

TELEPHONE (INCLUDING INTERNATIONAL CODE):

FAX (INCLUDING INTERNATIONAL CODE):

SOCIAL SECURITY OR OTHER TAXPAYER IDENTIFICATION NUMBER (IF APPLICABLE):

ACCOUNT TO WHICH THE SHARES OF COMMON STOCK ARE TO BE CREDITED:

DEPOSITARY ACCOUNT NO.

FILL IN FOR DELIVERY OF THE COMMON STOCK, IF OTHER THAN TO THE PERSON DELIVERING THIS WARRANT EXERCISE NOTICE:

NAME: _____
       (PLEASE PRINT)

ADDRESS: _____

CONTACT NAME: _____

TELEPHONE (INCLUDING INTERNATIONAL CODE): _____

FAX (INCLUDING INTERNATIONAL CODE): _____

SOCIAL SECURITY OR OTHER TAXPAYER IDENTIFICATION NUMBER (IF APPLICABLE): _____

NUMBER OF WARRANTS BEING EXERCISED: _____
(ONLY ONE EXERCISE PER WARRANT EXERCISE NOTICE)


Signature: _____

Name: _____

Capacity in which Signing: _____

SIGNATURE GUARANTEED BY:  _____

Signatures must be guaranteed by a participant in the Securities Transfer Agent Medallion Program, the Stock Exchanges Medallion Program or the New York Stock Exchange, Inc. Medallion Signature Program.

## FORM OF ASSIGNMENT

(To be executed only upon assignment of Warrant)

For value received, _____ hereby sells, assigns and transfers unto the Assignee(s) named below the rights represented by such Warrant to purchase number of Warrant Shares listed opposite the respective name(s) of the Assignee(s) named below and all other rights of the Registered Holder under the within Warrant, and does hereby irrevocably constitute and appoint _____ attorney, to transfer said Warrant on the books of the within-named Company with respect to the number of Warrant Shares set forth below, with full power of substitution in the premises:

| Name(s) of Assignee(s) | Address | No. of Warrant Shares |
|---|---|---|
| | | |

And if said number of Warrant Shares shall not be all the Warrant Shares represented by the Warrant, a new Warrant is to be issued in the name of said undersigned for the balance remaining of the Warrant Shares registered by said Warrant.

Dated: _____, 20__      Signature _____

Note:   The above signature should correspond exactly with the name on the face of this Warrant

**<u>EXHIBIT F</u>**

**Exit Facility**

[TO COME]